Crystal Foley (SBN 224627)
cfoley@simmonsfirm.com
**Simmons Hanly Conroy LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (310) 322-3555
Facsimile:  (310) 322-3655

Paul J. Hanly, Jr.
(*pro hac vice* to be submitted)
phanly@simmonsfirm.com
Mitchell M. Breit
(*pro hac vice* to be submitted)
mbreit@simmonsfirm.com
**Simmons Hanly Conroy LLC**
112 Madison Avenue
New York, NY 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949

Attorneys for Plaintiff                     Additional Counsel on Signature Page

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

CODY MEEK, on behalf of himself and all others similarly situated,

Plaintiff,

v.

SKYWEST, INC. and SKYWEST AIRLINES, INC.

Defendants.

Case No.:

**Jury Trial Demanded**

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

Cody Meek, a former ramp agent for SkyWest Airlines, Inc. ("Plaintiff"), brings this action on behalf of himself and a proposed class of similarly situated "ramp agents" ("Class") who are or were employed by SkyWest, Inc. and SkyWest Airlines, Inc. (collectively "SkyWest") in the State of California during the applicable statute of limitations period. SkyWest's unlawful employment scheme denies Plaintiff and others like him from receiving the wages to which they are entitled.

This scheme fails to fully compensate its ramp agents for each hour of their work as required under the applicable labor laws of the State of California and ordinances of the city of San Francisco, specifically by: failing to fully compensate ramp agents each time they "trade shifts" regardless of the number of hours they work; failing to pay no less than the required state and local minimum wages; and requiring a supervisor's approval for missed or shorter meal breaks, rest breaks, and compensated overtime *after* the work has already been performed by ramp agents.  In addition, SkyWest fails to properly record and display all of the ramp agents' work hours and hourly wages on pay records in a manner that allows the ramp agents to determine the airline's adherence to the applicable local ordinances and state laws.

## INTRODUCTION

1.     SkyWest ramp agents have the right to be paid for their labor. That right is guaranteed under the state wage laws of California and the local wage ordinances of San Francisco. For hourly employees like the Plaintiff and the Class, the right to be compensated for each hour worked is not and cannot be bargained away. For each hour that SkyWest ramp agents perform duties that are integral and indispensable to their primary responsibilities, these employees are entitled to be compensated for their time at no less than the minimum hourly wage as required by applicable state and local laws.

2.     Furthermore, when ramp agents work in excess of forty hours per work week, they are entitled to overtime wage compensation under the wage laws of California. In situations where employees trade or pick up another person's shift, even if it is due to understaffing problems created by SkyWest, the company unilaterally refuses to pay overtime wage rates as required by California Labor statutes.

3.     SkyWest Airlines ramp agents are not represented by a union. In addition, although their policy manual is the same as "front line agents," they are not permitted to be voting members of "SkyWest Frontline Association" ("SAFA"), the internal SkyWest organization that

purportedly "bargains" for the ramp agents. The Customer Service Policy Manual ("Policy Manual") is attached as Exhibit 1.

4.     The Policy Manual is not a Collective Bargaining Agreement ("CBA"), but even if it were, no interpretation of it is required because non-negotiable state law rights like those at issue here cannot be waived through such agreements.

5.     Further, no interpretation of the Policy Manual is necessary to determine: 1) the method and rates of ramp agents' pay, 2) which ramp agent hours are paid or unpaid, or 3) the compensable hours of work performed by a ramp agent on any given day. SkyWest's computerized scheduling and pay records speak for themselves, showing that ramp agents are not paid overtime wage compensation each time they work in excess of 40 hours in a calendar week, are not paid at a rate that is no less than state and local minimum wage rates, and that missed meal and rest breaks (due to SkyWest and FAA requirements) require a supervisor's approval after the required break time has already been worked, often resulting in denied wages.

**LEGAL BASES FOR COMPLAINT**

6.     **California Class**: Plaintiff Cody Meek brings this action as a Class Action on behalf of the California Class pursuant to Fed. R. Civ. P. 23 on behalf of all similarly situated individuals who were employed as ramp agents in the State of California by SkyWest during the applicable statute of limitations period, as a result of:

      A.     SkyWest's failure to pay wages for all hours worked, including but not limited to failing to start wages at actual check-in time, and not paying wages for working through meal and rest times which were later not approved by a supervisor despite the work being completed, in violation of California Wage Order No. 9; Cal. Labor Code §§ 1182.12, 1194, and 1197.

B.    SkyWest's failure to provide ramp agents with properly itemized and accurate wage statements showing all hours worked as required by Cal. Labor Code § 226.

C.    SkyWest's failure to pay ramp agents all overtime wages due, in violation of California Wage Order No. 9 § 3(B) and Cal. Labor Code § 511 (alternative workweek).

D.    SkyWest's violation of California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200 *et seq.*, for its unlawful and unfair wage policies and practices.

E.    California Plaintiff and Class brings this action to recover unpaid wages in an amount to be established at trial, plus prejudgment interest, liquidated damages, costs, applicable penalties, applicable restitution, and reasonable attorneys' fees as allowed by law.

7.    **California Former Ramp Agent Sub-Class**: Plaintiff Cody Meek brings this action as a Class Action on behalf of the California Former Ramp Agent Sub-Class pursuant to Fed. R. Civ. P. 23 on behalf of all similarly situated individuals who were formerly employed as ramp agents in the State of California by SkyWest Airlines during the applicable statute of limitations period, as a result of SkyWest's failure to pay waiting time penalties to all former employees who have wages due from the airline's unlawful employment scheme that fails to pay wages for all hours worked prior to leaving the company's employment, in violation of Cal. Labor Code §§ 201-204. Plaintiff bring this action to recover unpaid wages for the California Former Ramp Agent Sub-Class in an amount to be established at trial, plus prejudgment interest, liquidated damages, costs, applicable penalties, applicable restitution, and reasonable attorneys' fees as allowed by law.

8.    **San Francisco Subclass**: Plaintiff Cody Meek brings this action as a Class Action on behalf of the San Francisco Subclass pursuant to the San Francisco Minimum Compensation Ordinance, San Francisco Admin. Code § 12P, on behalf of all similarly situated individuals who were employed by SkyWest Airlines as ramp agents in San Francisco during the applicable statute of limitations period, as a result of SkyWest's failure to pay wages for actual hours worked. San Francisco Plaintiff brings this action to recover unpaid wages in an amount to be established at trial, plus prejudgment interest, liquidated damages, costs, and reasonable attorneys' fees as allowed by law.

## JURISDICTION & VENUE

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy exceeds $5,000,000, there are more than 100 putative class members, and Plaintiff and some class members are citizens of a different state than the Defendants.

10.    This Court has personal jurisdiction over SkyWest because it: (1) operates a business within this District; (2) committed acts in violation of the applicable wage laws as alleged herein within this District; (3) maintained continuous and systematic contacts with this District over a period of years; and (4) purposefully availed itself of the benefits of doing business within this District.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because SkyWest conducts business within this District, has agents within this District, transacts its affairs in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

12.    Pursuant to Local Rule 3-2(c) and (d), this action is properly assigned to the San Francisco Division of the Northern District of California because a substantial portion of the events giving rise to this dispute occurred in San Francisco, California.

## THE PARTIES

13.     Plaintiff Cody Meek is a resident of Aromas, Monterey County, California. He was formerly employed by SkyWest Airlines as a ramp agent based in San Francisco, California (SFO) from April 2013 until June 2015.

14.     Plaintiff and members of the Classes have been employed as ramp agents in California by SkyWest Airlines during the four years preceding this lawsuit.

15.     Defendant SkyWest, Inc. is a Utah corporation that is registered to do business in California, and whose principal office is located at 444 South River Road, St. George, Utah 84790. SkyWest, Inc.'s stock is traded on the NASDAQ market as SKYW.

16.     Defendant SkyWest Airlines, Inc. is a Utah corporation that is registered to do business in California, and whose principal office is located at 444 South River Road, St. George, Utah 84790. SkyWest, Inc. employs approximately 20,000 people.

17.     SkyWest Airlines is a wholly owned, non-unionized subsidiary of SkyWest, Inc.

18.     SkyWest, Inc. and SkyWest Airlines, Inc., for the purposes of statutory claims, are a common or joint enterprise or partnership that is collectively, jointly and severally liable to Plaintiff and members of the Class as described herein.

19.     During the four years preceding the filing of this Complaint, SkyWest Airlines has employed hundreds of similarly situated ramp agents in California whose pay was calculated in the same manner for each ramp agent, even though they performed integral and indispensable work during the documented but uncompensated and undercompensated parts of their work day.

## SUBSTANTIVE ALLEGATIONS

20.     SkyWest employs ramp agents to load and unload baggage, cargo, and pets into and out of the aircraft prior to and after each flight flown. Ramp agent are required to push back the aircraft, de-ice planes when necessary, and other duties associated with preparing the aircraft to transport passengers.

21.     As described in the Policy Manual (Exhibit 1, p. 7458.1), all full-time SkyWest ramp agents must be scheduled and actually work (or take paid time off) for no less than sixty-four hours per pay period to avoid "corrective action."

22.     The Policy Manual clearly states that employees are "paid according to their scheduled shift" and that "[a]ny time worked beyond the five-minute leeway period will be paid only with supervisor approval." (Exhibit 1, p. 7461.3). However, depending on flight arrivals and departures, ramp agents are not allowed to simply walk away from their work duties at the end of their shift time. Rather than being paid for the overage, the ramp agents must write an explanation for the extension of their workday, which ultimately may or may not be approved by a supervisor.

23.     Plaintiff and Class members are (or were not) compensated based upon the actual numbers of hours that they work each working day. Even though Plaintiff and Class Members are required to check in no less than five minutes before their scheduled day with negative consequences if the check in even a few minutes late, they do not receive compensation until their actual scheduled shift time.

24.     According to SkyWest, Inc.'s 2015 Annual Report, of SkyWest Airlines' 10,411 full-time equivalent employees (e.g., ramp agents, pilots, customer service representatives, etc.), none were union-represented.[1]

25.     SkyWest at times characterizes its Policy Manual, like that in Exhibit 1, as a CBA. However the ramp agents are not allowed to vote for SAFA representatives. Additionally, the Policy Manual does not include any of the usual indicia of a true CBA such as, *inter alia*, notice about compulsory mediation requirements, an arbitration clause, "cooling off period" or "self-help" provisions. Upon information and belief, SAFA and the Policy Manual are not and have not been certified by the National Mediation Board.

---

[1] http://inc.skywest.com/assets/Uploads/AnnualReports/SkyWestInc2015AnnualReport.pdf, p. 14 (last viewed January 10, 2017).

7

CLASS ACTION COMPLAINT

26.    Significantly, "Letter of Agreement Terms" signed between SkyWest and a SAFA representative explicitly states that "[i]f and element of the [Policy Manual[] is found to be in conflict with any federal or state law, . . . it shall be deemed non-enforcable only in those specific situations and/or locations." (Exhibit 1, p. 7450.1). Failing to fully compensate ramp agents for all working hours, failing to pay minimum wages and failing to pay overtime as required is a direct violation of California statutes and the San Francisco ordinances.

### SKYWEST AIRLINES INTENTIONALLY OBFUSCATES WAGE COMPENSATION

27.    SkyWest's wage statements, as provided to every ramp agent, are insufficient in that they: 1) do not include the total actual working hours during the pay period but instead only include hours that is approved by supervisors *after the work has already been performed*, 2) do not include applicable overtime pay for all hours over 40 performed during the pay period; and 3) the ramp agents' actual hourly wages cannot be promptly and easily determined from SkyWest's wage statements alone due the supervisors' frequent failure to approve working time that has already been completed.

28.    SkyWest ramp agents must rely on separately stored daily scheduling information, definitions, supervisor approval records, and wage statements in order to determine whether the company is in compliance with applicable wage laws.

29.    Analyzed as a whole, SkyWest's scheduling records (DayForce) and payroll records speak for themselves. They require no CBA interpretation to ascertain that the all SkyWest ramp agents are intentionally systematically uncompensated and undercompensated for hours of wage pay every day and week they work.

///

///

///

8

CLASS ACTION COMPLAINT

**PLAINTIFF-SPECIFIC FACTS**

Plaintiff Cody Meek

30.     Plaintiff Cody Meek began working for SkyWest Airlines as a ramp agent April 30, 2013. He was based in San Francisco, California (SFO) and worked for SkyWest until June 16, 2015.

31.     At all times during his employment with SkyWest Airlines, Mr. Meek was a citizen, resident of, and taxpayer in the State of California.

32.     Mr. Meek's hourly pay rate when he was hired in April 2013 was $12.35 per hour. His hourly pay rate upon leaving SkyWest in June 2015 was $12.50 per hour.

33.     As detailed further below, Mr. Meek, who was a "covered employee" under the Quality Standards Program", was paid wages consistently below the minimum required for covered airport employees. "Covered employees" are defined as those who:

(1) require the issuance of an Airport badge with Airfield Operations Area ("AOA") access and work in and around the AOA in the performance of their duties; or (2) are directly involved in passenger and facility security and/or safety, including but not limited to checkpoint screening, passenger check-in, skycap and baggage check-in and handling services, custodial services, and AOA perimeter control (collectively, "Covered Employees") as further specified [by the Quality Standards Program]."
http://media.flysfo.com/media/Quality-Standards-Program-2016.pdf

34.     Beginning January 1, 2013, the Minimum Compensation Ordinance ("MCO")[2] rate was $12.43 per hour, with the San Francisco International Airport Quality Standards Program ("QSP") requiring pay rates at $0.50 above the MCO.[3]

35.     Mr. Meek, like all other ramp agents, was paid and received wage increases based upon total hours worked according to SkyWest's general pay scales. See Exhibit 1, page 7455.1 to 7455.2.

---

[2] http://sfgov.org/olse/mco-historical-rates (last viewed February 16, 2017).

[3] "A. Compensation. The QSP rate shall increase such that it remains at all times $0.50 above the current San Francisco Minimum Compensation Ordinance ("MCO") rate. The Airport Director will provide an annual notice of the updated QSP minimum wage rate. Covered Employers shall post the notice in a breakroom or other area easily accessed by their employees." http://media.flysfo.com/media/Quality-Standards-Program-2016.pdf (last viewed February 16, 2017).

CLASS ACTION COMPLAINT

36.     In 2013, the MCO required a pay rate of $12.43 per hour. Airport employees who are provided health insurance must be paid an additional $0.50 per hour under the QSP wage rules for employees, Mr. Meek should have received no less than $12.93 per hour in 2013. The applicable rate of pay he should have received in 2014 was $13.16 per hour (MCO plus QSP). And the applicable rate of pay he should have received in 2015 was no less than $13.52 per hour (MCO plus QSP). Mr. Meek's regular wage rate was never more than $12.50 per hour.

37.     At all times during his employment with SkyWest, Mr. Meeks was employed at the San Francisco International Airport, with all of his work actually performed at the airport facility.

38.     At all times during his employment with SkyWest Airlines, Mr. Meek was required to have an airport badge with Airfield Operations Area ("AOA") access and worked in the AOA in the performance of his duties as a ramp agent.

39.     At all times while employed by SkyWest Airlines, Mr. Meek was directly engaged in activities that had an impact on safety within the Airfield Operations Area.

40.     Like all SkyWest ramp agents, Mr. Meek was required to "swipe-in" and "swipe-out" of the timeclock as he came and went from the workplace.  Like all ramp agents, his timeclock records are preserved to the minute in the DayForce system. These times include: actual check-in times for the day, start and stop times for lunch and rest breaks, and check-out times. In addition, the DayForce system records whether the shift was scheduled or traded.

41.     Mr. Meek frequently worked time which was wholly uncompensated including checking in early (to avoid being even a minute late), "unapproved" missed meal and rest breaks that he was unable to take due incoming or outgoing flights, and being short-staffed when his work day was over so that he was not able to leave exactly when he was scheduled to be released from work.

42.     Mr. Meek frequently worked in excess of forty hours per week without being compensated for all of his working hours and overtime, including working "double shifts," missed

(and unpaid) meal and rest breaks due to incoming or outgoing flight needs, and additional work required due to staffing shortages.

43.    Mr. Meek was generally scheduled to work from 1:30 p.m. to 10:45 p.m. with a thirty minute lunch break, meaning that his actual working time was 8.75 hours. He was only paid overtime after completing 8.75 hours of work rather than after 8 hours as required by California's wages laws.

44.    If Mr. Meek worked all of his own schedule, then worked all or part of another person's schedule (i.e. working a "double shift"), he was not paid overtime regardless of the number of hours he worked in the day or week.  One example was when he worked his regular shift from 1:45 p.m. to 10:45 p.m. He was then "held over" and worked until 5:45 a.m. The next day, he worked from 6:00 a.m. to 3:30 p.m. covering another ramp agent's schedule. Although he worked nearly 27 hours straight with a total of a one hour lunch break, both his initial shift and the time from 6:00 a.m. to 3:30 p.m. was paid at his regular rate of pay. The additional hours worked did not count toward his week's overtime hours.

45.    Like all SkyWest ramp agents, Mr. Meek was required to review and authorize that all of his time records were correct and accurate in DayForce. Any early check-in, lunch break not taken, late clock-out or additional time not originally scheduled was marked with an exclamation point which required a written explanation to his supervisor. As was common with other employees, Mr. Meek's additional working time was often not approved by the supervisor for wages, meaning that the time Mr. Meek had *already worked* was uncompensated and was not included when determining overtime hours. Minute by minute summaries of each days' work are maintained in the DayForce system.

46.    While he was a ramp agent with SkyWest, Mr. Meek worked extremely long days, worked before and after his actual schedule as required to make sure flights were properly staffed, yet many working hours of each week were uncompensated or undercompensated, and all of his

time was compensated at a rate below the wages required for workers at the San Francisco International Airport under the Minimum Compensation Ordinance ("MCO") and San Francisco International Airport Quality Standards Program ("QSP").

## CLASS ACTION ALLEGATIONS

47.     Plaintiff Cody Meek brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following California Ramp Agent Class:

> All persons who were formerly or are currently employed as ramp agents for SkyWest Airlines based in California during the applicable statute of limitations period(s) prior to the filing of the complaint and who were unpaid and/or underpaid for their work time.

These California Class claims are brought under the State of California Wage Order No. 9; Cal. Labor Code §§ 1182.12, 1194, and 1197; Cal. Labor Code §§ 201-204; Cal. Labor Code § 226 and Cal. Labor Code § 511 (alternative workweek). In addition, the Plaintiff brings this case pursuant to California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200 *et seq.*

48.     Plaintiff Cody Meek brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following California Former Ramp Agent Sub-Class:

> All persons who were formerly employed as ramp agents for SkyWest Airlines based in California during the applicable statute of limitations period(s) prior to the filing of the complaint and who resigned or were terminated without being fully paid for their work time.

These California Former Ramp Agent Sub-Class claims are brought under Cal. Labor Code §§ 201-204.

49.     Plaintiff Cody Meek brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following San Francisco Ramp Agent Sub-Class pursuant to the San Francisco Minimum Compensation Ordinance, San Francisco Admin. Code § 12P:

All persons who were formerly or are currently employed as ramp agents for SkyWest Airlines based in San Francisco during the applicable statute of limitations period prior to the filing of the complaint and who were unpaid or underpaid for their work time based upon the wages required by the Minimum Compensation Ordinance and the Quality Standards Program at San Francisco Airport.

50.    Excluded from the Class are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, Defendants' employees other than SkyWest Ramp Agents, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of these persons; the Judge assigned to this action, any member of the Judge's immediate family; and counsel for the Plaintiffs.

51.    Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23, in that: (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to each Class member; (c) the claims or defenses of each Class member is typical of the claims or defenses of all Class members; (d) the representative party will fairly and adequately protect the interests of the Class.

52.    **Numerosity**.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains hundreds of similarly situated persons who are either currently or formerly employed by SkyWest as Ramp Agents. The precise number of Class Members is currently unknown to Plaintiff. The true number of Class Members is known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice. The members of the Class are so numerous that joinder of all members would be impracticable.

53.    **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a.  Whether the SkyWest failed to pay wage compensation for all working hours of the Class;

b.  Whether SkyWest improperly calculated the hourly pay of ramp agents by failing to pay wage compensation for all hours actually worked, whether or not approved after the work was completed by supervisory personnel;

c.  Whether SkyWest must pay wages to ramp agents for all working hours at no less than applicable minimum wage as established by state and local statutes;

d.  Whether SkyWest must pay ramp agents overtime wages for all overtime working hours at no less than applicable wage rates as established by state and local statutes;

e.  Whether SkyWest failed to timely pay former ramp agents unpaid and underpaid wages in violation of state wage laws;

f.  Whether SkyWest failed to provide its ramp agents with wage statements that accurately show all working hours, rate of compensation per overtime working hour, and all other information as required by state wage laws;

g.  Whether SkyWest engaged in the unlawful employment practices alleged herein;

h.  Whether SkyWest is liable to Plaintiff and members of the Class for damages for conduct actionable under U.S. federal and state and local laws;

i.  Whether SkyWest's wage policies and practices are in violation of California state wage and unfair competition laws;

j.  Whether SkyWest's wage policies and practices are in violation of San Francisco wage ordinances, the Minimum Compensation Ordinance and the San Francisco Airport's Quality Standards Program; and

k.  Whether Plaintiff and members of the Class have sustained damages as a result of SkyWest's conduct, and, if so, the appropriate measure of damages.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

54.   **Typicality**.  Plaintiff's claims are typical of the claims of the Class Members in that Plaintiff and each member of the Class have been injured by the same wrongful conduct of SkyWest.  Plaintiff's claims arise from the same practices and course of conduct that gave rise to the Class Members' claims and are based on the same legal theories.  Plaintiff, like all Class Members, has not been fully compensated SkyWest pursuant to state labor laws, and thus Plaintiff, like all Class Members, have been damaged by SkyWest's unlawful conduct. All SkyWest ramp agents, including Plaintiff and Class Members, are compensated under an identical compensation scheme.

55.   **Adequacy of Representation**.   Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

56.   **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members of the Class is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if members of the Class could afford such individualized litigation, the court system could not. Individualized claims brought by members of the Class would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**COUNT I**

**FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF CALIFORNIA LAW**
**(Cal. Wage Order No. 9; Cal. Labor Code §§ 1182.12, 1194, and 1194.2)**
**(On Behalf of Plaintiff Meek and the California Class)**

57.    Plaintiff Meek and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

58.    At all times relevant to this action, Plaintiff and California Class Members were employed by SkyWest within the meaning of the California Labor Code.

59.    From January 1, 2008 until June 30, 2014, the minimum wage in California was $8.00 an hour.

60.    Since July 1, 2014, the minimum wage in California has been $9.00 an hour.

61.    California Class Members employed by SkyWest were not exempt from the minimum wage requirements of California law.

62.    California law requires employers to pay at least the minimum wage for all hours worked. California law does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift.

63.    SkyWest's compensation scheme violates California's minimum wage requirements because it fails to pay Plaintiff and California Class Members for all hours worked, including pay from the time of check-in, pay for meal and rest times which were not actually able to be taken off, and pay beyond the scheduled working day if required by the airline's needs. *See Gonzalez v. Downtown LA Motors*, LP, 215 Cal. App. 4th 36, 51-53 (2013) (holding that employer's failure to pay auto mechanics for time between piece rate work violates California's minimum wage requirements).

64.    SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiff and Class members, in conscious disregard of Plaintiff's and California Class Members' rights to be paid for their labor.

65.     During the applicable statute of limitations, SkyWest has failed to pay Plaintiff and California Class Members no less than the applicable minimum wage for all hours worked, in violation of Cal. Labor Code § 1182.12 and relevant wage orders, including Wage Order #9.

66.     Pursuant to Cal. Labor Code § 1194, Plaintiff and California Class Members are entitled to recover their unpaid wages in an amount to be established at trial, plus prejudgment interest, costs and reasonable attorneys' fees. Further, Plaintiff and California Class Members are entitled to recover liquidated damages pursuant to Cal. Labor Code § 1194.2.

### COUNT II
### WAITING TIME PENALTIES
### Cal. Labor Code §§ 201, 202, 203 and 204
### (on behalf of Plaintiff Meek and the California Former Ramp Agent Sub-Class)

67.     Plaintiff and California Former frontline employee Sub-Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

68.     California Labor Code §§ 201 and 202 require that SkyWest pay employees who quit or were discharged all wages due within specified times. Labor Code § 204 requires employers to pay full wages when due. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

69.     California Plaintiff and Class Members are entitled to unpaid minimum wages, but to date have not received all such compensation. SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiff and California Class Members, in conscious disregard of Plaintiff's and Class Members' rights.

70.     As a consequence of SkyWest's willful conduct in not paying proper compensation for all hours worked, Plaintiff and Class Members who have left SkyWest's employ are entitled to

up to thirty days' wages under Labor Code § 203, together with interest thereon, as well as attorneys' fees and costs.

## COUNT II
## FAILURE TO PROVIDE ITEMIZED WAGE STATEMENTS
### (Cal. Labor Code § 226)
### (on behalf of Plaintiff Meek and the California Class)

71.     California Plaintiff Meek and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

72.     Pursuant to California Labor Code § 226, employers including SkyWest must provide their employees an accurate, written, itemized wage statement with each paycheck. The wage statement must show all applicable pay rates in effect during the pay period, and the corresponding number of hours which were worked at each hourly rate by the employee.

73.     By failing to accurately itemize the number of hours California Plaintiff and other Class Members work, SkyWest knowingly and intentionally failed to provide Plaintiff and Class Members with wage statements as required by the California Labor Code.

74.     Pursuant to California Labor Code § 226, Plaintiff and Class Members have suffered injury as a result of SkyWest's failure to provide accurate, written, itemized wage statements.

75.     SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring California Plaintiff and Class Members, in conscious disregard of Plaintiffs' and Class Members' rights.

76.     California Plaintiff and Class Members are entitled to all actual and statutory damages and penalties available for these violations under Labor Code § 226(e).

///

///

///

CLASS ACTION COMPLAINT

## COUNT IV
## CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200 et seq.
### (On Behalf of Plaintiff and the California Class)

77.     Plaintiff Meek and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

78.     The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., which prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or practices.

79.     The acts and practices of SkyWest described herein constitute unfair and unlawful business practices as defined by the UCL. SkyWest has engaged in unlawful activities including but not limited to: (a) failing to compensate Class Members at a wage rate at least equal to the applicable minimum wage for each hour worked; (b) failing to provide accurate, written, itemized wage statements; and (c) failing to pay all wages when due.

80.     SkyWest's activities also constitute unfair competition in violation of the UCL because SkyWest's practices violate, inter alia, California Labor Code §§ 201; 202; 204; 226; 510; 1182.12; and 1194, as well as the San Francisco Minimum Compensation Ordinance and the San Francisco Airport's Quality Standards Program. Each of these violations constitutes an independent and separate violation of the UCL.

81.     SkyWest's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition. SkyWest's practices described above are immoral, unethical, oppressive, unscrupulous, and injurious. SkyWest was unjustly enriched and achieved an unfair competitive advantage over legitimate business competitors at the expense of its employees and the public at large.

82.     The harm to Plaintiff and the California Class members in being denied their lawfully earned wages outweighs the utility, if any, of SkyWest's policies or practices and

19

therefore, SkyWest's actions as described herein constitute an unfair business practice or act within the meaning of the UCL.

83.     SkyWest's conduct as herein alleged has injured Plaintiff and California Class members by wrongfully denying them all of their earned wages, and therefore was substantially injurious to Plaintiff and Class Members. Plaintiff and Class Members have standing to bring this claim for injunctive relief, restitution, disgorgement, and other appropriate equitable relief pursuant to Bus. & Prof. Code § 17204.

84.     Pursuant to Business and Professions Code § 17200 et seq., Plaintiff and Class Members are entitled to restitution of the minimum wages and other unpaid wages alleged herein that were withheld and retained by SkyWest within the four years prior to this action's filing date, a permanent injunction requiring SkyWest to pay required wages, an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and other applicable law, and costs.

**COUNT V**
**FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF SAN FRANCISCO**
**MINIMUM COMPENSATION ORDINANCE**
**San Francisco Admin. Code § 12P**
**(On Behalf of Plaintiff and the San Francisco Subclass)**

85.     Plaintiff Meek and San Francisco Subclass Members allege and incorporate by reference the allegations in the preceding paragraphs.

86.     At all times relevant to this action, Plaintiff and San Francisco Subclass Members were employed by SkyWest within the meaning of San Francisco's Minimum Compensation Ordinance, were covered by the provisions of San Francisco's Minimum Compensation Ordinance, and were not exempt from the minimum wage requirements of that ordinance.

87.     SkyWest is a "covered employer" for the purpose of the San Francisco Minimum Compensation Ordinance and Quality Standards Program ("QSP"). Ramp agents including Plaintiff and the San Francisco Subclass are "personnel who are involved in performing services

CLASS ACTION COMPLAINT

1
2
which directly impact safety and/or security at the Airport" and are therefore "covered employees"
under the Quality Standards Program.

3
4
5
6
7
8
9
88.     Based upon the San Francisco Minimum Compensation Ordinance,[4] San
Francisco's minimum compensation was $12.43 per hour in 2013, and $12.66 per hour in 2014.
In January 1, 2015, San Francisco's minimum compensation was increased to $13.02 per hour. In
2016, San Francisco's minimum compensation increased to $13.34 per hour. The Quality
Standards Program (QSP) since 2009 has at all times required a pay rate of $0.50 above the current
San Francisco Minimum Compensation Ordinance ("MCO") rate.[5]

10
11
12
89.     San Francisco International Airport is part of the City and County of San Francisco,
and is covered by San Francisco's Minimum Compensation Ordinance and the Quality Standards
Program.

13
14
15
16
17
90.     Even if SkyWest had a bona fide Collective Bargaining Agreement (CBA) with its
ramp agents, which it does not, that CBA would take precedence over the QSP compensation
requirements so long as the "wage rate applicable to covered employees at least equal to the QSP
compensation rate."

18
19
20
21
91.     The San Francisco Minimum Compensation Ordinance requires employers to pay
at least the minimum compensation for all hours worked. It does not allow an employer to establish
compliance with minimum wage requirements by averaging rates earned by an employee over an
entire shift.

22
23
24
25
26
92.     SkyWest's compensation scheme violates San Francisco's minimum compensation
requirements because they fail to pay SFO Plaintiff and San Francisco Subclass Members for all
hours worked, fail to accurately record the work hours of all ramp agents, and pay ramp agents
less than the required wages under the ordinance provisions.

27
28
---
[4] http://sfgov.org/olse/mco-historical-rates (last viewed February 16, 2017).
[5] http://media.flysfo.com/media/Quality-Standards-Program-2016.pdf (last viewed February 16, 2017).

93.     SkyWest has committed the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiff and San Francisco Subclass Members, in conscious disregard of Plaintiff's and Class Members' rights to be compensated for their labor.

94.     During the applicable statute of limitations, SkyWest has failed to pay Plaintiff and San Francisco Subclass Members the applicable minimum compensation for all hours worked, in violation of San Francisco Admin. Code § 12P and the QSP.

95.     Plaintiff and San Francisco Subclass Members are entitled to recover their unpaid wages in an amount to be established at trial, plus prejudgment interest, and costs and attorneys' fees.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for the following relief against SkyWest as follows:

A.     An order enjoining SkyWest from retaliatory actions against the Plaintiff, against Class members who are members of the statewide Class and Subclasses;

B.     An order certifying the California Class under Fed. R. Civ. P. 23 as to the California Labor Code sections referenced herein, the California Wage Orders referenced herein and the California Unfair Competition Law;

C.     An order certifying the San Francisco Sub-Class under Fed. R. Civ. P. 23 as to San Francisco Minimum Compensation Ordinance and Quality Standards Program sections referenced herein;

D.     An order certifying Plaintiff as class representative; and appointing Plaintiff's counsel, Greg Coleman Law PC, as counsel for the state Class and Subclasses pled herein;

E.     An order determining that the conduct alleged herein is unlawful under the applicable state laws and local ordinances as alleged herein;

F.   An award of monetary damages, liquidated damages, penalties, restitution, including pre-judgment and post-judgment interest to Plaintiff and the Class in such amount as may be determined at trial;

G.   An order enjoining SkyWest from continuing the unlawful practices alleged herein;

H.   An award to Plaintiff and the Class for reasonable attorneys' fees and costs, including but not limited to reimbursement of all costs related to the prosecution of this action; and

I.   An award to Plaintiff and the Class of any such other and further relief as may be just and proper.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

CLASS ACTION COMPLAINT

1

## JURY DEMAND

2   Plaintiff demands a trial by jury.

3       Respectfully submitted on this the 27th day of February, 2017.

4   DATED:  February 27, 2017              Respectfully submitted,

5

6                                         Crystal Foley (SBN 224627)

7                                         cfoley@simmonsfirm.com
                                          **Simmons Hanly Conroy LLC**
8                                         100 N. Sepulveda Blvd., Suite 1350
                                          Los Angeles, CA 90245
9                                         Phone: (310) 322-3555
                                          Facsimile:  (310) 322-3655
10

11                                        Paul J. Hanly, Jr.
                                          (*pro hac vice* to be submitted)
12                                        Mitchell M. Breit
                                          (*pro hac vice* to be submitted)
13                                        **SIMMONS HANLY CONROY LLC**
                                          112 Madison Avenue
14                                        New York, New York 10016-7416
                                          Telephone:  (212) 784-6400
15                                        Facsimile:  (212) 213-5949
                                          phanly@simmonsfirm.com
16                                        mbreit@simmonsfirm.com

17

18                                        Gregory F. Coleman
                                          (*pro hac vice* to be submitted)
19                                        Mark E. Silvey
                                          (*pro hac vice* to be submitted)
20                                        Adam A. Edwards
                                          (*pro hac vice* to be submitted)
21                                        Lisa A. White
                                          (*pro hac vice* to be submitted)
22                                        **GREG COLEMAN LAW PC**
                                          First Tennessee Plaza
23                                        800 S. Gay Street, Suite 1100
24                                        Knoxville, TN 37929
                                          Telephone:  (865) 247-0080
25                                        Facsimile:  (865) 533-0049
                                          greg@gregcolemanlaw.com
26                                        mark@gregcolemanlaw.com
                                          adam@gregcolemanlaw.com
27                                        lisa@gregcolemanlaw.com

28

CLASS ACTION COMPLAINT

# EXHIBIT 1



# Customer Service Policy Manual

**REVISION  Original**
**26  AUG  14**

**INTENTIONALLY LEFT BLANK**

# Record of Revisions

| Revision Number | Revision Date | Effective Date |
|:---:|:---:|:---:|
| Original | 26 AUG 14 | 26 AUG 14 |

**INTENTIONALLY LEFT BLANK**

# List of Effective Standard Practices

*Record of Revisions*

| Section | Rev # | Rev Date | Pages |
|---|---|---|---|
| ROR | Original | 26 AUG 14 | 1-2 |

*List of Effective Standard Practices*

| Section | Rev # | Rev Date | Pages |
|---|---|---|---|
| LESP | Original | 26 AUG 14 | 1-2 |

*Table of Contents*

| Section | Rev # | Rev Date | Pages |
|---|---|---|---|
| TOC | Original | 26 AUG 14 | 1-2 |

| Standard Practice | Rev # | Rev Date | Pages |
|---|---|---|---|
| SP 7450 | Original | 26 AUG 14 | 1-2 |
| SP 7451 | Original | 26 AUG 14 | 1-2 |
| SP 7452 | Original | 26 AUG 14 | 1-6 |
| SP 7453 | Original | 26 AUG 14 | 1-4 |
| SP 7455 | Original | 26 AUG 14 | 1-4 |
| SP 7456 | Original | 26 AUG 14 | 1-2 |
| SP 7457 | Original | 26 AUG 14 | 1-2 |
| SP 7458 | Original | 26 AUG 14 | 1-10 |
| SP 7461 | Original | 26 AUG 14 | 1-8 |
| SP 7462 | Original | 26 AUG 14 | 1-4 |
| SP 7470 | Original | 26 AUG 14 | 1-4 |
| SP 7471 | Original | 26 AUG 14 | 1-4 |
| SP 7472 | Original | 26 AUG 14 | 1-4 |

**INTENTIONALLY LEFT BLANK**

# Table of Contents

Record of Revisions ........................................................................... ROR−1

List of Effective Standard Practices ................................................ LESP−1

Table of Contents ............................................................................ TOC−1

Letter of Agreement ......................................................................... 7450.1

Operation of Business ...................................................................... 7451.1

Definitions and Acronyms ................................................................ 7452.1

Employee Responsibilities .............................................................. 7453.1

Employee Pay Scales ....................................................................... 7455.1

Housing Allowance ........................................................................... 7456.1

Seasonal Program ............................................................................ 7457.1

Scheduling ........................................................................................ 7458.1

Attendance ........................................................................................ 7461.1

Requested Time Off .......................................................................... 7462.1

Personal Appearance and Uniforms ................................................ 7470.1

Training ............................................................................................. 7471.1

Stepped Corrective Action ............................................................... 7472.1

**INTENTIONALLY LEFT BLANK**



**SkyWest** LETTER OF AGREEMENT
STANDARD PRACTICE 7450

## 1.  Customer Service Policy Manual Letter of Agreement Terms

A.  The Customer Service Policy Manual (CSPM) is a binding agreement between SkyWest Airlines and the SkyWest Airlines Frontline Association (SAFA) governing the pay and work rules of its Frontline employees. The CSPM will remain in force indefinitely and may be amended from time to time by joint agreement of the SAFA representative group and the Vice President Customer Service. SkyWest Airlines recognizes SAFA as the only collective bargaining unit of SkyWest Airlines' Customer Service department.

B.  Frontline employees are defined as those employed in SkyWest's Customer Service Department in non-management positions, as specified in SP 7452 Definitions and Acronyms. The award of a pay override does not necessarily constitute acceptance of a management role.

C.  The parties agree that in following the terms of the CSPM, SkyWest's Guiding Principles will be delivered to and by all covered employees. The Guiding Principles are Fairness and Consistency, Excellent Service and Quality, Respect and Teamwork, Health and Safety First, Personal and Operational Reliability, Personal and Corporate Integrity, and Superior Profitability and Efficient Use of Resources.

D.  Company policies are separate from, and shall not automatically be integrated into the CSPM. In any situation where the CSPM and Company policies are found to be in conflict, the CSPM will have prevailing control. If an element of the CSPM is found to be in conflict with any federal or state law, or with our flying partner's appearance and uniform policies, it shall be deemed non-enforceable only in those specific situations and/or locations.

E.  Individual stations may not alter, restrict, or redefine any part of the CSPM without the agreement of the Vice President Customer Service and SAFA.

F.  The CSPM will be reviewed together by the Vice President Customer Service and SAFA no less than once per year.

_Michael T Thompson_                                   7 - 9 - 14

Michael Thompson                                        Date
Chief Operating Officer


_James K Boyd_                                          7 - 9 - 14

James K. Boyd                                           Date
Vice President, Customer Service


_David B Tate_                                          7-9-14

David B. Tate                                           Date
President, SAFA Representative Board



**INTENTIONALLY LEFT BLANK**

**SkyWest** AIRLINES®

**OPERATION OF BUSINESS
STANDARD PRACTICE 7451**

Page:       7451.1
Revision:   Original
Date:       26 AUG 14

**Paragraph**                                                                                              **Page**
1.  Overview ...................................................................................................... 7451.1

## 1.   Overview

A.  Except as restricted by this agreement, SkyWest Airlines has the exclusive right to manage, operate, and maintain the efficiency of its ground-handling business and workforce.  This includes:

1)  The right to hire, promote and demote, discipline, suspend, and discharge any employee for just cause;

2)  Maintaining efficiency and discipline in the Company's facilities;

3)  Requiring that employees wear only approved uniforms and to make changes to uniform items from time to time, in view of the needs and expectations of our contracted partner airlines;

4)  Determining appropriate staffing levels and work schedules to obtain the greatest efficiency in ground handling;

5)  Determining the type and location of facilities, and equipment the department will utilize.

B.  The rights specified above shall not exclude other pre-existing rights of the Company, except as specifically provided in this agreement.



**INTENTIONALLY LEFT BLANK**

**SkyWest**
A I R L I N E S ®

**DEFINITIONS AND ACRONYMS**
**STANDARD PRACTICE 7452**

**Paragraph**                                                                                           **Page**
1.  Definitions ..................................................................................... 7452.1
2.  Acronyms ..................................................................................... 7452.6

# 1.    Definitions

**administrative leave**

a.  Refer to Company Policy Manual SP 73 Corrective Action.

---

**authorized time-off without pay**, acronym **ANP**

a.  An employee request for a scheduled shift adjustment off with no compensation.

---

**awarded bid**

a.  The full time, part-time, or seasonal bid that is awarded during a schedule bid. Once awarded, these shifts are the responsibility of the agent unless traded away or covered by the Company when paid time off has been requested and approved in the time frame outlined in SP 7462 Requested Time Off.

---

**Basic Station Training**, acronym **BST**

a.  The initial training an employee receives in the Customer Service Department.

---

**bid period**

a.  The time scheduled by the Company in which all station employees bid upon their work schedule for an outlined time period.

    (1)  Employees are notified of upcoming bids by My Messages. Employees are responsible to check their messages each work day.

    (2)  If an employee fails to submit a bid in Dayforce, they will be awarded a shift from the remaining lines when the bid is closed.

---

**counseling statement**

a.  Refer to Company Policy Manual SP 73 Corrective Action.

---

**cross-utilized agent**

a.  An employee, predominately at line stations, whose job responsibilities may include ramp duties, gate duties, ticket duties, cargo, assisting passengers with special needs, unaccompanied minors, deicing, and calling weather to flight crews.

---

**Customer Service Policy Manual**, acronym **CSPM**

a.  The document containing Standard Practices (SPs) 7450 through SP 7472, affecting only Customer Service Department employees.

---

**SkyWest**
A I R L I N E S ®

**DEFINITIONS AND ACRONYMS
STANDARD PRACTICE 7452**

Page:       7452.2
Revision:   Original
Date:       26 AUG 14

**date of hire**, acronym **DOH**

    a. The first day an employee is paid for their service/time with SkyWest Airlines.

**Director Station Operations**

    a. The individual who oversees and has responsibility for all SkyWest ground-handled stations. Reports directly to the Vice President Customer Service.

**Family Medical Leave of Absence**, acronym **FMLA**

    a. Refer to Company Policy Manual SP 69 Leave of Absence (LOA).

**frontline employee**

    a. All non-management employees in SkyWest's Customer Service Department, including cross-utilized agents, gate agents, ramp agents, certified station trainers (in non-management roles), station clerks, and internal evaluation auditors.

**full-time**, acronym **FT**

    a. Customer Service employees who bid and work a schedule of at least 64 hours per pay period.

**furlough**

    a. Refer to Company Policy Manual SP 72 Reduction in Force (RIF).

**gate agent (above wing)**

    a. An employee responsible for boarding the aircraft, including pre-boarding and accommodating non-revenue passengers and those with special needs.

**good standing**

    a. An employee who has successfully completed their probationary period and has no active stepped corrective action beyond a letter of instruction.

**holiday pay**

    a. All hourly Customer Service employees working on a Company-recognized holiday are paid 1.5 times their normal hourly wage for all time worked. Those not working do not receive any paid compensation (other than PTO if they have requested that day off).

**Law Enforcement Officer**, acronym **LEO**

    a. Refer to Corporate Technical Publication Standards Manual SP 10 Chapter 04 Definitions and Acronyms.

Case 3:17-cv-01012-JD   Document 1   Filed 02/27/17   Page 40 of 89

Page: 7452.3
Revision: Original
Date: 26 AUG 14

DEFINITIONS AND ACRONYMS
STANDARD PRACTICE 7452

**letter of instruction**, acronym **LOI**

    a. Refer to Company Policy Manual SP 73 Corrective Action.

---

**letter of understanding**, acronym **LOU**

    a. A document written to provide clear guidelines following an infraction. The LOU may remain in effect for a specified time or the duration of employment with SkyWest.

    b. An LOU is not common and is only used to correct an extreme infraction while allowing the employee to maintain employment at SkyWest.

---

**National Mediation Board**, acronym **NMB**

    a. An independent agency of the United States government that coordinates labor-management relations within the U.S. railroad and airline industries.

---

**on-the-job injury**, acronym **OJI**

    a. Refer to Corporate Technical Publication Standards Manual SP 10 Chapter 04 Definitions and Acronyms.

---

**overtime**, acronym **OT**

    a. Refer to Company Policy Manual SP 63 Payroll.

---

**paid time off**, acronym **PTO**

    a. PTO is used when requesting time off from scheduled shifts.

---

**part-time**, acronym **PT, P/T**

    a. Customer Service employees who bid and work a schedule less than 64 hours per pay period.

---

**performance evaluation (annual evaluation)**

    a. An evaluation for performance accomplished through a meeting between an employee and their supervisor or manager, to reach a common understanding of individual performance in the previous year, as well as goals for the coming year.

    b. Areas of discussion and clarification include responsibilities and job requirements, expected level of performance, priorities and goals, along with any and all other outstanding issues.

---

**probationary period**

    a. Refer to Company Policy Manual SP 60 Probationary Period.

---

**SkyWest**
A I R L I N E S ®

**DEFINITIONS AND ACRONYMS
STANDARD PRACTICE 7452**

Page:       7452.4
Revision:   Original
Date:       26 AUG 14

**Railway Labor Act**, acronym **RLA**

    a. The Railway Labor Act is a United States federal law that governs labor relations in the railroad and airline industries. The Act, passed in 1926 and amended in 1934 and 1936, seeks to substitute bargaining, arbitration, and mediation for strikes as a means of resolving labor disputes. Its provisions were originally enforced under the Board of Mediation but is currently applied by a National Mediation Board.

**ramp agent (below wing)**

    a. An employee responsible for loading/unloading aircraft baggage, cargo, and pets. Ramp agents may be required to wing walk, push back aircraft, deice, and clear FOD on the ramp and AOA.

**record of discussion**, acronym **ROD**

    a. Refer to Company Policy Manual SP 73 Corrective Action.

**SkyWest Airlines Frontline Association**, acronym **SAFA**

    a. The labor representative body for the non-management employees within SkyWest Airlines' Customer Service Department. SAFA negotiates on behalf of employees for work rules, pay, and uniforms.

**SkyWest Employee Council**, acronym **SEC**

    a. The SEC President and one other from each of the five different departments within SkyWest Airlines that represents their department in health care coverage, non-profit employee benefits, and Company work rules. The departments in the SEC consist of Flight Operations, InFlight, Maintenance, Dispatch, and Customer Service.

**SkyWest Online**, acronym **SWOL**

    a. The Company intranet website.

**temporary duty**, acronym **TDY**

    a. A work assignment away from an employee's home station.

**termination**

    a. Refer to Company Policy Manual SP 73 Corrective Action.

**ticket agent (above wing)**

    a. An employee responsible for passenger ticketing, who is the first point of contact with the passenger. May be responsible for booking travel, checking bags, collecting applicable fees, verifying passport information, and assisting LEOs.

**DEFINITIONS AND ACRONYMS**
**STANDARD PRACTICE 7452**

7452.5
Page:
Revision:     Original
Date:     26 AUG 14

**unaccompanied minor**, acronym **UMNR**

    a.  A revenue or non-revenue passenger under the specific ages our mainline partners have laid out for their business model traveling without supervision to their destination. The airline assumes responsibility for the safety and care of all UMNR passengers.

---

**work week**

    a.  Pay weeks and work weeks have the same schedule which begins at 12:00 a.m. Friday and continues through 11:59 p.m. the following Thursday, as described in Company Policy Manual SP 63 Payroll.

---



## 2.   Acronyms

ANP - authorized time-off without pay
BST - Basic Station Training
CSPM - Customer Service Policy Manual
DOH - date of hire
FMLA - Family Medical Leave of Absence
FT - full-time
LEO - Law Enforcement Officer
LOI - letter of instruction
LOU - letter of understanding
NMB - National Mediation Board
OJI - on-the-job injury
OT - overtime
P/T - part-time
PT - part-time
PTO - paid time off
RLA - Railway Labor Act
ROD - record of discussion
SAFA - SkyWest Airlines Frontline Association
SEC - SkyWest Employee Council
SWOL - SkyWest Online
TDY - temporary duty
UMNR - unaccompanied minor

**SkyWest** AIRLINES®

**EMPLOYEE RESPONSIBILITIES
STANDARD PRACTICE 7453**

| Paragraph | Page |
|---|---|
| 1. Safety | 7453.1 |
| 2. Security | 7453.1 |
| 3. Customer Service | 7453.1 |
| 4. Professional Conduct | 7453.2 |
| 5. Fraud and Misrepresentation | 7453.2 |
| 6. Driver's License Fraud and Misrepresentation | 7453.3 |
| 7. Loss of Revenue | 7453.4 |
| 8. Insubordinate Behavior | 7453.4 |

## 1. Safety

A. It is the every employee's responsibility to report every accident, injury, or illness of themselves, customers, or Company resources immediately to station management.

B. All safety violations subject employees to stepped corrective action, up to and including termination of employment.

C. Accelerated corrective action steps, including termination without prior warning or notice, may be implemented based upon the severity and/or gross negligence of the safety violation.

D. Any unreported accident, regardless of the nature (e.g., aircraft, equipment, the person involved, on-the-job injury, passenger), may result in immediate termination of employment.

E. Safety violations as a result of procedural negligence (e.g., overweight aircraft) are investigated by management. Corrective action, up to and including termination, is applied based on the employee's previous history and the severity of negligence.

## 2. Security

A. Every employee is responsible to properly apply security procedures as outlined in the Security Manual SP 7200 and current TSA Security Directives. All employees are expected to be familiar with these documents and follow their precepts. In addition, these security processes must always be followed:

1) Employees must know and follow local security requirements.

2) SIDA badges are to be worn above the waist and visible at all times while on duty.

3) Protect SkyWest aircraft from unauthorized entry at all times.

4) Ensure the SkyWest SIDA area is kept free of unauthorized personnel.

5) Challenge anyone not displaying a SIDA badge in the SkyWest AOA.

## 3. Customer Service

A. Employees of the Customer Service Department are expected to maintain a high standard of excellence and productivity to themselves, coworkers, and customers. General expectations include:

1) Excellent service with attention to detail.

2)   Showing empathy to customers.

3)   Proper handling of passengers and/or baggage.

4)   Proper handling of shipments.

5)   Minimizing job-related errors.

6)   The knowledge and ability to use station equipment correctly.

7)   The ability to perform basic operational tasks.

8)   Positive teamwork and peer relations.

B.   Managers conduct annual performance evaluations to assess agent progress in meeting their responsibilities and to identify and document training needs.

C.   Employees who are not proficient will be provided with the opportunity to reach the required level of proficiency outlined by the General Manager Station or their supervisor.  Managers must assist employees in obtaining any additional training required, advise employees exactly what deficiency is to be addressed, and ensure employees receive every opportunity to attain proficiency.  Where proficiency is not satisfactorily met, further evaluation is based on job performance which could result in stepped corrective action, up to and including termination.

D.   When an employee falls below these standards, stepped corrective action, up to and including termination of employment, may apply.

## 4.   Professional Conduct

A.   Customer Service employees act as professional representatives of SkyWest Airlines and its mainline partners.  The following conduct is considered unprofessional and subject to stepped corrective action:

1)   The presence of food, drink, chewing gum, or chewing tobacco in an unapproved work area.

2)   Smoking (tobacco or electronic), sleeping, or reading newspapers, books, or magazines in an unapproved work area.

3)   Use of personal cellular telephones and electronic devices in an unapproved work area.

4)   Inappropriate language and/or gestures to or in the presence of customers or coworkers.  Examples include profanity, cursing, vulgar, offensive, or explicit language, and slurs referring to ethnicity or sexual orientation.

5)   Unprofessional behavior towards customers or coworkers.

## 5.   Fraud and Misrepresentation

A.   This provision covers fraud, misrepresentation, and similar behavior as outlined in Company Policy Manual SP 54 Hiring.  Additional information specific to the Customer Service Department is provided below.

B.   Any employee found to have committed or participated in defrauding or misrepresenting SkyWest Airlines or its mainline partners is subject to stepped corrective action, up to and including termination and prosecution. These acts include but are not limited to:

**SkyWest** A I R L I N E S ®

**EMPLOYEE RESPONSIBILITIES**
**STANDARD PRACTICE 7453**

Page:        7453.3
Revision:    Original
Date:        26 AUG 14

1)   Booking fictitious seats.

2)   Creating unauthorized fares.

3)   Fraudulent issuance and use of tickets or travel credits.

4)   Unauthorized use of another employee's sine.

5)   Theft of Company, employee, or passenger property.

6)   Unauthorized blocking of seats.

7)   Intentionally clearing non-revenue passengers not based on seniority.

8)   Undocumented upgrades (e.g., assigning a seat without documenting the PNR).

9)   Unauthorized waiving of fees.

10)  Clocking in or out for another employee.

11)  Signing, initialing, or otherwise entering another employee's information on any SkyWest documentation.

12)  Use of travel privileges when calling off work.

13)  Employees using their personal credit/debit card accounts to pay for passenger tickets, baggage fees, or any other fees.

## 6.   Driver's License Fraud and Misrepresentation

A.   This provision covers fraud, misrepresentation, and similar behavior as outlined in Company Policy Manual SP 56 Employment Standards and Eligibility and SP 157 Company Property. Additional information specific to Customer Service is provided below.

B.   Employees whose job description/assignment requires driving a motorized vehicle on airport properties are required to maintain and have in their possession at all times a valid state driver's license when driving on airport grounds.

C.   If at any time during their employment an employee receives a suspension or revocation of their driver's license, they are required to report that suspension/revocation to the General Manager Station (GM) immediately. The GM will then notify Employee Relations as soon as possible. Failure to disclose the suspension/revocation of a driver's license will result in corrective action, up to and including termination, even if the license has since been restored.

1)   From the date an employee's license is suspended or revoked, the employee is placed on unpaid administrative leave for a period not to exceed 30 calendar days.

> **NOTE -** While on administrative leave, the employee may, at their discretion, apply PTO hours to compensate for lack of income during this period.

a)   During administrative leave, the employee may petition and obtain written permission from the court allowing them to drive at work.

(1)  A copy of the permit issued by the court must be provided to the respective GM.

**SkyWest**
A I R L I N E S ®

**EMPLOYEE RESPONSIBILITIES**
**STANDARD PRACTICE 7453**

Page:        7453.4
Revision:    Original
Date:        26 AUG 14

  b) The employee may apply for another position in the Company for which they meet the minimum qualifications and can perform the essential job functions without reasonable accommodation.

 2) Failure to obtain a work driving permit or another position with the Company within a 30-day period will result in termination of employment.

D. When an employee receives a second suspension or revocation of their driver's license, Customer Service management, in conjunction with the People Department, will review the employee's standing with the Company.

 1) When the employee has a current, active counseling statement, employment is terminated.

 2) When the employee is in good standing with the Company, the employee continues employment under the same criteria as the first offense.

 3) When an employee receives a third suspension or revocation of their driver's license while in a position that requires a valid license, the employee is subject to termination.

# 7. Loss of Revenue

A. Unintentional ticket loss, baggage, or air freight/cargo transactions which costs the Company money may result in accelerated corrective action, up to and including termination of employment, to ensure the error is not repeated.

# 8. Insubordinate Behavior

A. Refusal or deliberate failure to carry out a work assignment that is not illegal, against policy, or does not pose a safety concern is considered insubordinate behavior and is subject to stepped corrective action.

B. Employees must sign all applicable corrective action forms acknowledging they have received corrective action. Refusing to sign a corrective action form is considered insubordinate behavior.

C. When in doubt with regard to a work assignment, employees should complete the assignment and then address the issue through their chain of resources or chain of command.

**SkyWest**
A I R L I N E S ®

**EMPLOYEE PAY SCALES**
**STANDARD PRACTICE 7455**

| Paragraph | Page |
|---|---|
| 1. Purpose | 7455.1 |
| 2. General Pay Scales | 7455.1 |
| 3. Pay Categories | 7455.2 |
| 4. Step Level Increases | 7455.2 |
| 5. Overrides | 7455.2 |
| 6. Procedural Guidelines | 7455.2 |
| 7. Transfers | 7455.3 |
| 8. New Ground Handling | 7455.4 |

## 1. Purpose

A. To provide the Customer Service Department pay scale information and general guidelines.

## 2. General Pay Scales

A. Listed below are the current Customer Service pay scales.

| EFF. 1/1/2014 | SFO | LAX | SLC & DEN | CAT A | CAT B | CAT C | CAT D | CAT E | CAT NW 1 | CAT NW 2 |
|---|---|---|---|---|---|---|---|---|---|---|
| START | $12.35 | $11.00 | $10.00 | $12.00 | $10.25 | $9.50 | $9.00 | $8.50 | $9.32 | $9.10 |
| STEP 2 | $12.50 | $11.40 | $10.40 | $12.40 | $10.65 | $9.90 | $9.40 | $8.90 | $9.60 | $9.35 |
| STEP 3 | $12.65 | $11.55 | $10.80 | $12.80 | $11.05 | $10.30 | $9.80 | $9.30 | $9.90 | $9.65 |
| STEP 4 | $12.80 | $11.70 | $11.10 | $13.20 | $11.45 | $10.70 | $10.20 | $9.70 | $10.20 | $9.90 |
| STEP 5 | $12.95 | $12.00 | $11.40 | $13.45 | $11.85 | $11.10 | $10.60 | $10.10 | $10.60 | $10.15 |
| STEP 6 | $13.10 | $12.30 | $11.70 | $13.70 | $12.25 | $11.50 | $11.00 | $10.50 | $11.10 | $10.50 |
| STEP 7 | $13.25 | $12.65 | $12.00 | $13.95 | $12.65 | $11.90 | $11.40 | $10.90 | $11.40 | $10.90 |
| STEP 8 | $13.55 | $13.05 | $12.30 | $14.20 | $13.05 | $12.30 | $11.80 | $11.30 | $11.80 | $11.30 |
| STEP 9 | $13.85 | $13.35 | $12.60 | $14.45 | $13.35 | $12.60 | $12.10 | $11.60 | $12.10 | $11.60 |
| STEP 10 | $14.15 | $13.65 | $12.90 | $14.70 | $13.65 | $12.90 | $12.40 | $11.90 | $12.40 | $11.90 |
| STEP 11 | $14.50 | $14.00 | $13.25 | $15.00 | $14.00 | $13.25 | $12.75 | $12.25 | $12.75 | $12.25 |
| STEP 12 | $14.85 | $14.35 | $13.60 | $15.00 | $14.35 | $13.60 | $13.10 | $12.60 | $13.10 | $12.60 |
| STEP 13 | $15.35 | $14.75 | $14.00 | $15.00 | $14.75 | $14.00 | $13.50 | $13.00 | $13.50 | $13.00 |



## 3.   Pay Categories

A.   Pay categories are based upon overall employment conditions at each city:

| Category A: | ASE, EGE, JAC |
|---|---|
| Category B: | CLD, HDN, IAH, LGB, MSP, ORD, PHX, SUN |
| Category C: | MKE, RNO, SBP |
| Category D: | ACV, BZN, CEC, CIC, COS, CPR, DRO, DVL, FCA, GCC, GJT, GUC, HIB, IDA, JMS, MTJ, RDD, SGU, SMX, TWF |
| Category E: | AVL, BTM, CDC, CMX, CNY, COD, EAU, EKO, ELM, FOE, GTF, HLN, HRL, HYS, LAR, LWS, MKG, PAH, PIH, PUB, RKS, STC, VEL, WYS, YUM |
| Category NW-1: | PSC |
| Category NW-2: | OTH |

## 4.   Step Level Increases

A.   To achieve a step level pay increase, employees must accumulate 1,900 hours worked following their most recent increase.

B.   All hours worked (regular, overtime, trades) count toward reaching the next step.

C.   When an employee reaches 1,900 hours, they are awarded an increase to the next step, reset to 0 hours, and begin accumulating hours toward the next step.

D.   In the event an employee has worked two calendar years since their last increase without accumulating 1,900 hours, they will receive a step level increase, reset to 0 hours, and begin accumulating hours toward the next step.

## 5.   Overrides

A.   SST agents earn the following overrides at all applicable stations:

| Start | $1.75 |
|---|---|
| 2 years | $2.00 |
| 5 years | $2.25 |

B.   SAFA representatives receive a $1.50/hour override.

C.   Non-supervisor Certified Station Trainers (CSTs) receive a $.50/hour override only when attending a CST Conference or when they are actively training employees.

## 6.   Procedural Guidelines

A.   Categories are based upon overall employment conditions at each city.

**SkyWest AIRLINES®**

**EMPLOYEE PAY SCALES
STANDARD PRACTICE 7455**

B.  Pay changes are effective at the beginning of the nearest pay period.

C.  All employees begin a six-month performance probation starting on their hire date.

D.  Employees are evaluated continuously for the first 180 days (probation period). Evaluations by a manager/supervisor are subsequently conducted on a yearly basis from the date of hire.

E.  Wage increases, based on total hours paid, are awarded until the employee reaches the maximum wage for their city category.

F.  Former Customer Service Employees Rehired Within Twelve Months

1)  Customer Service employees who have been with the Company for two years, and leave in good standing, are awarded their most recent step level if they return to the Company in the Customer Service Department within a twelve month time frame.  They will undergo the same hiring process as a new employee, including an open position at the station they are applying for, interview process, background check, etc. The employee does not retain any bidding or vacation seniority.  Leave of absence time does not count as part of the two years of service.  This rehire provision is allowed ONLY ONCE for the employee.

a)  Those returning within one year will retain the step level they were earning at the time they resigned, but not hours worked toward the next step at the time of their resignation.

b)  Overrides are not included in this provision.

2)  ***Example of pay upon rehire***: An employee returning within one year of their resignation, who was previously paid at Step 3 will be awarded that step and will need to be paid 1,900 hours after return to reach Step 4. The same employee returning after one year would begin at the starting step and need to be paid 1,900 hours after returning to reach Step 2.

## 7.  Transfers

A.  SkyWest employees transferring from another area of the Company to the Customer Service Department will have their wages adjusted to the step level of the appropriate city category corresponding to their years of service with the Company.

***Example***: A flight attendant with four years of Company service with InFlight transfers to Customer Service in Bozeman.  They are paid at Step 5 of Category D with 0 hours earned toward the next increase.

B.  Employees transferring to SkyWest Customer Service from an affiliate airline owned by SkyWest, Inc. should refer to Company Policy Manual SP 54 Hiring under Sister Company Hiring.

C.  Customer Service employees transferring to another department and then returning to Customer Service are given step credit for years of Company seniority and begin with zero hours toward the next step.

**SkyWest**
A I R L I N E S ®

**EMPLOYEE PAY SCALES**
**STANDARD PRACTICE 7455**

Page:        7455.4
Revision:   Original
Date:       26 AUG 14

## 8.   New Ground Handling

A.   When SkyWest acquires ground-handling work at new stations, all employees hired from outside of SkyWest begin at Step 1 of the pay category for that station.  There is no step credit awarded for experience outside of SkyWest.

B.   Employees transferring from another city or returning to work from an active furlough will retain their step level and hours worked toward the next step and be adjusted to the pay category for that city.

> **NOTE -** In recognition of the frequently changing nature of awarding ground-handling work, this provision may be modified on a case-by-case basis by a joint agreement between SAFA and Customer Service Department management.

**SkyWest**
A I R L I N E S ®

**HOUSING ALLOWANCE**
**STANDARD PRACTICE 7456**

| Paragraph | Page |
|---|---|
| 1. Definition | 7456.1 |
| 2. Stations | 7456.1 |
| 3. Eligible Employees | 7456.1 |
| 4. Hourly Requirements | 7456.1 |
| 5. Amendments | 7456.1 |
| 6. Housing Allowance Accrual Rate Table | 7456.2 |

## 1.   Definition

A.   Employees at certain stations are afforded an additional allowance to offset housing costs due to local living costs being deemed excessive.

## 2.   Stations

A.   Stations currently approved for a housing allowance are:

1)   Aspen, CO (ASE)

2)   Hayden/Steamboat Springs, CO (HDN)

3)   Jackson, WY (JAC)

4)   West Yellowstone, WY (WYS)

## 3.   Eligible Employees

A.   All permanent employees will receive a payout for hours worked in every month, not to exceed $400 per month, as specified on the rate table below.

B.   All seasonal employees will receive a payout for hours worked in the months of December through March, not to exceed $400 per month, as specified on the rate table below.

> **EXCEPTION** - All WYS employees receive a fixed monthly housing allowance for each calendar month worked at that station.  Full-time employees receive $500, part-time employees receive $250.  This is due to the unique operating characteristics of the station.

## 4.   Hourly Requirements

A.   The allowance is capped at 154 hours worked per month.  Additional work in excess of 154 hours per month will not accrue any additional allowance.

B.   The allowance requires a minimum of 51 hours worked per month.

## 5.   Amendments

A.   The months of eligibility may be extended or reduced, and eligible stations and employees may be amended, depending upon operational need and by mutual agreement of the Vice President Customer Service (or their designee) and SAFA.



## 6.   Housing Allowance Accrual Rate Table

| Monthly Hours | Amount Paid |
|:---:|:---:|
| 154+ | $400.00 |
| 150 | $384.68 |
| 146 | $365.50 |
| 141 | $346.58 |
| 137 | $327.92 |
| 133 | $309.53 |
| 129 | $291.42 |
| 124 | $273.60 |
| 120 | $256.08 |
| 116 | $238.86 |
| 111 | $221.97 |
| 107 | $205.40 |
| 103 | $189.19 |
| 98 | $173.33 |
| 94 | $157.85 |
| 90 | $142.76 |
| 86 | $128.08 |
| 81 | $113.84 |
| 77 | $100.00 |
| 73 | $88.40 |
| 68 | $83.20 |
| 64 | $78.00 |
| 60 | $73.16 |
| 55 | $67.60 |
| 51 | $62.40 |

**SkyWest**
A I R L I N E S ®

**SEASONAL PROGRAM
STANDARD PRACTICE 7457**

Page:      7457.1
Revision:   Original
Date:      26 AUG 14

**Paragraph**                                                                      **Page**
1. **Definition** ......................................................................................... 7457.1
2. **Seasonal Furlough** ........................................................................... 7457.1
3. **Status Change** ................................................................................. 7457.1
4. **Minimum Hours** ................................................................................ 7457.1
5. **Seasonal Pay** ................................................................................... 7457.1

## 1.   Definition

A.   SP 7457 Seasonal Program has been developed to address areas within the Customer Service Policy Manual that differ between a permanent employee and a seasonal employee. Seasonal employees are expected to abide by all Company and department policies.

B.   A seasonal employee is an individual who works for a seasonal period of time due to flight schedules and seasonal adjustments and is considered a temporary employee. Refer to Company Policy Manual SP 57 Employee Classifications for more information on temporary employees.

## 2.   Seasonal Furlough

A.   Seasonal employees are placed on seasonal furlough as outlined in Company Policy Manual SP 72 Reduction in Force (RIF).

B.   Employees with active counseling statements will have their employment file reviewed by the GM at the end of the season. The GM determines if the employee will be placed on a seasonal furlough or have their employment terminated.

C.   Employees placed on a seasonal furlough have the option to be paid their accrued PTO.

   1)   Employees must indicate the desired payout on the seasonal furlough paperwork.

## 3.   Status Change

A.   A status change from a permanent position to a seasonal position or vice versa is only permitted at the beginning of the season or when there is a business need. A position must be open; it may not be created.

## 4.   Minimum Hours

A.   Seasonal employees are required to maintain minimum hours. Part-time seasonal employees are only allowed to fall below minimum hours one pay period per season without penalty.

## 5.   Seasonal Pay

A.   Seasonal employees will retain their step level and hours earned toward the next step increase provided:

   1)   They end their work season in good standing with the Company, and;

**SkyWest**
AIRLINES®

**SEASONAL PROGRAM**
**STANDARD PRACTICE 7457**

7457.2
Page:
Revision:     Original
Date:      26 AUG 14

    2)    They accept their recall from seasonal furlough for the next season that is offered to them, and;

    3)    The offer must be made within one year of the end of the most previous season worked.

B.    When a seasonal employee applies for and is awarded a permanent position, they will also retain their step level and hours worked.

C.    When a seasonal employee rejects a recall from seasonal furlough for a subsequent season, their earned hours are forfeited. They will retain the last pay step they achieved for future employment, provided they return to work within one calendar year of the last day in the season they worked.

D.    Refer to Station Management Manual SP 7400 Chapter 06 Section 09 Seasonal Employees for more information.

**SCHEDULING**
**STANDARD PRACTICE 7458**

7458.1
Page:
Revision:   Original
Date:       26 AUG 14

| Paragraph | Page |
|---|---|
| **1. Minimum Hours** | **7458.1** |
| **2. Maximum Hours** | **7458.2** |
| **3. Minimum Notice by Manager** | **7458.3** |
| **4. Open Shifts** | **7458.3** |
| **5. Mandatory Coverage** | **7458.4** |
| **6. Bids** | **7458.4** |
| **7. Bidding Seniority** | **7458.5** |
| **8. Bid Shift Adjustment** | **7458.5** |
| **9. Mandatory Meetings and Training Notices** | **7458.5** |
| **10. Employee Scheduling** | **7458.6** |
| **11. Meal Periods** | **7458.6** |
| **12. Rest Periods** | **7458.6** |
| **13. Holdover** | **7458.6** |
| **14. Shift Adjustments** | **7458.7** |
| **15. Traded Shift Responsibility** | **7458.8** |
| **16. Training Coverage** | **7458.8** |
| **17. Flex Agents** | **7458.8** |

## 1.   Minimum Hours

A.   SkyWest employees are responsible for ensuring they meet minimum hour requirements.

> **NOTE -** Employee schedules are created based on flight schedules and budgeted hours.

B.   SkyWest Customer Service employees classified as full-time must be paid (hours worked plus PTO) at least 64 hours per pay period to remain full-time and to avoid corrective action.

> **NOTE -** This department's operational needs require that full-time employees must be scheduled at least 64 hours per pay period to maintain full-time.

1)   Full-time employees are allowed to fall below 64 hours per pay period **one time per rolling 12-month year from date of hire (DOH) without penalty**.

C.   SkyWest Customer Service employees classified as part-time must be paid (hours worked plus PTO) at least 24 hours per pay period to avoid corrective action.

1)   Part-time employees are allowed to fall below 24 hours per pay period **four non-consecutive times within a one-year time frame from date of hire (DOH) without penalty.**

D.   Employees may apply accrued PTO time to bring them to the minimum hour requirement (or scheduled hours).

---



E. Falling below minimum hours in excess of the allowed one time (FT) or four non-consecutive times (PT) per rolling 12-month year will result in stepped corrective action as follows:

| First occurrence | Record of Discussion |
|---|---|
| Second occurrence | Letter of Instruction |
| Third occurrence | Counseling Statement and possible additional corrective action |
| Fourth occurrence | Counseling Statement, suspension of employment, review of employee file, and possible termination |

> **NOTE -** Full-time agents who fall below minimum hours and do not have enough gross pay to cover the cost of health insurance or other benefits will have those costs deducted from their next paycheck.

F. Employee schedules are based on operational need.  Minimum hourly requirements do not apply when employees are asked by management to take time off due to extended periods of schedule changes or reduction (e.g., airport runway closures or similar situations, reduced flight schedules).  The Director Station Operations may also designate certain stations as exempt from the minimum hour requirements in support of their specific operational requirements.

G. Employees who fall below minimum hours during a pay period containing a holiday are exempt from these provisions for that pay period if the only reason they did not meet the minimum is one of those listed below.  This exemption does not apply if there was any other cause for going below the minimum during that pay period.

   1) They were scheduled off the day of the holiday due to a reduced flight schedule.

   2) They were scheduled for reduced hours on the holiday due to a reduced flight schedule.

   3) They shift traded off their scheduled hours for the holiday.

H. For daily operations where employees are asked by management if they would like to voluntarily leave early, employees understand that minimum hour requirements will apply.  Employees may decline an offer to leave early, and the option to leave early shall be granted based in order of seniority.

## 2.   Maximum Hours

A. All employees may work up to the maximum 60 hours (56 hours in California) in a pay week (Friday to Thursday).

B. The total daily hours worked cannot exceed 16 hours.



## 3. Minimum Notice by Manager

A. These are the minimum notice times employees will receive from their manager:

| | |
|---|---|
| Mandatory Shifts | 3 days |
| Awarded Open Shifts | 5 days |
| Shift Bids | 18 days |
| Shift Adjustment due to Flight Schedule Changes | 18 days |
| Mandatory Meetings | 21 days |
| Training | 21 days |

B. Flex agents have a separate minimum notice timeline. Refer to Flex Agents below.

## 4. Open Shifts

A. At times, open shifts are available for coverage at the station. Some examples are, but not limited to, Company-covered PTO request, sick call coverage, training coverage, and unexpected scheduling needs.

B. Employees interested in working a posted open shift must bid on the shift in the **My Schedules** window of Dayforce. The following priority is used when awarding open employee shifts:

1) Most senior qualified employee with the day off.

2) Most senior qualified employee willing and able to work the shift as posted.

3) Most senior qualified supervisor with the day off.

4) Most senior qualified supervisor willing and able to work the shift as posted.

> **NOTE -** Strict seniority may not apply when management feels that safety or efficiency could be compromised.

5) Will not exceed 13 consecutive days (6 days in California) of scheduled or assigned shifts.

6) Will not exceed 120 hours per pay period. (California employees will not exceed 56 hours per week and 115 hours in a pay period.)

C. When the shortage occurs more than five days out, the open shift is posted publicly.

D. Employees must not exceed the same hourly and daily restrictions specified below in order to comply with state overtime rules.



**SCHEDULING**
**STANDARD PRACTICE 7458**

## 5.  Mandatory Coverage

A.  In the event an open shift remains uncovered, mandatory coverage may be applied. In order to create a fair and consistent method of applying mandatory coverage, management starts at the bottom of the seniority list and works up the list until an open employee is available.

B.  When mandatory coverage is applied in consecutive pay periods, management starts with the least senior employee who has not picked up an open shift or been assigned a mandatory shift in the previous consecutive pay period until all employees have been considered for eligibility.

C.  When mandatory coverage is applied in non-consecutive pay periods, management starts each pay period at the bottom of the seniority list. Once the seniority list has been completely utilized and before the process can be repeated in the same pay period, the manager must discuss other alternate coverage options with their Regional Area Manager (RAM) prior to issuing more than one mandatory shift to an employee in any single pay period.

D.  Mandatory shifts must be verbally communicated to employees and cannot be assigned via phone message, My Messages, or Dayforce. Managers will document verbal communication via My Messages to the employee.

E.  An open employee is determined by criteria in an exact order. An open employee is the least senior employee whose shift bid gives them the day off from work and who also:

1)  Has not already picked up at least one complete open shift in that two-week pay period.

2)  Will not exceed 13 consecutive days (6 days in California) of scheduled or assigned shifts.

3)  Will not exceed 60 hours per week and 120 hours per pay period.

   a)  California employees must not exceed 56 hours per week and 115 hours in a pay period in order to comply with state overtime rules.

   b)  Does not have an approved PTO request in conjunction with scheduled days off.

F.  An employee who has traded off their scheduled shift will **not** be assigned mandatory overtime for that day.

## 6.  Bids

A.  New shift bids are posted at least 18 calendar days prior to the effective start date. Employees have the first 3-4 days to review and bid their new work schedule. The final schedule is posted no later than 14 calendar days prior to its effective date. Shift adjustments are reviewed at this time.

B.  Any exceptions to the 18-day new shift bid timeline must be reviewed and approved by the Manager Hub Operations or Regional Area Manager. Upon approval, written notification is shared with station employees outlining the reason for the exception.

C.  Employees that fail to bid during the open bid period will be assigned whatever shifts are available at the end of the bid. Shifts will be assigned by the General Manager Station.



## 7. Bidding Seniority

A. All employees bid by department seniority. Employees working in a position holding an override conduct a separate bid, using seniority dates that coincide with the date they were promoted into that position. (Refer to Company Policy Manual SP 64 Seniority.)

B. Bidding seniority is used to determine an employee's shift, work week, and line preference. Bidding seniority is determined, maintained, and administered by each department for the job classifications in their area of responsibility.

> **NOTE -** In cases where strict adherence to bidding seniority would likely have an adverse impact on the safety of operations, our customers, or our ability to serve our customers, management reserves the right to assign personnel as needed to ensure a safe and efficient operation.

## 8. Bid Shift Adjustment

A. Shift adjustments due to flight schedule changes may be made 18 calendar days prior without rebidding, but are subject to the following restrictions:

1) Must not affect days off or the minimum hour requirements.

2) Must not increase or decrease total weekly hours by more than three hours.

3) Must not change the start or end time of the shift by more than one hour.

## 9. Mandatory Meetings and Training Notices

A. Employees must receive at least a 21-day notice for any mandatory meetings and/or training, unless it is of an emergency or security-driven nature:

1) New or recurrent training required to perform job functions that falls within 21 days is also exempt from this requirement.

2) Station management will not prevent an employee from working because they are out of compliance if they are able to schedule training under this exemption.

B. While there is no minimum length of time for a mandatory station meeting, all employees attending will be paid a minimum of two hours. If the mandatory station meeting exceeds two hours, employees will be paid for the entire time.

1) If a meeting ends in less than two hours, employees not already scheduled for shift work at that time will be released.

2) Any exceptions to the 21-day timeline must be reviewed and approved by the Regional Area Manager (or Manager Hub Operations). Upon approval, written notification is shared with station employees outlining the reason for the exception.


Case 3:17-cv-01012-JD   Document 1   Filed 02/27/17   Page 61 of 89

**SCHEDULING**
**STANDARD PRACTICE 7458**

7458.6
Page:
Revision:    Original
Date:       26 AUG 14

## 10. Employee Scheduling

A.  Minimum shift length must be two consecutive hours. Shifts scheduled for less than that for any reason will still result in the employee being compensated for two hours.

B.  An employee may not be scheduled to a shift bid more than five consecutive days or more than 10 paid hours in a day.

C.  Employees must not be scheduled for more than two separate shifts in one day (no triple splits).

D.  Full-time employees will be scheduled no less than 32 hours a week.

E.  Part-time employees will be scheduled no less than 12 hours a week.

## 11. Meal Periods

A.  Employees scheduled to work five hours or more in one shift are entitled to an uninterrupted, continuous meal period of no less than 30 minutes and not exceeding 90 minutes. During that time, employees must be free from all duties and cannot be required to stay at their work station.

B.  If the meal period is taken at the same time every day, or will exceed 30 minutes, that time is specified in the shift bid.

C.  When the meal period is not taken, employees must enter comments in their timesheet stating the reason.

## 12. Rest Periods

A.  Refer to Company Policy Manual SP 62 Meal and Rest Periods.

## 13. Holdover

A.  An employee may be required to stay past their scheduled off time due to irregular operations. This is considered holdover time.

B.  Management uses scheduled end time and bidding seniority to offer qualified employees the opportunity for holdover time.

1)  Volunteers are awarded holdover work first. If there are not enough volunteers, those employees with the latest scheduled off time are held over next, with additional employees (if needed) selected by ascending scheduled off time.

2)  Reverse bidding seniority among those with the latest scheduled off time is used when there are not enough qualified employees volunteering to cover holdover time.

3)  If necessary, daily maximum hours may be exceeded to ensure coverage.

4)  When releasing employees from holdover time, those employees working mandatory shift coverage are given the opportunity to be released first.

5)  All other employees are released from holdover time in seniority order.



**SCHEDULING**
**STANDARD PRACTICE 7458**

Page:    7458.7
Revision:    Original
Date:    26 AUG 14

## 14. Shift Adjustments

A.  A shift adjustment encompasses various ways an hourly employee can adjust shifts through shift trades, shift adjust off, and time off requests for Company coverage.

B.  The following defines the types of shift adjustments:

| | |
|---|---|
| Shift trade | Two employees agree to trade a shift for a shift with each other. |
| Shift adjust off | An employee has the option of adjusting a shift off if another employee is willing to work it. |
| Time-off request (PTO) | An employee may apply for Company coverage by using their accrued PTO. Once approved, station management will find coverage for the employee. |

C.  The following rules are used in Dayforce to perform automatic shift adjustments:

1)  The amount being traded must be one hour or greater.

2)  The system does not allow any overlapping of shifts.

3)  A full-time agent may trade into a maximum of 60 hours (56 hours in California) in a pay week (Friday to Thursday).

4)  A full-time agent may trade into a maximum of 120 hours (115 hours in California) in a pay period.

5)  The maximum daily hours worked is 16.

6)  The trade must occur within 42 days.

7)  Employees cannot trade into more than 13 consecutive days worked.

    a)  California (CA) employees cannot trade into more than 6 consecutive days worked.

8)  The trade can be made up to 30 minutes prior to a shift.

9)  The employee picking up the shift must have matching job qualifications.

10) The employee must be outside the 30-day new hire probationary period.

11) The employee is able to re-trade their shift.

12) No manual (paper) trades are allowed.

D.  An employee who agrees to work a shift trade for another employee must understand the traded shift hours do not count toward overtime; however, when an employee works beyond the hours agreed to in a shift trade, the additional time is added to the daily and weekly hour totals for overtime calculation.

1)  When two employees trade the same number of hours on the same calendar day, they are participating in a *shift swap*. These hours are exempt from the above rule and will count toward weekly overtime calculation.



## 15. Traded Shift Responsibility

A. Once a trade has been automatically approved, the employee who traded it away is no longer responsible for it. The employee picking up the hours assumes responsibility for working the shift or ensuring the shift is covered.

    1) If the employee who picked up the shift is unavailable for work for any foreseeable reason known 14 days or less in advance (e.g., LOA, OJI, resignation), the shift is filled through the processes specified in Open Shifts, Mandatory Coverage of this SP, or through other means available to the station manager.

    2) If the employee who picked up the shift is unavailable for work for any reason, and it is more than 14 days in advance (e.g., LOA, OJI, resignation), the shift will go back to the employee who last traded the shift away. It becomes that person's responsibility to find someone else to work the shift, submit a PTO request, or work the shift.

B. Under normal circumstances, calling off for a traded shift will be handled only as an attendance occurrence.

C. An employee picking up a shift less than 24 hours prior to the shift and calling off will have their future shift trade privileges suspended for 30 calendar days. (Trades approved prior to suspension of trade privileges will be honored.)

D. When an employee calls off work and then accepts a shift trade before returning to work and also does not work that shift trade, their future shift trade privileges will be suspended for 30 calendar days.

E. Any other situations that demonstrate intent to abuse shift trading privileges while calling off (e.g., non-revenue travel, working another job) will be evaluated by the station manager for corrective action, potentially including suspension of trading privileges.

F. Suspending shift trading privileges is considered corrective action and is subject to timeline requirements outlined in SP 7472 Stepped Corrective Action.

## 16. Training Coverage

A. Refer to SP 7471 Training.

## 17. Flex Agents

A. Flex agents are Customer Service employees who do not participate in shift bids and have irregular schedules adjusted frequently based on station need.

    1) Flex agents will be assigned and receive their schedule no later than the Saturday before the week being assigned.

    2) When scheduling, management makes every effort to work around another job or school commitments when operational needs allow it.

    3) Flex agents will be available to SkyWest when not scheduled at another job or school.

    4) Flex agents will be required to maintain work hours according to full-time or part-time status.



5)  Flex agents are responsible for making sure they know their current schedules once they are provided via SkyWest Online.

6)  Part-time flex agents are scheduled on average between 12-20 hours per week and full-time agents between 32-35 hours per week but may be scheduled more due to operational needs of the station during peak seasons, training needs, etc.

7)  Flex agents will request PTO or perfection attendance time off in the same manner as a line holder.

B.  Flex Calendars

1)  Flex calendars will be provided to flex agents via SkyWest Online around the first of the month.  They are also available from the manager or supervisor responsible for scheduling at each station.

2)  Flex calendars need to be returned to the scheduling supervisor by the middle of the month or as indicated by the scheduling supervisor to enable the scheduling of the first week of the next month.

3)  If a calendar is not turned in on time and an agent is scheduled for a shift they cannot work, it is the responsibility of the agent to cover the shift with a trade.

4)  Any changes that need to be made once the calendar is turned in need to be directed to the scheduling supervisor, preferably via SkyWest Online.

5)  An agent's calendar must show times they are scheduled at another job or school.

C.  Agent Availability

1)  Requests for specific time off need to be noted on the calendar with a reason.

2)  Any request for additional time off without a PTO request submitted will be handled accordingly:

a)  The scheduling supervisor will grant requests first by an operational need and then according to seniority.  An agent with less seniority may receive the requested days off ahead of a more senior agent due to the needs of the operation.

3)  Agents may ask for approval to pick up a trade prior to the schedule coming out through the scheduling supervisor.


**INTENTIONALLY LEFT BLANK**

**SkyWest** AIRLINES®

**ATTENDANCE**
**STANDARD PRACTICE 7461**

Page: 7461.1
Revision: Original
Date: 26 AUG 14

| Paragraph | Page |
|---|---|
| 1. Overview | 7461.1 |
| 2. Occurrence Points and Corrective Action | 7461.2 |
| 3. Corrective Action Levels | 7461.2 |
| 4. Corrective Action for New Hire Employees | 7461.3 |
| 5. Pay to Schedule | 7461.3 |
| 6. Absences | 7461.3 |
| 7. Tardies | 7461.4 |
| 8. Illnesses | 7461.4 |
| 9. Excused Illnesses | 7461.4 |
| 10. No Punch | 7461.5 |
| 11. Short Shift | 7461.5 |
| 12. No Call/No Show | 7461.5 |
| 13. Attendance Occurrences Due to Leisure Non-revenue Travel | 7461.6 |
| 14. Perfect Attendance Reward | 7461.6 |
| 15. Electronic Time Sheets (Dayforce) | 7461.7 |
| 16. Time Keeping Fraud | 7461.7 |

## 1. Overview

A. All absenteeism occurrences will be counted toward the corrective action steps of the policy without regard to the reasons for the occurrence. Irregular attendance has a negative effect on coworkers as well as station operations. Accordingly, all occurrences, regardless of cause, will be addressed. The expectations outlined below are in place to ensure employees understand what is required.

1) For information regarding absences excluded from this policy, refer to Company Policy Manual SP 103 Compensated Time Off (including Kin Care) and SP 69 Leaves of Absence (LOA).

B. An occurrence is defined as a tardy, no punch, absence, or a partial absence and is assigned a point value.

C. This policy applies to station shifts, mandatory meetings, briefings, training, and all Company-mandated events.

D. Employees are required to report to work as scheduled, on time, and prepared to start work. Occurrences such as absences and tardies are monitored to ensure these expectations are met.

E. An occurrence is not based on the reason for the occurrence but refers to missing a shift, being tardy for a shift, not clocking in for a shift, or leaving early from a shift.



## 2.   Occurrence Points and Corrective Action

A.   All occurrences accrue points toward the corrective action levels outlined below:

| Occurrence | Points | Time Code |
|---|---|---|
| Tardy 1-5 min.<br>(1 time per quarter) | 0* | SGA (Start Grace After) |
| Tardy 1-5 min.<br>(after grade) | 1 | SGA (Start Grace After) |
| Tardy 6-15 min. | 2 | SL (Start Late) |
| Tardy 16+ min. | 3 | SVL (Start Very Late) |
| No Punch | 3 | NOPUNCH |
| Partial Absence (less than 75% of the shift) | 3 | PABS |
| Absences | 5 | SKUN (absence unpaid),<br>SICK PTO (absence paid by PTO),<br>ABS (absence not due to illness), or<br>EXC (excused illness) |

*Minimum hours must still be maintained even with grace occurrences.

## 3.   Corrective Action Levels

| Level | Points |
|---|---|
| Record of Discussion | 15 |
| Letter of Instruction | 30 |
| Counseling Statement | 40 |
| Counseling Statement, Administrative Leave, and possible Termination | 45 |

A.   Each occurrence has its own reset date. Each occurrence resets on the one year anniversary of the event and those points are then removed.

*Example*: An absence on April 15, 2013, resets on April 15, 2014.

B.   A suspension or administrative leave of three work days is implemented as part of corrective action for attendance at the 45 point level. Notification of suspension prior to completing 50% of the scheduled shift is considered the first day of suspension. Notification of suspension after completing 50% of the scheduled shift requires suspension to begin the following scheduled work day.



C.  Once an employee has received a corrective action notification for attendance points, that corrective action step remains active for six months.

   1)  Employees do not receive subsequent corrective action when existing attendance points drop off.

      **Example**: If an employee is at 20 points, and an existing occurrence drops off their record due to the one year timeline reset, the employee will not receive another ROD for being at 15 points. This applies to all steps.

   2)  Employees will receive corrective action each time there is an increase in points that results in reaching one of the corrective action thresholds.

      **Example**: An employee has 30 points and drops to 25 points due to the one year timeline reset. The employee then has another 5 point occurrence placing them at 30 points, and another LOI will be issued.

## 4.  Corrective Action for New Hire Employees

A.  New hire employees reaching 10 points during the first 90 days of probation or 20 points during their six-month probationary period are terminated unless special circumstances exist and approval from the Regional Area Manager (RAM) allows continued employment.

## 5.  Pay to Schedule

A.  Employees are paid according to their scheduled shift.

   1)  Employees are allowed to clock-in up to five minutes early but are only paid from the start of their scheduled shift.

   2)  Employees are allowed to clock-out up to five minutes before or after the scheduled end of their shift without their pay being adjusted.

      a)  Employees must have completed all work and have supervisor permission to leave work early.

B.  Any time worked beyond the five-minute leeway period will be paid only with supervisor approval.

## 6.  Absences

A.  Employees are required to notify a working supervisor (or their designee) on their scheduled shift via telephone regarding all absences within two hours of their scheduled start time.

B.  PTO is automatically applied for absences up to 50 hours for full-time employees and 16 hours for part-time employees per calendar year.

   1)  The employee is responsible to notify their manager (or administrative assistant) that they prefer not to have further hours automatically applied on each occurrence above these thresholds.

   2)  This provision resets annually on each employee's Company anniversary date.

C.  PTO hours cannot be requested if an employee did not miss any hours during the pay period.



**ATTENDANCE**
**STANDARD PRACTICE 7461**

7461.4
Page:
Revision:     Original
Date:     26 AUG 14

D.   The following events do not accrue attendance points for employees who have completed their original six-month probationary period:

1)   PLA

2)   Bereavement

3)   FMLA or SMLA

4)   Jury Duty

5)   Military Leave

6)   OJI/Disability

7)   Grace occurrences (1 occurrence per quarter)

8)   KinCare (if eligible in state of residence)

## 7.   Tardies

A.   Employees are required to clock-in at their scheduled start time in complete uniform and ready to work.

B.   Employees are required to notify a working supervisor or designee on their scheduled shift via telephone when they will be late for work.

C.   Once every revolving 90 days, there is a grace occurrence for tardies within 1-5 minutes.

1)   Tardies that qualify as a grace occurrence will not incur any points.

2)   Any 1-5 minute tardies after the grace occurrence in a quarter will incur points.

## 8.   Illnesses

A.   An illness lasting up to four days within a consecutive seven-day period counts as one 5 point occurrence.

B.   Employees are required to notify a working supervisor or designee on their scheduled shift via telephone within two hours prior to their scheduled shift for each day they are will not be able to attend work, unless otherwise communicated to station leadership when possible.

C.   Leaving work to go home to change or become uniform compliant is not an illness and is not included in the 4-in-7 provision.

D.   Any absences that are determined not to be for an illness are excluded from the 4-in-7 provision.  Each day missed will be treated as a separate 5 point occurrence.

## 9.   Excused Illnesses

A.   One doctor statement per rolling 12-month year may be allowed for any employee calling to report that will not be able to attend work due to illness. If the following requirements are met, the employee will not accrue points for this absence.

1)   The doctor statement must specify how many days the employee is to remain off work.

**SkyWest**
AIRLINES®

**ATTENDANCE**
**STANDARD PRACTICE 7461**

7461.5
Page:
Revision:    Original
Date:    26 AUG 14

> **NOTE -** Employees with a personal illness requiring them to miss work for more than 4 days may be eligible for leave of absence under FMLA or SMLA.

2)   Employees utilizing a doctor's statement to excuse their illness must furnish it to leadership on their first day back to work.

> **NOTE -** Employees with a personal illness requiring them to miss work for more than 4 days may be eligible for leave of absence under FMLA or SMLA.

3)   Statements must be on office paperwork (e.g., stationary, prescription pad) and include the following information:

a)   Date(s) of illness.

b)   Date(s) of treatment.

c)   Date employee can return to work at full duty.

d)   Doctor's signature and phone number.

> **NOTE -** Utilizing an excused absence disqualifies an employee from perfect attendance.

## 10.  No Punch

A.   Failure to clock in for a shift results in a no-punch occurrence.

## 11.  Short Shift

A.   When an employee does not complete at least 75% of their shift, they will incur a partial absence.

B.   Employees must have supervisor approval to leave work early.

C.   If an employee is asked to leave early due to scheduling, they will not incur a partial absence.

## 12.  No Call/No Show

A.   Failure to call or be present more than 30 minutes after scheduled start time is considered a no-show and is subject to corrective action.

B.   Employees receive points for the no-show event (3 points for an SVL or 5 points for a SKUN) in addition to the following stepped corrective action:

| First occurrence | Letter of Instruction |
|---|---|
| Second occurrence | Counseling Statement |
| Third occurrence | Counseling Statement, Suspension, or Administrative Leave, and subject to employment termination |

C.   No-shows are reset on a revolving calendar year along with accrued attendance points based upon the date of the occurrence.



***Example***: A no-show that occurs on April 15, 2013 will reset on April 15, 2014.

## 13. Attendance Occurrences Due to Leisure Non-revenue Travel

A.  The nature of standby travel requires that employees exercise responsibility to ensure they have adequately planned enough travel time to return home prior to the start of their shift.  Missing a shift due to leisure travel places a burden on fellow employees and the operation.

B.  Shifts missed due to leisure non-revenue travel will incur points listed in the event and point values table <u>above</u>.

C.  Attendance events due to leisure non-revenue travel may also be considered abuse of non-revenue travel benefits.

D.  Abuse of non-revenue travel benefits is evaluated by the station manager for corrective action in addition to attendance points that may be applied.  Any corrective action that includes suspension of travel benefits is evaluated by the Director Stations or higher.

## 14. Perfect Attendance Reward

A.  The Customer Service Department offers a reward program for full-time and part-time employees who maintain a perfect attendance record for the periods of January 1st through June 30th and July 1st through December 31st.

B.  Perfect attendance is defined as accruing no tardies or absences during each complete six-month period listed above.

    1)  Absences that do not disqualify an employee from receiving the Perfect Attendance Reward are those where the employee provided the required notification for PTO as outlined below, as well as dates requested off and approved under the Customer Service Semi-Annual Advance Vacation Policy, jury duty with documentation, or bereavement leave.

C.  Employees must be hired on or before each of the initial dates for each six-month period to qualify.

D.  Employees who achieve perfect attendance for the six-month periods listed above are recognized semi-annually by their respective station leadership, the month following the qualifying six-month period and receive a day off with pay.

    1)  The paid day off must be requested 14 days prior for a single day, or 30 days prior if used in conjunction with approved vacation days.

    2)  The paid day off must be used within six months of the award date.

E.  Employees may only request a day off that they were originally scheduled to work.  Perfect attendance days cannot be used for shifts traded into or picked up.

F.  To maintain the integrity of the program, the following events disqualify an employee from receiving the Perfect Attendance Reward.

    1)  FMLA

    2)  Military leave

    3)  OJI/Disability leave beyond the date of the incident

    4)  Personal leave of absence

**SkyWest**
A I R L I N E S ®

**ATTENDANCE**
**STANDARD PRACTICE 7461**

    5)   SkyWest medical leaves

    6)   Grace period

    7)   Excused absence

> **NOTE -** Seasonal Employees are not eligible for the Perfect Attendance Reward.

## 15. Electronic Time Sheets (Dayforce)

A.   Employees are required to review and authorize their time sheet weekly.

B.   Employees are required to report any discrepancies to station leadership as soon as possible and no later than 5:00 p.m. on Friday.

C.   Requests for PTO must be submitted no later than 5:00 p.m. on the Friday following the end of the pay period.

## 16. Time Keeping Fraud

A.   Tampering with, altering, or falsifying time records, or recording time on another employee's time record are all considered fraud and are subject to corrective action, up to and including termination, as outlined in Company Policy Manual SP 63 Payroll under Timekeeping Requirements and Responsibilities.

B.   Clocking in and then leaving the SkyWest premises is considered timekeeping fraud and is subject to corrective action, up to and including termination, as outlined in Company Policy Manual SP 63 Payroll under Timekeeping Requirements and Responsibilities.



**INTENTIONALLY LEFT BLANK**

**SkyWest** AIRLINES®

**REQUESTED TIME OFF**
**STANDARD PRACTICE 7462**

Page: 7462.1
Revision: Original
Date: 26 AUG 14

| Paragraph | Page |
|---|---|
| 1. Definition | 7462.1 |
| 2. Maximum Earning | 7462.1 |
| 3. Maximum Accrual | 7462.1 |
| 4. Pay in Lieu of PTO | 7462.1 |
| 5. Full-time PTO Accrual Rates Per Base Hour Worked: | 7462.2 |
| 6. Part-time PTO Accrual Rates Per Base Hour Worked: | 7462.2 |
| 7. Using PTO for Absences | 7462.2 |
| 8. Standard PTO Request | 7462.2 |
| 9. Semi-annual Bid for Advanced PTO | 7462.3 |
| 10. Authorized Time Off with No Pay (ANP) | 7462.4 |

## 1.    Definition

A.    Paid Time Off (PTO) accrual is earned on the actual hours worked for each two week payroll period up to 80 hours.  Hours worked in excess of 80 hours per pay period will not earn PTO.

## 2.    Maximum Earning

A.    The maximum hours of PTO that can be accrued in a calendar year is capped at the 15 year maximum rate of 208 hours.

## 3.    Maximum Accrual

A.    A maximum of 460 PTO hours may be accrued at any time.  Once the maximum hours are reached, PTO will stop accruing until the balance is reduced below 460 hours through usage or pay in lieu of PTO.

## 4.    Pay in Lieu of PTO

A.    Employees have the option of receiving pay in lieu of accrued PTO up to three times per year (March, July, November). PTO must be requested via SkyWest Online no later than the dates communicated by SkyWest.

    1)    When utilizing this program, employees are required to maintain a balance of at least 40 hours in their PTO bank.

B.    Having less than 40 hours PTO balance at the time of the request excludes an employee from participating in that quarter.

C.    PTO is paid at the rate the employee is earning at the time they use it, receive pay in lieu of, or terminate employment with the Company.



## 5.    Full-time PTO Accrual Rates Per Base Hour Worked:

| Active Service | Accrual Rate |
|---|---|
| 90 days | 0.0193 |
| 6 months | 0.0578 |
| 2 years | 0.0655 |
| 5 years | 0.0847 |
| 10 years | 0.0962 |
| 15 years | 0.1 |

## 6.    Part-time PTO Accrual Rates Per Base Hour Worked:

| Active Service | Accrual Rate |
|---|---|
| 90 days | 0.0114 |
| 2 years | 0.0174 |

## 7.    Using PTO for Absences

A.    PTO will be automatically applied to all absences (but not tardies) in order to bring an employee up to their bid scheduled hours for the pay period.

1)    The employee has the option to decline auto-deduction after 50 hours (full-time) or 16 hours (part-time) as defined in SP 7458 Scheduling and SP 7461 Attendance.

B.    Upon reaching the 50/16 hour thresholds, PTO will continue to be automatically deducted and applied to maintain employees minimum hours, unless the employee specifically requests PTO not be deducted for each absence.

## 8.    Standard PTO Request

A.    Employees may submit a request to use their PTO hours at any time.

B.    To preserve seniority rights, employees must submit their request to use PTO hours as described below:

1)    All PTO requests submitted 30 or more calendar days in advance will be approved or denied no less than 21 calendar days prior to the first requested date off, based on employee seniority and operational needs. Requests are deemed approved when the employee is not notified otherwise by management at least 21 calendar days prior to the effective date of the request.



2) All PTO requests submitted 14 to 29 calendar days in advance will be approved or denied (based on seniority) no less than 7 calendar days prior to the first requested day off. Requests are deemed approved when the employee is not notified otherwise by management at least 7 calendar days prior to the effective date of the request.

   a) Approved PTO requests submitted 30 or more days in advance have priority over these requests.

3) Submitted requests not meeting the minimum advance will be considered for approval based on operational need, and then by the order they are received.

C. PTO requests must be submitted for a minimum of 1 hour.

## 9. Semi-annual Bid for Advanced PTO

A. In addition to the standard procedure for applying for paid time off, SkyWest offers the option for employees to request time off in advance. This opportunity is provided semi-annually and allows employees the chance to preplan their time away from work.

1) Blackout dates for advance PTO requests are:

   a) The week of Thanksgiving from Sunday to Sunday.

   b) December 17th to January 2nd.

B. PTO advanced requests are granted on seniority basis.

C. Employees are allowed only one approved PTO request per six-month period.

D. Once granted, the approved PTO must not be denied or cancelled by GMs unless an employee does not have enough available hours at the time the requested PTO is to begin.

E. All bids for the following calendar year must be submitted using the Semi-Annual Advance Vacation Request form.

F. Advanced PTO bid procedure

1) Bids for January-December time period are considered closed at midnight November 7th.

2) Managers must review and approve requests and notify employees no later than November 16th. PTO bids are deemed approved when the employee is not notified by management by the end of the employee's shift on November 16th.

3) When an employee has been awarded an advance PTO bid during the first half of the year, they are placed at the bottom of the seniority list for the second bid period, regardless of their seniority date.

4) A second opportunity to bid for PTO is allowed for the July-December time period.

5) Bids for the July-December period must be submitted no later than April 15th.

6) Bids are considered closed at midnight on April 15th.



Case 3:17-cv-01012-JD   Document 1   Filed 02/27/17   Page 77 of 89

Page:      7462.4
Revision:  Original
Date:      26 AUG 14

**REQUESTED TIME OFF**
**STANDARD PRACTICE 7462**

7) Managers must review and approve bids and notify employees no later than April 24th.  PTO bids are deemed approved when the employee is not otherwise notified by management by the end of the employees shift on April 24th.

8) Employees should be aware if they bid PTO through this process, other PTO using the standard procedure may not be approved, depending on the employee's available PTO hours.

9) Employees must give at least a 45-calendar day notice when they wish to cancel an advance PTO request.  Canceling an advance PTO request with less than 45 days notice may be allowed if an open shift is available.

## 10.  Authorized Time Off with No Pay (ANP)

A. Employees may submit a paper request to have a shift adjusted off without compensation.  Employees are responsible to maintain minimum hours per SP 7458 Scheduling.

B. Employees may request ANP for the recognized holidays in Company Policy Manual SP 103 Compensated Time Off.  If ANP is approved for one of these holidays, an agent who falls below minimum hours only as a result of ANP on the holiday for that pay period is not subject to corrective action for falling below minimum hours.

C. All requests will be considered if filed a minimum of five days prior to the requested shift.  Approval will be made between one and four days prior.

1) The approval timeline may be extended in the event of drastically reduced holiday schedules, such as Thanksgiving, or station-specific operational reductions.  These exceptions are communicated in advance by a My Messages from the GM or their scheduling representative.

D. The General Manager Station may approve or deny ANP requests based on operational need.

E. Approval order is based on bidding seniority only.

F. PTO requests take precedence over ANP requests.

![SkyWest Airlines logo] **SkyWest**
A I R L I N E S ®

**PERSONAL APPEARANCE AND UNIFORMS**
**STANDARD PRACTICE 7470**

Page:      7470.1
Revision:  Original
Date:      26 AUG 14

**Paragraph**                                                          **Page**
1. Personal Appearance ...................................................................... 7470.1
2. Uniforms ..................................................................................... 7470.3

## 1.    Personal Appearance

A.   All employees are required to wear a Company-approved uniform as a condition of employment.

   1)   While on duty, employees are responsible for keeping their uniforms in acceptable condition in accordance with Company regulations.

   2)   It is the employee's responsibility to comply with all uniform standards.

> **NOTE -** Failure to comply with these standards while in uniform may result in corrective action, up to and including termination.

B.   Employees are required to be in Company uniform prior to clocking in for the start of their shift.

> **NOTE -** Current SkyWest ID badge, SIDA badge (when applicable), and name pin (when applicable) are considered part of the required Company uniform.

C.   Only approved, Company-issued uniform pieces may be worn, as intended. Any special needs must be addressed with the GM.

D.   Employees must maintain one complete core set of uniform garments.

   1)   All uniform items must be clean and presentable at all times.

E.   An employee who does not meet the standards of this policy may be required to take immediate action which may include leaving the premises.

   1)   Employees will not be compensated for work time missed due to non-compliance with this policy.

   2)   Absence from work to correct a uniform issue will result in attendance points being assessed per the existing attendance policy.

F.   Authorized garments are only those listed on the approved order form. Not all items offered by GearUp or vendors on SkyWest Online are approved.

G.   Professional alterations to hemlines are to be no shorter than 3" above the knees and no longer than the bottom of the knee and are permitted for the following only:

   • Skirts

   • Dresses

   • Shorts

H.   Trousers and shorts must be worn at waist or hip level.

I.   Nylons without patterns must be worn with a skirt or dress for female employees. Colors are restricted to black, dark blue, and nude and must maintain a professional appearance.

**PERSONAL APPEARANCE AND UNIFORMS**
**STANDARD PRACTICE 7470**

J.    Shoes and socks must be worn at all times and must be appropriate for the job being performed.

1)    Colors and styles must complement the uniform.

2)    Open-toed, open-back, flip flops, minimalist, or sandals are prohibited.

> **NOTE -** Although not required, SkyWest recommends safety-toed shoes be worn while working on the ramp in order to minimize the possibility of injury.

K.    Simple, professional jewelry may be worn.

1)    Colors and styles must be conservative and coordinate with the uniform.

2)    No more than three Company-approved pins may be worn on the uniform at one time.

> **NOTE -** The name pin is a mandatory pin.

a)    Authorized special event pins may be worn during the specified event timeline.

L.    Lanyards must not pose a safety threat, must be conservative in nature, and must be breakaway or pull-away style. Conflict of interest styles (e.g., other airlines) are not allowed.

M.    Tattoos, brandings, and body piercing(s) must not be visible regardless of employee gender.

N.    Earrings must be conservative in nature and should present a professional image.

1)    A maximum of two earrings per ear for females is allowed.

2)    A single 1/3" diameter (maximum) earring in the lower lobe of each ear for males is allowed.

> **NOTE -** Ear gauges are not permitted.

O.    Hairstyles and facial hair must be kept clean, neatly groomed, and consistent with a business-like appearance.

1)    Long hair on the ramp must be pulled back and restrained. Braids and ponytails are allowed but should project a professional image.

> **NOTE -** Refer to Company Policy Manual SP 155 Personal Appearance of Employees for a more detailed definition of professional, business-like appearance.

**SkyWest** AIRLINES®

**PERSONAL APPEARANCE AND UNIFORMS
STANDARD PRACTICE 7470**

Page:     7470.3
Revision:   Original
Date:     26 AUG 14

## 2.   Uniforms

A.   Employees who work in LAX, SLC, SFO, or DEN at the ticket counter and/or gate must order and wear the full dress Customer Service Agent (CSA) uniform. Employees who work on the ramp in any of the above cities (other than SLC) order the United Hub Below Wing pieces. Employees in SLC will order from the DL uniform selection. All other station agents are considered cross-utilized/ramp and must order the cross-utilized/ramp uniform (SkyWest Line Stations/Cross-Utilized/Dual Function).

B.   Ties are required year-round with the male UA CSA uniform while assigned to the ticket counter or gate. Scarves are recommended year-round with the female UA CSA uniform while assigned to the ticket counter or gate.

C.   All employees participating in the Customer Service Uniform Program receive an annual replenishment of points/dollars.

1)   The allotment resets on January 1st of each year.

2)   Any unused allotment amount is not carried over from one year to the next.

3)   The initial new hire allotment is intended to last 13 months. Any remaining months until January 1st are prorated for that year.

4)   Yearly Replenishment Allotments

| A. UNITED hubs and all line stations ||
|---|---|
| CSA FT | $155 |
| CSA PT | $140 |
| Ramp FT | $130 |
| Ramp PT | $95 |
| Cross-Utilized FT | $95 |
| Cross-Utilized PT | $95 |

| B. DELTA hubs ||
|---|---|
| CSA FT | $175 |
| CSA PT | $155 |
| Ramp FT | $150 |
| Ramp PT | $105 |

D.   In order to establish a basic image, standard initial uniform items are required. New employees order their uniforms by selecting the desired uniform packet during their first month at the station. The initial order is intended to last 13 months. Any months remaining until January 1st are prorated for that year. The employee's supervisor or manager can assist with this process.

**SkyWest**
A I R L I N E S ®

**PERSONAL APPEARANCE AND UNIFORMS
STANDARD PRACTICE 7470**

Page:
Revision:     Original
Date:     26 AUG 14

7470.4

E.   In the event uniforms become damaged or are proven defective, employees may request a replacement through their GM. Managers are able to request replacement items through the Coordinator Warehouse Services.

   1)   The Customer Service overcoat, Customer Service blazer, hub ramp jacket, and line system jacket may be replaced outside the employee annual allotment if those items become worn or damaged. Employees will request replacement through their General Manager Station.

F.   All uniform pieces received within the most recent two years must be returned to SkyWest upon termination of employment. If an employee fails to return their uniform, a full-time employee will be charged $150 and a part-time employee will be charged $100.

G.   If SkyWest requires a change in the uniform prior to the expiration of the uniform's life expectancy, the uniform cost will be at the Company's expense. Should any partner airline require SkyWest employees to use a new or different uniform, SkyWest will determine the schedule for such change. If this change requires new uniform items, SkyWest will be responsible for providing the initial new uniform pieces.

H.   SkyWest will provide each line station and Delta Connection hub employee with a new system jacket before or during on-the-job training (OJT).

   1)   Jackets showing wear are replaced on an as-needed basis.

I.   SkyWest will provide each station a shared allotment of appropriate foul weather gear as follows: rain suits, parkas, coveralls as well as appropriate protective clothing for those working with lavatory or deicing procedures.

J.   SkyWest agrees that employees who work outdoors will not be prohibited from wearing non-logo sweatshirts (including hooded sweatshirts) **under** their jacket or parka. Company-approved or plain (black or dark blue) non-logo ball caps and bucket-style hats are allowed.

K.   Employees in uniform are expected to present themselves and represent SkyWest in a professional manner.

   1)   Employees are responsible for ensuring they are not in a station or location where their attire would represent the Company in an unprofessional manner.

   2)   Employees are expected to comply with departmental uniform standards at all times while in uniform, even if not on duty.

Case 3:17-cv-01012-JD   Document 1   Filed 02/27/17   Page 82 of 89

**SkyWest** AIRLINES®

**TRAINING**
**STANDARD PRACTICE 7471**

Page:       7471.1
Revision:   Original
Date:       26 AUG 14

**Paragraph**                                                           **Page**
1. **Training Requirements and Responsibilities** ................................. 7471.1
2. **Shift Coverage** ................................................................. 7471.2
3. **Travel Pay** ..................................................................... 7471.2
4. **Canceled Training** ............................................................ 7471.2
5. **Work Week Restriction** ....................................................... 7471.2

## 1.   Training Requirements and Responsibilities

A.   SkyWest frontline employees must pass all required training courses to achieve proficiency standards in their respective job codes.  Employees are expected to meet Company requirements for compliance.

    1)   Employees working in locations where SkyWest is responsible for ground-handling other carriers are required to pass all training for those companies' aircraft, equipment, and procedures.

B.   Training notification will be made via SkyWest Online My Messages, and employees are required to check My Messages daily when working.

C.   Cheating, copying, and sharing of information for online training materials and exams (paper or online) is prohibited and may be cause for termination.

D.   Most, but not all, final exams and electronic courses allow one retake if failed on the first attempt.  When an employee fails a second time, progressive corrective action, up to and including termination of employment, may be taken.

    1)   If corrective action is taken, a timeline for completing the failed exams will be specified in the action.

    2)   The employee may be considered for reclassification to another job code in the station if a position is available.

E.   When the employee's certification for a course has expired, the employee must not work in that job function until the course has been satisfactorily completed and a certification issued.

F.   Seasonal employees must complete required training necessary for the position they are hired for and must not work in any position at the station until they have completed the required training.  Refer to Airport Customer Service Training Manual SP 7010 Chapter 03 Training Requirements.

G.   Full requirements, including training requirements, are located in SkyWest's Airport Customer Service Training Manual SP 7010 under the following:

- Chapter 02 Training Responsibilities and Expectations
- Chapter 03 Training Requirements
- Chapter 04 Training Files and Records
- Chapter 09 Certified Station Trainer (CST) Program
- Chapter 10 Training Path and Curriculum



TRAINING
STANDARD PRACTICE 7471

7471.2
Page:
Revision:    Original
Date:    26 AUG 14

## 2.   Shift Coverage

A.   When an employee's work schedule must be adjusted off to accommodate required training, station leadership shall cover the shift(s) through normal methods (e.g., flex agents, open shift, mandatory overtime, SST).

   1)   The employee will not be responsible for covering their own shift in order to attend scheduled training.

B.   If the employee needs to be scheduled off one or more shifts from their bid schedule to accommodate training, the day(s) selected should not prevent the employee from having a minimum of two days off at the beginning (or end) of the period when possible.

   1)   Every attempt will be made to give the employee two consecutive days off, unless station operations and staffing prohibit it or the employee agrees to split their days off.

C.   Employee pay for training will be the greater of actual training and travel time or their scheduled hours.

## 3.   Travel Pay

A.   Refer to Company Policy Manual SP 68 Business Travel.

## 4.   Canceled Training

A.   In the event training is canceled or rescheduled at least 24 hours in advance, the employee will be returned to their scheduled hours.

B.   If training is canceled on the same day, the employee will be allowed to work an open shift in the same time range as the scheduled training, if available.

   1)   If an available open shift is less than the employee's scheduled hours, the employee will be paid for the open shift worked and the difference for the lost time.

   2)   If an available open shift is greater than the employee's scheduled hours, the employee may accept it, decline it, or request that their manager adjust it to their scheduled number of hours before accepting it.

   3)   An employee who declines an open shift will not receive pay for their lost time and must maintain awareness of their minimum hours requirement.

   4)   If same-day canceled training was to be held in business casual clothing, the employee will be allowed to travel home and change into uniform before beginning an open shift. The employee will be paid for the time required to travel from and back to the station.

C.   If there is no shift available in that time range, the employee will be paid for their scheduled hours.

## 5.   Work Week Restriction

A.   If an employee is required to attend training outside of their scheduled work week, the training time must not put the employee in excess of their maximum hours worked per pay period.

B.   Station management will determine if the training is to be rescheduled, or the employee is to be scheduled off one or more shifts in order to comply with this restriction.



**INTENTIONALLY LEFT BLANK**

**SkyWest** AIRLINES®

**STEPPED CORRECTIVE ACTION**
**STANDARD PRACTICE 7472**

Page: 7472.1
Revision: Original
Date: 26 AUG 14

| Paragraph | Page |
|---|---|
| 1. Definition | 7472.1 |
| 2. Expectations of Employees | 7472.1 |
| 3. Expectations of Management | 7472.2 |
| 4. Levels of Corrective Action | 7472.3 |
| 5. Accelerated Corrective Action | 7472.3 |
| 6. SAFA Participation | 7472.4 |

## 1. Definition

A. Stepped corrective action is a tool for eliminating unacceptable behavior and performance by individuals. It is not used as a means of focusing multiple employees on areas of concern, such as general procedures and station goals.

B. Employees are subject to corrective action procedures listed below for any violations of department policies, Company policies, and other standard operating procedures.

C. Company policies are subject to change outside the collective bargaining process. When those changes occur, Customer Service employees are still accountable to follow the updated provisions with the understanding that corrective action will still apply.

> **NOTE -** SP 7472 Stepped Corrective Action is specific to the Customer Service Department and is not intended to contradict Company Policy Manual SP 73 Corrective Action. SP 7472 Stepped Corrective Action details how the intent of Company Policy Manual SP 73 Corrective Action will be carried out in support of all Customer Service Department policies. Employees must be familiar with Company Policy Manual SP 73 Corrective Action as well.

## 2. Expectations of Employees

A. Employees are expected to maintain a high standard of excellence for themselves, with fellow employees, and to the customers they serve. When an employee falls below these standards, depending on the circumstances, a course of stepped corrective action gives the employee a positive way to learn from and correct mistakes.

B. The intent of corrective action is to help employees eliminate behavior that violates Company policy. Progressing through steps carries increased negative consequences, because an employee has not demonstrated that they are able or willing to correct improper behavior.

C. Employees are required to sign corrective action forms. This is not an admission of improper conduct. The employee's signature only acknowledges that station management discussed the matter with them, determined a course of action, and placed the record in their file.

**SkyWest**
A I R L I N E S ®

**STEPPED CORRECTIVE ACTION
STANDARD PRACTICE 7472**

Page:        7472.2
Revision:    Original
Date:        26 AUG 14

D.  Employees may explain their version of the events that led to the corrective action. They may do so on the face of the corrective action form (or attach separate sheets if needed) at the time of the meeting or take time to think about what they want to write and submit a statement no more than three days after the meeting. This statement will go into their file but will not be considered a dispute of the corrective action.

   1)  In some instances, employees may be required to submit an explanation of events as they recall them immediately after an incident.

E.  Employees must read new My Messages every work day.

## 3.  Expectations of Management

A.  Stepped corrective action will be applied on an individual basis only.

B.  General Managers Station (and interim appointments), shift managers, and supervisors are authorized to initiate stepped corrective action.

C.  All corrective action is to be documented with the appropriate form at the time the employee is counseled, placed in the employee's file, and a copy given to the employee at that time.

   1)  Stepped corrective action will be communicated verbally in a face-to-face meeting and cannot be issued electronically except when the employee is unable or unwilling to participate.

D.  All corrective action is confidential and will not be discussed with other employees. Station managers may determine corrective action needs to be shared with others in their chain of resources without violating confidentiality.

E.  When management determines corrective action is required, it will be administered as soon after the infraction as possible but no more than 30 days after the event.

   1)  If management is not immediately aware a violation has occurred, the station manager shall have 30 days from the date they become aware of the infraction to issue corrective action.

   > **NOTE -** If the 30-day time frame is not met, the corrective action will not be administered unless specifically agreed to by the Director Station Operations due to extenuating circumstances.

   2)  Corrective action forms will be filled out completely. They will contain an accurate description of the infraction, as well as details of how the employee is expected to correct their behavior to avoid further stepped corrective action.

**STEPPED CORRECTIVE ACTION
STANDARD PRACTICE 7472**

## 4. Levels of Corrective Action

| | |
|---|---|
| **Record of Discussion** | When an employee is not meeting performance standards, the supervisor discusses areas for improvement with the employee. This generally occurs during a counseling session in which both parties agree on a future course of action. |
| **Written Warning** | When undesirable behavior continues, a written warning is issued as a Letter of Instruction and/or a Counseling Statement. An employee who receives a Counseling Statement is not in *good standing* for a period of six months from the date of issuance. |
| **Final Warning** | Following a Counseling Statement, a final warning may be issued, which may include time off or other corrective action, up to and including termination. |
| **Administrative Leave** | Administrative Leave is reserved for situations requiring further investigation pending a final decision. |
| **Termination** | Termination occurs when the offense is of a serious nature or when prior warnings have failed to correct a performance or behavioral problem. Any employee involuntarily terminated is eligible to apply for a termination review board. |

A. Typically, the first instance of sub-standard performance is addressed with a Record of Discussion, and repeated instances increase the level of correction.

1) Instances of different behavior should be kept separate and addressed in a non-related manner.

   **Example**: While under a Letter of Instruction for damaging a tow bar, the same employee loads a bag onto the wrong aircraft. This would be addressed with a new Record of Discussion, not a Counseling Statement.

B. While all corrective action statements remain active for six months, repeated occurrences of the same violation can result in escalation of stepped corrective action outside that time frame.

C. Administrative leave requires the Notice of Administrative Leave paperwork detailing the reason the employee is being relieved of work, the anticipated date of return, and the possibility that subsequent action may be taken upon completion of any investigation. This paperwork will be given to the employee at the time they are suspended or placed on administrative leave.

## 5. Accelerated Corrective Action

A. Stepped corrective action is intended to follow a specific course to eliminate substandard behavior. However, some actions require that corrective action must begin at a higher level. Depending on the severity of the problem, anything ranging from a written warning to immediate termination may be utilized as the first step for actions found to be excessive in operational impact, financial cost, or compromising to the safety of others.

**STEPPED CORRECTIVE ACTION
STANDARD PRACTICE 7472**

## 6. SAFA Participation

A.   When an employee is placed on administrative leave, the manager will advise at the time of the Administrative Leave that the affected employee has the right to request a member of SAFA to be present, either personally or on the phone, to act as a witness in the meeting at the conclusion of the Administrative Leave.  A SAFA representative will act solely as a witness to the proceedings and potential corrective action and/or termination of employment.  This request cannot unduly delay this process.

> **NOTE -** New hire employees who have not completed their initial probationary period are not entitled to this protection.