Amanda C. Sommerfeld (SBN 185052)
asommerfeld@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone:     +1.213.489.3939
Facsimile:     +1.213.243.2539

Kelsey Israel-Trummel (SBN 282272)
kitrummel@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Patricia T. Stambelos (SBN 166998)
patricia@patriciastambelos.com
STAMBELOS LAW OFFICE
543 Country Club Drive, Suite B209
Simi Valley, CA  93065
Telephone:     +1.805.578.3474
Facsimile:     +1.805.994.0199

Attorneys for Defendants
SKYWEST, INC. AND SKYWEST
AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CODY MEEK, *et al.*,<br><br>    Plaintiff,<br><br>  v.<br><br>SKYWEST, INC. and SKYWEST AIRLINES, INC.,<br><br>    Defendants. | Case No. 3:17-cv-01012-JD<br><br>**DEFENDANTS SKYWEST, INC. AND SKYWEST AIRLINES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:   September 7, 2017<br>Time:   10:00 a.m.<br>Judge:   Hon. James Donato<br>Courtroom: 11, 19th Floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................. I

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND ........................................................................................... 2

    A.      The Complaint and Plaintiff's Exhibit 1 Reveal the Parties are Subject to a CBA .................................................................................................... 2

    B.      Plaintiff's Alleged Claims and Underlying Theories ............................. 2

III.    STANDARD OF REVIEW .......................................................................... 4

IV.     ARGUMENT ................................................................................................ 4

    A.      Plaintiff's Claims Are Insufficiently Pled and Fail Under Rule 12(b)(6) .............. 4

        1.      Plaintiff's Shift Trade Theory in Claim Three Fails Because He Was Exempt From Overtime Under Wage Order 9 .................................... 5

        2.      Plaintiff's Off-Schedule Theory Must Be Dismissed Because He Fails to Allege that He Reported Off-The-Clock Time and Was Denied Payment ........................................................................ 5

        3.      Plaintiff's Wage Statement Claim is Time-Barred ................... 6

        4.      Plaintiff Lacks Standing to Assert Claims Under the MCO and the QSP .............................................................................. 7

    B.      Plaintiff's Claims Are Preempted by Federal Law and Must Be Dismissed Under Rule 12(b)(1) .......................................................... 8

        1.       Claims One through Six are Preempted by the RLA Because Resolution Would Require the Court to Interpret the Parties' CBA ........... 8

        2.      Plaintiff's Local Minimum Wage Claim Is Also Preempted by the RLA .......................................................................... 11

        3.      The ADA Preempts Claims One through Six To The Extent They Arise From Missed Meal Breaks ................................... 12

        4.      Extensive Regulation of the Airline Industry Results in Field Preemption, Barring Claims Two and Seven ........................... 13

V.      CONCLUSION ......................................................................................... 15

1

## <u>**TABLE OF AUTHORITIES**</u>

2

3

**Page**

4

**CASES**

5

*Angeles v. U.S. Airways, Inc.*,
   No. 12-05860, 2013 WL 622032 (N.D. Cal. Feb. 19, 2013) ....................................4, 6, 11, 13

6

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................4

8

*Bechtel Const., Inc. v. United Bhd. of Carpenters & Joiners of Am.*,
   812 F.2d 1220 (9th Cir. 1987).................................................................................................12

9

10

*Bhd. of R. R. Trainmen v. Chicago R. & I. R. Co.*,
   353 U.S. 30 (1957)....................................................................................................................9

11

12

*Big Stone Broad., Inc. v. Lindbloom*,
   161 F.Supp.2d 1009 (D.S.D. 2001).........................................................................................14

13

14

*Blackwell v. SkyWest Airlines, Inc.*,
   No. 06-CV-0307, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008)...................................... passim

15

16

*Board of Admin. v. Glover*,
   34 Cal. 3d 906 (1983) ...............................................................................................................7

17

18

*Calop Bus. Sys., Inc. v. City of L.A.*,
   614 F. App'x 867 (9th Cir. 2015) ...........................................................................................11

19

20

*Calop Bus. Sys., Inc. v. City of L.A.*,
   984 F. Supp. 2d 981 (C.D. Cal. 2013), *aff'd in pertinent part*, 614 F. Appx. 867
   (9th Cir. 2015)...................................................................................................................11, 12

21

22

*Chamber of Commerce of U.S. v. Bragdon*,
   64 F.3d 497 (9th Cir. 1995).....................................................................................................12

23

24

*Charas v. TransWorld Airlines, Inc.*,
   160 F.3d 1259 (9th Cir. 1998).................................................................................................13

25

*Chrisanthis v. United States*,
   --- F.3d ----, 2017 WL 1031361 (9th Cir. Mar. 17, 2017) ........................................................4

26

27

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992).................................................................................................................14

28

*City of Burbank v. Lockheed Air Terminal Inc.*,
    411 U.S. 624 (1097) ........................................................................................................8

*Fitz-Gerald v. SkyWest Airlines, Inc.*,
    155 Cal. App. 4th 411 (2007) ....................................................................................9, 11

*Gallerson v. BNSF Ry. Co.*,
    No. C15-5821, 2016 WL 772926 (W.D. Wash. Feb. 29, 2016) ..................................4

*Green v. Fed. Express Corp.*,
    614 F. App'x. 905 (9th Cir. 2015) ...............................................................................6

*Hawaiian Airlines, Inc. v. Norris*,
    512 U.S. 246 (1994) ......................................................................................................9

*Knieval v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ......................................................................................4

*Krusi v. Bear, Stearns & Co*,
    144 Cal. App. 3d 664 (1983) ........................................................................................7

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014) ........................................................................................6

*Lu v. Hawaiian Gardens Casino, Inc.*,
    50 Cal. 4th 592 (2010) ..................................................................................................7

*McKinley v. Sw. Airlines Co.*,
    No. CV 15-02939, 2015 WL 2431644 (C.D. Cal. May 19, 2015), *aff'd*, No. 15-
    56010, 2017 WL 676597 (9th Cir. Feb. 21, 2017) (unpublished) .............................11

*Montalvo v. Spirit Airlines*,
    508 F.3d 464 (9th Cir. 2007)..............................................................................8, 13, 14

*Plotnik v. Meihaus*,
    208 Cal. App. 4th 1590 (2012)......................................................................................7

*Pub. Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACORP Inc.*,
    379 F.3d 641 (9th Cir. 1004) ......................................................................................15

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008) ....................................................................................................13

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004)......................................................................................4

*Saridakis v. United Airlines*,
  166 F.3d 1272 (9th Cir. 1999).................................................................................9

*See's Candy Shops, Inc. v. Superior Court*,
  210 Cal. App. 4th 889 (2012)................................................................................5

*Thurman v. Bayshore Transit Mgmt., Inc.*,
  203 Cal. App. 4th 1112 (2012)...............................................................................7

*Ventress v. Japan Airlines*,
  747 F.3d 716 (9th Cir. 2014).................................................................................15

**STATUTES**

Airline Deregulation Act, 49 U.S.C. § 1301, *et seq.*.........................................2, 12, 13

California Code of Civil Procedure § 340.....................................................................6

California Labor Code § 512........................................................................................12

California's Unfair Competition Law, California Business and Professions Code §
  17200 *et seq.* .......................................................................................................3, 11

Federal Aviation Act, 49 U.S.C. § 40101 *et seq.* ........................................................14

Railway Labor Act, 45 U.S.C. § 151 *et seq.* ...................................................... passim

**OTHER AUTHORITIES**

Rule 11 of Federal Rules of Civil Procedure ...............................................................1

Rule 12 of the Federal Rules of Civil Procedure Rule 12(b)(6) ............................ passim

San Francisco Airport's Quality Service Program................................................ passim

San Francisco Minimum Compensation Ordinance, S.F. Admin Code § 12 ........ passim

Wage Order 9 ........................................................................................................1, 5, 10

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 7, 2017 at 10:00 a.m. in Courtroom 11, 19th floor of the above Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable James Donato presiding, Defendants SkyWest, Inc. and SkyWest Airlines, Inc. ("SkyWest"), will and hereby do move this Court for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the claims against them.

The Motion under Rule 12(b)(6) is made on the grounds that:

(i)  Plaintiff's shift trade overtime theory in Claims Three through Six fails as a matter of law because SkyWest's shift trade policy is expressly allowed under Wage Order 9-2001(3)(N);

(ii)  Plaintiff's off-schedule theory in Claims One and Three through Six fails because Plaintiff fails to state a claim upon which relief may be granted;

(iii)  Claim Four is barred by the statute of limitations;

(iv)  Plaintiff lacks standing to bring Claim Seven; and

(v)  Plaintiff's Claim Seven must also be dismissed under the doctrine of waiver.

The Motion under Rule 12(b)(1) is made on the grounds that:

(i)  Plaintiff's off-schedule theory in Claims One and Three through Six is preempted by the Railway Labor Act ("RLA");

(ii)  Plaintiff's claim for overtime (Claim Three) is preempted by the RLA, as are Claims Four, Five, and Six to the extent that they are predicated on Claim Three;

(iii)  Claim Seven is preempted by the RLA;

(iv)  Plaintiff's meal period claim (Claim Two) is preempted by the Airline Deregulation Act ("ADA"), as are claims One, Three, Four, Five, and Six to the extent that they are predicated on Labor Code Section 512; and

(v)  Claims Two and Seven are subject to field preemption.

The Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the Request for Judicial Notice filed concurrently

1  herewith, all of the papers on file in this action, and upon such other and further evidence or

2  argument that the Court may consider.

3  DATED:  July 17, 2017                    JONES DAY

                                           By:    /s/ Amanda C. Sommerfeld
4                                                  Amanda C. Sommerfeld

5
                                           Counsel for Defendants
6                                          SKYWEST, INC. and SKYWEST AIRLINES, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### I.     INTRODUCTION

2          Plaintiff Cody Meek ("Plaintiff") is a former ramp agent for defendant SkyWest Airlines,

3    Inc. ("SkyWest") who worked at the San Francisco International Airport ("SFO"). In his

4    Amended Complaint, he continues to challenge the following alleged practices: 1) the use of

5    "alternative workweeks," 2) the airline industry's standard practice allowing employees to "shift

6    trade" with one another for personal reasons, without incurring overtime, and 3) the alleged

7    practice of paying to a schedule, with exception reporting allowing for additional pay for off-

8    schedule work. Plaintiff's stated Claims are limited to a minimum wage claim (Claim One), a

9    meal break claim (Claim Two), an overtime claim (Claim Three), a wage statement claim (Count

10   Four), an unfair business practices claim (Count Five), a waiting time claim (Claim Six), and a

11   claim for failure to pay the minimum wage under San Francisco local minimum wage ordinances

12   (Claim Seven). Plaintiff's allegations remain insufficient on a number of grounds.

13          First, the shift trades on which Plaintiff bases Claim Three are expressly permitted under

14   Wage Order 9. Thus, to the extent Claim Three and derivative Claims Four through Six are

15   premised on unpaid overtime arising out of shift trades, they are subject to dismissal under Rule

16   12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").  Second, in Claims One and

17   Three, Plaintiff continues to attack the alleged practice of paying to a schedule, whereby

18   employees must separately report hours worked beyond their scheduled shift for payment. As

19   SkyWest explained in its original Motion to Dismiss, however, Plaintiff fails to state a plausible

20   claim based on this "off-schedule" theory because the practice is not unlawful on its face.

21   Plaintiff's Amended Complaint ("AC"), like his original Complaint, fails to allege that he

22   followed the process for reporting off-schedule work and was nonetheless denied wages for the

23   work reported. *See* Defendants SkyWest, Inc. and SkyWest Airline, Inc.'s Motion to Dismiss

24   ("MTD") at pp. 5-7 (Dkt. No. 35). That Plaintiff's amendment failed to correct this deficiency

25   indicates he is incapable of stating a viable claim based on this theory, and its dismissal should

26   be with prejudice.  Third, SkyWest's original MTD also explained that Plaintiff's wage

27   statement claim (Claim Four) is barred by the statute of limitations and that he lacked standing to

28   assert his claim under San Francisco's Minimum Compensation Ordinance (MCO) and San

Francisco Airport's Quality Service Program (QSP) (Claim Seven). MTD at pp. 7-9. But Plaintiff's attempt to save his wage statement claim (Claim Four) with conclusory allegations of actual injury is insufficient, and he made no attempt at all to address SkyWest's standing argument. Accordingly, these claims should also be dismissed with prejudice.

In addition to these previously identified shortcomings, the allegations in Plaintiff's AC make clear that, as a result of the extensive federal law regulating the airline industry, his claims are preempted by the Railway Labor Act ("RLA"), Airline Deregulation Act ("ADA"), and field preemption, and subject to dismissal on those additional grounds under Rule 12(b)(1).

## II.   BACKGROUND

### A.   The Complaint and Plaintiff's Exhibit 1 Reveal the Parties are Subject to a CBA

Plaintiff alleges that he was employed by SkyWest as a ramp agent at SFO from April 2013 to June 2015. AC ¶ 13. He admits that, while employed by SkyWest, his wages, hours, and working conditions were governed by the Customer Service Policy Manual (hereinafter the "CBA"), excerpts of which he attached to the AC as Exhibit 1. *Id.* ¶¶ 2, 21-22, 38, 40, 43, Ex. 1. As reflected in Exhibit 1, the CBA is a "binding agreement between [SkyWest] and the SkyWest Airlines Frontline Association (SAFA)" governed by the Railway Labor Act ("RLA"), and "[SkyWest] recognizes SAFA as the only collective bargaining unit of SkyWest Airlines' Customer Service department." *Id.*, Ex. 1 at p. 10, 17. The employees of SkyWest's Customer Service Department, also referred to as "frontline agents," include ramp agents. AC ¶ 2.

### B.   Plaintiff's Alleged Claims and Underlying Theories

Though he elected to amend his Complaint in response to SkyWest's Motion to Dismiss, Plaintiff's AC remains flawed. Plaintiff now asserts claims only for a failure to pay minimum wages (Claim One), a failure to pay premium pay for missed meal breaks (Claim Two), a failure to pay overtime (Claim Three), a failure to provide itemized wage statements (Claim Four), a violation of California's Unfair Competition Law ("UCL") (Claim Five), a failure to pay waiting time penalties (Claim Six), and a failure to pay minimum wages in violation of San Francisco's MCO (Claim Seven). He also alleges in passing that he worked under an "alternative workweek schedule," but provides no detail whatsoever regarding the details of any alternative workweek

DEFS.' MOTION TO DISMISS AC
Case No. 3:17-cv-01012-JD

1    policies, or how those policies caused independent or additional violations of California law. *See*

2    AC ¶¶ 44, 107.

3         With respect to Claim One, Plaintiff admits that, at all times, he was paid at least $12.35

4    an hour while the California minimum wage during his employment was only $9.00. *Id.* ¶ 57.

5    His minimum wage claim is based on allegations that he was not paid for all hours worked

6    because work performed pre- and post-shift and during meal breaks was not *automatically* paid,

7    referred to hereinafter as his "off-schedule theory." *Id.* ¶¶ 21-29, 86-95. Claim Three is based, in

8    part, on this same off-schedule theory and, in part, on Plaintiff's allegations that he was not paid

9    at an overtime rate for time worked as a result of shift-trades, referred to hereinafter as his "shift-

10   trade theory." *Id.* ¶¶ 21-29, 42-47, 105-111.

11        Other than the allegations underlying Claims One, Two, and Three, Plaintiff does not

12   allege that Plaintiff's final pay was late or his wage statements were inadequate. Rather, Claims

13   Four and Six are entirely derivative of Claim One. *See id.* ¶¶ 48-50, 112-117, 126-129. Similarly,

14   Claim Five is premised on the theory that the conduct from which the remaining claims arise

15   constitutes "unfair and unlawful" practices under the UCL. *Id.* ¶¶ 118-125.

16        With respect to Claim Seven, Plaintiff alleges that, as an employee at SFO, he was

17   subject to San Francisco's MCO, and was a "covered employee" under the QSP enacted by the

18   San Francisco Airport Commission ("SFAC"). *Id.* ¶¶ 58-59. The MCO sets a minimum hourly

19   rate for employees of city contractors and subcontractors, including employers with contracts for

20   exclusive use of real property under SFAC's jurisdiction. S.F. Admin Code § 12.P.4. The QSP is

21   a program that purports to increase the MCO minimum wage by $0.50 for certain airport

22   employees. *See generally* QSP (March 1, 2016), *available at* http://media.flysfo.com/media/

23   Quality-Standards-Program-2016.pdf.

24              **III.    STANDARD OF REVIEW**

25        Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true,

26   to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

27   (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

28   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

1    inference that the defendant is liable for the misconduct alleged." *Id.* Mere conclusory statements

2    – such as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

3    action'" – are insufficient. *Id.* In addition, where, as here, a plaintiff has specifically referenced a

4    contract or document in his complaint, and fails to include the entirety of the document, it may

5    be supplied by the defendant, without converting the motion to dismiss into a motion for

6    summary judgment. *Knieval v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Angeles v. U.S.*

7    *Airways, Inc.*, No. 12-05860, 2013 WL 622032, at *3 (N.D. Cal. Feb. 19, 2013). Each of

8    Plaintiff's claims fails to state a coherent and plausible claim upon which relief may be granted

9    and the AC should be dismissed.

10          Under Rule 12(b)(1), claims are subject to dismissal for lack of subject matter jurisdiction.

11   A jurisdictional attack may be facial or factual and, when resolving a factual attack, the court

12   "may review evidence beyond the complaint without converting the motion to dismiss into a

13   motion for summary judgment." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

14   Cir. 2004). Though a motion under Rule 12(b)(1) is brought by the defendant, plaintiff "bears the

15   burden of establishing subject matter jurisdiction." *Angeles*, 2013 WL 622032, at *3. As

16   explained further below, Plaintiff cannot satisfy his burden because his claims are preempted by

17   federal law. *See Chrisanthis v. United States*, --- F.3d ----, 2017 WL 1031361, at *1 (9th Cir.

18   Mar. 17, 2017) (finding plaintiffs' claims were preempted by federal law and affirming dismissal

19   under 12(b)(1)); *Gallerson v. BNSF Ry. Co.*, No. C15-5821, 2016 WL 772926, at *2, n.1 (W.D.

20   Wash. Feb. 29, 2016) (RLA preemption argument "concern[ed] the lack of subject matter

21   jurisdiction," and it "should be analyzed under Rule 12(b)(1)").

## IV.    ARGUMENT

### A.    Plaintiff's Claims Are Insufficiently Pled and Fail Under Rule 12(b)(6)

24         Each of Plaintiff's claims must be dismissed because it either fails to state a plausible

25   claim for relief, or, as alleged, fails as a matter of law.

#### 1.    <u>Plaintiff's Shift Trade Theory in Claim Three Fails Because He Was Exempt From Overtime Under Wage Order 9</u>

28         As a matter of settled law, Wage Order 9 expressly exempts airlines from overtime pay

for time worked as a result of voluntary shift trades. Cal. Code Regs. tit. 8 § 11090(3)(N); *Blackwell v. SkyWest Airlines, Inc.*, No. 06-CV-0307, 2008 WL 5103195, at *13 (S.D. Cal. Dec. 3, 2008) (attempt to base overtime claim on SkyWest's failure to pay overtime for work during "shift-trades" barred by Wage Order 9's exemption). Accordingly, to the extent Claim Three is premised on Plaintiff's shift trade theory, it must be dismissed. To the extent Claims Four through Six are premised on Plaintiff's shift trade theory, they fail for the same reason.

### 2.   Plaintiff's Off-Schedule Theory Must Be Dismissed Because He Fails to Allege that He Reported Off-The-Clock Time and Was Denied Payment

To the extent Claims One, Two and Three are premised on alleged off-schedule work – including pre- and post-shift work and missed or short meal breaks – the CBA provides a process for such time to be compensated. AC ¶¶ 21-29 (Agents are compensated for pre- and post-shift work and short or missed meal breaks with supervisor approval).

As SkyWest explained in its initial MTD, California law permits employers to require employees to take extra steps to report, and receive compensation for, additional time worked outside of scheduled shifts. MTD at p. 6 (citing *Porch v. Masterfoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1066-67 (C.D. Cal. 2008) (dismissing plaintiff's overtime claim where he did not allege he worked *and reported* overtime, despite policy allowing him to do so); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007) (same); *Jong v. Kaiser Found. Health Plan, Inc.*, 226 Cal. App. 4th 391, 399 (2014) (employer not liable for unpaid off-the-clock work where employee never reported work to employer despite policy requiring employees to do so)). Nor is there anything inherently improper about a policy that allows employees to clock in shortly before their shift, but does not require them to begin work until their shift begins. *See, e.g.*, *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 909 (2012) (grace period policy similar to SkyWest's alleged early clock in policy did not amount to a *per se* violation, but rather "raise[d] factual questions involving whether the employee was in fact working and/or whether the employee was under the employer's control during the grace period"); *Angeles*, 2017 WL 587658, at *3 (no liability for unpaid time under grace period policy where employees used uncompensated pre-shift time for personal activities); *see also Green v. Fed. Express Corp.*, 614

DEFS.' MOTION TO DISMISS AC
Case No. 3:17-cv-01012-JD

F. App'x. 905 (9th Cir. 2015) (applying federal law). In neither his original nor his AC does Plaintiff allege any detail regarding the alleged policy or its implementation that might be sufficient to distinguish it from the permissible policies in any of the cited cases. The alleged practice simply does not violate the law.

As SkyWest has also previously pointed out, Plaintiff's Complaint was conspicuously lacking allegations that he sought approval for any of his allegedly uncompensated work, let alone that he did so and was refused payment. *See* MTD at p. 7. Without such allegations, even taking Plaintiff's Complaint at face value, he has not alleged a viable claim for uncompensated time. *Id.* (citing *Forrester v. Roth's I. G. A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir. 1981) (noting that under the FLSA, "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer…the employer's failure to pay for the overtime hours is not a violation"); *White,* 497 F. Supp. 2d at 1083 ("To prevail on his off-the-clock claim, [employee] must prove [employer] had actual or constructive knowledge of his alleged off-the-clock work."); *Jong,* 226 Cal. App. 4th at 399 (no liability for unpaid time where employee failed to report such time)).

Despite being on notice of this deficiency, Plaintiff failed to correct it when he amended his Complaint rather than opposing SkyWest's Motion.[1] As a result, to the extent they are based on allegedly uncompensated off-schedule work, Claims One to Six remain subject to dismissal. And, as it appears Plaintiff cannot amend his off-schedule theory to correct this deficiency, dismissal should be with prejudice. *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014).

### 3.   Plaintiff's Wage Statement Claim is Time-Barred

In its initial motion to dismiss, SkyWest asserted that Plaintiff's derivative claim for inaccurate wage statements is barred by the one-year statute of limitations provided by California Code of Civil Procedure § 340. In an apparent effort to avoid this barrier, Plaintiff now alleges that he suffered unspecified "actual injuries" as a result of SkyWest's failure to provide accurate

---

[1] Nor could Plaintiff amend to allege he requested and was denied payment, without his counsel violating Rule 11 of the Federal Rules of Civil Procedure. This is because SkyWest voluntarily provided counsel with Plaintiff's time and pay records, which confirm Plaintiff was paid, not to his schedule, but for every minute reflected on his time clock records.

DEFS.' MOTION TO DISMISS AC
Case No. 3:17-cv-01012-JD

1    and complete wage statements and seeks to recover not only statutory penalties – subject to the

2    one-year statute of limitations – but also "actual damages." AC ¶¶ 115, 117. But the only actual

3    damages he identifies are the "lost 'off the clock' wages and interest on wages not timely paid,"

4    *id.* ¶ 117, which do not constitute a separate actual injury caused by SkyWest's wage statements

5    but rather the same damages Plaintiff seeks to recover under Claims One, Two, and Three, which

6    cannot be recovered twice. *See Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1612 (2012)

7    ("Double or duplicative recovery for the same items of damage amounts to overcompensation

8    and is therefore prohibited."); *see also Krusi v. Bear, Stearns & Co*, 144 Cal. App. 3d 664, 673

9    (1983) (prohibiting "double recovery for the same wrong"); *Board of Admin. v. Glover*, 34 Cal.

10   3d 906, 915-16 (1983) ("duplicate recovery of damages is barred"). Thus, Plaintiff's wage

11   statement claim is a purely derivative claim on which he can recover only statutory penalties. As

12   such, it remains time barred and must be dismissed.

13           **4.        Plaintiff Lacks Standing to Assert Claims Under the MCO and the QSP**

14           As previously explained in SkyWest's MTD, California courts are clear that not every

15   violation of a statute "necessarily give[s] rise to a private cause of action." *Lu v. Hawaiian*

16   *Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (2010). "Instead, whether a party has a right to sue

17   depends on whether the Legislature has 'manifested an intent to create such a private cause of

18   action' under the statute." *Id.* (quoting *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d

19   287, 305 (1988)). A private right of action exists only if statutory language or legislative history

20   affirmatively indicates an intent to create such a right, which need not necessarily be expressed

21   explicitly, but must at least be "strongly implied." *Thurman v. Bayshore Transit Mgmt., Inc.*, 203

22   Cal. App. 4th 1112, 1132 (2012).

23           Neither the MCO nor the QSP expressly provide for a private right of action. The MCO,

24   instead, requires that individual employees, as third-party beneficiaries, must exhaust an

25   administrative review process before bringing suit for their employer's breach. MCO § 12P.6(d).

26   Here, despite that SkyWest identified the MCO's exhaustion requirement in its Motion to

27   Dismiss, Plaintiff still has not pled exhaustion and, thus, has no standing to sue under the MCO.

28           The QSP, in turn, does not discuss any individual employees' rights to sue for violations,

but instead allows that, upon "receipt of any notice of non-compliance with the Program," the *Airport itself* may "exercise all remedies available to it, including but not limited to…restitution for employee back pay." QSP § VI(D). This strongly suggests that the QSP does not create a private right of action. First, it authorizes the Airport to recover wages owed to employees, which it specifically refers to as restitution, while making no reference at all to the right of the employees themselves to recover those same wages. Second, though the SFAC was clearly aware of the MCO when it drafted the QSP, it failed to include any third-party beneficiary language such as was included in the MCO, or any administrative procedure pursuant to which employees can report and pursue alleged violations of the QSP. That the SFAC chose not to include any such provisions, and assigned to the Airport the sole right to seek remedies, it seems clear that the SFAC did not intend to create a private right of action.

Plaintiff still cannot assert a claim under either the QSP or the MCO, and the Court should dismiss with prejudice Plaintiff's Claim Seven for lack of standing.

**B.     Plaintiff's Claims Are Preempted by Federal Law and Must Be Dismissed Under Rule 12(b)(1)**

Because the airline industry is so heavily regulated at the federal level, there are numerous limits on the application of state and local regulations to air carriers. *See Montalvo v. Spirit Airlines*, 508 F.3d 464, 471 (9th Cir. 2007) ("regulation of this country's airspace has 'a history of significant federal presence'" (citation omitted)); *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 638-39 (1097) (regulation of the aviation industry requires "a delicate balance between safety and efficiency" that led to Congressional enactment of "a uniform and exclusive system of federal regulation"). Though Plaintiff has endeavored to skirt those limits by resorting to ambiguous pleading, he has failed to disguise his claims enough to avoid preemption.

**1.      Claims One through Six are Preempted by the RLA Because Resolution Would Require the Court to Interpret the Parties' CBA**

"Congress enacted the RLA to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999) (citation, quotation marks omitted); *see also* 45 U.S.C. §

1    151a (the purposes of the RLA include providing for "the prompt and orderly settlement of all

2    disputes concerning rates of pay, rules, or working conditions [and] of all disputes growing out

3    of grievances or out of the interpretation or application of agreements covering rates of pay, rules,

4    or working conditions"). That framework requires employees and carriers to attempt to resolve

5    disputes involving the interpretation or application of "'agreements concerning rates of pay, rules,

6    or working conditions…in the usual manner up to and including the chief operating officer of the

7    carrier designated to handle such disputes.'" *Bhd. of R. R. Trainmen v. Chicago R. & I. R. Co.*,

8    353 U.S. 30, 33 (1957) (quoting 45 U.S.C. § 153). "[W]here the resolution of a state-law claim

9    depends on an interpretation of the CBA, the claim is pre-empted." *Hawaiian Airlines, Inc. v.*

10   *Norris*, 512 U.S. 246, 261 (1994).

11                    **(a)     Plaintiff's Off-Schedule Theory Requires Interpretation of the CBA**

12              With respect to his allegations that work performed outside of his regular schedule was

13   not *automatically* approved, the categories of time Plaintiff identifies as uncompensated are

14   instances when he had to work through meal breaks, when he clocked in a few minutes before

15   his shift began, and when his shift was extended to include "additional time not originally

16   required." AC ¶¶ 68-71, 73. He admits, however, that the CBA provides a procedure pursuant to

17   which he could have requested payment for such time, and fails to allege that he followed that

18   procedure and his supervisor wrongfully denied his request.

19              Plaintiff's claim squarely challenges the legality of the reporting mechanism set forth in

20   the CBA, and his claim thus requires interpretation of the CBA and is preempted. *Saridakis*, 166

21   F.3d at 1278 (claim requiring a court to evaluate the nature of a CBA provision is preempted by

22   the RLA); *Blackwell*, 2008 WL 5103195, at *13 (overtime claim preempted where CBA

23   provided "overtime applies to hours worked in 'excess of eight hours a day, unless an employee

24   is working an approved alternative workweek,'" because court would have to interpret the

25   meaning of the term "approved alternative workweek"); *Fitz-Gerald v. SkyWest Airlines, Inc.*,

26   155 Cal. App. 4th 411, 423 (2007) (resolution of meal and rest break claims required

27   interpretation of CBA because CBA limited when employees could take breaks). His off-

28   schedule theory is thus preempted by the RLA, and SkyWest's motion should be granted.

1

      **(b)**      **Plaintiff's First and Third Claims Require Interpretation of the CBA**

2

            **to Ascertain the Regular Rate**

3

      As discussed *infra* A.1, Plaintiff's overtime claim (as it relates to shift trades) fails on its

4

face because airlines are exempt from overtime under Wage Order 9. Even if the claim was not

5

deficient on its face, it would still be barred because resolution would require the Court to

6

interpret and analyze CBA provisions addressing how "hours of work" are paid, as well as the

7

"regular rate of pay."

8

      For example, Plaintiff complains that work beyond 8 hours in a day was not properly

9

compensated under "California's wages [sic] laws," and that he was not properly paid for

10

"double shifts." AC ¶¶ 70, 71. But, as already held by another federal court, determining a ramp

11

agent's regular rate of pay is far from obvious – particularly when the rate of pay changes based

12

on the hours he has worked, and Plaintiff alleges those hours were under-reported. *See Blackwell*,

13

2008 WL 5103195, at *12. Pay "categories" and "steps" are defined terms that set the base "pay

14

scale" for ramp agents. Ex. 1 at pp. 24-25. Then, certain agents receive specific "overrides"

15

based on types of assignment, and, in some cases, while doing certain tasks (*e.g.*, attending a

16

CST Conference or "actively training" others). An employee's step level also increases based on

17

the accumulation of hours worked – meaning that Plaintiff's off-schedule theory directly

18

implicates the pay rate. The CBA also defines when pay rate changes are "effective" and how

19

pay is affected by "transfers" from other SkyWest departments or affiliate airlines. *Id.* at 26.

20

      Adjudication of Plaintiff's off-schedule (Claim One) and overtime (Claim Three) theories

21

will require interpretation and application of all these provisions. The allegations regarding

22

"double shifts" will require further interpretation and construction of complex CBA rules

23

dictating when shift adjustments or shift trades are – or are not – eligible for overtime premium

24

pay. *Id.* at 38. Indeed, one court examining some of these provisions in the same CBA held that

25

determining whether the CBA's overtime provisions comply with California's Labor Code

26

would require interpretation of the CBA to determine, at a minimum, the "regular rate of

27

compensation," which is a question that "no [] court would have jurisdiction to determine."

28

*Blackwell*, 2008 WL 5103195, at *10; *see also Fitz-Gerald*, 155 Cal. App. 4th at 421 (courts

1   "could not determine the regular rate of compensation without interpreting the CBA" where

2   CBA provided a range of hourly rates applicable in various circumstances); *McKinley v. Sw.*

3   *Airlines Co.*, No. CV 15-02939, 2015 WL 2431644, at *8 (C.D. Cal. May 19, 2015) (RLA

4   preemption of overtime claim where determining regular rate of pay "involve[d] many different

5   CBA provisions"), *aff'd*, No. 15-56010, 2017 WL 676597 (9th Cir. Feb. 21, 2017) (unpublished).

6        Thus, the Court lacks jurisdiction to hear Plaintiff's off-schedule and overtime theories,

7   and his Claims based on these theories must be dismissed. Moreover, because Plaintiff's waiting

8   time, wage statement, and UCL claims are all predicated on these preempted (and deficient)

9   wage claims, those claims must also be dismissed. *See Fitz-Gerald*, 155 Cal. App. 4th at 411

10  (dismissing claims for waiting time penalties and violation of the UCL where they were

11  predicated on claims preempted by the RLA); *Angeles*, 2017 WL 565006, at *4 (dismissing

12  waiting time, UCL, and wage statement claims predicated on claim preempted by the RLA).

13       **2.     Plaintiff's Local Minimum Wage Claim Is Also Preempted by the RLA**

14       In addition to his state minimum wage claim, Plaintiff brings a claim under San

15  Francisco's MCO and QSP alleging that he was entitled to hourly wage rates of $12.93 in 2013,

16  $13.16 in 2014, and $13.52 in 2015, but was never paid at a rate over $12.50. AC ¶ 62. As

17  explained below, *infra* A.4, Plaintiff lacks standing to bring this claim. Even if this were not the

18  case, though, his claim would still be preempted by the RLA and subject to dismissal.

19       First, the QSP impermissibly limits the collective bargaining process by requiring that

20  any agreement between air carriers and airport workers provide a wage rate "at least equal to the

21  QSP compensation rate." QSP § IV. While the RLA does not preempt "local laws that…impose

22  substantive requirements while permitting employers and unions to bargain around them," *Calop*

23  *Bus. Sys., Inc. v. City of L.A.*, 614 F. App'x 867, 870 (9th Cir. 2015), a law that does not allow

24  for waiver "dictates the outcome" of the collective bargaining process, "frustrate[s] the purpose

25  of the RLA," and is thus preempted. *See Calop Bus. Sys., Inc. v. City of L.A.*, 984 F. Supp. 2d

26  981, 1009 (C.D. Cal. 2013) (local minimum wage ordinance not preempted because it allowed

27  for waiver) , *aff'd in pertinent part*, 614 F. Appx. 867, 870 (9th Cir. 2015); *see also Bechtel*

28  *Const., Inc. v. United Bhd. of Carpenters & Joiners of Am.*, 812 F.2d 1220, 1225 (9th Cir. 1987)

1   (attempt to enforce state wage standards against collectively-bargained lower wage rate was

2   preempted by NLRA); *Chamber of Commerce of U.S. v. Bragdon*, 64 F.3d 497, 504 (9th Cir.

3   1995) (local living wage ordinance applicable to contractors on public works projects was

4   preempted by the NLRA).[2] Because the QSP purports to dictate wages and does not allow

5   employees and unions to bargain to waive its requirements, it is therefore preempted.

6           While the MCO, which allows employers and unions to waive its requirements (*see* S.F.

7   Admin. Code § 12P.10), is not vulnerable to the same preemption argument, Plaintiff's claim

8   still fails because SkyWest and SAFA took advantage of that waiver option in December 2012,

9   when they entered into a CBA Addendum waiving application of local minimum wage

10  ordinances. Tate Decl. Ex. C. Thus, Claim Seven must be dismissed on its face pursuant to Rule

11  12(b)(6). Moreover, even if the Court were to determine Plaintiff's claim is plausible on its face

12  despite the waiver, the claim remains preempted because any determination of Plaintiff's hourly

13  rate will require application and interpretation of the CBA, as discussed above, in the context of

14  the first form of RLA preemption. *See, supra* B.1(b).

15          **3.      The ADA Preempts Claims One through Six To The Extent They Arise From**

16                   **Missed Meal Breaks**

17          Plaintiff's Second Claim for "missed" and "short" meal breaks, brought under Labor

18  Code Section 512, is preempted by § 41713(b)(1) of the Airline Deregulation Act ("ADA"). The

19  ADA prohibits states from "enact[ing] or enforce[ing] a law, rule, regulation, or other provision

20  having the force and effect of law related to a price, route, or service of an air carrier," and was

21  enacted to prevent states from "undo[ing] federal deregulation with regulation of their own." *See*

22  *Charas v. TransWorld Airlines, Inc.*, 160 F.3d 1259, 1262 (9th Cir. 1998). The resulting ADA

23  preemption applies to "[s]tate enforcement actions having a connection with, or reference to

24  carrier rates, routes or services…even if a state law's effect on rates, routes or services is 'only

25  indirect.'" *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008).

26  _____

[2] This is a separate form of RLA preemption than that which applies to bar claims that would
require interpretation of a CBA; this form of preemption bars application of laws that would

27  frustrate the purpose of the RLA and dictate collective bargaining outcomes. *See Calop Bus. Sys.
Inc.*, 984 F. Supp. 2d at 1009-1010 (discussing three situations in which RLA preemption applies).

28

DEFS.' MOTION TO DISMISS AC
Case No. 3:17-cv-01012-JD

"Services" protected from state interference include "schedules, origins and destinations of the point-to-point transportation of passengers [and] cargo." *Charas*, 160 F.3d at 1261. Prior courts have confirmed that the airline agents Plaintiff seeks to represent provide "services" under the ADA because their job duties include "marshaling flights into boarding gates, inspecting and documenting damage to aircraft, and coordinating activity between Air Traffic Control, aircraft, and [other] Agents." *Blackwell*, 2008 WL 5103195, at *17. Plaintiff's meal break claims are thus ADA preempted because "interruption of Agent activities to accommodate state rest and meal periods could significantly and impermissibly impact…air carrier service." *Id.*; *see also, Angeles*, 2013 WL 622032, at *8-9 (dismissing ADA preempted meal break claims with prejudice).

Here, Plaintiff alleges that, as a ramp agent, he is required to "load[] and unload[] baggage, cargo, and pets," "push back the aircraft, de-ice planes when necessary, and [perform] other duties associated with preparing the aircraft to transport passengers." AC ¶ 20. His job tasks are thus intimately connected to the "services" the ADA protects from state and local interference. Moreover, Plaintiff admits the "missed meal breaks" on which his claims are based are missed "due [to] incoming or outgoing flights." *Id.* ¶ 68. In light of such allegations, there is no doubt that, just as was the case with the same putative class of SkyWest agents in *Blackwell*, application of California's meal break laws to ramp agents like Plaintiff could have a significant, and impermissible, impact on point-to-point air carrier service. Accordingly, to the extent Plaintiff's minimum wage, overtime, and derivative claims arise from unpaid missed meal periods, they are preempted by the ADA and must be dismissed.

### 4. Extensive Regulation of the Airline Industry Results in Field Preemption, Barring Claims Two and Seven

"It is well-established that Congress has the power to preempt state law." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007). Whether a federal statute has preemptive effect is ultimately a question of Congressional intent, which may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Implied preemption comes in two forms: conflict preemption and field preemption. Relevant here, field preemption exists when Congress, in some

DEFS.' MOTION TO DISMISS AC
Case No. 3:17-cv-01012-JD

manner, has indicated an intent to occupy a given field to the exclusion of state law. *Id.*

In passing the Federal Aviation Act ("FAA"), 49 U.S.C. § 40101 *et seq.*, Congress noted the aviation industry is unique in that its "operations are conducted almost wholly within federal jurisdiction, and are subject to little or no regulation by States or local authorities." *Big Stone Broad., Inc. v. Lindbloom*, 161 F.Supp.2d 1009, 1017 (D.S.D. 2001) (quoting S.Rep. No. 85-1811, at 5 (1958)). The FAA does not contain express preemptive language, but courts recognize it reflects Congress's intent to exercise exclusive federal authority over the aviation industry by "creat[ing] and enforce[ing] one unified system of flight rules." *Montalvo*, 508 F.3d at 471. Quite specifically, "[t]he purpose, history, and language of the FAA" express clear Congressional intent to occupy the field of aviation safety, both in the air and on the ground. *Id.* at 468 (Act "preempts the entire field of aviation safety through implied field preemption").

Plaintiff admits ramp agents are "directly engaged in activities that ha[ve] an impact on safety within [SFO's] AOA [Airfield Operations Area]." AC ¶ 66; *see also id.* ¶ 59 (ramp agents work in SFO's AOA or are "directly involved in…security and/or safety"). Unsurprisingly given the key safety role agents play, many federal regulations impact their staffing, hours, and job performance, including regulations limiting their ability to stop working or take breaks during certain phases of loading and unloading an aircraft. *Blackwell*, 2008 WL 5103195, at *14 ("federal aviation safety and security regulations" impacted SkyWest's ramp agents' breaks).

Plaintiff's allegations make clear his meal period claim is based on policies in place to assure compliance with airline safety regulations. As such, it arises in an area subject to exclusive federal regulation. For example, Plaintiff complains he was not paid minimum wage for all hours worked because SkyWest did not provide full and timely "meal breaks" "due [to] incoming or outgoing flights." AC ¶ 68. Because resolution of this claim will require the Court to pass judgment on Plaintiff's allegations that flight arrivals and departures required him to work unapproved and uncompensated time, resolution of the claim will require the court to "intrude in the area of" airline regulations. Where resolution of a state law claim requires a court to resolve preempted questions, the state law claim is preempted. *See Ventress v. Japan Airlines*, 747 F.3d 716, 720 (9th Cir. 2014). Plaintiff's other claims are similarly preempted to the extent

1    that they are derivative of his meal period claim.

2           Claim Seven fares no better. This claim is based on SFO's QSP, which was enacted to "to

3    enhance safety and security at San Francisco International Airport." QSP at 1. Such local efforts

4    to intrude on federally occupied fields are preempted. It does not matter if the QSP's provisions

5    complement or conflict with federal safety regulations. Field preemption, unlike conflict

6    preemption, bars any state or local provisions that attempt to regulate the preempted arena, even

7    if those provisions would only "supplement" federal efforts. *Id.* at 722-23; *see also Pub. Util.*

8    *Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACORP Inc.*, 379 F.3d 641, 647 (9th Cir. 1004)

9    (field preemption leaves "no room for supplementary regulation by the states").

10                              **V.    CONCLUSION**

11          For the reasons stated above, the Amended Complaint should be entirely dismissed with

12   prejudice.

13

14   Dated: July 17, 2017                    Respectfully submitted,

15                                           JONES DAY

16

17                                           By: */s/ Amanda C. Sommerfeld*
                                                 Amanda C. Sommerfeld
18
                                             Counsel for Defendants
19                                           SKYWEST, INC. and SKYWEST AIRLINES,
                                             INC.
20

21   NAI-1502807213v8

22

23

24

25

26

27

28

DEFS.' MOTION TO DISMISS AC
Case No. 3:17-cv-01012-JD