Amanda C. Sommerfeld (SBN 185052)
asommerfeld@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone:    +1.213.489.3939
Facsimile:    +1.213.243.2539

Scott Morrison (SBN 320167)
scottmorrison@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone:    +1.858.314.1189
Facsimile:    +1.844.345.3178

Patricia T. Stambelos (SBN 166998)
patricia@patriciastambelos.com
STAMBELOS LAW OFFICE
543 Country Club Drive, Suite B209
Simi Valley, CA  93065
Telephone:    +1.805.578.3474
Facsimile:    +1.805.994.0199

Attorneys for Defendants
SKYWEST, INC. AND SKYWEST
AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CODY MEEK, *et al.*,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SKYWEST, INC. and SKYWEST AIRLINES, INC.,<br><br>　　　　　Defendants. | Case No. 3:17-cv-01012-JD<br><br>**DEFENDANTS SKYWEST, INC. AND SKYWEST AIRLINES, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　　　December 6, 2018<br>Time:　　　　10:00 a.m.<br>Judge:　　　 Hon. James Donato<br>Courtroom:　11, 19th Floor |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii
INTRODUCTION ................................................................................................................... 2
STATEMENT OF FACTS ...................................................................................................... 3
    A.    The Parties .................................................................................................. 3
    B.    SkyWest's Collective Bargaining Agreement With SAFA ................................. 4
    C.    Prior Proceedings ....................................................................................... 5
ARGUMENT ......................................................................................................................... 6
I.    MEEK WAS COVERED BY A COLLECTIVE BARGAINING AGREEMENT ........... 6
    A.    SAFA Is The RLA Representative For Frontline Employees .............................. 6
    B.    SAFA And SkyWest Entered a CBA Governing Frontline Employees ................ 9
II.    CALIFORNIA'S WAGE ORDER 9 FORECLOSES MEEK'S OVERTIME CLAIM ....................................................................................................... 11
CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters*,
    779 F.3d 1069 (9th Cir. 2015)..................................................................................................7

*Angeles v. US Airways, Inc.*,
    No. C 12-05860, 2017 WL 565006 (N.D. Cal. Feb. 3, 2017)..................................................11

*Blackwell v. SkyWest Airlines, Inc.*,
    No. 06-cv-0307, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) ......................................... *passim*

*Fitz-Gerald v. SkyWest, Inc.*,
    155 Cal. App. 4th 411 (2007)..................................................................................................12

*Hawaiian Airlines, Inc. v. Norris*,
    512 U.S. 246 (1994).................................................................................................................12

*Operating Eng'rs Pension Tr. v. Gilliam*,
    737 F.2d 1501 (9th Cir. 1984)...................................................................................................9

*People ex rel. Harris v. Pac Anchor Transp., Inc.*,
    59 Cal. 4th 772 (2014) ............................................................................................................12

*Russell v. Nat'l Mediation Bd.*,
    714 F.2d 1332 (5th Cir. 1983)...............................................................................................6, 7

*Warehousemen's Union Local No. 206 v. Cont'l Can Co., Inc.*,
    821 F.2d 1348 (9th Cir. 1987)............................................................................................9, 11

**STATUTES**

45 U.S.C. § 151............................................................................................................................6

San Francisco Minimum Compensation Ordinance ...................................................................12

**OTHER AUTHORITIES**

California Industrial Welfare Commission Order No. 9–2001, subd. 1(E) ..................................11

Fed. R. Civ. P. 56 ...........................................................................................................................1

- ii -

DEFS.' MOT. FOR PART. SUMMARY JUDGMENT
Case No. 3:17-cv-01012-JD

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 6, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable James Donato presiding, Defendants SkyWest, Inc. and SkyWest Airlines, Inc. (collectively "SkyWest") will and hereby do move this Court for an order under Federal Rule of Civil Procedure 56 for partial summary judgment against Plaintiff Cody Meek and the class and sub classes that he hopes to represent.

SkyWest moves this Court for an order finding that:

1. SkyWest and the SkyWest Airlines Frontline Association ("SAFA") have agreed to a valid collective-bargaining agreement ("CBA") that governs terms and conditions of employment for all Frontline agents, including Plaintiff and the putative classes; and

2. SkyWest is entitled to summary adjudication in its favor on Plaintiff's third cause of action because the claim is precluded as a matter of law by the mere existence of a valid CBA.

This motion is based on the following Memorandum of Points and Authorities, the supporting Declarations of David Tate, Dixie Cooper and Amanda Sommerfeld, and their attached exhibits, a proposed order, all other pleadings and papers on file in this action, and any oral argument that this Court may hear.

Dated: October 18, 2018

Respectfully submitted,

JONES DAY

By: /s/ Amanda C. Sommerfeld
    Amanda C. Sommerfeld

Counsel for Defendants
SKYWEST, INC. and SKYWEST AIRLINES, INC.

# INTRODUCTION

This Court ordered limited discovery and briefing on whether Plaintiff Cody Meek's employment with SkyWest Airlines, Inc. ("SkyWest") was governed by a collective bargaining agreement ("CBA") under the Railway Labor Act ("RLA"). *See* Dkt. 55 at 2. The answer is yes. The undisputed record shows that the SkyWest Airlines Frontline Association ("SAFA") has long served as the RLA representative for SkyWest's Frontline employees. All Frontline employees (including Meek) have been repeatedly informed about SAFA's status as their RLA representative both at the time of their hiring and throughout the course of their employment. For decades, SAFA and SkyWest have conspicuously negotiated and agreed to a CBA with binding terms that were originally memorialized in documents known as "Standard Practices" ("SPs"). The terms of the CBA are now compiled in the Customer Service Policy Manual ("CSPM"), the most updated version of which is available at all times to all Frontline employees. *See* Declaration of David Tate ("Tate Decl."), Exhibit B.

Ten years ago, a federal district court recognized that the "Standard Practices" negotiated between SAFA and SkyWest constituted a valid CBA covering all of SkyWest's Frontline employees. *See Blackwell v. SkyWest Airlines, Inc.*, No. 06-cv-0307, 2008 WL 5103195, at *6-9 (S.D. Cal. Dec. 3, 2008). For the past decade, SkyWest, SAFA, and the Frontline employees have relied on that holding. SkyWest and SAFA have adhered to the terms of the CBA based on their shared understanding that it is a binding agreement. Frontline employees, for their part, have acquiesced in and benefited from the CBA that SAFA negotiated on their behalf. Because the terms specified in the CBA are part of a binding agreement, employees are assured that SkyWest cannot change them unilaterally, and can modify them only through negotiations with SAFA.

*Blackwell*'s holding regarding the existence of a CBA between SAFA and SkyWest remains correct today. The only difference is that the "Standard Practices" that *Blackwell* held to constitute a CBA have now been compiled and organized into a single cohesive document in the form of the CSPM, with periodic modifications made through the process of bargaining and mutual agreement between SAFA and SkyWest. If anything, the existence of the CBA is now even more clear, as the CSPM expressly states that it represents a binding agreement.

1    Meek's bid to invalidate the CBA now—after enjoying the benefits that it conferred on him for his nearly two-year run as a Frontline employee, and during which he never questioned its validity—is extraordinary. If successful, it would effectively reverse the decision of the federal district court in *Blackwell* and eliminate the benefits that SkyWest is contractually bound to provide for all Frontline employees under the terms of the CBA. It would also disrupt the longstanding and successful relationship between SkyWest and SAFA, a relationship that has benefited thousands of Frontline employees (and the air travelers they serve) for many years. This Court should decline that invitation.

## STATEMENT OF FACTS

**A.    The Parties**

SkyWest is the world's largest independently owned regional airline, and currently operates commercial passenger flights on behalf of four mainline carriers: United Airlines, Delta Airlines, American Airlines, and Alaska Airlines. *See* Declaration of Dixie Cooper ("Cooper Decl."), ¶ 2.[1] SkyWest provides service in the United States, Canada, and Mexico. *Id*. Over the last five years, SkyWest has operated flights and/or provided ground-handling services under contracts with its mainline partners, which services are performed at and between a number of airport stations, including, in California, the San Francisco International Airport ("SFO") and Los Angeles International Airport ("LAX"). *Id.* ¶ 3. Ground handling and flight operations contracts are negotiated separately from each other, and SkyWest does not have ground-handling contracts at every airport in the regions it services. *Id*. Over the last five years, SkyWest has lost several ground-handling contracts—including contracts at the SFO and LAX airports. *Id*.

The ground-handling services that SkyWest provides include ticketing passengers; boarding flights; assisting passengers with special needs; baggage handling; and aircraft marshalling, pushback, and de-icing. Cooper Decl. ¶ 4. These services are performed by "Frontline" employees who work in SkyWest's Customer Service department, in non-management positions such as gate agent, ramp agent, cross-utilized agent, certified station

---

[1] Defendant SkyWest, Inc., is the parent corporation of SkyWest.

trainer, station clerk, and internal evaluation auditor ("Frontline employees"). *Id.* ¶ 4. Plaintiff Cody Meek was employed as a Frontline employee (ramp agent) at SFO from April 2013 until June 2015. *See* First Amended Class Action Complaint, Dkt. 41, ("FAC"), ¶ 13.

**B.    SkyWest's Collective Bargaining Agreement With SAFA**

The SkyWest Airlines Frontline Association ("SAFA") is an employee organization that has long served as the exclusive RLA representative for SkyWest's Frontline employees. Tate Decl. ¶ 22. SAFA's scope and purpose are reflected in its Bylaws, which state that "SAFA is the legal representative of the SkyWest Customer Service employees under the Railway Labor Act (RLA) and acknowledged by SkyWest Airlines, as the only collective bargaining unit of SkyWest Airlines' Customer Service department." Tate Decl., Exhibit A, ¶ 3. In its capacity as RLA representative, SAFA is responsible for "dealing with SkyWest Airlines management on issues affecting workplace environment, compensation, and the Customer Service Policy Manual." *Id*. ¶ 2.

For decades, SAFA has negotiated key terms and conditions of employment with SkyWest on behalf of Frontline employees. Tate Decl. ¶ 22; Cooper Decl. ¶¶ 6–8. Those negotiations have resulted in a CBA between SkyWest and SAFA, which has been periodically modified over time as a result of negotiations and mutual agreement between the parties. Tate Decl. ¶ 21; Cooper Decl. ¶¶ 15, 18–19, 22–23. In its initial form, the CBAs negotiated between SkyWest and SAFA consisted of a set of Standard Practices ("SPs") that covered many of the terms and conditions of employment of Frontline employees. Tate Decl. ¶ 21; Cooper Decl. ¶ 15.

In 2008, a federal district court recognized that SAFA was the RLA representative for all of SkyWest's Frontline employees, and that the SPs constituted a binding CBA between SkyWest and SAFA. *See Blackwell*, 2008 WL 5103195 at *6–9. Since that time, SAFA has continued to serve as the RLA representative of all Frontline employees in negotiations with SkyWest. No other organization has ever sought to represent Frontline employees, nor have Frontline employees themselves ever sought representation by any other group. Tate Decl. ¶ 22; Cooper Decl. ¶ 17.

In August 2014, the parties compiled all of the SPs that together made up the CBA and

published them in a single, consolidated document titled the CSPM. Tate Decl. ¶ 23. The CSPM expressly states that it is a "binding agreement" between SkyWest and SAFA," and that SkyWest "recognizes SAFA as the only collective bargaining unit of SkyWest Airlines' Customer Service department." Tate Decl., Exhibit B, at 9. At all times, the terms and conditions of employment that are memorialized in the SPs and the CSPM have been mutually understood by SAFA and SkyWest as binding terms covering SkyWest's Frontline employees. Tate Decl. ¶¶ 21-23; Cooper Decl. ¶¶ 21, 24.

When Meek began his employment with SkyWest, he attended an orientation session that included a presentation prepared and delivered by SAFA with no input from SkyWest. Tate Decl. ¶¶ 14-17. In this presentation, SAFA informed him of its role as his RLA representative. *Id*. During the course of Meek's employment, SAFA maintained a conspicuous presence as his RLA representative. SAFA had a dedicated representative at individual airports, including at SFO. *Id*. ¶ 18. SAFA representatives also held regular meetings for Frontline employees, and attended meetings held by SkyWest. Tate Decl. ¶ 18. At one point, Meek even signed his initials to a document indicating his understanding that he had the right to a "SAFA representative" for disciplinary action that the company might take against him. *See* Declaration of Amanda Sommerfeld, Exhibits A & B. In addition, SAFA maintained a website that was accessible solely to Frontline employees from their SkyWest Online home page, but was not accessible to SkyWest leadership or management. Tate Decl. ¶ 13. Through the home page, Meek and other Frontline employees also had access to SAFA's meeting minutes, newsletters, and to the most recent version of the CBA, including any recent addenda or temporary revisions that SAFA had negotiated with SkyWest. *Id*.

C.     **Prior Proceedings**

Meek filed this lawsuit in February 2017 on behalf of himself and a putative class of other Frontline employees alleging various wage-and-hour violations under the California Labor Code. SkyWest filed a motion to dismiss, arguing that Meek's claims fail as a matter of law because, among other reasons, they are preempted by the RLA. Meek filed his FAC in June 2017, *see* Dkt. 41, and SkyWest filed a second motion to dismiss.

On May 16, 2018, this Court issued an order denying the motion to dismiss. *See* Dkt. 55. The court stated that many of Meek's claims turn on "whether plaintiff and defendants were parties to a collective bargaining agreement," which "turns on questions of fact that are ill-suited to a motion to dismiss." *Id*. at 1-2. The court acknowledged *Blackwell*'s 2008 finding of a CBA between SkyWest and SAFA, but determined that because *Blackwell* was decided "close to ten years before the amended complaint in this case was filed" and circumstances may have changed, that ruling is not dispositive here. *Id*. at 2. The court ordered the parties to engage in limited "summary judgment proceedings on the existence of a CBA," with "discovery that is targeted to the CBA issue." *Id*. at 3.

## ARGUMENT

### I.  MEEK WAS COVERED BY A COLLECTIVE BARGAINING AGREEMENT

#### A.  SAFA Is The RLA Representative For Frontline Employees

The court requested briefing on whether Meek was governed by a CBA when he worked for SkyWest as a Frontline employee. A threshold question to that inquiry, however, is whether SAFA was an RLA bargaining representative authorized to enter a CBA on behalf of Frontline employees. The answer to that question is clearly yes. The *Blackwell* court held in 2008 that SAFA was the RLA representative for Frontline employees, and nothing has changed since. Indeed, SAFA's status as RLA representative has long been reflected in its Bylaws, advertised to all Frontline employees at the time of hiring and throughout the course of their employment, and clearly recognized by SkyWest through its course of dealing with SAFA as a negotiating partner.

The RLA defines the term "representative" to mean "any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them." 45 U.S.C. § 151, Sixth. As the text makes clear, a "representative" under the RLA need not be a "union" but may be any "person" or "organization" designated to act on behalf of employees. *See Blackwell*, 2008 WL 5103195 at *7. "There are no qualifiers attached to the [RLA's] simple definition of 'representative.' The 'representative' of a craft of employees is, simply, a person or union designated to act on their behalf, to accomplish what they seek to accomplish, and is not necessarily a man for all seasons." *Russell v. Nat'l*

1  *Mediation Bd.*, 714 F.2d 1332, 1341 (5th Cir. 1983). There is no need for an RLA representative
2  to be formally certified, because a carrier may voluntarily recognize a representative as a
3  bargaining partner. *See, e.g., Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters*, 779 F.3d 1069,
4  1083 (9th Cir. 2015) (en banc) (Berzon, J., concurring) ("[A]n employer may voluntarily
5  recognize a representative of a group of employees[.]") (citing *Galveston Wharves*, 4 N.M.B.
6  200, 203 (1962)).

      In the present case, SAFA has been designated as the RLA representative for SkyWest's Frontline employees, including Meek, at all relevant times. In 2008, a federal district court unequivocally confirmed this fact, finding that Frontline employees "formed SAFA's predecessors and designated them to be their representative, and since then, Agents have not challenged SAFA's role as their representative." *See Blackwell*, 2008 WL 5103195, at *7 & n.3. The same was true during the relevant class period and during Meek's employment, and it remains true today. Tate Decl., Exhibit A, ¶ 3 ("SAFA is the legal representative of the SkyWest Customer Service employees under the Railway Labor Act (RLA) and acknowledged by SkyWest Airlines, as the only collective bargaining unit of SkyWest Airlines' Customer Service department"); Tate Decl. ¶ 22 ("SAFA's bylaws have not materially changed since 2008.").

      At all times since *Blackwell*, Frontline employees have been informed about SAFA's status as their RLA representative both at the time of hiring and throughout the course of their employment. As explained above, new Frontline employees attend an orientation session that includes a presentation prepared and delivered by SAFA with no input from SkyWest. Tate Decl. ¶¶ 14-17. In this presentation, SAFA informs new Frontline employees that it will serve as their RLA representative, and Meek himself was so informed. *Id*. SAFA also maintains a regular and conspicuous presence at Frontline employees' worksites, making regular visits to individual stations—including SFO, where Meek worked—to address concerns raised by the Frontline employees and discuss developments in the ongoing negotiations that it has with SkyWest on their behalf. Tate Decl. ¶ 10. SAFA representatives have held these regular station meetings for Frontline employees for years, and have also attended station meetings held by SkyWest involving the Frontline employees. Tate Decl. ¶¶ 10, 18. In addition, SAFA has long maintained

a website accessible solely to Frontline employees from their SkyWest Online home page. Tate Decl. ¶ 13; Cooper Decl. ¶¶ 22–23. Through the home page, all Frontline employees have easy access to SAFA's regular meeting minutes, newsletters, and to the most recent version of the CBA, including any recent addenda or temporary revisions that SAFA had negotiated with SkyWest. Tate Decl. ¶ 13.

SAFA also represents Frontline employees when they face discipline or termination. SAFA successfully negotiated with SkyWest for the right to have a SAFA representative present during disciplinary or counseling sessions. Tate Decl. ¶ 30. Frontline employees also benefit from a termination review process negotiated by SAFA. *Id*. ¶ 31 Specifically, when SkyWest terminates a Frontline Employee, the Employee is advised in writing that s/he can appeal the termination to a Review Board within five days, and if the Agent chooses to do so, a SAFA Representative will advocate for them in that appeal. *Id*. With SAFA's guidance and representation, it is not uncommon for terminated employees who have gone through the Review Board process to be reinstated. *Id*.

During the entire time of SAFA's consistent interaction with its represented Frontline members, no other group has sought to represent Frontline employees, and Frontline employees themselves have not sought to oust SAFA as RLA representative. Notably, Meek himself never questioned whether SAFA was his RLA representative until more than a year *after* he left his employment with SkyWest in order to pursue a lawsuit against the company—after he had already enjoyed all of the benefits of the CBA that SAFA had negotiated on his behalf. Indeed, *all* Frontline employees have acquiesced in and benefited from the CBA negotiated on their behalf by SAFA, as further detailed below. *See infra* p. 10.

Meek himself was well aware of SAFA's status as his RLA representative when he began working as a Frontline employee in SkyWest's Customer Service Department at SFO in April 2013. At that time, SAFA delivered a presentation to all newly hired Frontline employees (including Meek) during orientation in which it explained its role in negotiating wages, hours, and work rules for the Frontline group as their representative. Tate Decl. ¶¶ 14-17. In addition, SAFA's Bylaws made clear that SAFA was "acknowledged by SkyWest Airlines, as the only

collective bargaining unit of SkyWest Airlines' Customer Service department." Tate Decl., Exhibit A, ¶ 3; Tate Decl. ¶ 22 (SAFA bylaws have not materially changed since 2008); *Blackwell*, No. 06-cv-307, Dkt. No. 100-6, Exhibit A, ¶¶ 2-3 (2008 bylaws).

Taken together, these undisputed facts clearly establish that SAFA has been acting as the RLA representative for SkyWest's Frontline employees since well before Meek began working for SkyWest in 2013, up until the present day. Indeed, the ongoing bargaining relationship between SAFA and SkyWest is crucial to thousands of SkyWest employees, and severing that relationship would disrupt the benefits and employment rules that they rely upon every day.

### B.   SAFA And SkyWest Entered a CBA Governing Frontline Employees

In 2008, the *Blackwell* court held that SAFA and SkyWest had entered into a CBA by agreeing to a binding set of "Standard Practices" that together specified the "wages, hours, work rules, and fringe benefits" of Frontline employees. *Blackwell*, 2008 WL 5103195, at *9. In the time since *Blackwell*, the parties have compiled the terms of the CBA into a single document (with some modifications, all bargained for and agreed to), which is titled the CSPM. Tate Decl. ¶ 23. By its express terms, the CSPM is a "binding agreement between [SkyWest] and the SkyWest Airlines Frontline Association (SAFA)," which SkyWest negotiated with SAFA because it "recognizes SAFA as the only collective bargaining unit of SkyWest Airlines' Customer Service department." Tate Decl., Exhibit B, at 9.

The CSPM is a valid CBA because it manifests the mutual assent of the parties to be bound to its terms. The Ninth Circuit employs "general contract principles adapted to the collective bargaining context to determine whether the two sides have reached an agreement." *Warehousemen's Union Local No. 206 v. Cont'l Can Co., Inc.*, 821 F.2d 1348, 1350 (9th Cir. 1987). Accordingly, the existence of a CBA requires "mutual assent" to a binding agreement as reflected in "the surrounding circumstances and the intentions of the parties." *Operating Eng'rs Pension Tr. v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984). Here, the relevant "parties" are SkyWest and SAFA, acting as the representative for SkyWest's Frontline employees (including Meek) pursuant to the RLA.

As the undisputed record makes clear, both SAFA and SkyWest manifested and

confirmed their intention to be bound by the agreements memorialized in the SPs, which eventually transitioned into the CSPM. According to the Declaration of SAFA President David Tate, the agreements between SAFA and SkyWest that are committed to writing were understood by SAFA as binding terms of a CBA covering SkyWest's Frontline employees. Tate Decl. ¶¶ 21-25. The Declaration of SkyWest's Director of Airport Operations Dixie Cooper confirms that SkyWest had the same understanding. Cooper Decl. ¶ 21. That mutual understanding is also reflected in the text of the CSPM, which expressly acknowledges that it sets forth the terms of a "binding agreement between [SkyWest] and [SAFA]." Tate Decl., Exhibit B, at 9. The undisputed testimony also establishes that SkyWest and SAFA have adhered to these binding terms without making any unilateral changes. Tate Decl. ¶ 29; Cooper Decl. ¶ 24. To the extent the parties have ever changed any of the agreements set forth in the SPs (now, the CSPM), they have done so only after negotiation and mutual agreement. Tate Decl. ¶ 29; Cooper Decl. ¶ 21–24.

As a result of SAFA's bargaining activity, SkyWest is now bound to provide to Frontline employees a host of benefits that are specified in the CBA. To take just a few examples:

- SAFA negotiated, and was instrumental in making, system-wide and station-specific pay scale changes;

- SAFA negotiated a Perfect Attendance program that rewards Agents with a day off with pay for every six months of perfect attendance, with absences such as jury duty and bereavement not counting against an employee's perfect attendance rewards calculations;

- SAFA negotiated a drug-and-alcohol program designed to maintain a working environment free from the influence of drugs and alcohol while also assisting employees who struggle with the disease of addiction;

- Part-time Agents (who comprise about 70% of the membership), previously had to meet the minimum hours requirements in *each pay period* in order to remain in good standing; but SAFA successfully negotiated to allow them, instead, to meet their minimum hours obligation *over a three-month period*;

- SAFA negotiated a policy requiring a minimum of 18 days' notice to any employee whose work schedule would be changed due to flight schedule changes;

- SAFA negotiated changes to the appearance policy, including changes that allow male agents to have long hair and wear earrings while working and allow female

agents to wear more than one earring per ear;

- SAFA successfully negotiated the right for employees to receive moving expense reimbursement to transfer to cities where there is a shortage of Frontline Employees.

Tate Decl. ¶ 35.

If this Court were to invalidate the CBA, SkyWest would no longer have any contractual obligation to provide these benefits or otherwise honor the terms set forth in the CSPM, which the company has always understood to constitute a CBA.

In light of these undisputed facts, the CSPM plainly constitutes a valid CBA governing the wages, hours, and work rules for SkyWest's Frontline employees. In light of these "objective manifestations of the parties' intent to create a contract, the court need look no further" to conclude that a CBA exists. *Cont'l Can Co.*, 821 F.2d at 1350.

## II. CALIFORNIA'S WAGE ORDER 9 FORECLOSES MEEK'S OVERTIME CLAIM

One of Meek's claims can be readily resolved based on the mere existence of the CBA between SAFA and SkyWest. In Count III of his FAC, Meek claims that SkyWest failed to comply with California's overtime rules—by, for example, allowing him to engage in the practice of "shift trading" at his ordinary rate of pay. *See* Dkt. 41, ¶¶ 105-11. This claim fails as a matter of law.

Under California's Wage Order 9, the state's overtime rules do not apply to "employees who have entered into a collective bargaining agreement under and in accordance with the provisions of the Railway Labor Act." *See* California Industrial Welfare Commission Order No. 9–2001, subd. 1(E). *See also Angeles v. US Airways, Inc.*, No. C 12-05860, 2017 WL 565006, at *3 (N.D. Cal. Feb. 3, 2017) (exemptions in wage orders apply to all "regulations in the California Labor Code").

This exemption squarely applies here.

As explained above, SAFA has entered into a CBA with SkyWest covering all Frontline employees. *See supra* Section I.B. Thus, under the plain terms of Wage Order 9, California's overtime rules do not apply to Frontline employees such as Meek. Because the overtime rules do not apply, Count III of the Amended Complaint should be resolved in SkyWest's favor

immediately. *See Blackwell*, 2008 WL 5103195, at *10 (granting summary judgment against employee's overtime claim based on Wage Order 9 exemption); *Fitz-Gerald v. SkyWest, Inc.*, 155 Cal. App. 4th 411, 418-19 (2007) (same), disagreed with on other grounds by *People ex rel. Harris v. Pac Anchor Transportation, Inc.*, 59 Cal. 4th 772, 782 (2014).[2]

## CONCLUSION

The evidence is clear that a valid CBA exists between SkyWest and SAFA covering terms and conditions of employment for all SkyWest Frontline employees, and this Court should so find. Accordingly, this Court should grant summary judgment in favor of SkyWest on Count III of the First Amended Complaint and order the parties to engage in limited discovery and summary-judgment briefing on the remaining claims.

Dated: October 18, 2018

Respectfully submitted,

JONES DAY

By: */s/ Amanda C. Sommerfeld*
    Amanda C. Sommerfeld

Counsel for Defendants
SKYWEST, INC. and SKYWEST AIRLINES, INC.

---

[2] As explained in the Motion to Dismiss, SkyWest believes that the CBA also requires dismissal of all of Meek's other claims. For example, Counts I-VI are preempted by the RLA because they would require "interpretation" of the CBA. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994). Likewise, Count VII is foreclosed because it is based on the San Francisco Minimum Compensation Ordinance (MCO), which can be "waived in a bona fide collective bargaining agreement," MCO § 12P.10, and the CBA here contains an express waiver, Tate Decl., Exhibit C. SkyWest does not press those arguments here, however, because they require analysis that goes beyond the mere existence of the CBA, and the Court instructed the parties to limit the present briefing to "whether plaintiff and defendants were parties to a collective bargaining agreement." Dkt. 55 at 1.