UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY MEEK,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SKYWEST, INC., et al.,<br><br>　　　　Defendants. | Case No. 17-cv-01012-JD<br><br>**ORDER RE MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 80 |

Plaintiff Cody Meek is a former ramp agent at San Francisco International Airport who brought this wage-and-hour action against his former employers, defendants SkyWest, Inc., and SkyWest Airlines, Inc. ("SkyWest"). The complaint alleges seven legal claims against defendants on behalf of a putative class of ramp agents and other non-management employees in SkyWest's customer service department. Dkt. No. 41 ¶ 2 (explaining that all such employees are defined as "Frontline Employees").

In the course of motion to dismiss proceedings, it became clear that a substantial portion of the case turned on whether plaintiff and defendants were parties to a collective bargaining agreement under the Railway Labor Act, which they disputed. Because this disagreement is central to plaintiff's claims and is essentially a question of fact, the Court directed the parties to proceed to discovery and summary judgment on that issue. Dkt. No. 55. Defendants' partial summary judgment motion, Dkt. No. 80, is granted.

**DISCUSSION**

**I.  IS THERE A VALID COLLECTIVE BARGAINING AGREEMENT UNDER THE RAILWAY LABOR ACT?**

The Railway Labor Act, 45 U.S.C. § 151 et seq., which also applies to airlines, directs that it "shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable

effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." 45 U.S.C. § 152, First; 45 U.S.C. § 181. As our Circuit has explained, the "RLA establishes a comprehensive scheme governing labor relations on railroads and airlines," which includes provisions requiring that "disputes on pay and conditions are to be submitted to a statutory Mediation Board." *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1007 (9th Cir. 1990).

As the Court and the parties have discussed, a district court decision from a decade ago found that the SkyWest Airlines' Frontline Association ("SAFA") was a "representative" under the RLA, and the Standard Practices ("SPs") negotiated by SAFA and SkyWest constituted a "valid CBA [collective bargaining agreement] pursuant to the RLA." *Blackwell v. SkyWest Airlines, Inc.*, No. 06cv0307 DMS, 2008 WL 5103195, at *6-9 (S.D. Cal. Dec. 3, 2008). The question at the motion to dismiss stage -- which could not be answered on that record or under the procedural rules governing such motions -- was whether those conclusions still hold as a matter of current practice.

SkyWest's evidence shows that they do. The declaration of David Tate, president of SAFA, confirms that SAFA continues to represent "all non-management employees in SkyWest's Customer Service Department." Dkt. No. 80-2 ("Tate Decl.") ¶ 2. He states that since at least 1995, SAFA (or its predecessor, the EAC) has been "the exclusive representative of Frontline Employees in their negotiations with SkyWest on matters of wages, hours, and work rules," and "no other organization has ever sought to represent the Frontline Employees, nor have the Frontline Employees themselves ever sought representation by any other group." *Id.* ¶ 22. This was true even after "[t]he Court's decision in *Blackwell* reinforced SAFA and SkyWest's understanding that SAFA was the exclusive representative of Frontline Employees for purposes of bargaining and that the parties had an enforceable CBA with binding terms." *Id.* Further, "[i]n August 2014, SAFA compiled all of the SPs that together made up the CBA and published them in a single, consolidated document titled the Customer Service Policy Manual, or CSPM." *Id.* ¶ 23.

The declaration of Dixie Cooper, the current Director of Airport Operations for SkyWest Airlines, Inc., also confirms these facts from SkyWest management's point of view. She states that "SkyWest has always understood that SAFA was the RLA representative for the Frontline Employees and treated it as such." Dkt. No. 80-3 ("Cooper Decl.") ¶ 17. And even after "the Court's holding in *Blackwell* reinforced everyone's understanding of" that relationship, "SAFA has continued to serve as the RLA representative of all Frontline employees in negotiations with SkyWest," and "[n]o other organization has ever sought to represent Frontline employees, nor have Frontline employees themselves ever sought representation by any other group." *Id*. In addition, declarant Cooper states SkyWest's understanding that "[i]n August 2014, SAFA and SkyWest agreed to compile all of the SPs that together made up the CBA and published them in a single, consolidated document under the heading the Customer Service Policy Manual, or CSPM." *Id*. ¶ 19.

Meek's response mainly takes the form of legal arguments that are not germane to the RLA inquiry. He contends that "the Frontline Employees -- for at least the past ten years -- have had no ability to 'reject collective representation' by SAFA." Dkt. No. 82-3 at 16. But that is not what the RLA contemplates. Under the statute, the employees must first ask for different representation. Meek submits no evidence that contradicts SAFA's and SkyWest's statements that that has never happened, even after the *Blackwell* decision confirmed SAFA as the Frontline Employees' "representative" under the RLA. *See Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Alitalia Airlines*, 600 F. Supp. 268, 273 (S.D.N.Y. 1984) (the National Mediation Board, which was created by the RLA, has no authority to "investigate and hold an election unless a dispute over representation has arisen among the carrier's employees.").

Meek's other arguments are similarly off point. That the CSPM "is never directly called a collective bargaining agreement except in litigation," Dkt. No. 82-3 at 15, is irrelevant because the RLA does not impose a naming convention. *See*, *e.g.*, 45 U.S.C. § 152, First (referring only to "agreement[] concerning rates of pay, rules, and working conditions"). The salient issue is whether the CSPM fails to meet the statute's substantive description of the kind of agreement required, whatever it might be called in shorthand. Meek makes no argument on the point. Meek

3

also says that SAFA representatives have negotiated "without benefit of legal counsel," Dkt. No. 82-3 at 17, but that, too, is nowhere required by the statute.

Meek's main contention is that "[i]t is unclear from the factual record whether SAFA is being coerced and controlled by SkyWest, or whether, alternatively, it has breached its duty of fair representation to the Frontline Employees." Dkt. No. 82-3 at 18. He puts a finer point on this theme by attacking the "concessions" made by SAFA, *id.*, in a manner akin to the breach of duty of fair representation claim that was at issue in *Barthelemy*, 897 F.2d at 1004-06. The problem for Meek here is two-fold: the "fairness" claim is not alleged in the complaint, and in any event does not affect the analysis of SAFA's status as a "representative" or the CSPM's characterization as a CBA under the RLA. These two material facts are not genuinely in dispute under Federal Rule of Civil Procedure 56, and the Court consequently deems them established by defendants.

## II. PLAINTIFF'S THIRD CLAIM FOR FAILURE TO PAY OVERTIME

SkyWest also seeks summary judgment on plaintiff's third claim for lack of overtime paid for shift trades and off-the-clock time "because the claim is precluded as a matter of law by the mere existence of a valid CBA." Dkt. No. 80 at 1. SkyWest says that "[u]nder California's Wage Order 9, the state's overtime rules do not apply to 'employees who have entered into a collective bargaining agreement under and in accordance with the provisions of the Railway Labor Act.'" *Id.* at 11 (citing California Industrial Welfare Commission Order No. 9-2001, subd. 1(E)).

Plaintiff does not disagree with this approach but argues that the California Wage Order 9 exemption cannot conclusively be applied here because whether "the CSPM is a collective bargaining agreement is a genuine issue of material fact." Dkt. No. 82-3 at 19. That dispute has now been resolved against Meek.

Meek makes a cursory argument to the effect that even if the CSPM is a collective bargaining agreement, California Wage Order 9 "includes certain internal inconsistencies" and "too many issues of material fact remain." *Id.* at 19-20. But these arguments are not supported with adequate evidence nor are they persuasive conceptually. *See Blackwell*, 2008 WL 5103195, at *9 (concluding that the Wage Order 9 section (1)(E) exemption applies; "[b]ecause the Court finds that SkyWest is a[n] interstate carrier, SAFA represents SkyWest's Agents, and SkyWest

4

and SAFA formed a valid CBA pursuant to the RLA, SkyWest is exempt from state overtime laws.").

Defendants' partial summary judgment motion is granted on plaintiff's third claim.

## CONCLUSION

The Court grants defendants' motion. Dkt. No. 80. SAFA is a valid "representative" for the Frontline Employees and the CSPM is a valid collective bargaining agreement under the Railway Labor Act. Further, that means that the California Wage Order 9 section (1)(E) exemption applies and precludes plaintiff's third claim for overtime against defendants.

The parties are directed to meet and confer in light of this order and submit a joint statement by **January 23, 2019**, that outlines proposed next steps and a case schedule. The parties may alternatively request a case management conference if they are unable to agree.

**IT IS SO ORDERED.**

Dated: December 7, 2018

JAMES DONATO
United States District Judge