Gregory F. Coleman (*pro hac vice*)
Lisa A. White (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com
mark@gregcolemanlaw.com
adam@gregcolemanlaw.com

***Attorneys for Plaintiffs***
***Additional Counsel on Signature Page***

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY MEEK, JEREMY BARNES and CORYELL ROSS, on behalf of themselves and all others similarly situated, | Case No.: 3:17-cv-01012-JD |
| | Assigned to the Hon. James Donato |
| Plaintiffs, | **Jury Trial Demanded** |
| v. | **CONSOLIDATED AMENDED** |
| SKYWEST, INC. and SKYWEST AIRLINES, INC. | **CLASS ACTION COMPLAINT[1]** |
| Defendants. | |

## CONSOLIDATED CLASS ACTION COMPLAINT

Cody Meek, Jeremy Barnes, and Coryell Ross, former Frontline Employees for SkyWest

Airlines, Inc. ("Plaintiffs"), brings this action on behalf of themselves and a proposed class of

---

[1] Pursuant to this Court's case management order (Dkt. No. 111), this complaint consolidates but does not amend either the *Meek v. SkyWest* First Amended Complaint, Case No.: 3:17-cv-01012-JD, Dkt. No. 41, or the *Barnes v. SkyWest* First Amended Complaint, Case No.: 3:18-cv-4182-JD, Dkt. No. 24. Upon the Court's request, Plaintiffs will file a redlined and annotated copy of this consolidated complaint that identifies the inserted *Barnes* paragraphs.

1

similarly situated "Frontline Employees" ("Class" or "Frontline Employees") who are or were employed by SkyWest, Inc. and SkyWest Airlines, Inc. (collectively "SkyWest") in the State of California during the applicable statute of limitations period. SkyWest's unlawful employment scheme denies Plaintiffs and others like them from receiving the wages to which they are entitled. This scheme fails to fully compensate its California Frontline Employees for each hour of their work as required under the applicable labor laws of the State of California, specifically 1) by failing to pay Frontline Employees no less than the required state and local minimum wages for all time during which the agents were performing work and/or requiring a supervisor's approval for working time *after* the work had already been performed that fell outside the agent's scheduled shift and that should have been included in overtime calculations but were not always granted approval ("off-the-clock work");  2) by requiring a supervisor's approval *after* the work had already been performed for missed or shortened meal breaks that were not always granted approval ("missed meal breaks"); 3) engaging in a policy and practice of refusing to provide workers meal and rest breaks; 4) by failing to properly compensate Frontline Employees who have traded shifts without regard to the number of hours they work in a given week or pay period ("shift trades"); and 5) by failing to properly record and display all hours actually worked (as compared to all approved hours worked) by the Frontline Agents on their pay records so the employees can determine the airline's adherence to the applicable local ordinances and state laws ("wage statements").  Plaintiffs bring a claim on behalf of all California Frontline Employees for violation of California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200 *et seq.*, for its unlawful and unfair wage policies and practices ("UCL").

Plaintiffs also bring this case on behalf of a subclass of Former Frontline Employees who worked for SkyWest who were not compensated fully for all work they performed for SkyWest within the time required by California's Labor Code ("Former Frontline Employee Subclass").

Plaintiffs bring this case on behalf of subclasses of Frontline Employees who work or formerly worked for SkyWest in San Francisco at the San Francisco International Airport ("SFO"); in Los Angeles at the Los Angeles International Airport ("LAX") or alternatively at Ontario International Airport in San Bernardine ("ONT"). As outlined fully herein, Plaintiffs alleges that SkyWest's pay scheme fails to fully compensate certain lower seniority San Francisco Frontline Employees for each hour of their work at no less than the minimum wage rates required by the San Francisco Minimum Compensation Ordinance ("MCO") Quality Standards Program ("QSP") (the "SFO Subclass").

Finally, Plaintiffs bring a Private Attorney General's Act, §§ 2698, *et seq*. ("PAGA") representative action on behalf of fellow employees for violations of the California Labor Code, which permits them to recover penalties and unpaid wages for the employees and the State of California.  Cal. Labor Code §§ 558, 2699.

## INTRODUCTION

1.      SkyWest Frontline Employees have the right to be paid for their labor. That right is guaranteed under the Fair Labor Standards Act as well as the wage laws of California and ordinances of San Francisco. For hourly employees like Plaintiffs and the Class, the right to be compensated for each hour worked is not and cannot be bargained away. For each hour that SkyWest Frontline Employees perform duties that are integral and indispensable to their primary responsibilities, these employees are entitled to be compensated for their time at rates no less than the minimum hourly wages required by applicable California laws and local ordinances.

2.      According to the 2014 Customer Service Policy Manual ("Policy Manual," a complete copy of which is attached as Exhibit 1), "Frontline Employees" are defined as: "All non-management employees in SkyWest's Customer Service Department, including cross-

3

utilized agents, gate agents, ramp agents, certified station trainers (in non-management roles), station clerks, and internal evaluation auditors. Plaintiffs are workers previously employed by SkyWest as Frontline Employees throughout its operations in California. Plaintiffs' typical work duties include marshaling aircraft, loading/unloading and sorting freight and baggage, servicing the aircraft, assisting with pushback and towing, deicing and other duties as assigned.

3.      The Policy Manual is not a Collective Bargaining Agreement ("CBA"), but even if it were, no interpretation of it is required because non-negotiable state law rights like those at issue here cannot be waived through such agreements.[2]

4.      Further, no interpretation of the Policy Manual is necessary to determine: 1) the method and rates of Frontline Employees' pay, 2) which Frontline Employee hours are paid or unpaid, or 3) the compensable hours of work performed by a Frontline Employee on any given day.

5.      SkyWest's computerized scheduling and pay records speak for themselves, showing that Frontline Employees are not paid from punch-in to punch-out, are not paid for all work at a rate that is no less than state and local minimums, are not properly compensated for missed or shortened meal breaks, are not properly paid overtime wages when due. Finally, SkyWest's policy of requiring a supervisor's approval after the required work or meal time is complete often results in denied wages.

## LEGAL BASES FOR COMPLAINT

6.      **California Class**: Plaintiffs bring this action on behalf of the California Class pursuant to Fed. R. Civ. P. 23 for all similarly situated individuals who were employed as

---

[2] This Court, prior to consolidation, granted partial summary judgment for SkyWest, finding that the Policy Manual is a CBA. Dkt. No. 90.

Frontline Employees in the State of California by SkyWest during the applicable statute of limitations period, as a result of:

A.   SkyWest's failure to pay wages for all hours worked, including but not limited to failing to start wages at actual check-in time, and not paying wages for working through meal and rest times which were later not approved by a supervisor despite the work being completed, in violation of California Wage Order No. 9; Cal. Labor Code §§ 510, 511, 514, 1182.12, 1194, and 1197.

B.   SkyWest's practice of automatically deducting 30 minutes for every meal break regardless of the actual punch-times, whether the Frontline Employee was actually able to take the full meal break, and its failure to pay additional wages as required for missed or shorter-than-required meal breaks, in violation of Cal. Labor Code §§ 512 and 226.7.

C.   SkyWest's failure to pay Frontline Employees all overtime wages due, in violation of California Wage Order No. 9 § 3(B) and Cal. Labor Code §§ 510, 511, and 514.

D.   SkyWest's failure to provide Frontline Employees with properly itemized and accurate wage statements showing all hours worked as required by Cal. Labor Code § 226.

E.   SkyWest's violation of California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200 *et seq.*, for its unlawful and unfair wage policies and practices.

F.   Plaintiffs bring a representative action through the Private Attorney General's Act, §§ 2698, *et seq.* ("PAGA") on behalf of fellow employees

for violations of the California Labor Code, to recover penalties and unpaid for the employees and the State of California.  Cal. Labor Code §§ 558, 2699.

G.     Plaintiffs and the California Class bring this action to recover actual damages of unpaid wages in an amount to be established at trial, plus prejudgment interest, liquidated damages, costs, applicable penalties (if any), applicable restitution, and reasonable attorneys' fees as allowed by law.

7.     **California Former Frontline Employee Subclass**: Plaintiffs bring this action on behalf of the California Former Frontline Employee Subclass pursuant to Fed. R. Civ. P. 23 for all similarly situated individuals who were formerly employed as Frontline Employees in the State of California by SkyWest Airlines during the applicable statute of limitations period, as a result of SkyWest's failure to pay all wages due to the Former Frontline Employees within the time prescribed by Cal. Labor Code §§ 201, 202; and its failure to pay waiting time penalties to all former employees who have wages due, in violation of Cal. Labor Code § 203. Plaintiffs bring this action to recover unpaid wages for the California Former Frontline Employee Subclass in an amount of actual damages (unpaid wages) to be established at trial, plus prejudgment interest, liquidated damages, costs, applicable penalties, applicable restitution, and reasonable attorneys' fees as allowed by law.

8.     **San Francisco Subclass**: Plaintiffs bring this action on behalf of the San Francisco Subclass pursuant to minimum wage rates required by the MCO, San Francisco Admin. Code § 12P, as modified by the QSP for qualified SFO airport employees, which include all Frontline Employees. Plaintiffs bring this claim on behalf of all similarly situated individuals who were employed by SkyWest Airlines as Frontline Employees at SFO during the applicable statute of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

limitations period, for lost wages for all hours worked as a result of SkyWest's failure to establish a pay scale conforming to the requirements of the MCO and QSP. Plaintiffs bring this action under Cal. Labor Code §§ 223, 225.5 and 1197 to recover unpaid wages in an amount to be established at trial, plus prejudgment interest, liquidated damages, costs, and reasonable attorneys' fees as allowed by law.[3]

## JURISDICTION & VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy exceeds $5,000,000, there are more than 100 putative class members, and Plaintiffs and some class members are citizens of a different state than the Defendants.

10.      This Court has personal jurisdiction over SkyWest because it: (1) operates a business within this District; (2) committed acts in violation of the applicable wage laws as alleged herein within this District; (3) maintained continuous and systematic contacts with this District over a period of years; and (4) purposefully availed itself of the benefits of doing business within this District.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because SkyWest conducts business within this District, has agents within this District, transacts its affairs in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

12.      Pursuant to Local Rule 3-2(c) and (d), this action is properly assigned to the San Francisco Division of the Northern District of California because a substantial portion of the events giving rise to this dispute occurred in San Francisco, California.

---

[3] Additional Subclasses are included in the *Barnes* FAC than are described here, which was included in the *Meek* FAC. *See* proposed Class Definitions as set forth below at ¶¶ 95-98.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

## THE PARTIES

13.     Plaintiff Cody Meek is a resident of Aromas, Monterey County, California. He was formerly employed by SkyWest Airlines as a Frontline Employee (Ramp Agent) at the San Francisco International Airport (SFO) in San Francisco, California from April 2013 until June 2015.

14.     Plaintiff Jeremy Barnes is a resident of Hayward, California. Plaintiff Barnes was employed by SkyWest in California from approximately 2009 to 2016.

15.     Plaintiff Coryell Ross is a resident of Detroit, Michigan. Plaintiff Ross was employed by SkyWest in California from approximately 2014 to 2016 or early 2017.

16.     Plaintiffs and members of the Classes have been employed as Frontline Employees in California by SkyWest Airlines during the four years preceding the filing of this lawsuit.

17.     Defendant SkyWest, Inc. is a Utah corporation that is registered to do business in California, and whose principal office is located at 444 South River Road, St. George, Utah 84790. SkyWest, Inc.'s stock is traded on the NASDAQ market as SKYW.

18.     Defendant SkyWest Airlines, Inc. is a Utah corporation that is registered to do business in California, and whose principal office is located at 444 South River Road, St. George, Utah 84790. SkyWest, Inc. employs approximately 20,000 people.

19.     SkyWest Airlines is a wholly owned, non-unionized subsidiary of SkyWest, Inc.

20.     SkyWest, Inc. and SkyWest Airlines, Inc., for the purposes of statutory claims, are a common or joint enterprise or partnership that is collectively, jointly and severally liable to Plaintiffs and members of the Class as described herein.

21.     During the four years preceding the filing of this Complaint, SkyWest Airlines has employed hundreds of similarly situated Frontline Employees in California, recording each employee's punch-in, punch-out time and "work time" in the same manner, and calculating each

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

employee's pay in the same manner, and even though they performed integral and indispensable work during the documented hours, the employees were uncompensated and undercompensated for specific parts of their work day.

22.   At all times relevant herein, SkyWest, Inc. has been engaged in commerce within California and has been subject to the requirements of California law, including its Labor Code as well as the federal Fair Labor Standards Act, 29 U.S.C. section 201, *et seq.*, and their accompanying regulations.

## SUBSTANTIVE ALLEGATIONS

23.   SkyWest has done business in the United States for over 45 years as a passenger airline. Under various contracts, the company operates an average of 2,300 flights per day, including 966 flights per day as Delta Connection on behalf of Delta Air Lines, 887 flights per day as United Express on behalf of United Airlines, 314 flights per day as American Eagle on behalf of American Airlines, and 131 flights per day as Alaska SkyWest in partnership with Alaska Airlines.

http://www.skywest.com/assets/Uploads/FactSheet/SkyWest-FactSheetJun18.pdf

(as accessed for *Barnes* complaint on June 11, 2018).

24.   Throughout California, SkyWest operates flights out of Fresno, Los Angeles, Palm Springs, San Diego, and San Francisco, with California hubs at Los Angeles International Airport ("LAX") and San Francisco International Airport ("SFO").

25.   For their work, SkyWest's Frontline Employees[4] in California are generally paid on an hourly basis in the range of about $12-$14 per hour.

---

[4] The *Meek* case brought claims on behalf of all Frontline Employees. The *Barnes* case brought claims on behalf of Ramp Agents, which are a subset of Frontline Employees. In light of the Court's consolidation of the two cases and given the common Policy Manual, pay rates, and practices for all Frontline Employees, all claims in this consolidated complaint are alleged for Frontline Employees.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

26.    SkyWest employs Frontline Employees to perform various activities including but not limited to: checking in and boarding passengers, rebooking flights, and assisting passengers with special needs, loading and unloading baggage, cargo, and pets into and out of the aircraft prior to and after each flight flown. Ramp Agents and certain cross-utilized Frontline Employees are required to push back the aircraft, de-ice planes when necessary, and other duties associated with preparing the aircraft to transport passengers.

27.    SkyWest maintains a set of common policies and procedures applicable to Frontline Employees regarding the payments of wages and overtime, and the provision of meal and rest breaks.  SkyWest also maintains control of how and whether Frontline Employees clock in an out for shifts and breaks.  Frontline Employees at each of SkyWest's operations in California are subject to the same company-wide policies and procedures.

**Pay Practices: Off-the-Clock Work**

28.    As described in the Policy Manual (Exhibit 1, p. 7458.1), all full-time SkyWest Frontline Employees must be scheduled and actually work (or take paid time off) for no less than sixty-four hours per pay period to avoid "corrective action."

29.    The Policy Manual clearly states that employees are "paid according to their scheduled shift" and that "[a]ny time worked beyond the five-minute leeway period will be paid only with supervisor approval." (Exhibit 1, p. 7461.3).

30.    Plaintiffs and Class members are (or were) not compensated based upon the actual numbers of hours that they work each working day. Even though Plaintiffs and Class Members are instructed to punch-in five minutes before their scheduled day, they do not receive compensation until their actual scheduled shift time, as shown in Figure 1, below (red highlights in original), Note: "unpaid" column. Figure 1 is extracted from the DayForce Employee Guide, attached in full as Exhibit 2.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD



**Figure 1**

31.      As a matter of policy and practice, SkyWest fails to provide Frontline Employees with meal and rest breaks in violation of California law, and fails to provide them with the requisite penalties and wages when breaks are interrupted or missed altogether.  Given the nature of Frontline Employees' duties, they are always required to be on call throughout the entirety of their shift to deal with arriving and departing aircraft, luggage, and passengers. As a result, meal and rest breaks are often interrupted, skipped, or denied.  On other occasions, meal and rest breaks were taken outside of the statutorily required time periods, for example, by not providing a meal break until within 2-3 hours of the end of a 8-10 hour shift.  Additionally, Frontline Employees who worked shifts of twelve hours or more were not scheduled nor did they receive a second 30-minute meal break.

32.      SkyWest does not incorporate scheduled meal and rest breaks into its work schedules.  Indeed, not only does SkyWest fail to schedule appropriate breaks for workers but it also fails to maintain any policy, practice or mechanism for Frontline Employees to obtain payment and penalties for their missed breaks.

33.      When breaks are missed or interrupted, SkyWest also fails to properly account for Frontline Employees' continuous hours of work and accordingly underpays them overtime and

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

other wages.  Even when Frontline Employees work through a meal break, they do not receive any special pay, and those hours are not always counted towards applicable daily and weekly overtime threshold limits.  By failing to count unobtained meal and rest breaks in the hours worked, SkyWest fails to accurately record all hours worked and systematically underpays its Frontline Employees when their actual hours worked put them above and beyond the necessary thresholds to obtain overtime and/or double time compensation.

34.    Additionally, Frontline Employees often work ten to fifteen hour days. Although SkyWest policy forbade Frontline Employees from working more than sixty hours in a week, some workers were required to do so. Frontline Employees did not always receive overtime or double time differentials for hours worked in excess of eight or twelve in a day, including because SkyWest failed to properly calculate Frontline Employees' regular rates of pay.

35.    Depending on flight arrivals and departures, Frontline Employees are not permitted to simply walk away from their work duties at the end of their scheduled shift. Rather than being paid for any overage based on actual punch-in and punch-out times, Frontline Employees must write an explanation for the extension of their workday, which must be approved by a supervisor.

36.    Supervisors do not "automatically" approve of additional time at the beginning and end of Frontline Employees' days, although the work has been completed by the time of the approval process. Every time an overage is not approved, whether occurring before a shift, at a meal or rest break, or after, the Frontline Employee has worked "off the clock."

37.    If Frontline Employees punch-in late, they receive an "occurrence" with negative consequences. *See* Ex. 1, p. 7461.2. The negative consequences that lead to "corrective action" (including the risk of termination) accrue even if the Frontline Employee punch-in as few as one

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

to five minutes late. *Id.* As a result, Frontline Employees must arrive and punch-in early virtually every day, yet they always remain unpaid until the exact starting minute of their scheduled shift.

38.     Likewise, when a Frontline Employee is unable to take a full meal break of at least 30 minutes long (although upon information and belief their actual punch times are recorded in DayForce), the meal break appears as exactly 30 minutes long on the Frontline Employee's pay records unless an explanation is lodged and a supervisor approves of an overage. *See* Ex. 2, p. 7.

39.     All time that Plaintiffs and Frontline Employees work each day, including but not limited to early punch-ins, missed breaks or meals, shorter meals, and late punch-outs, must be paid at an hourly rate that is no less than that required by California's minimum wage statute, Cal. Lab. Code § 1182.12, and applicable local wage ordinances.

40.     SkyWest fails to pay its Frontline Employees for all of their actual work hours, instead unilaterally opt to pay only "approved" work hours. *See* Ex. 2, p. 8.

41.     The "Letter of Agreement Terms" signed between SkyWest and a SkyWest Airlines Frontline Association ("SAFA") representative explicitly states that "[i]f an element of the [Policy Manual[] is found to be in conflict with any federal or state law, . . . it shall be deemed non-enforceable only in those specific situations and/or locations." (Exhibit 1, p. 7450.1). Failing to fully compensate Frontline Employees for all working hours, failing to pay minimum wages and failing to pay overtime as required is a direct violation of California statutes and the San Francisco ordinances.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

**SkyWest's Claims of Bargaining**[5]

42.    According to SkyWest, Inc.'s 2015 Annual Report, of SkyWest Airlines' 10,411 full-time equivalent employees (e.g., Frontline Employees, ramp agents, pilots, flight attendants, customer service representatives, etc.), none were union-represented.[6]

43.    SkyWest at times characterizes its Policy Manual, like that in Exhibit 1, as a CBA. However the Ramp Agents (and possibly other Frontline Employees) are not allowed to vote for SAFA representatives. Additionally, the Policy Manual does not include any of the usual indicia of a true CBA such as, *inter alia*, notice about compulsory mediation requirements, an arbitration clause, "cooling off period" or "self-help" provisions.

44.    Nowhere in the Policy Manual is it referred to as a CBA, *see* Exhibit 1, nor is any statement indicating the applicability of the Railway Labor Act, 45 U.S.C. Sections 151 *et seq.*, included in the Policy Manual. Upon information and belief, neither SAFA nor the Policy Manual have been certified by the National Mediation Board.

45.    The only references to the Railway Labor Act ("RLA") and the National Mediation Board ("NMB") in the Policy Manual are located in the definitions and acronyms sections, with no explanation for their inclusion in these sections.

46.    SkyWest alternately claims the Policy Manual *is* and *is not* a collective bargaining agreement ("CBA") depending on the audience for the communications. To this Court and others, SkyWest claims its Policy Manuals are "CBAs" but to investors, SkyWest claims that SkyWest Airlines employees are not participants in unions and cautions against "collective bargaining

---

[5] *See* footnote 2, *supra*.

[6] http://inc.skywest.com/assets/Uploads/AnnualReports/SkyWestInc2015AnnualReport.pdf, p. 14 (last viewed June 15, 2017), incorporated fully herein by reference. On the issues and statements addressed in this Amended Complaint, the potentially relevant 2013, 2014, 2015, and 2016 Annual Reports do not differ in significant ways. Each Annual Report may be viewed at: http://inc.skywest.com/investor-relations/annual-reports/.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

group organization efforts" by SkyWest Airlines' employees. *Compare, e.g.,* Defendant's Motion to Dismiss (Dkt. #35, 4) *to* SkyWest's 2015 Annual Report, pp. 13-14, located at: http://inc.skywest.com/assets/Uploads/AnnualReports/SkyWestInc2015AnnualReport.pdf

47.     Similarly, SkyWest has a pending Request for Judicial Notice (Dkt. #36) of a 2012 "Addendum to CBA" that it suggests "simply completes the contract," (*id.* at 1) implying that the Addendum "completes" the later-dated 2014 Policy Manual (which never mentions the earlier 2012 Addendum and is not named or referenced as a CBA). Ex. 1. Like the Policy Manual, the purpose of the Addendum appears to depend on the audience to whom it is presented.

48.     In its Policy Manual, SkyWest states "SkyWest Airlines recognizes SAFA as the only collective bargaining unit of SkyWest Airlines' Customer Service department." Ex. 1, p. 7450.1. SAFA purportedly "bargains" with SkyWest for the benefit of Frontline Employees.

49.     In the Policy Manual, SkyWest specifically states that "Company policies are subject to change outside the collective bargaining process. When those changes occur, Customer Service employees are still accountable to follow the updated provisions with the understanding that corrective action will still apply." Ex. 1, p. 7472.1. In other words, SkyWest reserves the right to unilaterally change and enforce its changed policies outside "the collective bargaining process."

50.     At least some sub-categories of Frontline Employees, including all "Ramp Agents" like Plaintiffs, are not permitted to vote for SAFA representatives or about their representation in SAFA.

51.     According to the Policy Manual, "SAFA representatives receive a $1.50/hour override" in their pay scale. Ex. 1, p. 7455.2. Comparing that override to the wage rates for

Frontline Employees at SFO, a SAFA representative effectively receives an increased hourly wage rate that would require between 5 and 8 years of employment to achieve.[7] *Id*. at p. 7455.1.

52.     SAFA is effectively a "company union" because SkyWest uses the lure of significant wage increases provided to SAFA representatives to interfere, influence, and coerce SAFA representatives into agreements that benefit SkyWest rather than the Frontline Employees. Further, SkyWest routinely communicates anti-union sentiments to its employees and investors.

## Shift Trades

53.     SkyWest is not exempted from paying overtime when Frontline Employees trade shifts, yet overtime is not paid to employees when they trade shifts unless the employees are trading shifts scheduled for the same calendar day.

54.     According to the Policy Manual:

> D. An employee who agrees to work a shift trade for another employee must understand the traded shift hours *do not count toward overtime*; however, when an employee works beyond the hours agreed to in a shift trade, the additional time is added to the daily and weekly hour totals for overtime calculation.

> 1) When two employees trade the *same number of hours on the same calendar day*, they are participating in a shift swap. These hours are exempt from the above rule and will count toward weekly overtime calculation.

Ex. 1, p. 7458.8 (emphases added).

55.     Frontline Employees are scheduled based on an "alternative workweek," but SkyWest is not exempted from paying overtime under California Labor Code § 510, whether or

---

[7] *See* General Pay Scales chart on Ex. 1, p. 7455.1. *Compare* SFO "START" pay rate of $12.35 per hour, *add* $1.50 per hour for SAFA pay override (*id.* at 7455.2), *which equals* $13.85 per hour increase in pay as a SAFA representative. A non-SAFA representative will not reach $13.85 per hour until that employee reaches STEP 9 at SFO. *Id.* at p. 7455.1. Each pay "step" requires 1900 hours of work to progress to the next step, which is approximately one year based on a full-time schedule as a Frontline Agent (1900 hours/50 weeks=38 hours per week). *Id.* at p. 7455.2.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

not its Policy Manual is considered a CBA.  California Labor Code § 514 states in relevant part: "Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, *and if the agreement provides premium wage rates for all overtime hours worked . . ..*" Cal. Lab. Code § 514.

56.   The Policy Manual does not provide premium wage rates for *all* overtime hours worked. Specifically, the Policy Manual explicitly denies premium compensation for overtime hours worked pursuant to a shift trade.

57.   The California Wage Order 9-2001 § 3(N) exemption for transportation workers should not apply when an employee volunteers to work overtime hours in a given week without relinquishing an equivalent amount of hours in the same or another week (i.e., a shift-swap or temporary change in days off) since SkyWest pays overtime when an employee volunteers to work over 40 hours in a given week without a corresponding shift-trade or change in days off.

58.   SkyWest's shift-trade overtime policy is inconsistent with the original purpose of the § 3(N) exception and the wage laws of the State of California.

### SkyWest's Wage Statements

59.   SkyWest's wage statements, as provided to every Frontline Employee, are insufficient in that they 1) do not include the total actual working hours during the pay period but instead only include hours that are approved by supervisors *after the work has already been performed*, 2) do not include applicable overtime pay for all hours over 40 performed during the pay period; and because 3) the Frontline Employees' actual hourly wages cannot be determined from SkyWest's wage statements alone.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

60.     SkyWest Frontline Employees must rely on separately stored daily scheduling information, definitions, supervisor approval records, and wage statements in order to determine whether the company is in compliance with applicable wage laws.

61.     As a result of supervisors' frequent failure to approve of *all* completed work hours and minutes, Frontline Employees are unable to promptly and easily determine the accuracy of their wage statements without engaging in mathematical computations to reconcile their time and pay records.

### San Francisco Minimum Compensation Ordinance

62.     As Frontline Employees, Plaintiffs are subject to the San Francisco Minimum Compensation Ordinance, San Francisco Administrative Code, Ch. 12P ("MCO"). SkyWest has paid Plaintiffs who worked at SFO rates that fell below those provided for by the MCO. For example, the hourly MCO rate in 2014 was $12.66, but SkyWest paid Plaintiff Cory Ross an hourly pay rate of $12.35 for work at SFO in 2014.

63.     Additionally, the San Francisco Airport Commission has adopted a Quality Standards Program ("QSP") that requires Plaintiffs be paid at a minimum hourly wage that is $0.50 an hour above the current San Francisco MCO rate. SkyWest has paid Plaintiffs who worked at SFO rates that fell below these QSP rates. Thus, for example, the hourly QSP rate in 2014 was $13.16, but Plaintiff Jeremy Barnes was paid a regular rate of $13.10 in 2014. Furthermore, the QSP rate in 2015 was $13.52, but Plaintiff Barnes was only paid a regular rate of $13.25.  Similarly, for example, Plaintiff Ross's hourly rate was well below the rate, since he was only paid $12.35 in 2014.

**Unfair Competition**

64.   By paying the Frontline Employees significantly less than other SFO employers who pay according to the requirements of the MCO-QSP, SkyWest gains an unfair competitive advantage over legitimate business competitors at the expense of its employees and the public.

65.   SkyWest's wage practices are immoral, unethical, oppressive, unscrupulous, and injurious to their employees.

66.   In addition, by refusing to pay overtime for shift trades, SkyWest takes unfair advantage of its employees for its own financial advantage. Frontline Employees, like Plaintiff, work extra-long hours to meet the needs of SkyWest yet are unfairly paid at a rate that violates California's wage statutes, and especially, runs counter to the spirit and intent of such laws.

67.   SkyWest's practices significantly harm fair competition.

**PLAINTIFF-SPECIFIC FACTS**

**Plaintiff Cody Meek**

68.   Plaintiff Cody Meek began working for SkyWest Airlines as a Frontline Employee, and specifically as a Ramp Agent, on or about August 30, 2013. He was based in San Francisco, California (SFO) and worked for SkyWest until June 16, 2015.

69.   At all times during his employment with SkyWest Airlines, Mr. Meek was a citizen, resident, and taxpayer in the State of California.

70.   Mr. Meek's hourly pay rate when he was hired in 2013 was $12.35 per hour. His hourly pay rate upon leaving SkyWest in June 2015 was $12.50 per hour.

71.   As detailed further below, Mr. Meek was a "covered employee" under the MCO-QSP, but he was paid wages consistently below the minimum required for covered airport employees.

72.   "Covered employees" under the MCO-QSP are defined as those who:

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

> (1) require the issuance of an Airport badge with Airfield Operations Area ("AOA") access and work in and around the AOA in the performance of their duties; or (2) are directly involved in passenger and facility security and/or safety, including but not limited to checkpoint screening, passenger check-in, skycap and baggage check-in and handling services, custodial services, and AOA perimeter control (collectively, "Covered Employees") as further specified [by the Quality Standards Program].
> http://media.flysfo.com/media/Quality-Standards-Program-2016.pdf

73.     Beginning January 1, 2013, the MCO[8] rate was $12.43 per hour, with the QSP requiring pay rates at $0.50 above the MCO.[9]

74.     Mr. Meek, like all other Frontline Employees, was paid and received wage increases based upon total hours worked according to SkyWest's general pay scales. *See* Ex. 1, page 7455.1 to 7455.2.

75.     In 2013, the MCO required a pay rate of $12.43 per hour. Airport employees who are provided health insurance must be paid an additional $0.50 per hour pursuant to the QSP wage rules for employees. Thus Mr. Meek should have received no less than $12.93 per hour in 2013. The applicable rate of pay he should have received in 2014 was at least $13.16 per hour (MCO plus QSP). And the applicable rate of pay he should have received in 2015 was at least $13.52 per hour (MCO plus QSP). Mr. Meek's regular wage rate was never more than $12.50 per hour.

76.     At all times while working for SkyWest, Mr. Meek was paid less than the hourly wage rate as required by the MCO-QSP. When he and other Frontline Employees confronted SkyWest supervisors about their pay being below the minimum wages required under the MCO-QSP, they were shown a copy of the "Addendum" (Dkt. #36-1) as evidence that SkyWest did not

---

[8] http://sfgov.org/olse/mco-historical-rates (last viewed June 15, 2017).

[9] "A. Compensation. The QSP rate shall increase such that it remains at all times $0.50 above the current San Francisco Minimum Compensation Ordinance ("MCO") rate. The Airport Director will provide an annual notice of the updated QSP minimum wage rate. Covered Employers shall post the notice in a breakroom or other area easily accessed by their employees." http://media.flysfo.com/media/Quality-Standards-Program-2016.pdf (last viewed June 15, 2017).

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

have to abide by this ordinance, despite the ordinance's clear language that side agreements must pay no less than the MCO-QSP minimum wages.

77.   At all times during his employment with SkyWest, Mr. Meeks was employed at the SFO, with all of his work actually performed at the airport facility.

78.   At all times during his employment with SkyWest Airlines, Mr. Meek was required to have an airport badge with AOA access and worked in the AOA in the performance of his duties as a Frontline Employee.

79.   At all times while employed by SkyWest Airlines, Mr. Meek was directly engaged in activities that had an impact on safety within the AOA.

80.   Like all SkyWest Frontline Employees, Mr. Meek was required to "swipe-in" and "swipe-out" of the timeclock as he came and went from the workplace. Like all Frontline Employees, his timeclock records are preserved to the minute in the DayForce system. These times include: actual punch-in times for the day, start and stop times for lunch and rest breaks, and punch-out times. In addition, the DayForce system records whether the shift was scheduled or traded.

81.   Mr. Meek frequently worked time which was wholly uncompensated, including punching in early (to avoid being even a minute late), "unapproved" missed meal breaks when he was unable to be completely relieved of his work duties due incoming or outgoing flights, and times when he was not able to leave as scheduled due to the Frontline Employees being short-staffed at the end of his workday.

82.   As shown in the chart below and as recorded on Mr. Meek's pay records, virtually every meal break shows the difference between his meal break begin time and end time are *exactly 30 minutes*. These records do not accurately represent the punch-in and punch-out times for his meal breaks, but instead are proof that SkyWest uses an automated meal break to feign

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

compliance with California wage laws. In reality, his 30-minute meal breaks were often interrupted by work duties.

| Date | Mealtime Begin | Mealtime End |
|---|---|---|
| June 14 [2014] | 4:55pm | 5:25pm |
| June 15 | 4:33pm | 5:03pm |
| June 16 | 5:56pm | 6:26pm |
| June 17 | 7:08pm | 7:38pm |

83.   Mr. Meek frequently worked in excess of forty hours per week without being compensated for all of his working hours and overtime, including working "double shifts," missed (and unpaid) meal and rest breaks due to incoming or outgoing flight needs, and working after his shift end due to staffing shortages.

84.   Mr. Meek was generally scheduled to work from 1:30 p.m. to 10:45 p.m. with a scheduled thirty minute meal break, meaning that his actual working time was 8.75 hours. He was only paid overtime after completing 8.75 hours of work rather than after 8 hours as required by California's wages laws. If Mr. Meek worked all of his own schedule, then worked all or part of another person's schedule (i.e. working a "double shift" that was considered a "shift trade"), he was not paid overtime for the second shift regardless of the number of hours he worked in the actual 24-hour workday or during that week.

85.   As shown in the chart below, one of Mr. Meek's shift trade workdays with improper overtime payments occurred on December 21, 2013, when he worked his regular shift from 1:45 p.m. to 10:45 p.m. He was then "held over" due to late arriving flights and worked until 5:32 a.m. The next day (28 minutes after completing his "previous" workday), he worked from 6:00 a.m. to 3:25 p.m. covering another Frontline Employee's schedule. Although he worked

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

nearly 27 hours straight, both his initial shift and his work hours from 6:00 a.m. to 3:00 p.m. was paid at his regular rate of pay. Then, even though after the traded shift, he was "held over" for a late flight until 3:25 p.m.  For that time, he was still paid at his regular rate of pay due to the shift trade. The additional hours worked due to the shift trade did not count toward his day or week's overtime hours.

| Time | Payrate | Total Hours |
|---|---|---|
| 1:45pm to 10:15pm | $12.35 (regular) | 8 hours |
| 10:15pm to 2:15am | $18.53 (time and one-half) | 4 hours |
| 2:15am to 5:32am | $24.70 (double) | 3.28 hours |
| 6:00am to 3:00pm | $12.35 (regular—shift trade) | 8.5 hours |
| 3:00pm to 3:25pm | $12.35 (regular—shift trade holdover) | .42 hours |

86.     Like all SkyWest Frontline Employees, Mr. Meek was required to review and authorize that all of his time records were correct and accurate in DayForce. Any early check-in, lunch break not taken, late clock-out or additional time not originally required a written explanation to his supervisor. As was common with other employees, Mr. Meek's additional working time was often not approved by the supervisor for wages, meaning that the time Mr. Meek had *already worked* was uncompensated and was not included when determining overtime hours. Minute by minute summaries of each days' work (including actual punch times) are maintained in SkyWest's DayForce system.

87.     Upon leaving SkyWest, Mr. Meek did not receive full payment for the hours of work for which he was not compensated, including unpaid wages for off the clock time, underpaid meal breaks, overtime pay for shift trades and off the clock time (where applicable) and the difference in pay for MCO-QSP minimum wage rates. Cal. Lab. Code §§ 201-203.

88.     While he was a Frontline Employee (Ramp Agent) with SkyWest, Mr. Meek worked extremely long days, worked before and after his actual schedule as required to make sure

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

flights were properly staffed, yet many working hours of each week were uncompensated or undercompensated, and absolutely all of his time was compensated at a rate below the wages required for workers at the SFO under the MCO-QSP.

**Plaintiff Jeremy Barnes**[10]

89.    Plaintiff Jeremy Barnes was employed by SkyWest in California from approximately September 2012 to September 2016.  Prior to that he worked at SkyWest in Portland, Oregon, from approximately April 2010 through September 2012.  He worked as a Ramp Agent in SkyWest's operations at SFO.

90.    Plaintiff Barnes is a non-exempt employee paid on an hourly basis. While Plaintiff Barnes was employed by SkyWest, he was regularly denied meal and rest breaks. Among other things, Plaintiff Barnes's meal breaks were often delayed until after the fifth hour on most of his shifts and were frequently curtailed due to flight arrival and other interruptions so that they were often less than thirty minutes long. He did not receive premium/penalty pay for missed, interrupted or delayed meal breaks nor for missed rest breaks.

91.    Plaintiff Barnes was not given overtime pay when his daily hours worked exceeded eight hours. When Plaintiff Barnes worked overtime and/or worked a double shift, he was not provided overtime meal and rest breaks. As a result of SkyWest's policies and practices, Plaintiff Barnes was provided inaccurate wage statements and is owed wages, overtime, penalties, damages and reimbursements.

---

[10] At the time of filing the *Barnes* First Amended Complaint, Plaintiffs Barnes and Ross only had partial employment and payroll records.  They reserve the right to supplement and/or amend this First Amended Complaint with additional facts and evidence once their entire employment records are produced.  *See Barnes* FAC, footnote 1.

24

**Plaintiff Coryell Ross**[11]

92.    Plaintiff Coryell Ross was employed by SkyWest in California from approximately 2014 through to early 2017. He worked as a Ramp Agent in SkyWest's operations at LAX, SFO, and ONT.  Plaintiff estimates he was stationed at SFO from 2014 to 2015, at LAX from 2015 through the fall of 2016, and at ONT from fall of 2016 through early 2017.  Plaintiff also alleges that the dates and assignments of his work are within SkyWest's employment records.

93.    Plaintiff Ross is a non-exempt employee paid on an hourly basis. While Plaintiff Ross was employed by SkyWest, he was regularly denied meal and rest breaks. Plaintiff Ross's meal breaks were often delayed until after the fifth hour on most of his shifts and were frequently curtailed due to flight arrival and other interruptions so that they were often less than thirty minutes long. He did not receive premium/penalty pay for missed, interrupted or delayed meal breaks nor for missed rest breaks. During Plaintiff's employment by SkyWest he and coworkers were required to "sign off" that they had taken meal breaks every day of the week, even on days they did not work.

94.    Plaintiff Ross occasionally worked twelve or sixteen hour shifts, but was not provided overtime meal and rest breaks. As a result of SkyWest's policies and practices, Plaintiff Ross was provided inaccurate wage statements and is owed wages, overtime, penalties, damages and reimbursements.

## CLASS ACTION ALLEGATIONS

95.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the following California Frontline Employee Class:

> All persons who were formerly or are currently employed as Frontline Employees for SkyWest Airlines based in California during the applicable statute of limitations period(s) prior to the filing of the complaint and who were unpaid and/or underpaid for their work time.

---

[11] *See supra* footnote 10.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

These California Class claims are brought under the State of California Wage Order No. 9; Cal. Labor Code; Cal. Labor Code §§ 201-203, 223, 226, 226.7, 510, 511, 514, 1182.12, 1194, and 1197. In addition, the Plaintiffs bring this case pursuant to California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200 *et seq.*

96.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the following California Former Frontline Employee Subclass:

> All persons who were formerly employed as Frontline Employees for SkyWest Airlines based in California during the applicable statute of limitations period(s) prior to the filing of the complaint and who resigned or were terminated without being fully paid for their work time.

These California Former Frontline Employee Subclass claims are brought under Cal. Labor Code §§ 201-203.

97.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the following San Francisco Frontline Employee Subclass pursuant to the San Francisco Minimum Compensation Ordinance, San Francisco Admin. Code § 12P (MCO-QSP), with its enforcement through Cal. Labor Code §§ 223, 225.5, and 1197:

> All persons who were formerly or are currently employed as Frontline Employees for SkyWest Airlines based in San Francisco during the applicable statute of limitations period prior to the filing of the complaint and who were unpaid or underpaid for their work time based upon the minimum wages required by the Minimum Compensation Ordinance and the Quality Standards Program at San Francisco Airport.

98.     Plaintiff Ross brings specific claims as set forth below on behalf of LAX and ONT Subclasses defined as:

> All current and former SkyWest workers employed as Frontline Employees, or equivalent positions, at LAX, or alternatively, ONT, at any time since February 27, 2013 through the date of class notice.

99.     Excluded from the Class and Subclasses are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, Defendants'

employees other than SkyWest Frontline Employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of these persons; the Judge assigned to this action, any member of the Judge's immediate family; and counsel for the Plaintiffs.

100.    Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23, in that: (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to each Class member; (c) the claims or defenses of each Class member is typical of the claims or defenses of all Class members; (d) the representative parties will fairly and adequately protect the interests of the Class.

101.    **Numerosity**.  Plaintiffs are informed and believe, and on that basis alleges, that the proposed Class contains hundreds of similarly situated persons who are either currently or formerly employed by SkyWest as Frontline Employees.[12] The precise number of Class Members is currently unknown to Plaintiffs. The true number and identity of all Class Members is known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice. The members of the Class are so numerous that joinder of all members would be impracticable.

102.    **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

---

[12] In light of the Court's consolidation of the cases and differences in Class Definitions between the *Meek* and *Barnes* FACs, Plaintiffs reserve the right to modify their class and sub-class definitions to conform with evidence produced during the upcoming discovery phase of this litigation.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

a. Whether SkyWest improperly calculated the hourly pay of Frontline Employees by failing to pay wage compensation for all hours actually worked, whether or not approved after the work was completed by supervisory personnel;

b. Whether SkyWest must pay wages to Frontline Employees for all working hours at no less than applicable minimum wage as established by state and local statutes;

c. Whether SkyWest's policy and practice of requiring Frontline Employees to work through their meal and rest break periods violates California labor laws and regulations;

d. Whether SkyWest's policies and practices to compensate Frontline Employees for meal and rest breaks that were not provided violates California labor laws and regulations;

e. Whether SkyWest must pay Frontline Employees premium rates due for missed and shortened meal breaks;

f. Whether SkyWest must pay Frontline Employees overtime wages for all overtime working hours, including shift trades, at no less than applicable wage rates as established by state and local statutes;

g. Whether SkyWest has failed to pay Frontline Employees minimum wages, overtime, and double-time in violation of California labor laws and regulations;

h. Whether SkyWest has miscalculated Frontline Employees' regular rates of pay in violation of California labor laws and regulations;

i. Whether SkyWest failed to timely pay Former Frontline Employees unpaid and underpaid wages in violation of state wage laws;

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

j.   Whether SkyWest failed to provide its Frontline Employees with wage statements that accurately show all working hours, rates of compensation for all overtime working hours, and all other information as required by state wage laws;

k.   Whether SkyWest engaged in the unlawful employment practices alleged herein;

l.   Whether SkyWest is liable to Plaintiffs and members of the Class for damages for conduct actionable under state and local laws;

m.  Whether SkyWest's wage policies and practices are in violation of California state wage and unfair competition laws;

n.   Whether SkyWest's wage policies and practices are in violation of San Francisco wage ordinances, the Minimum Compensation Ordinance and the San Francisco Airport's Quality Standards Program;

o.   Whether SkyWest's failure to properly pay its Frontline Employees was intentional and knowing; and

p.   Whether Plaintiffs and members of the Class have sustained damages as a result of SkyWest's conduct, and, if so, the appropriate measure of damages.

103.   **Typicality**.  Plaintiffs' claims are typical of the claims of the Class Members in that Plaintiffs and each member of the Class have been injured by the same wrongful conduct of SkyWest.  Plaintiffs' claims arise from the same practices and course of conduct that gave rise to the Class Members' claims and are based on the same legal theories.  Plaintiffs, like all Class Members, have not been fully compensated by SkyWest pursuant to state and local labor laws, and thus Plaintiffs, like all Class Members, have been damaged by SkyWest's unlawful conduct. All SkyWest Frontline Employees, including Plaintiffs and Class Members, are compensated under an identical compensation scheme.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

104.   **Adequacy of Representation**.   Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

105.   **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members of the Class is relatively small compared to the burden and expense that would be entailed in individual litigation of their claims against the Defendants. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if members of the Class could afford such individualized litigation, the court system could not. Individualized claims brought by members of the Class would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

106.   Plaintiffs intend to send the best notice practicable to all members of the Class to the extent required under applicable class action procedures pursuant to Federal Civil Rule 23(c)(2).

107.   In the alternative, the Class may be certified under Federal Civil Rule 23(b)(1) or (2) because:

   a.   the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

individual members of the Class which would establish incompatible standards of conduct for SkyWest; and

    b.   SkyWest has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

108.    Particular issues in this litigation relating to the Class may be also be certified under Federal Civil Rule 23(c)(4) and the Court may employ subclasses pursuant to Federal Civil Rule 23(c)(5) if necessary.

## CALIFORNIA'S PRIVATE ATTORNEY GENERAL ACT

109.    On August 15, 2017, Plaintiff Cody Meek, on behalf of himself, and all employees similarly situated, filed a notice with the California Labor and Workforce Development Agency and SkyWest pursuant to the California Labor Code's Private Attorney General's Act, §§ 2698, *et seq*. ("PAGA"), regarding their complaints that SkyWest has failed to pay them and other employees all wages, commissions, damages, and penalties, as described in Plaintiff Meek's Complaint in *Meek v. Skywest*, No. 3:17-cv-01012-JD.  Attached as Exhibit 3.

110.    On July 12, 2018, Plaintiffs in the *Barnes* matter, who are similarly situated employees to Plaintiff Meek, also provided PAGA notice to the California Labor and Workforce Development Agency and SkyWest, regarding their similar complaints that SkyWest has failed to pay them and other employees all wages, commissions, damages, and penalties, as described in this Complaint.  Attached as Exhibit 4.

111.    PAGA permits private litigants to investigate claims and bring a representative action on behalf of fellow employees for violations of the California Labor Code, and permits them to recover penalties and unpaid for the employees and the State of California.  Cal. Labor Code §§ 558, 2699.  PAGA's statutory waiting period has passed and Skywest and the state of California have not responded to any Plaintiff's PAGA notice or indicated any intention to

investigate Plaintiff's claims.  Accordingly, Plaintiffs and their representatives have complied with the notice requirements of PAGA.

## COUNT I
### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF CALIFORNIA LAW
(Cal. Wage Order No. 9-2001 § 4;
Cal. Labor Code §§ 510, 511, 514, 1182.12, 1194, and 1194.2)
(Plaintiffs on Behalf of the California Class and/or Subclasses)

112.    Plaintiffs and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

113.    At all times relevant to this action, Plaintiffs and California Class Members were employed by SkyWest within the meaning of the California Labor Code.

114.    From January 1, 2008 until June 30, 2014, the minimum wage in California was $8.00 an hour. From July 1, 2014 until December 31, 2015, the minimum wage in California was $9.00 an hour. From January 1, 2016 until December 31, 2016, the minimum wage in California was $10.00 an hour. Since January 1, 2017, the minimum wage in California for employers with 26 or more employees (including SkyWest) has been $10.50.

115.    California Class Members employed by SkyWest were not exempt from the minimum wage requirements of California law.

116.    California law requires employers to pay at least the minimum wage for all hours worked. California law does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift.

117.    California Labor Code section 510 states that "[e]ight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate

1   of pay for an employee." Additionally, "[a]ny work in excess of 12 hours in one day shall be

2   compensated at the rate of no less than twice the regular rate of pay for an employee."

3       118.    California Labor Code section 200 defines wages as "all amounts for labor

4   performed by employees of every description, whether the amount is fixed or ascertained by the

5   standard of time, task, piece, commission, or other method of calculation." SkyWest has failed to

6   pay Plaintiffs and the Class all minimum wages, straight time, overtime, and double-time required

7   under the California Labor Code and Industrial Wage Order ("IWC") 5-2001 (8 Cal. Code Regs.

8   § 11050)[13] by, including but not limited to, (1) failing to accurately record all hours of work in

9   SkyWest's timekeeping systems; (2) failing to pay wages and overtime at the proper rates for

10  hours worked that accumulate because of missed meal and rest periods; and (3) failing to properly

11  calculate the regular rate of pay.

12      119.    SkyWest's compensation scheme violates California's minimum wage

13  requirements because it fails to pay Plaintiffs and California Class Members for all hours worked,

14  including failing to pay working hours from punch-in to punch-out, pay for meal and rest breaks

15  that were either not actually able to be taken or shorter than required, and pay for working beyond

16  the scheduled shift when required by the airline's needs.

17      120.    SkyWest has committed and continues to commit the acts alleged herein

18  knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and

---

[13] Plaintiffs initially allege that they are subject to the IWC Wage Order #9 governing the "transportation industry." However, due to the nature of their duties, Plaintiffs alternatively or additionally allege that they are subject to IWC Wage Order #5 governing the "public housekeeping industry" and/or IWC Wage Order #17 which is a catch-all order applicable to non-exempt employees. The substantive requirements for wages, breaks, and record keeping alleged in this Complaint are substantially similar, if not identical, amongst these IWC Wage Orders and Plaintiffs expressly incorporate each of them in by reference to each cause of action.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

Class members, in conscious disregard of Plaintiffs' and California Class Members' rights to be paid for their labor.

121.    In its violations of the California Labor Code set forth in this Complaint, SkyWest has knowingly and willfully refused to perform its obligations to provide Plaintiffs and the Class members with all wages and compensation required by state and local law. SkyWest and its agents committed the acts and omissions alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and the proposed Class, with improper motives amounting to malice and in conscious disregard of the rights of Plaintiffs and the Class members. Plaintiffs and the Class members are entitled to recover all nominal, actual, compensatory, punitive, and exemplary damages in an amount to be determined by proof at trial.

122.    SkyWest's computer system, DayForce, records exact punch times and working hours, but pays to the schedule with unpaid work time categorized in a separate column as "unpaid."

123.    During the applicable statute of limitations, SkyWest has failed to pay Plaintiffs and California Class Members no less than the applicable minimum wage for all hours worked, in violation of Cal. Labor Code § 1182.12 and relevant wage orders, including Wage Order 9-2001.

124.    Pursuant to Cal. Labor Code § 1194, Plaintiffs and California Class Members are entitled to recover their unpaid wages in an amount to be established at trial, plus prejudgment interest, costs and reasonable attorneys' fees. Further, Plaintiffs and California Class Members are entitled to recover liquidated damages pursuant to Cal. Labor Code § 1194.2.

**<u>COUNT II</u>**
**MISSED OR SHORTER MEAL AND REST BREAKS**
**Cal. Labor Code §§ 226.7, 512, and IWC Wage Order 5-2001**
**(Plaintiffs on behalf of the California Class and/or Subclasses)**

125.    Plaintiffs and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

126.    At all times relevant to this action, Plaintiffs and California Class Members were employees of SkyWest within the meaning of the California Labor Code.

127.    Pursuant to Cal. Lab. Code § 512, with certain exceptions "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . .."

128.    California Labor Code section 512 and IWC Wage Order 5-2001[14] requires SkyWest to provide Plaintiffs and Class members with regular meal and rest breaks during which they are completely relieved of duty. Section 512 also requires SkyWest to provide additional meal periods when Frontline Employees work more than 10 hours per day. Section 226.7 requires SkyWest to pay Plaintiffs and Class members "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

129.    SkyWest has failed to provide Plaintiffs and Class members with legally required meal and rest breaks as alleged herein. Additionally, SkyWest has failed to provide Plaintiffs and Class members with meal and rest breaks during which they were completely relieved of their work duties, has failed to keep accurate records of Frontline Employees' meal and rest breaks, has failed to pay them wages and penalties owed for missed meal and rest breaks, has failed to implement and maintain any legally acceptable policy for obtaining waivers of any meal and rest break requirements, and has failed to implement and maintain any policy and practice that compensates Frontline Employees for missed meal and rest breaks.

---

[14] Per footnote 13, Plaintiffs additionally and/or alternatively allege they are subject to IWC Wage Orders #9 & #17.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

130.     SkyWest is not exempt from the provisions of Cal. Lab. Code § 512 under subsection (e), even if it claims to have a CBA, because the Policy Manual does not provide for "final and binding arbitration of disputes concerning application of its meal period provisions, [or] premium wage rates for all overtime hours worked . . .." Cal. Lab. Code § 512(e).

131.     During the applicable statute of limitations, SkyWest violated Labor Code §§ 226.7 and 512 by automatically deducting exactly 30 minute meal breaks when Plaintiffs and Class members were unable to be relieved of their duties for a full 30-minute meal break during a shift in excess of 5 hours.

132.     SkyWest unlawfully sets employee time records to appear that employees take exactly 30-minute meal breaks and to misreport meal break times as actually taken by Frontline Employees. Upon information and belief, actual punch times are preserved in the DayForce system.

133.     By automatically deducting exactly 30 minutes for shorter than 30 minute meal breaks, SkyWest failed to pay premium wages pursuant to Cal. Lab. Code § 226.7(c).

134.     The Frontline Employees' right to meal and rest breaks is a non-negotiable right under California state law.

135.     Pursuant to Cal. Labor Code § 226.7, Plaintiffs and California Class Members are entitled to recover their unpaid meal and rest break wages in an amount to be established at trial, plus prejudgment interest, costs and reasonable attorneys' fees. as well as necessary injunctive relief in the form of corporate policy and practice changes necessary to bring SkyWest into compliance with California's laws regarding the provision of meal and rest breaks..

**COUNT III**
**FAILURE TO PAY OVERTIME**
**FOR SHIFT TRADES AND OFF-THE-CLOCK TIME**
**(Cal. Labor Code § 510, 511, 514, 1194)**
**(Plaintiffs on behalf of the California Class and/or Subclasses)**

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

136.     Plaintiffs and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

137.     Pursuant to California Labor Code § 510,

Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work. The requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to any of the following:
(1)  An alternative workweek schedule adopted pursuant to Section 511.
(2)  An alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514. . . .

138.     Although Frontline Employees work according to an alternate workweek as described in Cal. Lab. Code § 511, and although SkyWest may claim to have a CBA, in either case, SkyWest is not exempt from the overtime provisions of Cal. Lab. Code § 514 because the Policy Manual does not "provide[] premium wage rates for *all* overtime hours worked . . .." Cal. Lab. Code § 514 (emphasis added).

139.     SkyWest is not exempt from paying overtime when Frontline Employees trade shifts, and SkyWest in fact does not pay overtime to employees when they trade shifts (unless the shifts traded are scheduled for the same calendar day). *See* Ex. 1, p. 7458.7.

140.     The Policy Manual does not provide premium wage rates for *all* overtime hours worked. Specifically, the Policy Manual explicitly denies premium compensation for overtime hours worked pursuant to a shift trade.  According to the Policy Manual:

D. An employee who agrees to work a shift trade for another employee must understand the traded shift hours *do not count toward overtime*; however, when an employee works beyond the hours agreed to in a shift

trade, the additional time is added to the daily and weekly hour totals for overtime calculation.

1) When two employees trade the *same number of hours on the same calendar day*, they are participating in a shift swap. These hours are exempt from the above rule and will count toward weekly overtime calculation.

Ex. 1, p. 7458.7 (emphases added).

141.    Although an issue of first impression,[15] the California Wage Order 9-2001 § 3(N) exemption for transportation workers should not apply when an employee volunteers to work overtime hours in a given week without relinquishing an equivalent amount of hours in the same or another week (a shift-swap or temporary change in days off).  SkyWest's own practice of paying overtime when an employee volunteers to work over 40 hours in a given week without a corresponding shift-swap or change in days off supports this interpretation of the intent of the Wage Order.

142.    Pursuant to Cal. Labor Code § 1194, Plaintiffs and California Class Members are entitled to recover their unpaid overtime wages in an amount to be established at trial, plus prejudgment interest, costs and reasonable attorneys' fees.

## COUNT IV
## FAILURE TO PROVIDE ACCURATELY ITEMIZED WAGE STATEMENTS
### (Cal. Labor Code § 226 , 1174, and 1174.5)
### (on behalf of Plaintiffs and the California Class and/or Subclasses)

143.    Plaintiffs and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

144.    Pursuant to California Labor Code § 226, employers including SkyWest must provide their employees an accurate, written, itemized wage statement with each paycheck. The

---

[15] This issue of first impression was addressed on March 30, 2017 in a summary judgment opinion in *Reynaldo Lopez, et al. v. Delta Air Lines Inc., et al.* (Case number 2:15-cv-07302), in the U.S. District Court for the Central District of California, but vacated soon thereafter because the parties reached a settlement agreement concurrent with the Court's issuance of the opinion.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

wage statement must show all applicable pay rates in effect during the pay period, and the corresponding number of hours which were worked at each hourly rate by the employee.

145.    SkyWest has willfully failed to maintain policies and practices that permit employees to accurately record all hours of work and meal and rest breaks taken. SkyWest has also maintained policies and practices that fail to keep accurate and appropriate records of all hours worked by Plaintiffs and the Class as required under Labor Code section 1174 and IWC Wage Order 5-2001(7) (8 Cal. Code Regs. § 11050).[16]

146.    By failing to accurately itemize the number of hours California Plaintiffs and other Class Members work (for "off the clock work," and missed or shorter meal breaks), SkyWest knowingly and intentionally failed to provide Plaintiffs and Class Members with accurate wage statements as required by the California Labor Code.

147.    Pursuant to California Labor Code § 226, Plaintiffs and Class Members have suffered actual injuries for lost wages and the interest on the wages that were not timely paid as a result of SkyWest's failure to provide accurate, written, itemized wage statements such that Plaintiffs and Class Members could promptly and easily determine the accuracy of their wage statements without engaging in mathematical computations to reconstruct their time records.

148.    SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and Class Members, in conscious disregard of Plaintiffs' and Class Members' rights.

---

[16] Per footnote 13 *supra*, Plaintiffs additionally and/or alternatively allege they are subject to IWC Wage Orders #9 & 17.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

149.   Plaintiffs and Class Members are entitled to actual damages (lost "off the clock" wages and interest on wages not timely paid) and statutory penalties (when available to certain Class Members[17]) for these violations under Labor Code § 226(e).

<u>**COUNT V**</u>
**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200 et seq.**
**(On Behalf of Plaintiffs and the California Class and/or Subclasses)**

150.   Plaintiffs and California Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

151.   The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*., which prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or practices.

152.   The acts and practices of SkyWest described herein constitute unfair and unlawful business practices as defined by the UCL. SkyWest has engaged in unlawful activities including but not limited to: (a) failing to compensate Class Members at a wage rate at least equal to the applicable state and local minimum wage rates for each hour worked; (b) failing to provide accurate, written, itemized wage statements; and (c) failing to pay all wages when due.

153.   Section 17204 of the UCL permits "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action.

154.   California Labor Code section 90.5(a) states that it is the public policy of California to vigorously enforce minimum labor standards to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with

---

[17] Plaintiff Cody Meek, individually, does not seek statutory penalties due to the statute of limitations on penalties. *See* Order, Dkt. No. 103 at 5.

40

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

155.    The violations of these laws and regulations, as well as the fundamental public policy of protecting workers from unfair labor practices, serve as unlawful predicate acts and practices for establishing violations of the UCL.

156.    SkyWest's activities also constitute unfair competition in violation of the UCL because SkyWest's practices violate, inter alia, California Labor Code §§ 201, 202, 204, 226, 510, 514, 1182.12, 1194, 1197, and 2698 *et seq.* ("PAGA"), as well as the San Francisco Minimum Compensation Ordinance and the San Francisco Airport's Quality Standards Program. Each of these violations constitutes an independent and separate violation of the UCL.

157.    SkyWest's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition. SkyWest's practices described above are immoral, unethical, oppressive, unscrupulous, and injurious. SkyWest was unjustly enriched and achieved an unfair competitive advantage over legitimate business competitors at the expense of its employees and the public at large.

158.    SkyWest's acts and practices described above constitute unlawful and unfair business practices, and unfair competition, within the meaning of the UCL. Among other things, SkyWest's business practices have required Plaintiffs and other similarly situated persons to perform work for SkyWest's benefit without the legally required compensation, penalties and reimbursements, enabling SkyWest to gain an unfair competitive advantage over law-abiding employers and competitors.

159.    The harm to Plaintiffs and the California Class members in being denied their lawfully earned wages outweighs the utility, if any, of SkyWest's policies or practices and

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

therefore, SkyWest's actions as described herein constitute an unfair business practice or act within the meaning of the UCL.

160.    SkyWest's conduct as herein alleged has injured Plaintiffs and California Class members by wrongfully denying them all of their earned wages, and therefore was substantially injurious to Plaintiffs and Class Members. Plaintiffs and Class Members have standing to bring this claim for injunctive relief, restitution, disgorgement, and other appropriate equitable relief pursuant to Bus. & Prof. Code § 17204.

161.    Pursuant to Business and Professions Code § 17200 et seq., Plaintiffs and Class Members are entitled to restitution of the minimum wages and other unpaid wages alleged herein that were withheld and retained by SkyWest within the four years prior to this action's filing date, a permanent injunction requiring SkyWest to pay required wages, an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and other applicable law, and costs. Cal. Bus. & Prof. Code § 17203.

## COUNT VI
### WAITING TIME PENALTIES
### Cal. Labor Code §§ 201, 202, 203 and 204
### (Plaintiffs on behalf of the California Former Frontline Employee Subclass)

162.    Plaintiffs and California Former Frontline Employee Subclass Members allege and incorporate by reference the allegations in the preceding paragraphs.

163.    California Labor Code §§ 201 and 202 require that SkyWest pay employees who quit or were discharged all wages due within specified times. Labor Code § 204 requires employers to pay full wages when due. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

164.    California Plaintiffs and Subclass Members are entitled to unpaid minimum wages, but to date have not received all such compensation. SkyWest has committed and continues to commit the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and California Subclass Members, in conscious disregard of Plaintiffs' and Class Members' rights.

165.    As a consequence of SkyWest's willful conduct in not paying proper compensation for all hours worked, Plaintiffs and Subclass Members who have left SkyWest's employ are entitled to up to thirty days' wages under Labor Code § 203, together with interest thereon, as well as attorneys' fees and costs.

## COUNT VII
### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF SAN FRANCISCO MINIMUM COMPENSATION ORDINANCE
### San Francisco Admin. Code § 12P ("MCO-QSP"), Cal. Lab. Code §§ 223, 225.5 and 1197
### (Plaintiffs on Behalf of the San Francisco Subclass)

166.    Plaintiffs and San Francisco Subclass Members allege and incorporate by reference the allegations in the preceding paragraphs.

167.    At all times relevant to this action, Plaintiffs and San Francisco Subclass Members were employed by SkyWest within the meaning of San Francisco's Minimum Compensation Ordinance, were covered by the provisions of San Francisco's Minimum Compensation Ordinance, and were not exempt from the minimum wage requirements of that ordinance.

168.    San Francisco's MCO provides that employees who perform work funded under contract with the city receive minimum compensation set forth in the MCO. San Francisco Admin. C. §§ 12P.3, 12P.5.

169.    The MCO expressly applies to employees of contractors, like SkyWest, who serve SFO:

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

> The requirements of this Chapter shall apply to a written agreement (including, without limitation, any lease, concession, franchise or easement agreement) for the exclusive use of real property that is owned by the City or of which the City has exclusive use, if such property is under the jurisdiction of the San Francisco Airport Commission and the term of the agreement exceeds twenty-nine (29) in any calendar year, whether by single or cumulative instruments.

*Id.* § 12P.4.

170.    The MCO further provides "Each Covered Employee shall be a third-party beneficiary under the Contract as set forth in this subsection and in subsection (e) of this Section, and may pursue the following remedies in the event of a breach by the Contractor of any contractual covenant described in Section 12P.5(a) or Section 12P.5(d)." Id. at § 12.6(d).

171.    SkyWest is a "covered employer" for the purpose of the MCO-QSP. Frontline Employees including Plaintiffs and the San Francisco Subclass are "personnel who are involved in performing services which directly impact safety and/or security at the Airport" and are therefore "covered employees" under the QSP.

172.    Based upon the San Francisco MCO,[18] San Francisco's minimum compensation was $12.43 per hour in 2013, and $12.66 per hour in 2014. In January 1, 2015, San Francisco's minimum compensation was increased to $13.02 per hour. In 2016, San Francisco's minimum compensation increased to $13.34 per hour. The QSP since at least 2009 has at all times required a pay rate of $0.50 above the current MCO rate.[19]

173.    SFO is under the jurisdiction of the City and County of San Francisco, and is expressly covered by the MCO-QSP.

174.    Even if SkyWest had a CBA with its Frontline Employees, which it does not, that CBA would only take precedence over MCO-QSP compensation requirements if "(a) the CBA

---

[18] http://sfgov.org/olse/mco-historical-rates (last viewed January 29, 2020).
[19] http://media.flysfo.com/media/Quality-Standards-Program-2016.pdf (last viewed January 29, 2020).

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

or side agreement includes a wage rate applicable to covered employees *at least equal to the QSP* compensation rate as provided below and (b) such waiver is set forth in such agreement in clear and unambiguous terms" (emphasis added). The MCO-QSP was first adopted in 1999.

175.    The MCO-QSP requires employers to pay at least the minimum compensation for all hours worked. It does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift.

176.    SkyWest's compensation scheme violates the MCO-QSP's minimum compensation requirements because it fails to pay SFO Plaintiffs and San Francisco Subclass Members for all hours worked, fails to accurately record the work hours of all Frontline Employees, and because SkyWest has paid certain Frontline Employees less than the required hourly wages under the MCO-QSP ordinance provisions. Qualified Frontline Employees include (but may not be limited to) the following:

A.   In 2013, all Frontline Employees at or below SkyWest's "STEP 4" wage rate. Ex. 1, p. 7455.1.

B.   In 2014, all Frontline Employees at or below SkyWest's "STEP 6" wage rate. *Id.*

C.   In 2015, all Frontline Employees at or below SkyWest's "STEP 7" wage rate. *Id.*

D.   In 2016, upon information and belief, all Frontline Employees at or below SkyWest's "STEP 8" wage rate. *Id.*

E.   In 2017, upon information and belief, all Frontline Employees at or below SkyWest's "STEP 9" wage rate. *Id.*

177.    Plaintiffs assert this claim on behalf of all Frontline Employees who work or have worked at SFO and whose "STEP" wage rate is or was below that of the MCO-QSP.

178.    SkyWest has committed the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs and San Francisco Subclass Members, in

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

conscious disregard of Plaintiffs' and Class Members' rights to be compensated as required by state and local laws for their labor.

179.    SkyWest management, when confronted with the "lower than MCO-QSP" wage rates regularly pointed to the outdated "Addendum" (Dkt. #36-1) that purportedly waives Frontline Employee's right to the wage rates required under the MCO-QSP, despite the MCO-QSP's explicit prohibition of agreements to pay wages below the MCO-QSP rates.

180.    SkyWest has failed to pay Plaintiffs and the SFO Subclass all minimum compensation required under the MCO by, including but not limited to, (1) failing accurately to record all hours of work in SkyWest's timekeeping systems; (2) failing to pay wages and at the proper rates for hours worked that accumulate because of missed meal and rest periods; and (3) failing to properly calculate the regular rate of pay.

181.    In its violations of the MCO, SkyWest has knowingly and willfully refused to perform its obligations to provide Plaintiffs and the SFO Subclass members with all wages and compensation required by law.

182.    Within the applicable statute of limitations for intentionally failing to fully compensate its Frontline Employees, SkyWest has failed to pay Plaintiffs and qualified San Francisco Subclass Members the applicable minimum compensation for all hours worked, in violation of San Francisco Admin. Code § 12P and the QSP, thereby violating Cal. Lab. Code §§ 223 (secret payment of wages less than required by a statute or contract) and 225.5 (expressly permitting recovery of unpaid wages and penalties through an independent civil action).

183.    Pursuant to MCO §§ 12.6(d)-(e), Plaintiffs and the SFO Subclass are entitled to recover the unpaid balance of the full amount of unpaid minimum compensation together with simple annual interest of ten (10) percent on such amount from the date payment was due, plus all costs and expenses, including reasonable attorneys' fees and disbursements, incurred by such

prevailing party in such action or proceeding and in any appeal in connection with such action or proceeding.

184.    The minimum wage for employees fixed by an applicable local law is the minimum wage that must be paid to employees. The payment of wages below the minimum as SkyWest has done with its Frontline Employees is unlawful.  Cal. Lab. Code § 1197.

185.    Plaintiffs and San Francisco Subclass Members are entitled to recover their actual damages (unpaid wages) in an amount to be established at trial, penalties pursuant to Cal. Lab. Code § 225.5, prejudgment interest, and costs and attorneys' fees.

## COUNT VIII
**PRIVATE ATTORNEY GENERAL ACT OF 2004 ("PAGA")**
**California Labor Code § 2698 et seq.**
**(Plaintiffs Individually and on a Representative Basis)**

186.    Plaintiffs reassert and re-allege the allegations set forth above.

187.    Pursuant to PAGA, Plaintiffs and their representatives gave notices to the California Labor and Workforce Development Agency of SkyWest's violations of the California Labor Code alleged herein on August 15, 2017 and July 12, 2018.  See Exs. 1 & 2.  The statutory waiting period for the State of California has passed and the State of California has not responded to Plaintiffs' notices.  Accordingly, Plaintiffs and their representatives have complied PAGA's notice requirements.

188.    Pursuant to California Labor Code §§ 558 and 2699, Plaintiffs now seek, on behalf of themselves and on a representative basis for other currently and formerly employed Skywest employees in California, unpaid wages and civil penalties provided by California law for the violations of the California Labor Code and Minimum Wage Orders alleged herein, as well as attorneys' fees and costs of suit.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief against SkyWest as follows:

A.      An order enjoining SkyWest from retaliatory actions against the Plaintiffs, against Class members who are members of the Class and Subclasses;

B.      An order certifying the California Classes under Fed. R. Civ. P. 23 as to the California Labor Code sections, the California Wage Orders, and the California Unfair Competition Law and all other statutory authority referenced herein,

C.      An order certifying the San Francisco Subclass under Fed. R. Civ. P. 23 as to the San Francisco Minimum Compensation Ordinance and Quality Standards Program (MCO-QSP) sections, as enforceable via the California Labor Code as referenced herein;

D.      An order certifying Plaintiffs as class representatives; and appointing Plaintiffs' counsel, Greg Coleman Law PC and Simmons Hanly Conroy LLC and Kaplan Fox & Kilsheimer LLP, as counsel for the Classes and Subclasses pled herein;

E.      An order determining that the conduct alleged herein is unlawful under the applicable California statutes and local ordinances as alleged herein;

F.      An award of monetary damages, liquidated damages, penalties, restitution, including pre-judgment and post-judgment interest to Plaintiffs and the Class in such amount as may be determined at trial;

G.      An order enjoining SkyWest from continuing its unlawful practices alleged herein;

H.      An award to Plaintiffs and the Class for reasonable attorneys' fees and costs, including but not limited to reimbursement of all costs related to the prosecution of this action; and

I.      An award to Plaintiffs and the Class of any such other and further relief as may be just and proper.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD

**JURY DEMAND**

Plaintiffs demand a trial by jury.

DATED:  January 29, 2020.                    Respectfully submitted,

**GREG COLEMAN LAW PC**

*/s/ Lisa A. White*
Lisa A. White (*pro hac vice*)

Gregory F. Coleman (*pro hac vice*)
Lisa A. White (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com
mark@gregcolemanlaw.com
adam@gregcolemanlaw.com

Paul J. Hanly, Jr. (*pro hac vice*)
Mitchell M. Breit (*pro hac vice*)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
phanly@simmonsfirm.com
mbreit@simmonsfirm.com

Crystal Foley (SBN 224627)
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (310) 322-3555
Facsimile:  (310) 322-3655
cfoley@simmonsfirm.com

Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email:   lking@kaplanfox.com
   mgeorge@kaplanfox.com
   mchoi@kaplanfox.com

Gennaro Du Terroil (*pro hac vice*)
**LAW OFFICES OF GENNARO DU TERROIL**
18756 Stone Oak Pkwy Suite 200
San Antonio, Texas 78258
Telephone: 210-998-5645
Facsimile: 210-495-4670
cibelliterroil@outlook.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing pleading was filed electronically with the Clerk of Court using the ECF system, which sends notification of such filing to all attorneys of record.

/s/ Lisa A. White
Lisa A. White (*pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No.: 3:17-cv-01012-JD