Gregory F. Coleman (*pro hac vice*)
Lisa A. White (*pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

*Attorneys for Plaintiffs*
*Additional Counsel on Signature Page*

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY MEEK, JEREMY BARNES, and CORYELL ROSS, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br><br><br>SKYWEST, INC. and SKYWEST AIRLINES, INC.<br>              Defendants. | Case No.: 3:17-cv-01012-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION (FRCP 23), AND MEMORANDUM OF POINTS IN AUTHORITIES IN SUPPORT**<br><br><u>Judge</u>: Hon. James Donato<br><u>Hearing Date</u>: April 22, 2021<br><u>Time</u>: 10 a.m. PT<br><u>Courtroom</u>: 11<br><br><u>Complaint Filed</u>: February 27, 2017<br><u>Trial Date</u>: January 24, 2022, at 9 a.m. |

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

PLEASE TAKE NOTICE that on April 22, 2021, at 10 a.m. or as soon thereafter as this matter may be heard, in Courtroom 11, 19th Floor, of the above-captioned court at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for certification of a class action on the claims listed below and the appointment of Class Counsel.

**Proposed Class, Class Period and Claims:**

As set forth in Plaintiffs' Consolidated Class Action Complaint ("CAC") (ECF No. 112), proposed Class members consist of all individuals currently or formerly employed by the Defendants SkyWest Airlines, Inc. and SkyWest, Inc. ("SkyWest") as Frontline Employees who worked on the ground and were paid on an hourly basis ("Frontline Employees") for at least one shift in the State of California at any time from February 27, 2013 through October 18, 2020 (the "Class Period"). Plaintiffs Cody Meek, Jeremy Barnes, and Coryell Ross ("Plaintiffs"), each of whom were employed by SkyWest as Frontline Employees at various airports in California, seek appointment as representatives of the Class. Based on data produced to date, Plaintiffs believe the number of Class members is approximately 1700 persons. If necessary, Plaintiffs alternatively seek certification of a certain subclass should the Court deem that appropriate pursuant to Federal Rule of Civil Procedure 23(c)(5). Plaintiffs respectfully request certification of the following claims:

<u>Shift Trade Overtime Claim (Count III)</u>[1]: Plaintiffs seek certification of their claims for unpaid overtime wages when they traded shifts with a co-worker and worked in excess of eight hours in a day or 40 hours in a week but were not paid overtime wages pursuant to SkyWest's payroll policies, thereby violating the Cal. Lab. Code §§ 510, 511, 514, and 1194.

<u>San Francisco QSP Minimum Wage Claim (Count VII)</u>: Plaintiffs seek certification of their claims for Frontline Employees on behalf of a Subclass (the "SFO QSP Subclass") who worked at least one shift at the San Francisco International Airport ("SFO") during the Class Period when the Frontline Employee's hourly wage rate fell below the minimum wage rate required by the

---

[1]   The "Count" cited herein corresponds to those set forth in the CAC, ECF No. 112.

1

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

Quality Services Program ("QSP") set by the San Francisco Airport Commission, thereby violating Cal. Lab. Code § 1197.

Meal Break Claim (Count II): Plaintiffs seek certification on behalf of Frontline Employees who worked for more than five hours during at least one shift and (1) did not receive a meal period that began before the end of the fifth hour of work and/or who worked for more than ten hours on a shift and did not receive a second meal period that began before the end of the tenth hour of work; (2) had a meal period shortened less than the 30 minutes required; and/or (3) had an untimely meal period delayed after the fifth hour of work, and for which SkyWest uniformly failed to pay missed meal break premium wages as required by Cal. Wage Order 9-2001 § 11(A)-(B), and Cal. Lab. Code §§ 226.7(c) and 512.

Rest Break Claim (Count II): Plaintiffs seek certification on behalf of Frontline Employees who worked at least one shift in which they either (1) did not receive at least ten minutes of rest time for each four hours of work in violation of Cal. Wage Order 9-2001 § 12(A); (2) had a rest period shortened from the ten minutes required; and/or (3) had an untimely rest period that were delayed so that rest periods were not taken near the middle of each four-hour block of their shift, and for which SkyWest uniformly failed to pay one hour of compensation for each workday that the rest period was not provided as required by Cal. Wage Order 9-2001 § 12(B), Cal. Lab. Code §§ 226.7(c).

Grace Period Claim (Count I): Plaintiffs seek certification on behalf of Frontline Employees who worked at least one shift in the State of California during the Class Period during which they were unpaid for all time from punch-in to punch-out as a result of SkyWest's uniform policy of paying wages according to employees' scheduled hours. Plaintiffs seek certification of to pursue claims for (1) failure to pay all minimum and overtime wages due, (2) unfair business practices (Count V), and (3) waiting time penalties (Count VI).

Derivative Claims (Count V and VI): As is common in wage and hour class actions, when a claim for a substantive violation of law is certified, Plaintiffs also seek certification of the "Derivative Claims" arising from: (1) the failure to pay all wages due and owing at the time of termination that entitles Frontline Employees to waiting time penalties consisting of up to 30 days

2

1  of wages under Cal. Lab. Code §§ 201, 202, and 203; and (2) certification of a claim under

2  California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, which entitles

3  aggrieved employees to obtain a four-year look back on the statute of limitations applicable to

4  their claims.

5      **Grounds for Relief:**

6      This motion is made on the grounds that the proposed Class and Subclass are sufficiently

7  numerous that joinder is impracticable; there are questions of law and fact common to the proposed

8  Class and Subclass; Plaintiffs' claims are typical of the Class's claims; and Plaintiffs and their

9  counsel will adequately represent the Class. Fed. R. Civ. P. 23(a). Certification of the proposed

10  Class under Federal Rule of Civil Procedure 23(b)(3) is appropriate because common questions

11  predominate over any questions affecting only individual Class members, and class resolution is

12  superior to other available methods for the fair and efficient adjudication of the controversy.

13      Plaintiffs request appointment of Greg Coleman Law PC, Simmons Hanly Conroy LLC,

14  and Kaplan Fox & Kilsheimer LLP as Class Counsel pursuant to Federal Rule of Civil Procedure

15  23(g), on the grounds that Plaintiffs' counsel have thoroughly investigated the claims in this action,

16  have extensive experience handling class actions, and have adequate resources to litigate this

17  action.

18      This motion is based on this Notice of Motion and Motion; the accompanying

19  Memorandum of Points and Authorities; the supporting declarations of Lisa A. White, Plaintiff's

20  Expert David Breshears, Plaintiffs Meek, Barnes, Ross, and the exhibits annexed thereto; the

21  Appendix of Frontline Employee Declarations; the files and records in this matter; and such

22  argument as may be heard on this matter by the Court.

23  Dated: January 28, 2021                    Respectfully submitted,

24

25                                             **GREG COLEMAN LAW PC**

26                                             /s/ Lisa A. White

27                                             Lisa A. White (*pro hac vice*)

28                                             **GREG COLEMAN LAW PC**

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 522-0049
lisa@gregcolemanlaw.com

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

STATEMENT OF ISSUES TO BE DECIDED ..................................................... iv

I.    INTRODUCTION ......................................................................................1

II.   STATEMENT OF FACTS ..........................................................................1

      A.  SkyWest and Frontline Employees. .................................................1

      B.  Shift Trade Overtime. .......................................................................4

      C.  San Francisco QSP Minimum Wage Claims. ...................................5

      D.  Meal and Rest Break Claims.............................................................6

      E.  Grace Period Claims. ........................................................................9

      F.  Derivative Claims. ..........................................................................10

III.  ARGUMENT............................................................................................11

      A.  The Wage Claims at Issue...............................................................11

          1.  Shift Trade Overtime...............................................................11

          2.  QSP Minimum Wages .............................................................12

          3.  Meal and Rest Breaks..............................................................13

          4.  Grace Time ..............................................................................14

          5.  Unfair Competition and Waiting Time Claims .......................15

      B.  Applicable Legal Standard for Class Certification. .........................15

      C.  Plaintiffs Satisfy the Requirements for Class Certification Under Rule 23(a). .........................................................................................16

          1.  The Class is Sufficiently Numerous and Ascertainable. ..........16

i

2.   There are Questions of Law and Fact Common to the Class. ................16

3.   Plaintiffs' Claims are Typical of the Claims of the Class. .......................18

4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the
     Class. ..........................................................................................................18

D.  Plaintiffs Satisfy the Requirements for Class Certification Under Rule
    23(b)(3). ................................................................................................................19

    1.   Common questions predominate with respect to each of Plaintiffs'
         claims...........................................................................................................19

         a.   The Legality of SkyWest's Shift Trade Policy Predominates
              Questions Impacting Individual Frontline Employees. ....................20

         b.   The Legality of SkyWest's Failure to Pay SFO-QSP Compliant
              Wages Predominates Questions Impacting Individual Frontline
              Employees.........................................................................................20

         c.   The Legality of SkyWest's Meal and Rest Break Practices
              Predominates Questions Impacting Individual Frontline
              Employees.........................................................................................21

         d.   The Legality of SkyWest's Grace Period Policy Predominates
              Questions Impacting Individual Employees. ...................................23

         e.   The Predominate Questions that Warrant Certification on the
              Claims Above Also Warrant Certification of the Waiting Time
              Penalties and UCL Claims. ..............................................................23

    2.   Proceeding on a Class Basis Is Superior and Manageable. ...................24

         a.   Class treatment is the most efficient and beneficial structure to
              resolve this dispute...........................................................................24

         b.   This action is manageable as a class action. ....................................25

IV.   CONCLUSION..........................................................................................................26

CERTIFICATE OF SERVICE ........................................................................................27

ii

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page(s)**

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. 2013) ............................................. 13, 16, 22

*Ambrosio v. Cogent Comm'ns, Inc.*, 312 F.R.D. 544 (N.D. Cal. 2016) ................................ 21

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184 (2013) ..................... 15, 19, 22, 23

*Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005) .............................................. 11

*Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550 (S.D. Cal. 2013) ................................... 20

*Bernstein v. Virgin Am., Inc.,* No. 15-cv-02277-JST, 2016 WL 6576621 (N.D. Cal. Nov. 7, 2016) ................................................................. 11, 16, 17

*Bias v. Wells Fargo & Co.*, 312 F.R.D. 528 (N.D. Cal. 2015) ........................................ 16

*Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431 (C.D. Cal. 2014) ................................... 20, 22

*Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012) ............................ 13, 14, 22

*Brown v. Wal-Mart Stores, Inc.,* No. C 08-5221 SI, 2013 WL 1701581 (N.D. Cal. Apr. 18, 2013) ................................................................. 14

*Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069 (9th Cir. 2016) ................................................................. 14, 17, 23

*Dalchau v. Fastaff, LLC,* No. 17-cv-01584-WHO, 2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) ................................................................. 23

*DeLuca v. Farmers Ins. Exch.,* No. 17-cv-00034-EDL, 2018 WL 1981393 (N.D. Cal. Feb. 27, 2018) ................................................................. 23

*Dilts v. Penske Logistics, L.L.C.*, 267 F.R.D. 625 (S.D. Cal. 2010) ............................... 22

*Exel Direct Inc.,* No. 12-cv-04137-JCS, 2016 WL 1598663 (N.D. Cal. Apr. 21, 2016)............. 22

*Frontline Employees. Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138 (2015) ........... 17

*Gentry v. Sup. Ct.*, 42 Cal. 4th 443 (2007) ...................................................... 24-25

*Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524 (2008) ................................ 24

*Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36 (2013) ................................. 11

*Gregory v. SCIE, LLC*, 317 F.3d 1050 (9th Cir. 2003) .............................................. 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................. 16, 18, 19, 24

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) ........................ 20

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988) ................................. 16

*Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164 (N.D. Cal. 2015) ..................... 16, 25

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) .................................... 20

*Kazi v. PNC Bank, N.A.*, No. 18-cv-04810-JCS, 2020 WL 3414709 (N.D. Cal. June 22, 2020) ................................................................. 23

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013) ............................. 19, 20

*McCowen v. Trimac Transp. Servs. (W.),* 311 F.R.D. 579 (N.D. Cal. 2015) .......................... 21

iii

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000) ................................................ 23

*Nucci v. Rite Aid Corp.*, No. 19-CV-01434-LHK, 2020 WL 3187335 (June 14, 2020) ............ 23

*Pressler v. Donald L. Bren Co.*, 32 Cal. 3d 831 (1982) ................................................ 11

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................ 16

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006) .................. 18, 19, 24

*Rutti v. Lojack Corp.*, No. SACV 06-350 DOC (JCx), 2012 WL 3151077 (C.D. Cal. July 31, 2012) ................................................................................................ 24

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ................................ 23

*See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889 (2012) .................. 17, 23

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (N.D. Cal. 2005) ...................... 18

*Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107 (9th Cir. 2014) ............................ 17

*Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314 (N.D. Cal. 2013) ................................ 18

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) .................................... 25

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ............................ 24

*Vaquero v. Ashley Furniture Indus., Inc.,* No. CV 12-8590 PA (MANx), 2013 WL 12172124 (C.D. Cal. Jun. 17, 2013) ................................................................................ 25

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .................................... 16

*In re Wells Fargo Home Mtg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) ............ 21

*Wolin v. Jaguar N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ................................ 15

*Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180 (N.D. Cal. 2009) ...................... 20

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) .................. 19

**Statutes**

25 U.S.C. § 151 ........................................................................................ 4

49 U.S.C. § 1301 ................................................................................ 4, 5, 6, 9

Business and Professions Code § 17200 ...................................................... 11

Cal. Lab. Code § 203 ................................................................................ 15

Cal. Lab. Code §§ 221-223 ...................................................................... 23

Cal. Lab. Code § 223 ................................................................................ 13

Cal. Lab. Code § 226 ........................................................................ 13-14, 17

Cal. Lab. Code § 510 ........................................................................ 12, 17, 20

Cal. Lab. Code § 511 ................................................................................ 12

Cal. Lab. Code § 512 ............................................................................ 13, 14

Cal. Lab. Code § 514 ............................................................................ 11-12

Cal. Lab. Code § 1194 ...................................................................... 12, 17, 20

Cal. Lab. Code § 1197 ................................................................................ 12

iv

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

**Other**

ICW Wage Order 9-2001 ........................................................................... 11, 13, 14

7A Charles Alan Wright, Arthur R. Miller, *et al.*, Federal Practice and Procedure,
 § 1768 (3d ed. 1986) .................................................................................... 18

v

## STATEMENT OF ISSUES TO BE DECIDED
Pursuant to Civ. L.R. 7-4(3)

1)  Should the Court certify a Class of SkyWest Frontline Employees on their claims for violations of California and local wage and hour laws?

2)  Should the Court certify a SFO QSP Subclass of SkyWest Frontline Employees who worked at San Francisco International Airport on their claims for violations of local wage and hour laws?

## I.   INTRODUCTION

Plaintiffs are current and former Frontline Employees who were paid hourly and worked on the ground for SkyWest Airlines, Inc. in the State of California at any point between February 27, 2013 to October 18, 2020. Plaintiffs allege that SkyWest, Inc. (which wholly owns SkyWest Airlines, Inc.) and SkyWest Airlines, Inc. (together, "SkyWest"), are liable for failing to pay all legally required overtime; for failing to pay no less than the minimum wage required for San Francisco Airport employees who work in secure areas, as all Frontline Employees did; failing to provide Plaintiffs and their coworkers with timely meal and rest breaks, during which they are completely relieved of duty; and failing to pay Frontline Employees all of their working hours from punch-in to punch-out when they were under the direction and control of SkyWest. Each of the Class claims turns on common questions of law and fact, which can and will be proven with class-wide evidence.

Plaintiffs challenge a series of common policies and practices by which SkyWest systematically underpaid Frontline Employees: (1) refusing to pay overtime every time two Frontline Employees traded work shifts that resulted in one or both Frontline Employee(s) exceeding the daily and weekly thresholds for overtime pay; (2) setting hourly wage rates for lower seniority San Francisco Airport Frontline Employees below the minimum wage rate set by the Quality Services Program, thereby underpaying these employees for their work every hour of every shift worked; (3) failing to provide uninterrupted and timely meal and rest periods in the manner required by the California Labor Code and failing to pay statutory premium wages when the meal and rest breaks that were untimely, missed, or interrupted; and (4) paying its Frontline Employees according to their scheduled hours even though they were under SkyWest's control and expected to be prepared to work from punch-in to punch-out.

## II.   STATEMENT OF FACTS

### A.   SkyWest and Frontline Employees.

SkyWest is a company headquartered in St. George, Utah, that "operates through partnerships with United Airlines, Delta Airlines, American Airlines, and Alaska Airlines carrying 43 million passengers in 2019." Declaration of Lisa A. White ("White Decl."); Ex. 7

1

(SkyWest Website Description).[2] Unlike its partner airlines, SkyWest's business model differs in that its website does not permit passengers to directly book flights, but rather refers them to its partners to reserve and purchase tickets.  Ex. 8 (SkyWest Website Booking Page).  Its operations in California during the class period were facilitated by subcontracts with major airlines to provide "ground handling" or "ground services" for flights, including "cargo loading and unloading, passenger boarding, passenger deboarding and other various functions that may have occurred while the aircraft was parked on the ground." Ex. 2 (Tate Dep. 162:9-22, 171:13-23); Ex. 1 (Denny Dep. 23:21-25:17, 32:4-10). SkyWest eventually lost its major ground contracts for SFO and LAX, resulting in mass furloughs and a significant decrease in California operations. *Id.*

Throughout the Class Period (February 27, 2013 to October 18, 2020), SkyWest employed Frontline Employees who performed the bulk of the ground services labor on its contracts. Frontline Employees had common seniority- and location-based pay scales and were subject to the same pay and scheduling policies as documented in SkyWest's Customer Service Policy Manual ("CSPM").[3] Ex. 9 (CSPM Letter of Agreement). As defined by the CSPM, "Frontline Employees" include: "[a]ll non-management employees in SkyWest's Customer Service Department, including cross-utilized agents, gate agents, ramp agents, certified station trainers (in non-management roles), station clerks, and internal evaluation auditors." Ex. 10 (CSPM Definitions). The class includes all Frontline Employees who were paid on an hourly basis at any California airport for at least one work shift during the Class Period (the "Class" or "Frontline Employees"). According to payroll records produced through discovery, over ▮▮▮ Frontline Employees worked for  SkyWest during the Class Period.  Breshears Decl., Attachment A ¶ 6.

Frontline Employees performed laborious and difficult work mostly outdoors and often in

---

[2]   All citations to Exhibits ("Ex. __") refer to Exhibits annexed to the Declaration of Lisa A. White unless stated otherwise.

[3]   Although revisions to the CSPM occurred during the Class Period, the payroll practices at issue in this lawsuit have remained unchanged. Specifically, SkyWest has always: 1) paid to schedules; 2) never paid shift trade overtime; 3) did not meet QSP minimum wages before losing the SFO contract; 4) has no mechanism to pay missed meal or rest break premiums; and 5) its grace period has never been neutral in application.

challenging weather conditions. *See* Appendix of Frontline Employee Declarations[4] ("Appendix").  Among other things, Frontline Employees marshalled, received, and dispatched aircraft, assisted passengers, loaded and unloaded aircrafts, handled and processed baggage, and disposed of waste generated during flights. *Id*. Their work had a key role in ensuring airline transportation is safe, which required them to "follow the standard operating procedures developed by the airlines and regulatory agencies to ensure safety." Ex. 1 (Denny Dep. 44:12-19). Despite the physically demanding nature of their work and its importance to airline safety, Frontline Employees often worked long periods without complete and timely meal and rest breaks and made unheeded complaints to management about these issues. *See* Appendix. The working conditions imposed by SkyWest often left Frontline Employees to become "tired," "sleepy," "hungry," "exhausted," "distraught," "distracted," and "unable to focus." *E.g.,* Appendix at Tidwell ¶ 11; Nelson ¶ 13; Skaggs ¶ 8; Fifita ¶ 12.  Many Frontline Employees also had lengthy commutes of one hour or more that extended their workdays. *See* Appendix. Plaintiff Ross, for example, commuted two hours from Bakersfield to his job at LAX, and Frontline Employee Luis Tofaeono commuted from Las Vegas, staying with his grandfather in San Francisco between shifts. Declaration of Plaintiff Coryell Ross ("Ross Decl.") ¶ 8; Appendix at Tofaeono ¶ 10; *see also* Appendix at Nelson ¶ 17 (two-hour one-way commute); Washington ¶¶ 14-15 (same); Soakai ¶ 10 (one-hour one-way commute).

Throughout the Class Period, SkyWest benefitted from California's travel market and its workforce, but concurrently profited by skimping its employees on wages and creating unhealthy and unsafe working conditions.  As set forth below, SkyWest instituted class wide policies across the board that failed to pay overtime when employees traded shifts in a way that put their daily and weekly hours into overtime territory, by paying measly starting wages—including only paying $12.35 per hour in San Francisco, one of the most expensive cities in the U.S. Ex. 11 (CSPM Pay Scales). Frontline Employees starting wages fell well below those set by local

---

[4] The Appendix is a compendium of 39 exemplar declarations taken from former SkyWest Frontline Employees, who were stationed at various California airports. They demonstrate a typicality of experiences, commonality of SkyWest wage practices and policies, and numerosity of Class members.

3

ordinances, made worse by SkyWest skimping pay after employees punched in and were ready to work. SkyWest compounded these violations by failing to provide adequate meal and rest breaks for its labor force, making a difficult and dirty job that much tougher. As set forth in multiple filings to this Court (and others), SkyWest simply believes it does not have to heed state and local wage laws—even in California—claiming it is entitled to across-the-board exemptions under the Railway Labor Act, 25 U.S.C. § 151, *et seq.* ("RLA") and the Airline Deregulation Act, 49 U.S.C. § 1301, *et seq.* ("ADA") (*see* ECF No. 44 (MTD Am. Compl.) at 8-13; ECF No. 120 (Amended Answer to CAC) at 22, 25-26), setting up a backdrop of its claimed preemption defenses that make this case especially suitable for class resolution.

**B.  Shift Trade Overtime.**

Pursuant to the CSPM, SkyWest has a common policy of refusing to pay overtime wages for any hours worked in which two Frontline employees have agreed trade a shift for a shift ("shift trade"):

> D.  An employee who agrees to work a shift trade for another employee must understand the traded shift hours do not count toward overtime; however, when an employee works beyond the hours agreed to in a shift trade, the additional time is added to the daily and weekly hour totals for overtime calculation.
>
> 1)  When two employees trade the same number of hours on the same calendar day, they are participating in a *shift swap*. These hours are exempt from the above rule and will count toward weekly overtime calculation.

Ex. 12 (CSPM Shift Adjustments). Thus, regardless of how many hours either employee works in the traded day (or in the week in which the traded hours fall), both employees' traded hours are excluded from SkyWest's calculations of daily and weekly overtime pay. *Id.*; *see also* Ex. 1 (Denny Dep. 80:14-25). This policy is common to all shift trades for all Frontline Employees in the Class and constitutes a serious underpayment of overtime wages.

4

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

### C.  San Francisco QSP Minimum Wage Claims.

In 1999, the San Francisco Airport Commission established the Quality Standards Program ("QSP") to "ensure that Covered Employers safely deliver high quality service to the Airport community through the implementation of minimum standards for . . . employee hiring, training and *compensation* and benefits." Ex. 17 (QSP 4 at SWA_PLTF_000466) (emphasis added). During the Class Period, the QSP required "Covered Employers" to pay their eligible employees a minimum hourly wage rate of "$0.50 an hour above the current San Francisco Minimum Compensation Ordinance ("MCO") rate." Ex. 14 (QSP 1 at SWA_PLTF_000437). Frontline Employees are "personnel involved in performing services which directly impact safety and/or security at the Airport," and are therefore, SkyWest is a "Covered Employer" as defined by the QSP.  Ex. 14 (QSP 1 at SWA_PLTF_000436).

Every San Francisco Frontline Employee was a "Covered Employee" as defined by the QSP. Specifically, Covered Employees include those who "(1) require the issuance of an Airport badge with Airfield Operations Area ("AOA") access and work in and around the AOA in the performance of their duties; or (2) are directly involved in passenger and facility security and/or safety, including but not limited to checkpoint screening, passenger check-in, skycap and baggage check-in and handling services, custodial services, and AOA perimeter control." Ex. 15 (QSP 2 at SWA_PLTF_000448). Frontline Employees qualify under both parts of this definition as they were required to have a badge permitting AOA access and assisted with passenger check-in, baggage check-in, and baggage handling services. *E.g.*, Ex. 18 (Ramp Agent Primary Job Duties); Ross Decl. ¶¶ 4-5; Declaration of Plaintiff Cody Meek ("Meek Decl.") ¶¶ 4-5; Declaration of Plaintiff Jeremy Barnes ("Barnes Decl.") ¶¶ 4-5; Appendix.

SkyWest was required to post a notice about the QSP requirements in its break room for SFO Frontline Employees. Ex. 1 (Denny Dep. 106:12-107:3). Through this notice, talking to employees of other airlines, and seeing job postings for other airlines, the Frontline Employees

5

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

became aware that they were being underpaid as compared to other airline employees at SFO. *E.g.*, Appendix at Tidwell ¶¶ 14-15; Nelson ¶ 15; Giddings ¶ 13; Ibrahim ¶ 11; Slater ¶ 11. However, when Frontline Employees confronted SkyWest's management and supervisors, the explanations for underpayment included that SkyWest was exempt as a Utah company and that there was a loophole because SkyWest had no union. *E.g.,* Appendix at Tidwell ¶ 16 (does not apply to Utah company; no union); Giddings ¶ 13 (same); Ibrahim ¶ 11 (same); Nelson ¶ 16 (work a long time to make more money); Castro ¶ 14 (employee had to pick up extra shifts for more pay); Slater ¶ (told "it is what it is"). In contrast, in testimony and to the Court SkyWest claims it was exempt from paying the QSP because the Frontline Employees purportedly forever waived their right to higher minimum wages under the QSP through a 2012 "addendum" modifying later CSPMs. *E.g.,* Ex. 4 (Cooper Dep. 82:21-83:12); ECF Nos. 94 (Mot. to Dismiss), 96 (Reply), 120 (Amended Answer to CAC).

San Francisco's MCO minimum wage rate was $12.43 per hour in 2013; $12.66 per hour in 2014; $13.02 per hour in 2015; and $13.34 per hour in 2016. Ex. 20 (MCO Historical Rates). Thus, the QSP minimum wage rates were: $12.93 per hour in 2013; $13.16 per hour in 2014; $13.52 per hour in 2015; and $13.84 per hour in 2016. By January 2017, SkyWest lost the contract for the Frontline services at SFO and therefore employed no members of this SFO QSP Subclass after 2016. Ex. 1 (Denny Dep. 18:14-17).

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████

**D.  Meal and Rest Break Claims.**

SkyWest's time records show the punch-in and punch-out time for every meal period

6

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

taken.[5] Ex. 3 (Hoover Dep. 100:25-101:11). Although the CSPM states that "Employees scheduled to work five hours or more in one shift are entitled to an uninterrupted, continuous meal period of no less than 30 minutes . . . " (Ex. 21 (CSPM Meal Breaks)), as a matter of common practice, SkyWest frequently expects Frontline Employees to delay, interrupt, or miss their meal breaks for the sake of operational needs. Ex. 5 (Naea Dep. 33:10-34:11); Meek Decl. ¶ 8; Ross Decl. ¶ 7; Barnes Decl. ¶ 7; Appendix at Tidwell ¶ 12 ("operational needs" over employee breaks). Frontline Employees also report—and the payroll records show—that the meal breaks are *regularly* interrupted, untimely, or missed altogether due to understaffing and mismanagement. *See generally* Appendix (Frontline Employees consistently reporting missed and interrupted breaks were common). Similarly, employees frequently missed their rest breaks. *E.g.*, Appendix at Godbold ¶¶ 7-8 ("rarely ever given rest breaks" and "could get in trouble for complaining"); Nelson ¶ 12 ("hardly ever" able to take rest break); Jones ¶ 8 ("Whatever space there was between flights was considered your break, but since we short staffed, we would have to help other gates"). Frontline Employees report that missing breaks leads to hunger, dehydration, and tiredness that negatively impacts their work. *See* Appendix (consistently reporting impairment on work capabilities without breaks). These reports are particularly troubling given the critical importance of "situational awareness" to airline travel safety and security. Ex. 1 (Denny Dep. 133:12-22, 138:15-139:13). Yet, according to SkyWest's testimony, during the entire Class Period SkyWest has not paid missed meal or rest break premiums to Frontline Employees as required by California law. Ex. 3 (Hoover Dep. 61:8-63:5; 102:10-103:6; *especially* 61:23, 103:6).

SkyWest is clearly aware of California's meal statutory and rest break requirements (*see* Ex. 21 (CSPM Meal Breaks); Ex. 3 (Hoover Dep. 100:21-102:8)), but in practice employees' meal breaks are a low priority to SkyWest. *E.g.* Appendix at Walker-Jones ¶ 7 (expected to prioritize the servicing of planes); Skaggs ¶ 7 (the priority was to get planes out 26 minutes after arrival or risk discipline). Supervisors and managers are pressured to ignore, delay, or interrupt legally compliant meal and rest breaks for the sake of flight turn times and due to understaffing.

---

[5]   If an employee neglects to punch-in after a meal break, a supervisor must add a punch to have an even number of punches for payroll. *See* Ex. 3 (Hoover Dep. 97:18-97:22).

7

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

*E.g.*, Appendix at Clark ¶ 14 (management would go in break room, tell employees to go outside), Wallace ¶ 9 (same); Uwakwe ¶ 11 (same); Huitron ¶ 9 (took meal breaks in car to avoid being pressured to return to work early). These pressures also explain why supervisors commonly sent Frontline Employees on breaks at the very beginning or very end of their shifts or shortly before or after another meal. *E.g.,* Appendix at Tidwell ¶11 (meal breaks in the 6th or 7th hour of shift); Sekona ¶ 8 (told to take break as soon as shift started); Soakai ¶ 8 (told to eat when she could or at end of the day).

SkyWest's excuse for not abiding by California's break requirements is simply that it is exempt altogether from California's meal and rest break requirements under the Airline Deregulation Act. *E.g.,* ECF No. 120 at 22 (Third Defense in Amended Answer to CAC). SkyWest claims that legally compliant meal and rest breaks are not possible in the airline industry due to "irregular operations" ("sometimes called IROPS") that happen "quite a bit." Ex. 3 (Hoover Dep. 108:8-11). The defense has no support in law. Rather, this self-defined "irregular operations" defense is an amorphous set of circumstances that really amounts to *routine airport issues,* such as weather, mechanical issues, or tarmac backups. Ex. 5 (Naea Dep. 31:5-14); Ex. 1 (Denny Dep. 54:1-22). SkyWest's employees, including supervisors and managers, admit that irregular operations occur almost every day and every shift. *E.g.*, Ex. 5 (Naea Dep. 34:1-36:22, 53:17; *especially* 36:17-18) ("It could happen every day depending on the season. It could happen every shift."); Ex. 1 (Denny Dep. 54:20-22) ("irregular operations [was] a frequent situation at SFO"); Appendix at Walker-Jones ¶ 7 (missed breaks were a normal part of the day), Ruffins ¶ 7 ("more often than not I would have to work through a shift without a meal and or rest break"), Sullivan ¶ 7 ("pretty normal" to have no meal break). In other words, "irregular operations" are the "regular operations" for SkyWest and every other airline. But despite its normal and expected occurrence, SkyWest's managers and supervisors simply ignore the basic nutritional and rest needs of its Frontline Employees, forcing employees to work without needed meal and rest breaks (and then withholding pay for the time). In doing so, employees work hungry, exhausted, and are unable to be "situationally aware"—which is mandatory for safety in the airline industry. Ex. 1 (Denny Dep. 133:12-19); *see also* Ex. 5 (Naea Dep. 39:1-16); Appendix (Frontline Employees

8

1   consistently reporting that fatigue, hunger, and exhaustion impaired ability to work effectively).

2   █████████████████████████████████████████████████████████

3   █████████████████████████████████████████████████████████

4   █████████████████████████████████████████████████████████

5   █████████████████████████████████████████████████████████

6   █████████████████████████████████████████████████████████

7   █████████████████████████████████████████████████████████

8   █████████████████████████████████████████████████████████

9   ████████████████████████████████████████   Moreover, a matter of

10  policy SkyWest *never* pays an extra hour of wages for any missed or late meal period. Ex. 3

11  (Hoover Dep. 61:8-63:5; 102:10-103:6) ("Q: Would an additional premium be paid [for working

12  through a meal] other than just a standard hourly pay? A: No.").

13       **E.  Grace Period Claims.**

14       Plaintiffs also seek compensation for the time Frontline Employees are punched in at the

15  beginning of their shift up to five minutes early during which they are under SkyWest's control.

16  After Frontline Employees arrive at SkyWest's "break room" located in a secure area of the

17  airport, they must check the assignment board to determine the gate for their shift, verify the status

18  of aircraft on monitors, find and check out equipment (like radios and baggage wands) making

19  sure the batteries are charged, and—no earlier than five minutes before the start of their scheduled

20  shift—swipe their identification card to punch-in. Ex. 6 (Meek Dep. 35:6-38:19); Ex. 1 (Denny

21  Dep. 47:12-15); *see, e.g.,* Appendix at Jones ¶ 5 ("As soon as I 'punched in,' I was expected to

22  be ready to work immediately."); Castro ¶ 7 (same); Giddings ¶ 9 (same); Tidwell ¶ 8 (same).

23
24
25
26
27
28

> **5.   Pay to Schedule**
>
>    A.   Employees are paid according to their scheduled shift.
>       1)   Employees are allowed to clock-in up to five minutes early but are only paid from the start of their scheduled shift.
>       2)   Employees are allowed to clock-out up to five minutes before or after the scheduled end of their shift without their pay being adjusted.
>          a)   Employees must have completed all work and have supervisor permission to leave work early.
>    B.   Any time worked beyond the five-minute leeway period will be paid only with supervisor approval.

9

Although SkyWest's payroll system permits employees to punch-in up to five minutes early. As shown in the excerpt above, the CSPM unambiguously states that SkyWest will only pay to Frontline Employees' scheduled hours—not their actual punch records.

In addition, the CSPM outlines clear penalties for punching in even one minute late. Ex. 22 (CSPM Occurrence Points and Corrective Action). Plaintiffs' experiences show that SkyWest commonly and strictly enforced its disciplinary procedures for employees, even if an employee punched in just a few minutes after their scheduled start time. *E.g.*, Ex. 23 (Plaintiff Discipline Example); Appendix at Giddings ¶ 8 (disciplined for forgetting to check in). Frontline Employee declarations show that after they punch in, even if early, SkyWest management and supervisors expect Frontline Employees to be immediately available to work. Ex. 1 (Denny Dep. 47:12-15); Meek Decl. ¶ 6; *see generally* Appendix (Frontline Employees stating that they were required to start work immediately upon punching in).

SkyWest's grace period policy appears facially neutral, permitting an early arriving employee to leave if they have "completed all work and have supervisor permission to leave work early." Ex. 24 (Pay to Schedule); Ex. 3 (Hoover Dep. 72:5-8); Ex. 25 (Station and Uniform Policy Manual).  However, in application the heavily enforced penalties for even punching in a few minutes late paired with the rarity of being paid for arriving late or leaving early demonstrate that SkyWest's grace policy is, in fact, *far* from neutral in application. Ex. 1 (Denny Dep. 45:8-13); Ex. 6 (Meek Dep. 38:15-19; 39:78).

███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████

### F.  Derivative Claims.

Based on the policies and practices at issues, should the Court certify any of Plaintiffs' claims, it should also certify their derivative claims for compensation referred to as waiting time penalties, and under the UCL which extends the statute of limitations period to four years.  No

10

additional fact finding is necessary to certify these derivative claims—the common evidence will be the same as that set forth on the substantive violations.  Plaintiffs' expert has also estimated waiting time penalties and interest, which are explained and included in his report.

## III.   ARGUMENT

### A. The Wage Claims at Issue.

Plaintiffs seek to certify their claims for SkyWest's failure to pay overtime for shift trades, failure to pay minimum wages as required for employees working in secure areas of SFO, failure to provide legally compliant meal and rest breaks—or alternatively, paying the required statutory premium wages—and failure to neutrally apply its punch clock grace period policy when SkyWest had control of its workforce. Plaintiffs seek certification for these claims, as well as for their derivative claims for waiting time penalties—for former SkyWest employees—and violations of the Unfair Competition Law, Business & Business and Professions Code § 17200 *et seq.* ("UCL").  "California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005); *Pressler v. Donald L. Bren Co.*, 32 Cal. 3d 831, 837 (1982); *Bernstein v. Virgin Am., Inc.*, No. 15-cv-02277-JST, 2016 WL 6576621, *7 (N.D. Cal. Nov. 7, 2016). "Hours worked" means "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Wage Order 9-2001, § 2(G)*; see, e.g.*, *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 45 (2013). Plaintiffs seek to recover on behalf of the Class for all time worked and all wages underpaid while working as SkyWest Frontline Employees within California and on behalf of the SFO QSP Subclass for all time worked and all wages underpaid while working as SkyWest Frontline Employees in San Francisco.

### 1.   Shift Trade Overtime.

As a matter of policy common to all Frontline Employees, SkyWest does not pay overtime to employees when the employees trade shifts with each other, no matter how many hours are worked in a day or week, stating "[a]n employee who agrees to work a shift trade for another employee must understand the traded shift hours do not count toward overtime." Ex. 12 (CSPM

11

Shift Adjustments). However, the California Labor Code does not exempt employees from its overtime requirements, unless *inter alia*, "[their collective bargaining] agreement provides premium wage rates for *all overtime hours worked . . ..*" *See* Cal. Lab. Code § 514; *see, e.g., Gregory v. SCIE, LLC,* 317 F.3d 1050, 1053 (9th Cir. 2003). SkyWest's CSPM[6] unambiguously does not provide premium wage rates for all overtime hours worked (namely, it excludes shift trades). Therefore, a common question of law will resolve whether or not Frontline Employees are exempt from the overtime requirements under the plain language of Cal. Lab. Code §§ 510, 511, 512, and 1194. *See Gregory*, 317 F.3d at 1053. On behalf of the Class, Plaintiffs seek to recover wages for all unpaid overtime hours that were worked as a shift trade, as well as the related penalties for their derivative claims.

2. QSP Minimum Wages.

San Francisco Airport's QSP required "covered employers" to pay their eligible employees a minimum hourly wage rate of "$0.50 an hour above the current San Francisco Minimum Compensation Ordinance ("MCO") rate." Ex. 14 (QSP 1 at SWA_PLTF_000437). At all times during the Class Period, SkyWest was a "Covered Employer" as defined by the QSP, and all Frontline Employees were "Covered Employees." *See supra,* Section II.C.

| SKYWEST SFO FRONTLINE EMPLOYEE HOURLY WAGE RATES | | QSP Minimum Wage Rates by Year/ Underpayment by SkyWest per Hour of Regular Pay | | | |
|---|---|---|---|---|---|
| | | 2013 | 2014 | 2015 | 2016 |
| Seniority | Wages/Hour | $ 12.93 | $ 13.16 | $ 13.52 | $ 13.84 |
| Start | $ 12.35 | $ 0.58 | $ 0.81 | $ 1.17 | $ 1.49 |
| Step 2 | $ 12.50 | $ 0.66 | $ 0.66 | $ 1.02 | $ 1.34 |
| Step 3 | $ 12.65 | $ 0.28 | $ 0.51 | $ 0.87 | $ 1.19 |
| Step 4 | $ 12.80 | $ 0.13 | $ 0.36 | $ 0.72 | $ 1.04 |
| Step 5 | $ 12.95 | | $ 0.21 | $ 0.57 | $ 0.89 |
| Step 6 | $ 13.10 | | $ 0.06 | $ 0.42 | $ 0.74 |
| Step 7 | $ 13.25 | | | $ 0.27 | $ 0.59 |
| Step 8 | $ 13.55 | | | | $ 0.29 |
| Step 9 | $ 13.85 | | | | |
| Step 10 | $ 14.15 | | | | |
| Step 11 | $ 14.50 | | | | |
| Step 12 | $ 14.85 | | | | |
| Step 13 | $ 15.35 | | | | |

---

6   SkyWest claims that the CSPM is a "collective bargaining agreement." Although Plaintiffs disagree, this Court granted summary judgment in SkyWest's favor on that issue. ECF No. 90. Plaintiffs seek to reserve this issue should this matter be appealed at a later date.

During the Class Period, SkyWest employed approximately ███ Frontline Employees at SFO, the least senior of which were paid hourly wages under the QSP minimum wage rate. Breshears Decl., Attachment A ¶ 6. The chart below shows SkyWest's underpayment of QSP minimum wages for each year and the level of seniority during the Class Period. The shaded cells indicate "no QSP violation" at the seniority level of that calendar year. Ex. 11 (CSPM Pay Scales).

On behalf of the SFO QSP Subclass, Plaintiffs seek to recover wages for all underpaid working hours at SFO including both regular wages and overtime that were paid at rate less than the QSP, pursuant to Cal. Lab. Code § 223 ("Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract.") and § 1197 ("The minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful"). Plaintiffs also seek the related penalties for their derivative claims on behalf of themselves and the SFO QSP Subclass workers.

    3.    Meal and Rest Breaks.

Under California law, workers are entitled to uninterrupted non-working meal breaks. An employer must provide a meal period of not less than 30 minutes if the employee works more than five hours per day and must provide a second 30-minute meal period if the total work hours exceed ten hours. Cal. Lab. Code § 512(a); Cal. Lab. Code § 226.7; Wage Order No. 9-2001 § 11. Notably, the employee must be "relieved of all duty" during this meal break; if not, the meal period is considered "on-duty," and counts as time worked. *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 958 (9th Cir. 2013); *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012). If an employer fails to provide an employee a meal period in accordance with the applicable provisions of Wage Order No. 9-2001, the employer shall pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided. *Id.* According to SkyWest pay records, meal breaks for Frontline Employees were frequently delayed, interrupted, or missed altogether.

With respect to rest breaks, an employer must provide an uninterrupted ten-minute rest

13

break for every 3.5-6 hours of work and must provide a second ten-minute rest period if the total work hours exceed six hours, and a third if the shift is more than ten hours. Cal. Lab. Code § 512(a); Cal. Lab. Code § 226.7; Wage Order No. 9-2001 § 11; *Brinker Rest. Corp.*, 53 Cal. 4th at 1029. As demonstrated by the declarations of the Plaintiffs and Frontline Employees, like the non-compliant meal breaks, the Class frequently—especially during busy travel periods—missed their rest breaks. *See supra*, Section II.D.

Payment of meal and rest break wage premiums for non-complaint breaks is required by California law. Cal Lab. Code § 226.7(c) ("[T]he employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."). During the Class Period, SkyWest admittedly had no policy, procedure, or mechanism to pay these penalties when a break requirement was violated—either written or otherwise communicated to Frontline Employees. This was confirmed by SkyWest's corporate representative and Plaintiffs' expert. Ex. 3 (Hoover Dep. 61:8-63:5; 102:10-103:6) ("Q: Would an additional premium be paid [for working through a meal] other than just a standard hourly pay? A: No."). Accordingly, the Court should certify a claim for Meal Period Violations and Rest Period Violations.

4. Grace Period.

California law requires employers to pay workers minimum wage for all hours worked. Cal. Lab. Code § 1197; Wage Order 9-2001 § 4. A failure to pay an employee for all hours worked (i.e., an off-the-clock violation) necessarily results in a minimum wage violation, because under California law, "'all hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation.'" *Brown v. Wal-Mart Stores, Inc.*, No. C 08-5221 SI, 2013 WL 1701581, at *7 (N.D. Cal. Apr. 18, 2013) (quoting *Armenta*, 135 Cal. App. 4th at 323). Although California permits an employer to establish a common punch clock "grace time" policy (i.e., permitting employees to punch in or out within a limited range of minutes), that policy must be both facially neutral and neutral in application. *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1079 (9th Cir. 2016). Here, SkyWest's grace period policy may appear facially neutral (*e.g.*, Ex. 24 (Pay to Schedule); Ex. 22 (Occurrence Points and

14

Corrective Action)), but it is not neutral in application. Plaintiffs seek unpaid wages on behalf of the Class for unpaid hours resulting from SkyWest's grace period violations.

5.   <u>Unfair Competition and Waiting Time.</u>

For the same reasons stated above, Plaintiffs' claim for violations of the UCL and their claim for waiting time penalties under Cal. Lab. Code § 203 are derivative of Plaintiffs' various wage claims and satisfy the requirements of Federal Rule of Civil Procedure 23. If Plaintiffs prove that SkyWest has failed to pay wages owed to former employees, the Waiting Time Penalties will be a statutory remedy. Because these claims are wholly derivative, Plaintiffs devote no further separate discussion to them.

Plaintiffs' evidence demonstrates that SkyWest treats its Frontline Employees the same with respect to each and every one of these claims, and whether SkyWest has violated California wage laws will be answered based on common proof applicable to the Class as a whole.

**B. Applicable Legal Standard for Class Certification.**

Class certification is proper if Plaintiffs satisfy the requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality of facts or law, typicality, and adequacy of representation—and one subsection of Rule 23(b). *Wolin v. Jaguar N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Because Plaintiffs seek certification pursuant to Rule 23(b)(3), they must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court's "class certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 131 S. Ct. at 2551 (internal quotation marks omitted)). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id*. at 1194-95. "Merits questions may be considered to the extent—but only to the extent— that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id*.

### C. Plaintiffs Satisfy the Requirements for Class Certification Under Rule 23(a).

#### 1. The Class Is Sufficiently Numerous and Ascertainable.

The proposed Class consists of over ███ class members—far too many to practically join in a single suit. Breshears Decl., Attachment A ¶ 6; *see Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). The proposed SFO QSP Subclass is also sufficiently numerous with about ███ Frontline Employees. *Id.* Accordingly, numerosity is satisfied.

The proposed Class and Subclass are also readily ascertainable, as the class definition is "'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 534 (N.D. Cal. 2015) (citation omitted); *Bernstein*, 2016 WL 6576621, *6. Indeed, through discovery, SkyWest identified potential Class members, providing Plaintiffs with a list of all Frontline Employees who worked in California and San Francisco during in the Class Period. *See Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 185 (N.D. Cal. 2015).

#### 2. There are Questions of Law and Fact Common to the Class.

Rule 23(a)(2) requires common questions of law or fact. Fed. R. Civ. P. 23(a)(2). The commonality requirement chiefly serves two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Class members' claims need not be identical; they must only share common questions such that "a classwide proceeding [can] generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original, citation omitted); *accord Abdullah*, 731 F.3d at 957 (same). "All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Instead, either "shared legal issues or a common core of facts" suffices. *Rodriguez*, 591 F.3d at 1122; *Wal–Mart*, 131 S. Ct. at 2556 ("even a single [common] question will do.").

Here, SkyWest failed to pay its Frontline Employees in accordance with California wage laws by: (1) failing to pay earned overtime wages for shift trades; (2) failing to pay all minimum wages as required by the QSP; (3) failing to provide uninterrupted and timely 30-minute meal

16

1   breaks and timely rest breaks, or, when missed, failing to pay the statutory wage premium; and (4)

2   adopting a grace period policy that is not neutral in application. SkyWest admits it has

3   comprehensive, uniform pay practices that apply to the Class as a whole. Ex. 9 (CPSM Letter of

4   Agreement).

5       SkyWest's CSPM unambiguously states that it does not pay Frontline Employees

6   overtime premiums under Cal. Lab. Code § 510 whenever two employees trade shifts, regardless

7   of the number of hours worked by either employee in the day or week at issue. Ex. 12 (CSPM

8   Shift Adjustments). In addition, the CSPM establishes the uniform pay scales for SFO Frontline

9   Employees, and those pay scales show wages for lower seniority SFO employees to be below the

10  QSP minimum wage rate. *See* CSPM Pay Scale Chart, *supra*, at 12. "'Class certification is usually

11  appropriate where liability turns on an employer's uniform policy that is uniformly implemented,

12  since in that situation predominance is easily established.'" *Bernstein,* 2016 WL 6576621, *12

13  (quoting *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008)).

14      Frontline Employees consistently testified to their inability to take meal and rest periods

15  as required under Cal. Lab. Code §§ 226.7 and 512, and SkyWest's corporate representative

16  admitted that SkyWest *never* pays the missed break premium as required under Cal. Lab. Code §

17  226.7(c), all of which can be confirmed by the payroll records and by the sworn testimony of

18  Frontline Employees. *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1160 (2015) (a

19  significant number of employees accrued unpaid missed break premium wages but were never

20  paid wage premium is capable of common proof). Finally, a statistical review of the application

21  of SkyWest's grace policy is capable of demonstrating whether or not the grace policy is neutral

22  in application. *Corbin*, 821 F.3d at 1077-79; *see also See's Candy Shops, Inc. v. Superior Court,*

23  210 Cal. App. 4th 889, 906 (2012) (whether a grace period policy is biased against employees is

24  a factual issue).

25      Thus, each of Plaintiffs' claims present common questions, and the answers will "be so for

26  all class members or for none; their claims rise and fall together." *Stockwell v. City & Cty. of S.F.,*

27  749 F.3d 1107, 1115 (9th Cir. 2014). Commonality is met.

28

17

<u>3. Plaintiffs' Claims Are Typical of the Claims of the Class.</u>

Under Rule 23(a)'s "permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 (citation omitted); *Torres v. Air to Ground Servs., Inc.*, 300 F.R.D.386, 400 (C.D. Cal. 2014). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005).

In this matter, all Plaintiffs held the same position, performed the same duties, and were subjected to the same work rules and pay practices as all other members of the Class and Subclass. *Compare* Meek Decl., Barnes Decl., Ross Decl. *to* Appendix. Plaintiffs' claims are typical of the claims of the Class and Subclass because they all arise out of SkyWest's uniform conduct toward Frontline Employees. *See e.g., Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 489 (E.D. Cal. 2006) (typicality satisfied where plaintiffs seek relief "based on the same conduct of Defendant: the failure to pay overtime wages [and] Defendant does not contend that the Named Plaintiffs' claims arise from conduct that Defendant directed at them alone"); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 322 (N.D. Cal. 2013) (typicality satisfied where Plaintiffs and other employees were subject to the same pay policies and practices).

Plaintiffs' claims arise from the same facts and same legal theories as the proposed Class and are, therefore, typical.

<u>4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.</u>

Rule 23(a)(4) requires that the proposed class representatives and their counsel be adequate. Adequacy has two elements: (1) that the proposed representatives do not have conflicts of interest with the proposed Class, and (2) that Plaintiffs are represented by qualified and competent counsel. *See, e.g., Hanlon*, 150 F.3d at 1020. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." 7A Charles Alan Wright, Arthur R. Miller, *et al.*, Federal Practice and Procedure, § 1768 (3d ed. 1986).

Both elements of the adequacy requirement are satisfied here. *First*, no Plaintiff has any interest that is antagonistic to the interests of the proposed Class. All Plaintiffs have served as

18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

Frontline Employees in California like every other member of the proposed Class, and all have served as Frontline Employees at SFO, like all other members of the Subclass. Plaintiffs seek to represent a class of persons who have worked in the same position, and who have been subjected to the same policies, rules, and pay scales. *Second*, Plaintiffs' counsel are experienced class action litigators who have secured certification of employment, civil rights, and consumer class actions, and brought them to successful resolution. *See* Exs. 26, 27, 28 (Firm Resumes). These law firms are well-qualified and able to serve as Class Counsel. Plaintiffs and proposed Class Counsel will, therefore, adequately represent the Class.

**D. Plaintiffs Satisfy the Requirements for Class Certification Under Rule 23(b)(3).**

Certification is appropriate under Rule 23(b)(3) because Plaintiffs demonstrate that (1) common questions predominate over questions affecting only individual members; and (2) class resolution is the superior form for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *Amgen*, 133 S. Ct. at 1191.

1. Common questions predominate with respect to each of Plaintiffs' claims.

The Ninth Circuit has repeatedly held that "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (quoting *Hanlon*, 150 F.3d at 1022). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). There is no bright line test for this determination. Instead, "the Court must pragmatically assess the entire action and the issues involved." *Romero*, 235 F.R.D. at 489 (citation omitted). Individual questions regarding damages will not adversely affect Plaintiffs' ability to demonstrate predominance. *See Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("in this circuit [] damages calculations alone cannot defeat certification").

For many of the same reasons discussed regarding commonality, common questions

19

predominate over any individualized inquiries that may arise. Indeed, "[c]lass certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008); *see also Wren v. RGIS Inventory Specialist*s, 256 F.R.D. 180, 204 (N.D. Cal. 2009); *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 564 (S.D. Cal. 2013).

> ### a. The Legality of SkyWest's Shift Trade Policy Predominates Questions Impacting Individual Frontline Employees.

Common issues will predominate as to whether SkyWest deprived Frontline Employees of overtime premiums in violation of Cal. Lab. Code § 510. SkyWest's common policy is that when two Frontline Employees trade shifts, SkyWest will not pay overtime to either of the employees for the exchanged time, even if the employee's daily or weekly hours would otherwise necessitate overtime pay.  Whether this common policy violates Cal. Lab. Code § 510 is a legal question that will rise or fall for all class members based upon common evidence and a common interpretation of the law. Because this written policy expressly applies to all Frontline Employees without exception, whether it violates the California Labor Code necessarily predominates over individualized inquiries.

As one District Court observed in certifying minimum wage and overtime claims, whether the class members "were supposed to be paid overtime for working more than 40 hours a week and were not. Th[is is] about the most perfect question[] for class treatment." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007). Whether Frontline Employees may have varying amounts of hours worked also does not defeat class certification. *See Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment.") (internal quotations and citations omitted); *see also Boyd v. Bank of Am. Corp*., 300 F.R.D. 431, 440 (C.D. Cal. 2014) (individualized damages inquiries will "undoubtedly" occur and do not defeat predominance).

> ### b. The Legality of SkyWest's Failure to Pay SFO-QSP Compliant Wages Predominates Questions Impacting Individual Frontline Employees.

Whether SkyWest failed to pay SFO Frontline Employees for all hours worked in

20

accordance with the QSP minimum wage obligation is a predominant question that will be answered by common proof. As the Ninth Circuit has acknowledged, "courts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes." *In re Wells Fargo Home Mtg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009).

All Frontline Employees were paid wages according to rates uniformly set by SkyWest's pay schedules, including those working at San Francisco International Airport. Ex. 11 (CSPM Pay Scales). During the Class Period, the hourly wage rates for lower seniority SFO Frontline Employees consistently fell below the QSP minimum wage rate, causing Frontline Employees of lower seniority "steps" to be underpaid for all hours that they worked, and causing them to be further underpaid for all overtime hours as well. As the QSP increased each year, more "steps" fell below the QSP minimum wage rate of pay. SkyWest did not adjust its pay scales at SFO during the Class Period to meet the QSP's minimum compensation requirements.

While SkyWest has asserted that a 2012 "Addendum to CBA" constitutes a waiver of Frontline Employees' right to QSP compliant minimum wages (*see, e.g.* ECF Nos. 44 at 19 (Motion to Dismiss); 44-1, ¶ 19 (Tate Decl.)), Plaintiffs have argued (and continue to argue) that basic contractual principles preclude an "addendum" that predates the contract it purports to modify, especially when lacking any incorporation by reference. Nevertheless, whether SkyWest was required to pay no less than the QSP minimum wage rate, or alternatively, whether the "addendum" waived all rights to the QSP minimum wage rates is a classwide legal question that predominates. The answer to this common question of law will be supported by common proof with respect to the entire SFO QSP Subclass. *See, e.g.*, *McCowen v. Trimac Transp. Servs.* (*W.*), 311 F.R.D. 579, 588 (N.D. Cal. 2015) ("class-wide legal questions predominate because the legality of the ABP system, which applied uniformly to drivers, lies at the foundation of each of the wage claims"); *Ambrosio v. Cogent Comm'ns, Inc.,* 312 F.R.D. 544, 558 (N.D. Cal. 2016) (granting class certification under Rule 23 based on overtime action for non- exempt employees).

   c.  *The Legality of SkyWest's Meal and Rest Break Practices Predominates*
       *Questions Impacting Individual Frontline Employees.*

To comply with California law, an employer "is required to authorize and permit the

21

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

amount of rest break time called for under the wage order for its industry. If it does not . . . it has violated the wage order and is liable." *Brinker*, 53 Cal. 4th at 1033. Similarly, an employer must provide meal breaks that "must relieve the employee of all duty for the designated period." *Id.* at 1034. Here, SkyWest has taken the position that it does not need to comply with California meal and rest break laws because of an alleged preemption defense under the ADA. ECF No. 44 (MTD Am. Compl.) at 12.  SkyWest's position that "irregular operations" supersedes California's wage and hour laws only buttresses Plaintiffs' claims that SkyWest gave little attention to providing compliant break periods due to travel demands. Thus, whether or not SkyWest is exempt under the ADA will be the central question that predominates over any individual issues; particularly when SkyWest uniformly required Frontline Employees to punch in and punch out for meal breaks and each violation of missed, delayed, and shortened meal periods is recorded in payroll records as analyzed by Plaintiffs' damages expert. SkyWest's policies apply to the class as a whole, such that the question of liability is common and predominates over any individualized issues.

"Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker*, 53 Cal.4th at 1033 (finding certification of meal and rest breaks classes appropriate under California law); *see Abdullah*, 731 F.3d at 967 (affirming certification of meal break class where uniform evidence that class members were not relieved of duty); *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2016 WL 1598663, at *15, at *53 (N.D. Cal. Apr. 21, 2016) ("the Court concludes that Plaintiffs' are entitled to proceed on their meal and rest break claims on a class-wide basis . . . [as] their theory of liability is based on common policies that make it difficult or impossible for class members to take breaks); *Dilts v. Penske Logistics, L.L.C.,* 267 F.R.D. 625, 640 (S.D. Cal. 2010) (granting class certification of breaks claims). Common questions often predominate regarding meal and rest break claims, like whether the employer had a policy or practice to "relieve[] its employees of all duty?" or a practice to "permit [employees] a reasonable opportunity to take an uninterrupted 30-minute break?" *Boyd*, 300 F.R.D. at 441.

Plaintiffs' meal and rest claims satisfy predominance because they "will prevail or fail in unison," as required by Rule 23(b)(3). *Amgen Inc.*, 133 S. Ct. at 1191.

22

### d. The Legality of SkyWest's Grace Period Policy Predominates Questions Impacting Individual Employees.

Whether SkyWest's punch time grace period policy violates California's labor laws is a predominant question that will be answered by common proof. Employers must pay employees their contracted rate for "all hours worked," including "the time during which an employee is under the control of an employer and . . . the time the employee is suffered or permitted to work, whether or not required to do so." Wage Order 9-2001; *see* Cal. Lab. Code §§ 221-223; *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1010 (9th Cir. 2018); *Morillion v. Royal Packing Co.,* 22 Cal. 4th 575 (2000). However, certain punch time rounding practices, sometimes called "grace periods"— like that utilized by SkyWest—may be implemented so long as the rounding policy is facially neutral (*i.e.*, it permits both upward and downward rounding), and it is neutral in application (*i.e.*, the practice over time is "a wash," statistically not benefiting or burdening either employer or employees). *Corbin v. Time Warner Ent't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1077-83 (9th Cir. 2016); *see also See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 910-13 (2012). Plaintiffs' grace period claims satisfy predominance because they "will prevail or fail in unison," as required by Rule 23(b)(3). *See Amgen Inc.*, 133 S. Ct. at 1191.

### e. The Predominate Questions That Warrant Certification on the Claims Above Also Warrant Certification of The Waiting Time Penalties and UCL Claims.

"Because the Court has concluded that the overtime claims meet the commonality and predominance requirements of Rule 23, the derivative state law [waiting time and UCL] claims meet these requirements as well." *DeLuca v. Farmers Ins. Exch.*, No. 17-cv-00034-EDL, 2018 WL 1981393 at *11 (N.D. Cal. Feb. 27, 2018) (certifying wage and hour claims and derivative claims for waiting time penalties and violation of the UCL); *see also Dalchau v. Fastaff, LLC*, No. 17-cv-01584-WHO, 2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) (same); *Kazi v. PNC Bank, N.A.*, No. 18-cv-04810-JCS, 2020 WL 3414709 (N.D. Cal. June 22, 2020) (certifying claims based on alleged failure to pay for rest breaks and derivative waiting time and UCL claims); *Nucci v. Rite Aid Corp.*, No. 19-CV-01434-LHK, 2020 WL 3187335 (June 14, 2020) (certifying claims based on failure to reimburse for uniform purchases and derivative waiting time and UCL claims).

23

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

1

2. Proceeding on a Class Basis Is Superior and Manageable.

2

3

Class treatment is superior "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (quotation omitted); *see*

4

*Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) (superiority satisfied as

5

classwide litigation reduces litigation costs and promotes greater efficiency.).

6

> *a.  Class treatment is the most efficient and beneficial structure to resolve this dispute.*

7

8

Here, classwide treatment is superior. There are no other cases by proposed Class members

9

against SkyWest regarding the claims in this case. There is also no indication that Class members

10

have an interest in individually controlling the prosecution of this action. And, as detailed above,

11

the factual foundation of the claims is SkyWest's uniform policies and procedures which present

12

a model case for class treatment. In addition, the opt-out nature of a Rule 23(b)(3) class protects

13

the interests of Class members who do not wish to participate. Accordingly, certification provides

14

a single forum to protect the rights of SkyWest's Frontline Employees. *See, e.g., Romero*, 235

15

F.R.D. at 491 (class treatment superior when no indication that individual members desire to

16

individually control their case, no parallel litigation, and resolution of a common issue may resolve case).

17

18

Moreover, in cases involving employment matters like the ones at issue here, the alternative

19

to a class case is often no case at all. "[C]ourts have consistently recognized that the 'fear of

20

economic retaliation' will force workers 'quietly to accept substandard conditions,' dissuading

21

employees from participating in lawsuits against their employers." *Rutti v. Lojack Corp.*, No.

22

SACV 06-350 DOC (JCx), 2012 WL 3151077, at *6 (C.D. Cal. July 31, 2012) (citation omitted).

23

Further, the individual damages are often too small to merit individual actions. *Ghazaryan v. Diva*

24

*Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1538 (2008) (requiring workers to prosecute individual

25

claims would jeopardize their ability to find competent representation). For Class members to

26

individually litigate against SkyWest would "unnecessarily burden the judiciary," and could lead

27

to inconsistent results. *Hanlon*, 150 F.3d at 1023; *Gentry v. Sup. Ct.*, 42 Cal. 4th 443, 462 (2007)

28

(class actions guard against the prospect of "random and fragmentary enforcement" of the

24

1    employer's legal obligations under California wage laws). SkyWest did not treat Frontline

2    Employees individually in applying its pay practices; it makes no sense to adjudicate the legality

3    of those practices individually.

4                    b.   *This action is manageable as a class action.*

5            While it is unnecessary to adopt a specific trial plan now, Plaintiffs submit that this case

6    may proceed along a well-recognized path with a phased proceeding. In Stage I, SkyWest's

7    liability for wage violations will be tried. Plaintiffs and SkyWest can present their claims and

8    defenses in a class trial or summary judgment proceeding using common evidence, including (1)

9    company policy documents and payroll data; (2) testimony from SkyWest's executives, managers,

10   and employees regarding its policies and practices; (3) data presented through expert testimony of

11   the type offered in this Motion (*see, e.g.* Breshears Decl.); and (3) testimony of Plaintiffs and other

12   Frontline Employees (*see, e.g.* Appendix). Each of these types of common proof go to SkyWest's

13   liability to the Class as a whole. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016)

14   (a "representative or statistical sample, like all evidence, is a means to establish or defend against

15   liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual

16   action—but on the degree to which the evidence is reliable in proving or disproving the elements

17   of the relevant cause of action."); *accord Vaquero v. Ashley Furniture Indus., Inc.,* No. CV 12-

18   8590 PA (MANx), 2013 WL 12172124 (C.D. Cal. Jun. 17, 2013) (affirming certification of

19   minimum wage class).

20           Stage II would focus on the monetary relief due to the Class. This will be accomplished

21   through the presentation of data through experts as well as representative testimony. SkyWest

22   possesses the data necessary to calculate individual Class members' damages; thus, damages can

23   be calculated on a classwide—and precise—basis. As Plaintiffs' expert confirms, given the

24   detailed data that SkyWest maintains recording Frontline Employees' punch times and

25   corresponding pay, damages can feasibly and efficiently be calculated. *See* Breshears Decl. As this

26   District has noted, for purposes of certification, "Plaintiffs need only show a method of proving

27   damages and impact through common proof—whether class members were *actually* damaged is a

28   merits question . . . ." *Kamakahi*, 305 F.R.D. at 180 (emphasis in original).

25

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS IN AUTHORITIES, Case No.: 3:17-cv-01012-JD

**IV. CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that this Court certify the Class and Subclass, appoint Plaintiffs as Class representatives, and appoint Greg Coleman Law PC, Simmons Hanly Conroy LLC, and Kaplan Fox & Kilsheimer LLP as Class Counsel.

DATED:  January 28, 2021.                    Respectfully submitted,

**GREG COLEMAN LAW PC**

*/s/ Lisa A. White*
Lisa A. White (*pro hac vice*)

Lisa A. White (*pro hac vice*)
Gregory F. Coleman (*pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
lisa@gregcolemanlaw.com
greg@gregcolemanlaw.com

Mitchell M. Breit (*pro hac vice*)
Thien An Vinh Truong (*pro hac vice*)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
mbreit@simmonsfirm.com
atruong@simmonsfirm.com

Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email:  lking@kaplanfox.com
          mgeorge@kaplanfox.com
          mchoi@kaplanfox.com

*Counsel for Plaintiffs and Proposed Class*

26

1
2
3

**CERTIFICATE OF SERVICE**

4

5

The undersigned attorney hereby certifies that the foregoing pleading was filed electronically with the Clerk of Court using the ECF system, which sends notification of such filing to all attorneys of record.

6
7

/s/ Lisa A. White
Lisa A. White (*pro hac vice*)

8

**GREG COLEMAN LAW PC**
First Tennessee Plaza

9

800 S. Gay Street, Suite 1100

10

Knoxville, TN 37929

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28