Gregory F. Coleman (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
First Horizon Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
gcoleman@milberg.com
msilvey@milberg.com

Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
lking@kaplanfox.com
mgeorge@kaplanfox.com

Thien An V. Truong (*pro hac vice*)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
atruong@simmonsfirm.com

*Attorneys for Plaintiffs and the Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CODY MEEK, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>SKYWEST, INC. and SKYWEST AIRLINES, INC.,<br><br>　　　　　　　Defendant. | Case No. 17-cv-01012-JD<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MODIFICATION OF CLASS DEFINITION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. James Donato<br><br>Date: April 21, 2022<br>Time: 10:00 a.m.<br>Courtroom: 11 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 21, 2022 at 10:00 a.m., or other date and time at the Court's convenience, before the Honorable James Donato, United States District Judge for the Northern District of California, at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, CA 94102, presiding, Plaintiffs Cody Meek, Coryell Ross, and Jeremy Barnes ("Plaintiffs") will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"): (i) preliminarily approving the proposed Settlement; (ii) certifying a class for settlement purposes only; (iii) approving the form and manner of notice to the Class; and (iv) scheduling a final fairness and approval hearing before the Court.

As set forth herein, the proposed $4.195 million, non-reversionary settlement on Plaintiffs' claims alleging violations of California wage and hour laws on behalf of a class of approximately 1800 airline ground services workers is well within the range of what is fair, reasonable, and adequate such that notice of its terms may be disseminated to Class members and a hearing for final approval of the proposed Settlement scheduled.  This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities set forth below, the accompanying Joint Declaration of Mark. E. Silvey, Thien An V. Truong, and Matthew B. George, and the exhibits thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the proposed Settlement is within the range of fairness, reasonableness and adequacy as to warrant: (a) the Court's preliminary approval; (b) certification of a modestly expanded settlement class for settlement purposes only; (c) the dissemination of class notice; and (d) setting a hearing date for final approval of the Settlement as well as Plaintiffs' application of attorneys' fees and costs and incentive awards for the representative plaintiffs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 1

        A.      Litigation and Discovery ................................................................................... 1

        B.      Settlement Negotiations and Mediation ............................................................ 4

III.    SUMMARY OF THE SETTLEMENT ........................................................................... 5

IV.     ARGUMENT ................................................................................................................... 6

        A.      The Class Definition Satisfies Rule 23 and Certification is Warranted ................. 6

        B.      The Proposed Settlement Should Be Preliminarily Approved ............................... 9

                1.      The Proposed Settlement Was Facilitated by a Retired Federal
                        Judge, Was Vigorously Negotiated, and Is Supported by
                        Experienced Counsel ............................................................................ 11

                2.      The Stage of the Proceedings and the Discovery Completed ................... 12

                3.      The Risks of Continued Litigation .......................................................... 12

                4.      The Proposed Settlement Provides a Favorable Recovery for the
                        Settlement Class and Falls Within a Range of Possible Approval ........... 13

                5.      The Proposed Settlement Allocates the Settlement Fund Fairly and
                        Does Not Unjustly Favor Any Class Members ........................................ 16

        C.      The Proposed Cy Pres Recipient Is Appropriate ................................................. 18

        D.      The Proposed Incentive Awards Are Reasonable ................................................ 19

        E.      The Intended Request for Attorneys' Fees and Expenses ..................................... 20

        F.      The Proposed Notice to the Class Is Adequate .................................................... 21

        G.      The Proposed Claims Administrator .................................................................... 22

V.      PROPOSED SCHEDULE OF EVENTS AND FINAL APPROVAL PROCEEDINGS . 23

VI.     CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astiana v. Kashi Co.*,
  295 F.R.D. 490 (S.D. Cal. 2013) .................................................................................................... 7

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ................................................................................................... 20

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................................ 16, 19

*Brown v. Ralphs Grocery Co.*,
  239 Cal. Rptr. 3d 519 (Cal. App. 2d Dist. 2018) ....................................................................... 17

*Cancilla v. Ecolab, Inc*,
  No. 12-CV-03001-JD, 2015 WL 4760318 (N.D. Cal. Aug. 12, 2015) ...................................... 10

*Chu v. Wells Fargo Investments, LLC*,
  No. C 05–4526 MHP, 2011 WL 672645 (N.D. Cal., Feb. 16, 2011) ......................................... 17

*Dennis v. Kellogg Co.*,
  697 F.3d 858 (9th Cir. 2012) ....................................................................................................... 18

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................................... 11

*Flores v. Alameda Cty. Indus. Inc*,
  No. 14-CV-03011-JD, 2015 WL 7180607 (N.D. Cal. Nov. 16, 2015) ...................................... 16

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................... 15

*Harris v. Vector Mktg. Corp.*,
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. 2011) ......................................................... 9

*Hicks v. Toys 'R' Us–Delaware, Inc.*,
  No. CV13–1302–DSF (JCGx), 2014 WL 4703915 (C.D. Cal. Sept. 2, 2014) ......................... 17

*Hightower v. JPMorgan Chase Bank, N.A.*,
  CV111802PSGPLAX, 2015 WL 9664959 (C.D. Cal. Aug. 4, 2015 ........................................... 20

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................... 9

*In re Hyundai and Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019) ......................................................................................................... 9

NOTICE OF MOT. AND MOT. FOR PRELIM. APP., AMEND, AND MODIFY; MPA ISO THEREOF

**TABLE OF AUTHORITIES**
(cont.)

**Page**

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-02420 YGR (DMR), 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020)...................... 8

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-02420-YGR, 2018 WL 3064391 (N.D. Cal. May 16, 2018)................................. 20

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)................................................................................................ 12

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)................................................................................................ 19

*In re Portal Software Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................. 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)................................... 12

*Lazarin v. Pro Unlimited, Inc.*,
No. C11–03609 HRL, 2013 WL 3541217 (N.D. Cal., July 11, 2013) ................................. 17

*Myers v. MedQuist, Inc.*,
No. 05–4608 (JBS), 2009 WL 900787 (D.N.J. Mar. 31, 2009)............................................. 8

*Nachshin v. AOL, LLC*,
663 F.3d 1034 (9th Cir. 2011)........................................................................................ 18, 19

*Naranjo v. Spectrum Sec. Servs., Inc.*,
257 Cal. Rptr. 3d 188 (2020) ............................................................................................... 14

*Naranjo v. Spectrum Sec. Servs., Inc.*,
Cal. App. 5th 444 (2019) ..................................................................................................... 14

*Ortiz v. Genco, Inc.*,
No. 4:16-CV-04601-YGR, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019) ............................ 16

*Pena v. Taylor Farms Pac., Inc.*,
No. 2:13-CV-01282-KJM-AC, 2020 WL 6392576 (E.D. Cal. Nov. 2, 2020)........................... 8

*Rai v Santa Clara Valley Transp. Auth.*,
5:12-CV-04344-PSG, 2016 WL 9114007 (N.D. Cal May 17, 2016) ....................................... 20

*Rodriguez v. Nike Retail Servs., Inc.*,
No. 14-CV-01508-BLF, 2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ................................... 16

**TABLE OF AUTHORITIES**
(cont.)

**Page**

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)................................................................. 10, 19

*Sarkisov v. StoneMor Partners L.P.*,
    No. 13-CV-04834-JD, 2015 WL 1249169 (N.D. Cal. Mar. 18, 2015)................................ 9, 13

*Schaffer v. Litton Loan Serv., LP.*,
    No. CV 05-07673 MMM (JCx), 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ................... 15

*Schlieser v. Sunrise Senior Living Mgmt. Inc., et. al.*,
    No. LA CV19-00443 JAK (PLAx), 2021 WL 6752320 (C.D. Cal. July 6, 2021) ................ 6, 9

*Smith v. Am. Greetings Corp.*,
    No. 14-CV-02577-JST, 2016 WL 2909429 (N.D. Cal. May 19, 2016) ................................ 20

*Spann v. JC Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ........................................................ 8, 9, 11

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)................................................................. 9

*Virgin America, Inc., et al., v. Bernstein, et al.*,
    U.S. Supreme Court No. 21-260 ........................................................... 13

*Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*,
    173 F.3d 713 (9th Cir. 1999).............................................................. 7

*Wright v. Linkus Enters., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009) ......................................................... 9

**Statutes**

49 U.S.C.
    § 1301 *et seq.* ...................................................................... 13

California Code of Civil Procedure
    § 340(a) ............................................................................. 17

California Labor Code
    § 203................................................................................. 14
    §§ 2698 *et seq* ..................................................................... 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (cont.)

**Page**

**Rules**

Federal Rules of Civil Procedure

Rule 23 ................................................................................................................ 7, 9, 10
Rule 23(a) ........................................................................................................................ 8
Rule 23(b)(3) ................................................................................................................ 6, 8
Rule 23(c)(1)(C) ............................................................................................................. 7
Rule 23(c)(2)(B) ........................................................................................................... 21
Rule 23(e) ..................................................................................................................... 10
Rule 23(e)(1) ................................................................................................................ 21
Rule 23(h)(1) ................................................................................................................ 21
Rule 30(b)(6) .................................................................................................................. 3

**Other Authorities**

3 Rubenstein, *Newberg on Class Actions*
§ 7:35 (5th ed.) ............................................................................................................. 8

## I.     INTRODUCTION

Plaintiffs Cody Meek, Jeremy Barnes, and Coryell Ross ("Plaintiffs") seek preliminary approval of a $4.195 million, non-reversionary proposed class action Settlement[1] that will fairly compensate approximately 1,800 Settlement Class Members who worked for Defendants SkyWest Airlines, Inc., and SkyWest, Inc., ("SkyWest") as Frontline Employees in California from February 27, 2013, through the date of preliminary approval.  This Action was commenced approximately five years ago, was vigorously litigated up through trial preparations, and was only settled after resolution of summary judgment and class certification motions and multiple mediations with the Honorable Andrew Guilford (Ret.) of Judicate West in Los Angeles.  The Settlement will provide each Settlement Class Member with compensation commensurate with their number of hours worked during the Class Period and they will receive payments without the need to file any claim forms.  As set forth herein under Federal Rule of Civil Procedure 23 and the Northern District of California's Guidelines for Settlement Approval, the Settlement is fair, reasonable, and adequate and should be preliminarily approved.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.     Litigation and Discovery

On February 27, 2017, Plaintiff Cody Meek filed a putative class action lawsuit in the United States District Court for the Northern District of California, Case No. 3:17-cv-01012-JD (the "*Meek* Action"), generally alleging five causes of action on behalf of a putative class of Frontline Employees for unpaid minimum wages, overtime, and associated penalties.  ECF No. 1. Plaintiff Meek filed a First Amended Complaint on June 15, 2017, adding claims for the failure to provide complete and timely meal and rest breaks.  ECF No. 41.  SkyWest filed a Motion to Dismiss both Complaints, the second of which was fully briefed.  ECF Nos. 35, 44, 48 and 49.  On May 16, 2018, the Court issued its order on SkyWest's Motion to Dismiss, ordering the Parties to focus discovery on the issue of whether Plaintiffs were subject to a collective bargaining agreement and requesting summary judgment motions on the issue.  ECF No. 55.

---

[1] All capitalized terms will have the same meaning as set forth in the Settlement Agreement attached as Exhibit 1 to the Joint Declaration.  Citations to specific portions of the Settlement Agreement are referenced as "SA ¶ __". Plaintiff Meek's signature on the settlement agreement is pending and will be filed once received.

On July 12, 2018, Plaintiffs Jeremy Barnes and Coryell Ross, also former Frontline Employees of SkyWest, filed a putative class action in the Northern District of California, Case No. 3:18-cv-04182-JD (the "*Barnes* Action"), ECF No. 1, alleging similar causes of action to those asserted in the *Meek* Action, followed by a First Amended Complaint on October 19, 2018, adding claims for civil penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), Lab. Code §§ 2698 *et seq. Barnes* Action, ECF No. 24. On July 26, 2018, the Court entered an Order designating that the *Meek* and *Barnes* Actions as related. ECF No. 63.

Following the Court's Order on the Motion to Dismiss, the parties began discovery (including various disputes) and filed a Stipulated Protective Order. *E.g.*, ECF Nos. 64, 67, 69, 73, 74, 77. The Parties began depositions on September 24, 2018. On October 18, 2018, SkyWest filed a Motion for Partial Summary Judgment on the basis that Frontline Employees were covered by a CBA and argued that the CBA foreclosed certain claims. ECF No. 80. After complete briefing, the Court granted SkyWest's Motion on December 7, 2018, ECF No. 90, although Plaintiffs later moved to clarify that the Court's Order on Summary Judgment applied only to the Wage Order No. 9 based overtime claim, and not to any claims for overtime under the Labor Code. ECF No. 91.

While that motion was pending, on January 31, 2019, SkyWest filed its second Motion to Dismiss the *Meek* First Amended Complaint, arguing that dismissal was warranted on preemption and other grounds. ECF No. 94. On December 16, 2019, the Court denied SkyWest's second Motion to Dismiss the *Meek* First Amended Complaint. ECF No. 103. The Court further clarified that its dismissal of overtime claims under Wage Order 9 did not affect the remaining overtime claims under the Labor Code. *Id.* On January 6, 2020, SkyWest filed its Answer to the *Meek* First Amended Complaint. ECF Nos. 107, 108.

On January 16, 2020, the Parties appeared for a case management conference, at which point the Court consolidated the *Meek* Action with the *Barnes* Action (collectively "the Action"). ECF No. 111. On January 29, 2020, Plaintiffs filed a Consolidated Amended Class Action Complaint alleging the claims previously alleged in their prior Complaints. ECF No. 112. On March 12, 2020, SkyWest filed its Answer and Amended Answer to the Plaintiffs' Consolidated

1    Amended Class Action Complaint.  ECF Nos. 118-120.  SkyWest denied the allegations in the

2    Action in their entirety and asserted various defenses.  *Id.*

3         Although initial discovery focused on the validity of the CBA, the Parties expanded their

4    investigations through service of multiple rounds of document requests and interrogatories,

5    resulting in the production of relevant policy documents, personnel files, putative class members'

6    contact information and payroll records, social media postings, and employment records.  Joint

7    Decl., ¶ 6.  The Parties had many meet and confers throughout this time period, negotiating some

8    resolutions while seeking Court assistance with others.  *Id.*  With the due date for class certification

9    motions set in January 2021, the Parties also ramped up depositions.  *Id.*  Each of the named

10   Plaintiffs sat for depositions in October 2020, and depositions of current and former SkyWest

11   personnel, both individually and under Rule 30(b)(6), continued through January 2021.  *Id.*

12   Plaintiffs also took third-party discovery through FOIA requests to state and local agencies and via

13   subpoenas to former SkyWest personnel.  *Id.*

14        On January 28, 2021, Plaintiffs filed their Motion for Class Certification, which was

15   supported by 25 documentary exhibits, the declaration of payroll damages expert David Breshears

16   that itemized the proposed damages for each class member on each claim, and declarations from

17   39 putative class members.  ECF Nos. 134, 135, and 140.  Plaintiffs' Motion sought to certify five

18   substantive claims hereinafter referred to as: (1) Shift-Trade Overtime Claim; (2) Meal Period

19   Claim; (3) Rest Period Claim; (4) Grace Period Claim; and (5) SFO Minimum Wage Claim; and

20   two "derivative" claims for (1) Waiting Time Penalties; and (2) UCL Violations.  On March 11,

21   2021, SkyWest filed its opposition to class certification which was supported by a series of

22   declarations from current and former SkyWest personnel.  ECF No. 141.  On April 8, 2021,

23   Plaintiffs filed their reply in support of class certification and SkyWest filed another Motion for

24   Partial Summary Judgment, seeking dismissal of Plaintiffs' Shift Trade Overtime and SFO

25   Minimum Wage Claims.  ECF No. 144.  The Parties continued exchanging written discovery,

26   engaging in meet and confers, and supplementing responses until discovery closed in July 2021.

27   ECF Nos. 157, 159, and 161.

28

On August 26, 2021, the Parties appeared before the Court for oral arguments on Plaintiffs' Motion for Class Certification and SkyWest's Motion for Partial Summary Judgment. ECF No. 163. On August 27, 2021, the Court granted SkyWest's Motion for Partial Summary Judgment, dismissing Plaintiffs' Shift Trade Overtime and SFO Minimum Wage Claims. ECF No. 163. On September 29, 2021, the Court issued its order on Plaintiffs' Motion for Class Certification, certifying Plaintiffs' proposed class of "All individuals currently or formerly employed by SkyWest Airlines, Inc. and SkyWest, Inc. as Frontline Employees who worked on the ground and were paid on an hourly basis for at least one shift in the State of California at any time from February 27, 2013, through October 18, 2020…" on Plaintiffs' Meal Period and Rest Period Claims as well as the derivative Waiting Time Penalty and UCL Violation claims. ECF No. 167 at 14-15. The Court did not certify Plaintiffs' Grace Period Claim for underpayment of wages for time recorded in the payroll system at the beginning of the work shift, but that was not compensated. *Id*. On October 29, 2021, Plaintiffs filed an Administrative Motion to Distribute Class Notice Via U.S. Mail and Email, ECF No. 173, which was granted on November 23, 2021. ECF No. 177.

After the Court's ruling on class certification and summary judgment, the Parties exchanged further expert reports. Plaintiffs produced a modified payroll damages analysis from Mr. Breshears, and SkyWest produced two experts, Dr. Darin Lee, an airline industry expert, and Dr. Ali Saad, a labor economist (who also submitted a rebuttal report). Joint Decl., ¶ 9. The Parties deposed each other's experts from November 16-18, 2021. *Id*. On November 29, 2021, SkyWest filed a Motion to Exclude Plaintiffs' damages expert, David Breshears and Plaintiffs filed a Motion to Strike and Exclude portions of the testimony of SkyWest's experts. ECF Nos. 178-79. With a trial date of January 24, 2022, the Parties had also begun trial preparations, having met and conferred about drafting pre-trial submissions and motions *in limine* that were imminently due before the pre-trial conference set for January 6, 2022. *Id*., ¶ 9.

**B.    Settlement Negotiations and Mediation**

The Parties engaged in numerous settlement conferences and discussions prior to reaching Settlement. On June 21, 2018, the Parties participated in a court assisted settlement conference before The Honorable Magistrate Elizabeth D. LaPorte. The matter did not settle. Joint Decl., ¶

10. On December 16, 2019, the Action was referred for further settlement evaluation with the Honorable Magistrate Thomas S. Hixson. *Id*. The Parties attended pre-settlement conferences with Magistrate Hixson before agreeing to a full day of mediation with The Honorable Andrew Guilford (Ret.) of Judicate West in Los Angeles, a recently retired District Court Judge for the Central District of California. The Parties attended a full-day mediation session on November 12, 2020, that did not result in settlement. *Id*. Thereafter, the Parties had three additional appearances before Magistrate Judge Hixon to facilitate settlement discussions on December 10, 2020, on October 7, 2021, and on May 27, 2021. *Id*. Per the Court's directive, after the ruling on the motions for class certification and summary judgment, the Parties attended another full day mediation with Judge Guilford (Ret.) on November 2, 2021. *Id*. While the matter did not settle that day, the Parties continued settlement negotiations both via Judge Guilford and directly in the weeks that followed. *Id*. These arms' length negotiations eventually resulted in an MOU that was developed into the present Settlement Agreement between the Parties. *Id*. On December 7, 2021, the Parties filed a Notice of Settlement and a Stipulation to Vacate the Trial Date. ECF No. 180.

## III.   <u>SUMMARY OF THE SETTLEMENT</u>

The Settlement provides for the non-reversionary payment of $4.195 million in cash for the benefit of the Class. Joint Decl., Ex. 1 (Settlement Agreement ("SA") ¶ 14(a)). The Settlement is inclusive of all payments to the Class Members (including all employer and employee payroll taxes), all fees and expenses to Class Counsel, costs of the Claims Administrator, CPT Group, and a payment to the California Labor and Workforce Development Agency ("LWDA") for Plaintiffs' PAGA claim. SA ¶¶ 15-17. No eligible Class Member will have to file a claim form to receive their payment – disbursements will be made automatically if final approval is granted unless a Class Member exercises their right to opt-out. SA ¶¶ 16, 26-28. A breakdown of the Gross Settlement Fund is demonstrated as follows:

| Gross Settlement Fund | $4,195,000 |
|---|---|
| **Claims Administration Costs** | Estimated to be $20,000 |
| **Incentive Awards to 3** | Not to exceed $15,000 total |

| Plaintiffs | |
|---|---|
| **PAGA Payment** | $15,000 (75% to the LWDA and (25% to the Class Members) |
| **Class Counsel Fees** | Not to exceed $1,384,350 (or 33% of the fund) |
| **Class Counsel Costs** | Not to exceed $180,000 |
| **Net Settlement Fund** | $2,580,650 (estimated) |

Based on the approximate payments for Claims Administration, Class Counsels' Fees and Costs, the PAGA Payment, and the Incentive Awards, the Net Settlement Fund for distribution to the Settlement Class Members would be approximately $2,580,650. Thus, the approximately 1,800 Settlement Class Members would recover approximately $2,300 per person before deductions for fees and costs, or approximately $1,400 after deductions of those estimated amounts. Joint Decl., ¶ 12. Should the Court award less than the requested Class Counsel Fees and Costs, the balance will be distributed to Settlement Class Members. SA ¶ 15(b)(i). No funds will revert to SkyWest and all funds will be distributed.

Plaintiffs provide further analysis of the legal criteria supporting preliminary approval with an emphasis on the additional considerations set forth in the Northern District of California Preliminary Approval Guidelines below.

## IV.  ARGUMENT

### A.  The Class Definition Satisfies Rule 23 and Certification is Warranted

"The first step in considering whether preliminary approval of the Settlement Agreement should be granted is to determine whether a class can be certified." *Schlieser v. Sunrise Senior Living Mgmt. Inc., et. al.*, No. LA CV19-00443 JAK (PLAx), 2021 WL 6752320, at *7 (C.D. Cal. July 6, 2021). Here, on September 29, 2021, the Court granted class certification pursuant to Rules 23(a) and 23(b)(3). ECF No. 167 (the "Class Certification Order"). The Court certified four classes on Plaintiffs' claims on their Meal and Rest Period Claims as well as the derivative claims for Waiting Time Penalties and UCL Violations. Class Certification Order at 14-15. The Class Certification Order generally defined the classes as "All individuals currently or formerly employed by SkyWest Airlines, Inc., and SkyWest, Inc. as Frontline Employees who worked on the ground

and were paid on an hourly basis for at least one shift in the State of California at any time from February 27, 2013, through October 18, 2020 who . . ." followed by a description of the claims. *Id.* The Court did not certify Plaintiffs' Grace Period Claim. *Id.* at 5-8. For settlement purposes only, the Parties have agreed to a Class Definition of

> All persons employed by Defendants based in California as non-exempt Frontline Employees at any time from February 27, 2013, through the date of the Court's order preliminarily approving this Settlement.

SA ¶ 13(e).[2] Accordingly, there are two minor modifications to the previously certified classes. *First*, the Settlement Class Definition includes some additional workers and work periods since October 19, 2020, through the date of preliminary approval. *Second*, the Settlement Class Definition is not claim specific, but rather is intended to encompass all of the alleged violations in the Complaint. These slight modifications are common in class action settlements.

It is well settled that the Court can amend or alter the class definition at any time before a decision on the merits. Fed. R. Civ. P. 23(c)(1)(C); *Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d 713, 721 (9th Cir. 1999) (citing Rule 23(c)(1), giving court "explicit permission to alter or amend a certification order before [a] decision on the merits"). Here, the requested modification should be granted because it is appropriate to include employees who have worked since the end date of the previous class period up through preliminary approval but that were exposed to the same or similar practices as Plaintiffs and the certified Classes. Similarly, because the Parties could have challenged this Court's class certification and summary judgment rulings on appeal, all the claims in the case are now subjected to a global release that will resolve all of the litigation without the need for such appeals. SA ¶ 20.

While the slightly modified Settlement Class Definition must satisfy Rule 23 requirements, *Astiana v. Kashi Co.*, 295 F.R.D. 490, 492 (S.D. Cal. 2013), those requirements are easily met here because the parties essentially seek only to add more people who were likely exposed to the same

---

[2] Excluded from the Settlement Class are: (1) Counsel for the Parties and the Judges presiding over the Action and members of their families; (2) the Defendants and their subsidiaries, parent companies, successors, predecessors, and their current or former officers and directors; (3) Settlement Class Members who properly execute and submit an Opt-Out Form prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded persons. SA ¶ 13(e).

policies and practices and who have the same claims as Plaintiffs and the previously certified Classes.  Thus, the Court's prior analyses as to the Rule 23(a) requirements have not changed and need not be repeated here.  *See* Class Certification Order.  The Court did not rule on Plaintiffs' certification motion with respect to Plaintiffs' Shift Trade Overtime and SFO Minimum Wage Claims because SkyWest filed a summary judgment motion on those claims (which was granted) but SkyWest never opposed their certification because the policies were undoubtedly common and because payroll data would permit calculations of any alleged underpayments without the need for individual inquiries.

While the Court did find that Plaintiffs' Grace Period Claim had commonality and predominance problems in terms of the proof that would be necessary to prevail at trial that work was performed during the grace period, such inquiries are no longer necessary in the context of a negotiated settlement.  3 Rubenstein, *Newberg on Class Actions* § 7:35 (5th ed.) (Courts "will certify settlement classes although they had previously denied certification of the same class for litigation purposes."); *Myers v. MedQuist, Inc.*, No. 05–4608 (JBS), 2009 WL 900787, at *10 (D.N.J. Mar. 31, 2009) (acknowledging that the court did not need to consider management problems when certifying settlement class).  In fact, prior denial of certification "does not foreclose certification of a nationwide *settlement* class."  *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR (DMR), 2020 WL 7264559 at * 10 (N.D. Cal. Dec. 10, 2020) (original emphasis).  That is because "individualized questions and conflicts do fade away when the parties agree to settle."  *Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282-KJM-AC, 2020 WL 6392576, at *5 (E.D. Cal. Nov. 2, 2020).

Finally, predominance under Rule 23(b)(3) holds true with the proposed Settlement Class. Plaintiffs' claims continue to be based on the same facts and the same legal and remedial theories as the claims of the Settlement Class because they are all based on SkyWest's alleged violations of California labor laws.  And, the superiority requirement of Rule 23(b)(3) remains satisfied because the ultimate recovery by Settlement Class Members would be dwarfed by the cost of litigating on an individual basis, and any Settlement Class Member who wishes to opt out may do so pursuant to the proposed Notice plan.  *See Spann v. JC Penney Corp.*, 314 F.R.D. 312, 323 (C.D. Cal. 2016)

(noting that, "in the context of settlement, the other requirements of Rule 23(b)(3) . . . are rendered moot and are irrelevant" (internal quotations and citations omitted)).  In sum, because the Court's prior Rule 23 analysis applies with equal force to the Settlement Class, the Class Definition should be modestly modified as requested.

### B.        The Proposed Settlement Should Be Preliminarily Approved

Approval of class action settlements involves a two-step process. First, the Court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009).  "In the second step, which occurs after preliminary approval, notification to class members, and the compilation of information as to any objections by class members, a court determines whether final approval of the settlement should be granted." *Sunrise Senior Living Mgmt. Inc.,* 2021 WL 6752320, at *11. "Although '[c]loser scrutiny is reserved for the final approval hearing[,]' the showing at the preliminary approval stage—given the amount of time, money, and resources involved in, for example, sending out new class notices—should be good enough for final approval." *Spann*, 314 F.R.D. at 319 (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011) (modifications in original)).

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Sarkisov v. StoneMor Partners L.P.*, No. 13-CV-04834-JD, 2015 WL 1249169, at *2 (N.D. Cal. Mar. 18, 2015) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992)); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

At this stage, "the Court will give preliminary approval of a class settlement and notice only when '[1] the proposed settlement appears to be the product of a serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval

...'" *Cancilla v. Ecolab, Inc*, No. 12-CV-03001-JD, 2015 WL 4760318, at *3 (N.D. Cal. Aug. 12, 2015) (quoting *Stokes v. Interline Brands, Inc.,* No. 12–CV–05527–JD, 2014 WL 5826335, at *3 (N.D.Cal. Nov. 10, 2014)).   The Court does not need to "specifically weigh[] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).   Instead, the Court must only evaluate whether the Settlement is "the product of an arms-length, non-collusive, negotiated resolution[]." *Id.*

The 2018 revisions to Rule 23 confirm the need for a detailed analysis regarding the fairness of a proposed class settlement.   "The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).   Accordingly, a district court may approve a settlement agreement "after a hearing and only on finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2).   In making this decision, Rule 23(e)(2) clarifies that district courts must consider whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

   (i)     the costs, risks, and delay of trial and appeal;

   (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).   As demonstrated below, the proposed Settlement is a fair and just result. Given the complexity of this litigation, the potential difficulty of proving certain elements of the Class's claims at trial, and the continued risks of maintaining class certification through to trial, the Settlement represents a favorable resolution of this Action and eliminates the risk that the Class might otherwise recover nothing.

1. **The Proposed Settlement Was Facilitated by a Retired Federal Judge, Was Vigorously Negotiated, and Is Supported by Experienced Counsel**

After an unsuccessful settlement conference with the Hon. Magistrate LaPorte in June 2018, the Parties continued to take discovery and obtain key rulings from the Court on dispositive issues that helped inform future settlement negotiations.  After multiple teleconferences with the Hon. Magistrate Hixson, the Parties eventually agreed to mediation with Judge Guilford (Ret.) in November 2020.  Prior to that mediation the Parties had exchanged discovery, the Plaintiffs had sat for depositions, and Plaintiffs' expert had analyzed payroll data to ascertain potential damages. When the matter did not settle, the Parties completed fact discovery and filed class certification and summary judgment motions that were ruled on in August and September 2021.  The Parties agreed to return to Judge Guilford for a second mediation in November 2021 while completing expert reports and discovery and beginning trial preparations.  While the matter did not settle at the mediation, the Parties continued negotiations with Judge Guilford and then with each other directly to determine the terms of the Settlement, that were originally reduced to an MOU and then into the Settlement Agreement.

All negotiations were conducted at arms' length by counsel experienced in complex, class action litigation and the Settlement was only reached after the close of fact and expert discovery and after key motions were ruled on.  Here, Class Counsel have vetted all of the claims and risks and unreservedly support the Settlement.  Joint Decl., ¶ 31.  Courts recognize that the opinion of experienced counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight.  *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Spann*, 314 F.R.D. at 324 (same).  Accordingly, the experienced views of Class Counsel and lengthy, vigorous negotiations with a retired Federal judge on a full factual record weigh heavily in favor of finding that negotiations were well-informed, non-collusive and therefore this factor warrants approval of the Settlement.

**2.      The Stage of the Proceedings and the Discovery Completed**

The stage of the proceedings and discovery completed are additional factors supporting the Settlement.  Under these factors, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *14, at *758-59 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007).  Here, the Settlement was only reached after fact and expert discovery were *completed*, and a number of important pre-trial rulings had been made.  With a trial date approaching, there was no further investigation to do.  Accordingly, the advanced stage of the litigation supports preliminary approval.

**3.      The Risks of Continued Litigation**

Based upon the procedural posture of the case and pre-trial preparations, Plaintiffs and Class Counsel concluded that the terms and conditions of this Settlement are fair, reasonable, and adequate to the Class and in their best interests given the risks of continued litigation.  To begin, the case had already been pending for almost five years and trial was fast approaching when the Settlement was reached.  All of the pertinent facts, discovery, and documents had been vetted by the time the Settlement was reached, and the Court had issued a number of important pre-trial rulings.  With all of that information in mind, the Settlement is appropriate because it guarantees a substantial monetary recovery now without the risks of trial and potential appeals.  And, not only did Plaintiffs risk losing some or all of their claims at trial, SkyWest had indicated its intent to file a motion for decertification imminently, and the Parties have cross-moved to exclude each other's experts and were preparing motions *in limine* that could impact the evidence available at trial.  Joint Decl., ¶ 28.  SkyWest has defeated prior cases making similar allegations on behalf of Frontline Employees.

In addition to these risks, this case is one of many wage and hour class actions against the airline industry that have been heavily litigated but have rarely settled for meaningful class-wide relief. SkyWest had maintained throughout the litigation that California's wage and hour laws were preempted by the Airline Deregulation Act, 49 U.S.C. § 1301 *et seq*., an issue that is still making its way through the appellate Courts. Indeed, on November 15, 2021, while the Parties were in the midst of settlement negotiations, the Supreme Court issued a call for the view of the Solicitor General in a case involving California airline workers that was pending a cert petition. *See Virgin America, Inc., et al., v. Bernstein, et al*., U.S. Supreme Court No. 21-260. Joint Decl., ¶ 29. Should the Supreme Court eventually take up the matter after getting the solicitor general's view (and a call for that view statistically increases that chance), it could have had many potential outcomes, along with uncertainty and delay. *Id*. Moreover, the airline industry as a whole has banded forces in filing amicus curiae briefs to get adverse Ninth Circuit and District Court opinions reversed via the *Virgin America* case—making the Settlement here a notable achievement in light of the pending appellate issues and industry stance to defend these cases to the teeth. *Id*.

Thus, while Plaintiffs believe that the claims have merit and have had some success at the certification stage, Plaintiffs concluded that a risk existed that the proposed Settlement Class could recover less than the Settlement, or nothing at all, if the Action continued. The assessment of these very real risks against the proposed Settlement weigh in favor of preliminary approval.

### 4.   The Proposed Settlement Provides a Favorable Recovery for the Settlement Class and Falls Within a Range of Possible Approval

In evaluating the Settlement, it is of course relevant to consider what Settlement Class Members will actually recover. As stated by this Court, the primary consideration in evaluating a class settlement agreement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *StoneMor Partners*, 2015 WL 1249169, at *3 (citing *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)).

Here, the Class Settlement Amount of $4.195 million is substantial by any measure and certainly falls within a range of possible approval. With Plaintiffs' Motion for Class Certification,

they submitted an expert report with an analysis of proposed damages that put the total potential recovery at $21.425 million (of which $5.459 million was interest). ECF No. 171 at 2. Thus, a $4.195 million recovery would be a 20% recovery of total potential damages (including interest). However, a number of factors make the actual recovery much higher.[3] Joint Decl., ¶ 13.

At the time of settlement, SkyWest had already obtained summary judgment on the Shift-Trade Overtime claim valued at $3.75 million and the SFO Minimum Wage Claim that was valued at $1.311 million. Further, the Court did not certify the unpaid Grace Period Claim valued at $870,000 in potential damages. Taking those claims out of the equation reduces the potential recovery to $15.494 million, making a $4.195 million Settlement a 27% recovery. In fact, Plaintiffs' revised damages report issued after those rulings placed Plaintiffs' highest potential damages at $16.912 million. ECF No. 178-4 at 2. Joint Decl., ¶ 14. However, there are further reasons why a $15-16 million recovery may not have been feasible at trial.

*First*, SkyWest contended that the Waiting Time Penalties that Plaintiffs valued at $4.237 million under Labor Code § 203 were not recoverable at all when the underlying claims for meal and rest period penalties were the sole remaining claims, relying on an appellate case, *Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444 (2019), which is under review by the California Supreme Court. *Naranjo v. Spectrum Sec. Servs., Inc.*, 257 Cal. Rptr. 3d 188 (2020). Without the Waiting Time Penalties, Plaintiffs' potential recovery would be $11.257 million, making a $4.195 million Settlement closer to 37% recovery. Joint Decl., ¶ 15.

*Second*, Plaintiffs' damages report valued the Rest Period Claim at a 100% violation rate, although at trial the violation rate was likely to be established between a 25-50% violation rate, thereby reducing the $8.087 million valuation of that claim closer to $2.021-$4.042 million. Joint Decl., ¶ 16.

*Third*, SkyWest's expert, Dr. Ali Saad, opposed aspects of Plaintiffs' meal and rest period damages analysis based on alleged waivers, payroll data notations, and other flight data that

---

[3] The PAGA claim was not subject to class certification requirements. Moreover, as Defendants argued that the PAGA claim was barred by the statute of limitations, Plaintiffs' expert conservatively excluded a calculation of PAGA penalties.

1    SkyWest contended greatly reduced the potential recovery by as much as $1.990 million.  ECF No.

2    179-5 at 22.  Joint Decl., ¶ 17.

3        Thus, if Plaintiffs did not obtain Waiting Time Penalties, SkyWest's various challenges to

4    calculations of the Meal and Rest Period Claims could reduce that recovery by roughly $2-6 million

5    more, rendering a range of outcomes at trial between $5-9 million—making a $4.195 million

6    settlement eminently reasonable.  Joint Decl., ¶ 18.

7        The amount offered in the Settlement is also reasonable when considering the size of the

8    class and the outcomes for individuals. With approximately 1,800 Settlement Class Members, a

9    $4.195 recovery is $2,300 per person before deductions for attorneys' fees and costs, and roughly

10   $1,400 per person based on the estimated amounts for those deductions. With Class Members who

11   made roughly $14 per hour during the Class Period, $2,300 is roughly 150 hours of work—or nearly

12   4 weeks of full-time work (with a $1,400 per person recovery roughly equivalent to 100 hours of

13   full-time work).  This is a significant amount of money for the Settlement Class Members.  The

14   Court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a

15   reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State*

16   *Farm. Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr.

17   22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

18       The Settlement also guarantees an immediate recovery of an amount much greater than the

19   theoretical recovery a Class Member could have recovered had Plaintiffs prevailed at trial.  And,

20   the Court's reliance on these figures must be tempered by the additional costs and delay of trial

21   coupled with the risk that Plaintiffs could prove liability yet still recover nothing. *See, e.g.*, *Schaffer*

22   *v. Litton Loan Serv., LP.*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal.

23   Nov. 13, 2012) ("Estimates of what constitutes a fair settlement figure are tempered by factors such

24   as losing at trial, the expense of litigating the case, and the expected delay in recovery (often

25   measured in years).").

26       Furthermore, similar settlements in the Northern District in wage and hour class actions

27   illustrate that the Settlement is fair and reasonable, and within the range of possible approval:

28

| Case | Claims | Gross Settlement | Class Size (Approx.) | Average Payout |
|------|--------|------------------|----------------------|----------------|
| *Flores v. Alameda Cty. Indus. Inc*, No. 14-CV-03011-JD, 2015 WL 7180607 (N.D. Cal. Nov. 16, 2015) | Class action alleging claims for unpaid overtime and forfeited paid-time off | $1,100,000 | 408 | $2,005 |
| *Ortiz v. Genco, Inc.*, No. 4:16-CV-04601-YGR, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019) | Class action alleging numerous wage and hour claims (failure to provide meal periods, pay hourly wages, timely pay all final wages, unfair competition) and Fair Credit Reporting Act claims | $3,150,000, (with $1,070,000 allocated for the wage/hour claims) | 900 | $1,188 |
| *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) | Class action alleging claims for meal and rest period violations | $1,000,000 | 1,315 | $503 |
| *Rodriguez v. Nike Retail Servs., Inc.*, No. 14-CV-01508-BLF, 2022 WL 254349 (N.D. Cal. Jan. 27, 2022) | Class action alleging claims for unpaid wages and overtime for security inspections | $8,250,000 | 16,635 | $320 |

As discussed above, the amount offered in the Settlement, both in the aggregate and per individual, militates toward Settlement and the Court should find that the Settlement is fair and reasonable, and within the range of possible approval.

**5.      The Proposed Settlement Allocates the Settlement Fund Fairly and Does Not Unjustly Favor Any Class Members**

The plan to allocate the Settlement funds also warrants preliminary approval as it establishes the manner in which each participating Class Member will receive compensation.  Importantly, no Class Member will have to file a claim to receive their payments and they will be computed using the method described in the Settlement and issued a check.  SA ¶ 16.  Simply put, all of the Class Members' hours worked during the Class Period will be totaled and divided by the Net Settlement Fund, giving them a pro rata share of the Settlement relative to how much they worked as a portion

of the total hours worked by the entire Class.  *Id.*  Thus, the Class Members who worked the most hours will receive the greater share of the Net Settlement Fund as opposed to Class Members who worked fewer hours.  Joint Decl., ¶ 19.  This allocation method also accounts for the fact that Class Members who worked the greatest number of hours will have likely experienced the greatest number of violations alleged in the Complaint and is supported by the various damages analyses Plaintiffs' expert performed during the litigation.  *Id.*  This method is also preferable to the use of total workweeks commonly approved in wage and hour litigation because that method could overcompensate Class Members who had longer tenures but that worked at small airports where shifts were only a few hours a day in which they were not entitled to as many breaks and did not work overtime.  *Id.*  Additionally, the proposed Class Notice will identify the number of work hours worked by the Class Member and their estimated payout before taxes, thereby providing greater transparency and information for Class Members to determine what their share of the Settlement will look like.  SA ¶ 26, Ex. A (Proposed Notice).  Joint Decl., ¶ 19.

Plaintiffs have also allocated a modest $15,000 payment for PAGA penalties, of which 75% ($11,250) will go to the state of California and the remaining 25% ($3,750) will be distributed to the Class Members.  Plaintiffs are allocating a modest $15,000 payment for PAGA, which is warranted because SkyWest raised a viable argument that the Plaintiffs' PAGA claims were time-barred because each named Plaintiff had left employment with SkyWest more than a year before seeking to exhaust administrative penalties under PAGA.  *Brown v. Ralphs Grocery Co.*, 239 Cal. Rptr. 3d 519, 530 (Cal. App. 2d Dist. 2018) ("The statute of limitations for PAGA claims is one year."); Cal. Code of Civ. Proc. § 340(a). This modest amount for a release of the PAGA claim from the Settlement Class is appropriate relative to PAGA payments in other cases.  *Chu v. Wells Fargo Investments, LLC*, No. C 05–4526 MHP, 2011 WL 672645, at *1 (N.D. Cal., Feb. 16, 2011) (approving PAGA payment of $7,500 to LWDA out of $6.9 million common fund); *Lazarin v. Pro Unlimited, Inc.*, No. C11–03609 HRL, 2013 WL 3541217, at *10 (N.D. Cal., July 11, 2013) (approving PAGA payment of $7,500 to LWDA out of $1.25 million common fund settlement); *Hicks v. Toys 'R' Us–Delaware, Inc.*, No. CV13–1302–DSF (JCGx), 2014 WL 4703915, at *1

1  (C.D. Cal. Sept. 2, 2014) (approving $5,000 PAGA payment in a case involving $4 million

2  settlement).

3        Accordingly, the straightforward plan of allocation will appropriately compensate Class

4  Members relative to the time they worked for SkyWest and it does not create any potential sub-

5  classes, tiers or structures that would favor various Class Members over the others.

6        **C.**    **The Proposed Cy Pres Recipient Is Appropriate**

7        The Settlement Agreement authorizes unclaimed funds to be donated to a *cy pres* recipient.

8  SA ¶ 16(f).  Ultimately, because all participating Settlement Class Members will be getting a

9  payment automatically, Plaintiffs only expect a very small residual amount of funds (and perhaps

10 not any) if some Settlement Class Members cannot be found or choose not to cash their checks in

11 the 180 days.  For this matter, any limited *cy pres* funds will be donated to the Spirit of SkyWest

12 ("SOS") charity, which is a tax-exempt Section 501(c)(3) charitable organization that benefits the

13 families of SkyWest employees in times of hardship.  Tate Decl., ¶ 2.  Specifically, SOS has a

14 "Crisis Fund" that would benefit the very class at issue here.  Specifically, The SOS Crisis Fund is

15 a non-profit, charitable organization that exists solely to help SkyWest people who are facing a

16 severe hardship.  Grants are available for employees, eligible retirees and their dependents up to 23

17 years old who are facing an unforeseen and unavoidable crisis and do not have any other resources

18 available to assist them. Tate Decl., ¶ 3.  This may include natural or man-made disasters, criminal

19 acts, and other unforeseen crises that render them unable to recover without assistance. Awards are

20 granted fairly and consistently based on eligibility and need, without bias and distinctly separate

21 from employment status. Tate Decl., ¶ 4.   While SOS also provides educational scholarships to

22 SkyWest employees and family members, any unclaimed funds will be exclusively earmarked for

23 the Crisis Fund.  Tate Decl., ¶ 9.

24       *Cy pres* recipients must be "tethered to the nature of the lawsuit and the interest of the silent

25 class members."  *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011).  This requires "a

26 driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co.*, 697

27 F.3d 858, 865 (9th Cir. 2012).  In ruling on a *cy pres,* courts are instructed to "(1) address the

28 objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty

that any member will be benefitted." *Nachshin*, 663 F.3d at 1040.  Further, the Court must consider whether the *cy pres* distribution is appropriate given the "size and geographic diversity" of the class members.  *Id.* at 1040–41.  The SOS charity easily meets each of these criteria.  First, the California Labor Code statutes at issue seek to protect the wages of low-income workers, who need to be guaranteed a fair and minimum wage for all work performed.  Here, Plaintiffs presented evidence at the class certification stage that the putative class were experiencing financial hardship as a result of long commutes, physically demanding labor, low hours and low wages.  The SOS charity directly benefits employees with financial hardships, based on need and an application process.  Thus, it is reasonably certain that any funds left over will be used to benefit workers such as the Class Members whose income is or was insufficient to meet the needs of unforeseen Crisis or hardship circumstances.  If the Court does not approve the SOS charity as the *cy pres* recipient at the preliminary approval stage, the Parties will mutually agree on substitute organization which will be presented for the Court's consideration.

### D.        The Proposed Incentive Awards Are Reasonable

The Settlement Agreement authorizes Incentive Awards for the three named Plaintiffs in an amount of $5,000 each.  SA ¶ 15(a).  "Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving $5,000 incentive awards for each of nine class representatives as reasonable where litigation was "complicated" and "took up quite a bit of the class representatives' time").  "Incentive awards typically range from $2,000 to $10,000." *Tractor Supply*, 306 F.R.D. at 267 (collecting cases).  Per Northern District Settlement Guidelines, Plaintiffs will file all supporting information regarding their Incentive Awards at the time of final approval, but preliminarily point out that they have remained committed to this litigation for many years, have each sat for one or more depositions (that included significant travel for some of them), have been a conduit for questions with other Settlement Class Members throughout the case, and greatly assisted Class Counsel in getting information and statements from Class Members that supported Class Certification.  Joint Decl., ¶ 25.  By filing suit against a former employer, each Plaintiff has also incurred reputational risk associated with this lawsuit.  And, each Plaintiff is executing a

Personal Release against the Defendants that is broader than that for the Settlement Class Members that will preclude Plaintiffs from participating in or recovering from other potential actions.  SA ¶ 21.  Accordingly, the $5,000 Incentive Awards warrant preliminary approval subject to further substantiation and evaluation at final approval.  Should the Court award less than those amounts, those funds will be paid to the Settlement Class Members, and it will not otherwise impact the Settlement.  SA ¶ 15(a).

### E.   The Intended Request for Attorneys' Fees and Expenses

Per the Settlement, Class Counsel may seek up to 33% of the common fund in attorneys' fees, or no more than $1,384,350.  SA ¶ 15(b).  Class Counsel may also seek up to $180,000 in litigation expenses for items such as expert witness fees, deposition costs, travel, and legal research.  *Id.*  Class Counsel may ultimately seek less than these amounts and the Court may award less than these amounts, and any amount not awarded will go to the Settlement Class Members.   SA ¶ 15(b)(1).  Although the Ninth Circuit benchmark for attorneys' fees in a common fund settlement is 25%, that amount may be increased based on the circumstances of the case.  "The percentage can range, however, and Courts have awarded more than 25% of the fund as attorneys' fees when they have deemed a higher award to be reasonable."  *Hightower v. JPMorgan Chase Bank, N.A.*, CV111802PSGPLAX, 2015 WL 9664959, at *10 (C.D. Cal. Aug. 4, 2015); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, at *7-9 (N.D. Cal. May 19, 2016); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, 2018 WL 3064391 (N.D. Cal. May 16, 2018); *Rai v Santa Clara Valley Transp. Auth.*, 5:12-CV-04344-PSG, 2016 WL 9114007, at *3 (N.D. Cal May 17, 2016); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding 33% in wage/hour class action).

While the Court will evaluate the propriety and amount of attorneys' fees at final approval once that motion is filed, Class Counsel have expended a tremendous amount of resources on this case over the past five years, fighting numerous dispositive motions, fully litigating class certification, working with experts, communicating with dozens of class members, reviewing documents and taking depositions (including travel), multiple full day settlement conferences, and

beginning trial preparations.  Joint Decl., ¶ 22.  Indeed, to date Class Counsel have incurred approximately $3.1 million in attorneys' fees to date throughout this litigation:

| FIRM | LODESTAR TO DATE |
|---|---|
| Milberg Coleman Bryson Philips Grossman | $1,800,000+ |
| Simmons Hanly Conroy | $425,000+ |
| Kaplan Fox & Kilsheimer | $875,000+ |
| **TOTAL** | $3,100,000 |

Joint Decl., ¶ 22.  These amounts are preliminary lodestar figures and will be further supported with Plaintiffs' motion for attorneys' fees and costs.  *Id.*, ¶ 23.  Class Counsel's lodestar will also undoubtedly increase as time is spent implementing the Settlement, working with and communication with Class Members and the Claims Administrator, and obtaining final approval. *Id.*

To date, Class Counsel have paid out over $145,000 in expenses for items such as expert witness fees, depositions, travel, and legal research, and have approximately $12,500 in outstanding invoices from experts and deposition vendors.  Joint Decl., ¶ 24.  As additional costs may be invoiced that are incurred prior to final approval, the Settlement provides for expense reimbursement to Class Counsel up to $180,000, although they will finalize all expenses prior to final approval.  SA ¶ 15(b).  Any amounts that are not approved for attorneys' fees or costs will be distributed to Settlement Class Members.  SA ¶ 15(b)(1).

**F.     The Proposed Notice to the Class Is Adequate**

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *See also* Rule 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement].").   Additionally, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Parties have agreed on the proposed form of Class Notice and Opt-Out form attached as Exhibit A to the Settlement Agreement.  The Class Notice largely contains the same information in the previously approved class certification notice, ECF Nos. 173, 177, modified as appropriate to the Settlement and in accordance with the Northern District's Guidelines.  Among other things, the Class Notice: (a) informs Settlement Class Members about the nature of the case, their rights to stay in and receive payment or alternatively, to Opt-Out; (b) their rights to comment, support, or object to the Settlement; and (3) the deadlines to take these actions.

Importantly, the Class Notice will be individualized so that the Settlement Class Member sees the amount of eligible work hours that will be used to calculate their Settlement Award and the estimated amount of their Settlement Awards after proposed payments for attorneys' fees and costs but *before* taxes.  *See*, SA, Ex. A at FAQ #8 ("How much will my settlement share be?"). The Class Notice provides the contact information for the Claims Administrator and Class Counsel to answer questions about the Settlement, and the Claims Administrator will establish a website with a copy of the Class Notice and Opt-Out Forms and other important case-related documents including the yet-to-be filed motion for attorneys' fees and costs.  SA, Ex. A.  Due to SkyWest's desire to avoid publicity of the Settlement, the website will be password protected and the password will be printed on the Class Notice.  SA ¶ 26(b).  Notices will be issued by U.S. Mail, supplemented by email for those Class Members that SkyWest has an email address for.  SA ¶ 26(a).  The Claims Administrator will also run the class list through the appropriate change of address databases and engage in skip-tracing efforts should any notices be undeliverable.  SA ¶26(a), (g).

Accordingly, in granting preliminary approval of the Settlement, Plaintiffs similarly request that the Court approve the proposed form and method of giving notice to the Class.

### G.    The Proposed Claims Administrator

In connection with this Motion, Plaintiffs also request that the Court authorize the retention of CPT Group as the Claims Administrator for the Settlement.  CPT Group was previously selected by Class Counsel and approved by this Court to issue the class certification notice (although that notice did not go out due to the Settlement).  ECF Nos. 177, 182.  CPT Group was selected to issue the class certification notice after a competitive bid process where they substantially underbid

1   another widely used notice administrator and Class Counsel have not recently used CPT Group in

2   the past two years. Joint Decl., ¶ 26. CPT Group has issued a bid that caps Claims Administration

3   Fees at $19,000 (although sometimes unexpected costs do arise). *Id.* The Settlement provides for

4   payment of CPT Group's fees out of the common fund which will be crystallized at final approval.

5   SA ¶ 15(c).

6   ## V.   PROPOSED SCHEDULE OF EVENTS AND FINAL APPROVAL PROCEEDINGS

7           In connection with preliminary approval of the Settlement, the Court must also set dates for

8   certain events. The parties suggest a schedule based on the following intervals:

| Event | Proposed Time for Compliance |
|---|---|
| SkyWest to Produce Class List and Hours of Work Data | 20 days after preliminary approval |
| Claims Administrator to Issue Class Notice and Opt-Out Forms | 38 days after preliminary approval |
| Objection/Opt-Out Deadline | 45 days after issuance of Class Notice |
| Claims Administrator to Issue Opt-Out Report | 10 days after Objection/Opt-Out Deadline |
| Motion for Attorneys' Fees and Costs Due | 35 days before Objection/Opt-Out Deadline |
| Motion for Final Approval Due | 35 days before final approval hearing |
| Final Approval Hearing | At least 90 days after preliminary approval |
| Effective Date | 10 days after earlier of final approval or resolution of appeals |
| Deposit Date (SkyWest to fund the settlement) | 20 days after the Effective Date |
| Payment of Attorneys' Fees and Costs and Claims Administrator Costs | 10 days after Deposit Date |
| Claims Administrator to Distribute Settlement Awards | 14 days after Deposit Date |
| Settlement Award void/stale date | 180 days after distribution of Settlement Awards |
| Disbursement of *cy pres* awards | 10 days after Settlement Award void/stale date |
| Post-Distribution Report to be filed with Court | 21 days after void/stale date of Settlement Awards |

23  ## VI.   CONCLUSION

24          For the reasons discussed herein, Plaintiffs respectfully request the Court grant preliminary

25  approval of the proposed Settlement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED:  March 14, 2022

By:   /s/ *Matthew B. George*
        Matthew B. George

Laurence D. King
Matthew B. George
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:   415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

**SIMMONS HANLY CONROY LLC**
Thien An V. Truong
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
atruong@simmonsfirm.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gregory F. Coleman
First Horizon Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
gcoleman@milberg.com

*Counsel for Plaintiffs and the Classes*

Case No. 3:17-cv-01012-JD
NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT