1

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)

2
Matthew B. George (SBN 239322)

3
1999 Harrison Street, Suite 1560
Oakland, CA 94612

4
Telephone: (415) 772-4700
Facsimile: (415) 772-4707

5
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

6

7
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

8
Gregory F. Coleman (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)

9
Mitchell Breit (*pro hac vice*)
800 S. Gay Street, Suite 1100

10
Knoxville, TN 37929
Telephone: 865-247-0080

11
Facsimile: 865-522-0049
*gcoleman@milberg.com*

12
*msilvey@milberg.com*
*mbreit@milberg.com*

13

14
*Class Counsel*

15

**SIMMONS HANLY CONROY LLC**
Thien An Vinh Truong (*pro hac vice*)
112 Madison Avenue
7th Floor
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
*atruong@simmonsfirm.com*

16

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

17

18

19
CODY MEEK, *et al.*

20
                    Plaintiffs,

21
v.

22

23
SKYWEST, INC. and SKYWEST
AIRLINES, INC.,

24
                    Defendants.

25

26

27

28

Case No. 3:17-cv-01012-JD

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT; AND
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. James Donato
Date: February 23, 2023
Time: 10:00 a.m.
Courtroom: 11

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 23, 2023 at 10:00 a.m., or other date and time at the Court's convenience, before the Honorable James Donato, United States District Judge for the Northern District of California, at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, CA 94102, Plaintiffs Cody Meek, Coryell Ross, and Jeremy Barnes ("Plaintiffs") will and hereby do move pursuant to Fed. R. Civ. P. 23(e), for an order: (i) granting final approval to the class action settlement in this case and (ii) certifying the Settlement Class.

As set forth herein, the proposed $4.195 million, non-reversionary settlement on Plaintiffs' claims alleging violations of California wage and hour laws on behalf of a class of airline ground services workers is fair, reasonable, and adequate. Notice regarding the Settlement has been issued to the Class via U.S. mail, email, and text message. To date, no objections to the Settlement have been received and only eight (8) Settlement Class Members have elected to Opt-Out. This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities set forth below, the accompanying Joint Declaration of Mitchell Breit, Thien An V. Truong, and Matthew B. George, and the exhibits thereto, the Declaration of Laura Singh, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should grant final approval to the class action settlement in this case and certify the Settlement Class.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

III.  SUMMARY OF THE SETTLEMENT ........................................................ 2

    A.    Benefits of the Settlement ................................................................ 2

    B.    Notice and Class Member Payments ................................................. 4

IV.   ARGUMENT ................................................................................................. 5

    A.    The Court Should Certify the Settlement Class ................................. 5

    B.    The Settlement is Fair, Adequate, and Reasonable ........................... 5

        1.    The Settlement is Entitled to a Presumption of Reasonableness ............... 7

        2.    The Strength of Plaintiffs' Case ..................................................... 8

        3.    The Risks of Continued Litigation ................................................. 9

        4.    Risk of Maintaining Class Action Status Through Trial ........................... 9

        5.    The Amount Offered in Settlement Supports Approval ......................... 10

        6.    The Stage of the Proceedings and the Discovery Completed .................. 11

        7.    The Experience and Views of Counsel ........................................... 12

        8.    The Class Was Well Represented .................................................. 12

        9.    No Government Participant Is Present ............................................ 12

        10.   Class Member Response Has Been Entirely Positive ........................... 12

        11.   The Request for Attorneys' Fees, Expenses, and Incentive Awards Is Fair and Reasonable ................................................................. 13

        12.   The Proposed Cy Pres Recipient is Appropriate ................................ 13

    C.    The Settlement Class Members Received the Best Notice Practicable ............... 14

V.    CONCLUSION ............................................................................................. 16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arnold v. DMG Mori USA, Inc.*,
No. 18-CV-02373-JD, 2022 WL 18027883 (N.D. Cal. Dec. 30, 2022) ........................... 5, 6, 15

*Ayala v. Coach, Inc.*,
No. 14-CV-02031-JD, 2016 WL 9047148 (N.D. Cal. Oct. 17, 2016) ...................................... 16

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................................... 10, 11

*Cancilla v. Ecolab, Inc.*,
No. 12-cv-03001-JD, 2016 WL 54113 (N.D. Cal. Jan. 5, 2016) ............................................ 16

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996) ................................................................................................... 7

*Criswell v. Boudreaux*,
No. 120-CV-01048-DAD-SAB, 2021 WL 5811887 (E.D. Cal. Dec. 7, 2021) ......................... 5

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
No. C 06–3903 THE, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ...................................... 10

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) .................................................................................................. 14

*Flores v. Alameda Cty. Indus. Inc*,
No. 14-CV-03011-JD, 2015 WL 7180607 (N.D. Cal. Nov. 16, 2015) ............................... 10, 16

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................... 8

*Gill v. 314e Corp.*,
No. 3:17-cv-01062-JD (N.D. Cal. Mar. 9, 2018) ................................................................... 16

*Huntsman v. Southwest Airlines, Co.*,
No. 3:17-cv-03972-JD, 2018 WL 11371114 (N.D. Cal. Dec. 5, 2018) .................................. 16

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................................. 11

*In re Omnivision Techs, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................. 12, 13

*In re Online DVD- Rental Antitrust Litig.*,
779 F.3d 934, 945–46 (9th Cir. 2015) .................................................................................... 16

**TABLE OF AUTHORITIES**
(cont.)

Page

*In re Portal Software Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)........................................ 11

*Musgrove v. Jackson Nurse Prof'ls, LLC*,
No. CV 17-6565 FMO (SSx), 2022 WL 2092656 (C.D. Cal. Jan. 11, 2022).............................. 5

*Nachshin v. AOL, LLC*,
663 F.3d 1034 (9th Cir. 2011)................................................................................................. 14

*Norcia v. Samsung Telecommunications Am., LLC*,
No. 14-CV-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021) ................................. 5, 15

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)................................................................................................ 8, 10

*Ortiz v. Genco, Inc.*,
No. 4:16-CV-04601-YGR, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019) .............................. 10

*Rodriguez v. Nike Retail Servs., Inc.*,
No. 14-CV-01508-BLF, 2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ...................................... 11

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009).......................................................................................... 7, 8, 9, 10, 12

*Ross v. Trex Co., Inc.*,
No. 09–cv–00670–JSW, 2013 WL 6622919 (N.D. Cal. Dec. 16, 2013).................................... 7

*Sarkisov v. StoneMor Partners L.P.*,
No. 13-CV-04834-JD, 2015 WL 1249169 (N.D. Cal. Mar. 18, 2015)...................................... 10

*Schaffer v. Litton Loan Serv., LP.*,
No. CV 05-07673 MMM (JCx), 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ................... 11

*Tadepalli v. Uber Techs., Inc.*,
No. 15-CV-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016) ................................... 13

*Wilson v. Airborne, Inc.*,
No. EDCV 07-770-VAP (OPx), 2008 WL 3854963 (C.D. Cal., Aug. 13, 2008)...................... 16

*Young v. Polo Retail, LLC*,
No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) .......................................... 7

**TABLE OF AUTHORITIES**
(cont.)

**Page**

**Rules**

Federal Rules of Civil Procedure

Rule 23(a) ................................................................................................................... 5
Rule 23(b)(3) ............................................................................................................... 5
Rule 23(e)(2) ............................................................................................................... 6
Rule 23(e)(2)(A) ....................................................................................................... 12
Rule 23(e)(2)(D) ....................................................................................................... 11

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL; MPA

I.      **INTRODUCTION**

Plaintiffs Cody Meek, Jeremy Barnes, and Coryell Ross (collectively, "Plaintiffs") bring this motion for final approval of a $4.195 million, non-reversionary proposed class action Settlement[1] that will fairly compensate Settlement Class Members who worked for Defendants SkyWest Airlines, Inc. and SkyWest, Inc., (together, "SkyWest" or "Defendants") as Frontline Employees in California from February 27, 2013 through the date of preliminary approval.  On September 30, 2022, this Court granted preliminary approval to the Parties' Settlement Agreement and ordered the Settlement Administrator, CPT Group, Inc. ("CPT"), to execute the approved notice plan.  *See* Order Granting Preliminary Approval of Class Action Settlement, Dkt. No. 197, at 4-5 (the "Preliminary Approval Order").  Direct notice was sent by U.S. Mail, email, and/or text message to virtually every Class Member, and no Class Members have objected to the Settlement. No Class Members were required to file a claim and each will receive approximately $1,428 *after* anticipated deductions for attorneys' fees and costs, which is $108 more than the $1,320 estimated at preliminary approval.  Only eight Class Members have opted out. This positive response demonstrates that the Settlement has the support and approval of the Class.  Plaintiffs therefore request that the Court grant final approval to the Settlement and certify the Settlement Class so that the payments can be issued.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

The nearly five-year procedural history of this matter is set forth in detail in Plaintiffs' May 23, 2022 Motion for Preliminary Approval and Motion For Attorneys' Fees, Expenses, and Incentive Awards.  Dkt. Nos. 193 and 198, respectively.  The proposed settlement here is the result of years of hard-fought litigation, including multiple motions for summary judgment and class certification. The Settlement Agreement was reached following extensive mediation, including settlement conferences before the Honorable Magistrate Elizabeth D. LaPorte and two full days of mediation with the Honorable Andrew Guilford (Ret.) of Judicate West in Los Angeles.  The Settlement was achieved just weeks before trial.

---

[1] All capitalized terms will have the same meaning as set forth in the Settlement Agreement attached as Exhibit 1 to the Joint Declaration.  Citations to specific portions of the Settlement Agreement are referenced as "SA ¶ __".

The Parties previously submitted the Settlement for preliminary approval, Dkt. No. 187, which was heard on April 21, 2022. At the hearing, the Court originally denied preliminary approval due to a provision in the Settlement that required the settlement website to be password protected. Dkt. No. 190. The Court ordered that a revised Motion may be filed by May 23, 2022. *Id*. The Parties then worked with the Claims Administrator, CPT, to bolster and supplement the notice campaign, obtained one or more methods of contact information for 100% of the Settlement Class, and made the settlement website publicly available. The Parties executed a modification of the Settlement Agreement commemorating these additional notice protocols, which Plaintiffs submitted to the Court in their Renewed Motion For Preliminary Approval on May 23, 2022. Dkt. No. 193. After these modifications, the Court granted Plaintiffs' Motion for Preliminary Approval on September 30, 2022. Dkt. No. 197. Notice to the Class was issued on November 7, 2022, and was supplemented by reminder notices. Shortly thereafter on November 28, 2022, Plaintiffs filed a Motion for Attorneys' Fees, Expenses, and Incentive Awards, which is pending before this Court and set to be heard concurrently with this Motion. Dkt. No. 198. As necessary (and for the sake of brevity), Plaintiffs incorporate by reference the record and arguments made in these prior motions.

### III.    SUMMARY OF THE SETTLEMENT

#### A.    Benefits of the Settlement

The Settlement provides for the non-reversionary payment of $4.195 million in cash for the benefit of the Class. Dkt. No. 193-1, Ex. 1 (Settlement Agreement ("SA") ¶ 14(a)). The Settlement is inclusive of all payments to the Class Members (including all employer and employee payroll taxes), all fees and expenses to Class Counsel, proposed Incentive Awards, costs of the Claims Administrator, CPT, and a payment to the California Labor and Workforce Development Agency ("LWDA") for Plaintiffs' PAGA claim. SA ¶¶ 15-17. No eligible Class Member had to file a claim form to receive their payment – disbursements will be made automatically if final approval is granted unless a Class Member exercised their right to opt-out. SA ¶¶ 16, 26-28. A breakdown of the Gross Settlement Fund is demonstrated as follows:

| Gross Settlement Fund | $4,195,000 |
|---|---|
| Claims Administration Costs | $30,000 |
| Incentive Awards to 3 Plaintiffs | Not to exceed $15,000 total |
| PAGA Payment | $15,000 (75% to the LWDA and 25% to the Class Members) |
| Class Counsel Fees | Requested $1,216,350 (or 29% of the fund) |
| Class Counsel Costs | Requested $145,029.59 in unreimbursed expenses |
| Net Settlement Fund | $2,788,620 (estimated) |

Based on the approximate payments for Claims Administration, Class Counsels' Fees and Costs, the PAGA Payment, and the Incentive Awards, the Net Settlement Fund for distribution to the Settlement Class Members would be approximately $2,788,620. SkyWest's records indicate that there are 2,361 total Settlement Class Members who were employed during the Class Period. January 26, 2022 Declaration of Laura Singh ("Singh Decl."), ¶ 3. Of the 2,361, approximately 409 Settlement Class Members were employed by SkyWest during the Class Period but did not work at least one shift and noticed notice but will not receive a payment. *Id*. at ¶ 10. The 1,952 Settlement Class Members who *worked* at least one shift during the Class Period will receive a payment and each will recover, on average, approximately $1,428 *after* deductions of the estimated amounts for Attorneys' Fees and Costs. *Id.* Per the allocation method of the Settlement, Class Members who worked the most hours during the class period will be entitled to greater shares of the Settlement. Dkt. No 193-1, ¶ 19; SA ¶ 16. With approximately 4 million hours worked by Settlement Class Members during the Class Period, the $4.195 roughly equates to just over $1 per hour (before deductions for Attorneys' Fees and Costs). Singh Decl., ¶ 10. Should the Court award less than the requested Attorneys' Fees and Costs, the balance will be distributed to Settlement Class Members. SA ¶ 15(b)(i). No funds will revert to SkyWest and all funds will be distributed. Importantly, Class Members did <u>not</u> need to fill out a claim form but will simply be mailed a check.

### B.    Notice and Class Member Payments

On November 7, 2022, the Settlement Administrator, CPT, mailed 2,361 Notice Packets, emailed 1,451 Notice Packets, and sent 2,225 text messages to individuals for which an address, email, or phone number was provided.  Singh Decl., ¶ 5.  On November 28, 2022, CPT sent automated calls to 2,236 individuals for which a valid telephone number was provided.  *Id.*  Additionally, on December 5, 2022, CPT sent a text reminder to 51 recipients who provided an updated phone number to Class Counsel or CPT and email reminder notification to 1,390 individuals.  *Id.*  Only 18 Notice Packets were unable to be delivered because better mailing addresses could not be found.  *Id.* at ¶ 7.  Of the 18 Notice Packets that were unable to be delivered to a physical address, Class Counsel is contacting them by phone and email to obtain a current address so that they may receive their check via mail.  January 26, 2022 Joint Declaration of Mitchell Breit, Thien An V. Truong, and Matthew B. George ("Joint Decl.") ¶ 6.  Additionally, Class Counsel can also work with their in-house private investigator and process server to try and locate current addresses.  *Id.*

Of the 2,353 total Class Members, 409 were not identified as having any hours worked and will therefore not be issued any payment in connection with the Settlement.  Accordingly, the other 1,952 Class Members who did work at least one eligible hour will be paid their portion of the Net Settlement Amount.  Singh Decl., at ¶ 10.  Each Class Member's share of the Net Settlement Amount will be proportional to the number of hours he or she worked during the Class Period.  According to Defendants' records, Class Members in aggregate worked a total of 4,004,260.23 hours during the Class Period.  *Id.*  Accordingly, the average estimated payment is $1,428 after estimated deductions for Attorneys' Fees and Costs.  *Id.*  To date, CPT has not received any objections to the Settlement, and has only received 8 opt-outs.  *Id.* at ¶¶ 8-9, Ex. B.  Furthermore, in accordance with the Settlement Agreement, should the Court grant final approval, Class Counsel will file a post-distribution report with the Court within twenty-one (21) days after the stale/void date of the Settlement Awards.  Joint Decl. ¶ 8.

1

## IV.  **ARGUMENT**

2

### A.    **The Court Should Certify the Settlement Class**

3    This Court has already ruled that certification of the claims in this matter are appropriate

4    for class treatment, and reaffirmed this conclusion in the Preliminary Approval Order, with an

5    appropriate modification to the class definition to expand the settlement class period.  Dkt. No. 197.

6    Nothing has changed since the Preliminary Approval Order that would alter the Court's

7    certification of a settlement class.  All requirements of Rule 23(a) and 23(b)(3) remain satisfied.

8    As discussed in the Preliminary Approval Order, the Court certified a class of "[a]ll persons

9    employed by Defendants based in California as non-exempt Frontline Employees at any time from

10    February 27, 2013, through the date of the Court's order preliminarily approving this Settlement."

11    Dkt. No. 197 at 2.  Accordingly, the Court should again confirm certification of the proposed

12    settlement class under Rule 23(a) and Rule 23(b)(3).  *Id.*; *Arnold v. DMG Mori USA, Inc.*, No. 18-

13    CV-02373-JD, 2022 WL 18027883, at *2 (N.D. Cal. Dec. 30, 2022) (finally approving modified

14    class definition); *Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2021

15    WL 3053018, at *2 (N.D. Cal. July 20, 2021) (finally approving class definition because "[n]othing

16    material has changed on this score since preliminary approval.").

17

### B.    **The Settlement is Fair, Adequate, and Reasonable**

18    "At the final approval stage, the primary inquiry is whether the proposed settlement 'is

19    fundamentally fair, adequate and reasonable.'"  *Criswell v. Boudreaux*, No. 120-CV-01048-DAD-

20    SAB, 2021 WL 5811887, at *4 (E.D. Cal. Dec. 7, 2021) (quoting *Lane v. Facebook, Inc.*, 696 F.3d

21    811, 818 (9th Cir. 2012), and citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998),

22    *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  However,

23    the importance of preliminary settlement approval—which was based here on a compellingly strong

24    record and after a hearing—weighs heavily in the final settlement approval calculus.  *See generally*

25    Preliminary Approval Order; *see also Musgrove v. Jackson Nurse Prof'ls, LLC*, No. CV 17-6565

26    FMO (SSx), 2022 WL 2092656, at *4 (C.D. Cal. Jan. 11, 2022) ("[a]lthough '[c]loser scrutiny is

27    reserved for the final approval hearing[,]' . . . 'the showing at the preliminary approval stage—

28    given the amount of time, money, and resources involved in, for example sending out . . . class

1   notice[ ]—should be good enough for final approval.'") (quoting respectively, *Harris v. Vector*

2   *Mktg. Corp.*, No. C–08–5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011), and *Spann*

3   *v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. Jan. 25, 2016), and citing 4 Newberg on Class

4   Actions § 13:10 (5th ed.)).

5   Under Rule 23(e)(2), the Court may approve a proposal that would bind class members only

6   after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

7   (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

8   (C)    the relief provided for the class is adequate, taking into account:

9       (i)    the costs, risks, and delay of trial and appeal;

10      (ii)   the effectiveness of any proposed method of distributing relief to the class,
                including the method of processing class-member claims;

11      (iii)  the terms of any proposed award of attorney's fees, including timing of
                payment; and

12      (iv)   any agreement required to be identified under Rule 23(e)(3); and

13  (D) the proposal treats class members equitably relative to each other.

14  *Arnold*, 2022 WL 18027883, at *1 (citing Fed. R. Civ. P. 23(e)(2)).

15  In addition, the Ninth Circuit has determined that "[t]he factors in a court's fairness

16  assessment will naturally vary from case to case, but courts generally must weigh: (1) the strength

17  of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3)

18  the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

19  (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views

20  of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members

21  of the proposed settlement." *Id.* at *2 (citing, *In re Bluetooth Headset Prods. Liability Litig.*, 654

22  F.3d 935, 946 (9th Cir. 2011) and *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

23  2004)).

24  As demonstrated below, the proposed Settlement is a fair and just result.  Given the

25  complexity of this litigation, the potential difficulty of proving certain elements of the Class's

26  claims at trial, and the continued risks of maintaining class certification through to trial, the

27  Settlement represents a favorable resolution of this Action and eliminates the risk that the Class

28

might otherwise recover nothing.  Moreover, no Class Member has filed an objection or otherwise opposed the Settlement.

**1.    The Settlement is Entitled to a Presumption of Reasonableness**

Here, there is no question that the Settlement was arrived at through genuine arm's length bargaining after a developed factual record that allowed the parties to have a "clear view of the strengths and weaknesses of their case[]." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citations omitted).  In fact, this Court already found that "the proposed settlement was the product of serious, informed and noncollusive negotiations."  Preliminary Approval Order at 3.  Accordingly, it is entitled to a presumption of reasonableness. *Ross v. Trex Co., Inc.*, No. 09–cv–00670–JSW, 2013 WL 6622919, at *3 (N.D. Cal. Dec. 16, 2013) ("[T]here is no fraud or collusion underlying this Settlement, and it was reached after good faith, arms'-length negotiations, warranting a presumption in favor of approval") (citation omitted); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement."); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution[.]).  As discussed above and in the motion seeking preliminary approval, the Settlement is the result of arm's length negotiations that spanned over two years.

After an unsuccessful settlement conference with the Hon. Magistrate LaPorte in June 2018, the Parties continued to take discovery and obtain key rulings from the Court on dispositive issues that helped inform future settlement negotiations.  After multiple teleconferences with the Hon. Magistrate Hixson, the Parties eventually agreed to mediation with Judge Guilford (Ret.) in November 2020.  Prior to that mediation the Parties had exchanged discovery, the Plaintiffs had sat for depositions, and Plaintiffs' expert had analyzed payroll data to ascertain potential damages.  When the matter did not settle, the Parties completed fact discovery and filed class certification and summary judgment motions that were ruled on in August and September 2021.  The Parties agreed to return to Judge Guilford for a second mediation in November 2021.  While the matter did not

settle at the mediation, the Parties continued negotiations with Judge Guilford and then with each other directly, resulting in an MOU and then the Settlement Agreement. This was shortly before the January 2022 trial date.

All negotiations were conducted at arms' length by counsel experienced in complex, class action litigation and the Settlement was only reached after the close of fact and expert discovery and after key motions were ruled on. Here, Class Counsel have vetted all the claims and risks and unreservedly support the Settlement. Dkt. No. 193-1, ¶¶ 31-34. Accordingly, the experienced views of Class Counsel and lengthy, vigorous negotiations with a retired federal judge on a full factual record weigh heavily in favor of finding that negotiations were well-informed, non-collusive and therefore this factor warrants approval of the Settlement.

### 2. The Strength of Plaintiffs' Case

In determining the likelihood of Plaintiffs' success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d at 965).

Here, as set forth in the Joint Declaration, Class Counsel engaged in lengthy arm's-length negotiations with SkyWest's counsel, and were thoroughly familiar with the applicable facts, legal theories, and defenses on both sides. Dkt. No. 193-1 ¶¶ 3-11, 31-34. Although Plaintiffs and Class Counsel had confidence in their claims, they also recognize that they would face risks on class certification, summary judgment, and trial. SkyWest vigorously denies Plaintiffs' allegations, and at the time of Settlement had made clear in Court filings that it would file a motion for decertification immediately. Indeed, SkyWest had already obtained summary judgment on the Shift-Trade Overtime claim and the SFO Minimum Wage Claim. Further, the Court did not certify Plaintiffs' unpaid Grace Period Claim. In addition, cross *Daubert*-motions were pending,

Defendants would no doubt present an aggressive defense at trial, and there was no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks.

Thus, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation. The Settlement also abrogates the risks that might prevent them from obtaining any relief.

### 3.      The Risks of Continued Litigation

Based upon the procedural posture of the case and pre-trial preparations, the terms and conditions of this Settlement are fair, reasonable, and adequate to the Class and in their best interests given the risks of continued litigation. The case had already been pending for almost five years and trial was fast approaching when the Settlement was reached. All of the pertinent facts, discovery, and documents had been vetted by the time the Settlement was reached, and the Court had issued a number of important pre-trial rulings. Given the posture of the case, the Settlement is appropriate because it guarantees a substantial monetary recovery now without the risks of trial, loss and potential appeals. And, as explained above, SkyWest had indicated its intent to file a motion for decertification imminently, and the Parties have cross-moved to exclude each other's experts and were preparing motions *in limine* that could impact the evidence available at trial. Dkt. No. 193-1 ¶ 31. As discussed in Plaintiffs' Motion for Attorneys' Fees and Costs, SkyWest has also defeated prior cases making similar allegations on behalf of Frontline Employees and other airline workers such as flight attendants.

Thus, while Plaintiffs believe that the claims have merit and have had some success at the certification stage, Plaintiffs concluded that there was a risk that the proposed Settlement Class could recover less than the Settlement, or nothing at all, if the Action continued. The assessment of these very real risks to the proposed Settlement weigh in favor of approval.

### 4.      Risk of Maintaining Class Action Status Through Trial

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as having summary judgment granted against Plaintiffs, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez v. W. Publ'g*

*Corp.*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06–3903 THE, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even assuming that Plaintiffs were able to survive summary judgment, they would face the risk of establishing liability at trial. It is virtually impossible to predict with any certainty which interpretation of the facts would be credited, and ultimately, accepted by the Court or the jury.  The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.  Moreover, even if Plaintiffs prevailed at trial, in light of the possible damage theories that could be presented by both sides, Class Members may be awarded significantly less than is offered to them under this Settlement.  By settling, Plaintiffs and the Class avoid those risks, as well as the delays, costs, and risks of the appellate process.

### 5.    The Amount Offered in Settlement Supports Approval

As stated by this Court, the primary consideration in evaluating a class settlement agreement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Sarkisov v. StoneMor Partners L.P.*, No. 13-CV-04834-JD, 2015 WL 1249169, at *3 (N.D. Cal. Mar. 18, 2015) (citing *Officers for Justice*, 688 F.2d at 624).  The amount offered in the Settlement is substantial when considering the size of the class and the outcomes for individuals.  The $4.195 million recovery is, on average, $1,428 per person *after* deductions for potential attorneys' fees and costs.  Singh Decl. ¶ 10.  With Class Members who made roughly $14 per hour during the Class Period, $1,428 is roughly 100 hours of work.  Before estimated deductions for Attorneys' Fees and Costs, the average payout per Class Member is $2,150 per person.  This is a significant amount of money for the Settlement Class Members, and comparable to other wage and hour recoveries in this District. *Flores v. Alameda Cnty. Indus. Inc*, No. 14-CV-03011-JD, 2015 WL 7180607 (N.D. Cal. Nov. 16, 2015) (average payout of $2,005); *Ortiz v. Genco, Inc.*, No. 4:16-CV-04601-YGR, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019) (average payout of $1,188); *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245

(N.D. Cal. 2015) (average payout of $450); *Rodriguez v. Nike Retail Servs., Inc.,* No. 14-CV-01508-BLF, 2022 WL 254349 (N.D. Cal. Jan. 27, 2022) (average payout of $320).

The Settlement Agreement provides for payments to each Settlement Class Member based on the total hours they worked in the Class Period, and thus treats them all equitably relative to each other and in light of the available evidence and applicable legal standard. In order to maximize transparency and enable Settlement Class Members to make informed decisions, each Settlement Class Member was provided a personalized Notice Packet that informed of their hours worked and their estimated, proposed Settlement Payments. Singh Decl., Ex. B. With all of this information, there were no objections and only eight (8) Opt-Outs. Therefore, the recovery is equitable such that the Rule 23(e)(2)(D) factor supports final approval.

Also, the Court's reliance on these figures must be tempered by the additional costs and delay of trial coupled with the risk that Plaintiffs could prove liability yet still recover nothing. *See, e.g.*, *Schaffer v. Litton Loan Serv., LP.*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of what constitutes a fair settlement figure are tempered by factors such as losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."). As discussed above, the amount offered in the Settlement, both in the aggregate and per individual, militates toward Settlement and the Court should find that the Settlement is fair and reasonable, and within the range of possible approval.

### 6.    The Stage of the Proceedings and the Discovery Completed

The stage of the proceedings and discovery completed are additional factors supporting the Settlement. Under these factors, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007). Here, the Settlement was only reached after fact and expert discovery were

*completed*, and a number of important pre-trial rulings had been made. With a trial date approaching, there was no further investigation to do. Accordingly, the advanced stage of the litigation supports preliminary approval.

### 7.    The Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs, Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d at 967. Here, as stated above and in Plaintiffs' previous motions, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See, e.g.,* Dkt. Nos. 193 and 198. Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

### 8.    The Class Was Well Represented

Rule 23(e)(2)(A) requires that Plaintiffs and Class Counsel "have adequately represented the class." As the long history of the litigation, the mediation process, and the excellent results obtained demonstrate, the Class was well represented. As set forth in detail in Plaintiffs' Motion for Preliminary Approval and in the Motion for Attorneys' Fees, Expenses, and Incentive Awards, Plaintiffs and their counsel have vigorously prosecuted this action on behalf of Settlement Class Members, and will continue to adequately protect the interests of the Settlement Class. *See generally* Dkt. Nos. 193, 198.

### 9.    No Government Participant Is Present

To date, no governmental entity has intervened or voiced any objection to the Settlement.

### 10.    Class Member Response Has Been Entirely Positive

The reaction of class members to the Settlement has been overwhelmingly positive, with no objections submitted to the Settlement Agreement. Singh Decl. ¶ 8. To date, there have been only 8 opt-outs. *Id.* at ¶ 9, Ex. A. Furthermore, Class Counsel have received no complaints about

the content, sufficiency, or timeliness of Class Notice or the Settlement.  Joint Decl. ¶ 3.  Indeed, Class Counsel have heard from dozens of Settlement Class Members during the notice period who provided updated contact information, and many have expressed their satisfaction with the Settlement and are looking forward to receiving their Settlement Payments.  *Id.*

This reaction by Settlement Class Members supports final approval.  *See Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *8 (N.D. Cal. Apr. 25, 2016) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043) (observing "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

### 11.    The Request for Attorneys' Fees, Expenses, and Incentive Awards Is Fair and Reasonable

As detailed in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards, and consistent with the Settlement Agreement, Class Counsel seek of $1,216,550, which is 29% of the $4.195 million non-reversionary Settlement Fund and unreimbursed expenses totaling $145,029.59 that Class Counsel reasonably and necessarily incurred in the prosecution of this class action.  Dkt. No. 198.  The Settlement Agreement authorized Class Counsel to seek up to 33% of the Settlement Fund in Attorneys' Fees and that figure was used in the Class Notices.  Well in advance of the objection deadline, Class Counsel's Motion for Attorneys' Fees actually sought up to 29% of the Settlement Fund in Attorneys' Fees.  Pursuant to the Settlement Agreement, all Class Members had access to Class Counsels' requests, and no Class Member objected.  Singh Decl. ¶¶ 8, 12.  For all the reasons set forth in the Motion for Attorneys' Fees, including that Plaintiffs here prevailed where many other litigants against SkyWest have not, Class Counsel submit that the requested 29% fee is reasonable in the circumstances of this case.  Should the Court award less, the difference will be distributed to the Settlement Class Members.

### 12.    The Proposed Cy Pres Recipient is Appropriate

The Settlement Agreement authorizes unclaimed funds to be donated to a *cy pres* recipient. SA ¶ 16(f).  Ultimately, because all participating Settlement Class Members will be getting a payment automatically, Plaintiffs only expect a very small residual amount of funds (and perhaps

not any) if some Settlement Class Members cannot be found or choose not to cash their checks in the 180 days. Joint Decl. ¶ 4. As outlined in Plaintiffs' Renewed Motion for Preliminary Approval, any limited *cy pres* funds will be donated to the Spirit of SkyWest ("SOS") charity, which is a tax-exempt Section 501(c)(3) charitable organization that benefits the families of SkyWest employees in times of hardship. Dkt. No. 193. Specifically, SOS has a "Crisis Fund" that would benefit the very class at issue here. Specifically, the SOS Crisis Fund is a non-profit, charitable organization that exists solely to help SkyWest employees who are facing a severe hardship.

Cy pres recipients must be "tethered to the nature of the lawsuit and the interests of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011). This requires "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). In ruling on a *cy pres,* courts are instructed to "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." *Nachshin*, 663 F.3d at 1040. Further, the Court must consider whether the *cy pres* distribution is appropriate given the "size and geographic diversity" of the class members. *Id.* at 1040–41. The SOS charity easily meets each of these criteria. First, the California Labor Code statutes at issue seek to protect the wages of low-income workers, who need to be guaranteed a fair and minimum wage for all work performed. Here, Plaintiffs presented evidence at the class certification stage that the putative class were experiencing financial hardship as a result of long commutes, physically demanding labor, low hours and low wages. The SOS charity directly benefits employees with financial hardships. Thus, it is reasonably certain that any funds left over will be used to benefit workers such as the Class Members. If the Court does not approve the SOS charity as the *cy pres* recipient, the Parties will mutually agree on substitute organization for the Court's consideration.

### C.    The Settlement Class Members Received the Best Notice Practicable

"Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the claims of a certified class may be settled only with the Court's approval. Rule 23(e) outlines the procedures that apply to the proposed class settlement, including the requirement to direct notice in a reasonable manner

1    to all class members who would be bound by the proposal." *Arnold,* 2022 WL 18027883, at *1

2    (citing Fed. R. Civ. P. 23(e)(1)); *see also Norcia,* 2021 WL 3053018, at *1.

3        Here, the notice has been outstanding and reached Class Members directly via email, U.S.

4    Mail and/or voicemail and text messages.  In its Preliminary Approval Order, this Court approved

5    Plaintiffs' Notice Plan, stating that "[t]he Court finds that the proposed forms of notice together

6    constitute the best practicable notice to individual class members under the circumstances of this

7    case." Dkt. No. 197 at 3.  Notably, the Parties ensured that the website did not require a password

8    and was open to the public.  *Id.*  Additionally, a claim form is not required, and Class Members will

9    simply be mailed checks.  *Id.*  Given the robust set of personal, reliable contact information now in

10   hand, the Parties added additional forms of direct notice, including reminder notices throughout the

11   notice period.  *See* Dkt. No. 193-1 ¶ 28, Ex. 3.

12       CPT implemented the Notice Plan precisely as set out in the Settlement Agreement and as

13   ordered by the Court.  The Notice Plan has been a resounding success on every level.  Initially,

14   CPT mailed 2,361 Notice Packets, emailed 1,451 Notice Packets, and sent 2,225 text messages to

15   individuals for which an address, email, or phone number was provided.  Singh Decl. ¶ 5.  CPT

16   also sent automated calls to 2,236 individuals for which a valid telephone number was provided

17   and sent a text reminder to 51 recipients (phone numbers that could receive a text) and email

18   reminder notification to 1,390 individuals.  *Id.*  CPT then emailed and re-mailed Notice Packets to

19   class members who provided updated emails and addresses.  *Id.* ¶ 6.  CPT received 232 returned

20   Notice Packets, and then performed skip traces to locate new mailing addresses.  *Id.* ¶ 7.  As a

21   result of the skip trace, request from Counsel, or request from class members themselves, a total

22   of 249 Notice Packets were re-mailed because a better mailing address was found.  *Id.*  Altogether,

23   only 18 Notice Packets were unable to be delivered because a better mailing address could not be

24   found, and only 17 of those individuals are actually receiving checks.  Joint Decl., ¶ 6.  Class

25   Counsel is contacting these individuals by phone and email to obtain a current address so that they

26   may receive their check via mail.  *Id.*  Additionally, Class Counsel can also work with their in-

27   house private investigator and/or a process server to try and locate a current address for them.  *Id.*

28

1          Additionally, should the Court grant final approval, the Parties have agreed that the Claims

2   Administrator will issue a reminder notice of the checks' stale date by all methods (U.S. Mail,

3   email, and phone) 45 days after the checks are distributed.  Dkt. No. 193-1 ¶ 28.  Going further, at

4   the 120-day mark, the Claims Administrator will provide the Parties with a list of Settlement Class

5   Members who have not cashed their checks so that they can follow up as appropriate and remind

6   them to cash the checks.  *Id.*  Class Counsel have received no complaints about the content,

7   sufficiency, or timeliness of Class Notice or the Settlement.  Joint Decl. ¶ 3.  In fact, Class Counsel

8   have closely monitored communications with Settlement Class Members and have personally

9   responded to those who have called with questions about the Action and the Claims Process.  *Id.* at

10  ¶ 5.  To the best of Class Counsels' knowledge, all Settlement Class Members who contacted Class

11  Counsel with questions concerning the Settlement and the Claims Process received complete

12  answers to their questions.  *Id.*

13         The lack of even one objection demonstrates that the Settlement meets with the approval of

14  the Class.  The Court should approve the notice plan.  *See In re Online DVD- Rental Antitrust Litig.*,

15  779 F.3d 934, 945–46 (9th Cir. 2015) (affirming approval of notice plan based on rental records

16  using both regular and email); *Wilson v. Airborne, Inc.*, No. EDCV 07-770-VAP (OPx), 2008 WL

17  3854963, at * 4 (C.D. Cal., Aug. 13, 2008) (approving notice program reaching 80% of Class

18  Members); *Ayala v. Coach, Inc.*, No. 14-CV-02031-JD, 2016 WL 9047148, at *2 (N.D. Cal. Oct.

19  17, 2016) (notice by mail and email); *Cancilla v. Ecolab, Inc.*, No. 12-cv-03001-JD, 2016 WL

20  54113, at *2 (N.D. Cal. Jan. 5, 2016) (notice by mail); *Flores*, 2015 WL 7180607, at *3 (notice by

21  mail); *Gill v. 314e Corp.*, No. 3:17-cv-01062-JD (N.D. Cal. Mar. 9, 2018) (notice by mail and

22  email); *Huntsman v. Southwest Airlines, Co.*, No. 3:17-cv-03972-JD, 2018 WL 11371114, at *3

23  (N.D. Cal. Dec. 5, 2018) (notice by mail and email).

24  **V.    <u>CONCLUSION</u>**

25         For the reasons discussed herein, Plaintiffs respectfully request the Court grant final

26  approval of the proposed Settlement.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED:  January 26, 2022

By:   /s/ *Matthew B. George*
                Matthew B. George

Laurence D. King
Matthew B. George
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
lking@kaplanfox.com
mgeorge@kaplanfox.com

**SIMMONS HANLY CONROY LLC**
Thien An V. Truong
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
atruong@simmonsfirm.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gregory F. Coleman
First Horizon Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
gcoleman@milberg.com

*Class Counsel*